1  Shimon Yiftach, Esq. (SBN 277387)
2  Bronstein Gewirtz & Grossman
   1925 Century Park East, Suite 1990
3  Los Angeles, CA 90067
   T: (424) 322-0322
   F: (212) 697-7296
4  shimony@bgandg.com

5  Attorneys for Plaintiffs

6  [Additional counsel appear on signature page]

7

8              UNITED STATES DISTRICT COURT
9              CENTRAL DISTRICT OF CALIFORNIA

10

11 DENNIS MACDOUGALL, RAY SEOW,          )  Case No.: 17-cv-1079
   PRABHANJAN KAVURI, RICHARD            )
12 FRICK, JOSEPH RYAN PARKER, and        )  **CLASS ACTION COMPLAINT FOR:**
   BRYAN LENTZ, individually and on      )
13 behalf of all others similarly situated, )  (1) Breach of Express Warranty;
                                          )  (2) Breach of Implied Warranty of
14                                        )      Merchantability;
                                          )  (3) Violations of Magnuson-Moss
15                Plaintiffs,             )      Warranty Act;
                                          )  (4) Breach of Implied Warranty Pursuant
16                                        )      to Song-Beverly Consumer Warranty
                                          )      Act;
17         v.                             )  (5) Violations of Pennsylvania Unfair
                                          )      Trade Practices and Consumer
18                                        )      Protection Law;
                                          )  (6) Violations of California's Consumer
19 AMERICAN HONDA MOTOR CO.,             )      Legal Remedies Act;
   INC., and HONDA NORTH AMERICA,        )  (7) Violations of California's Unfair
20 INC.,                                  )      Competition Law;
                                          )  (8) Violations of New Jersey Consumer
21                                        )      Fraud Act;
                                          )  (9) Violations of Florida Deceptive and
22                Defendants.             )      Unfair Trade Practices Act;
                                          )  (10)  Equitable Injunctive and Declaratory
23                                        )      Relief;
                                          )  (11)  Declaratory Judgment Act; and
24                                        )  (12)  Unjust Enrichment.
                                          )
25 ─────────────────────────────         )  **DEMAND FOR JURY TRIAL**

26

27

28

─────────────────────────────────────────────────────────

**CONSUMER CLASS ACTION COMPLAINT**

Plaintiffs Dennis MacDougall, Ray Seow, Prabhanjan Kavuri, Richard Frick, Joseph Ryan Parker, and Bryan Lentz (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, by and through the undersigned counsel, hereby set forth their claims against Defendants American Honda Motor Co., Inc. and Honda North America, Inc. ("Defendants" or "Honda") in this consumer class action complaint. Plaintiffs allege the following based upon personal knowledge as to their own acts, and based upon the investigation conducted by their counsel, as to all other allegations:

**NATURE OF THE CASE**

1.      Plaintiffs bring claims against Honda under the consumer protection laws of California, Pennsylvania, New Jersey, and Florida, the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, and state warranty laws.

2.      This action concerns Honda's admitted inability to repair defective transmissions it installed in all model year 2011 - 2016 Honda Odyssey vehicles (the "Class Vehicles") sold or leased to consumers, including Plaintiffs, throughout the United States.

3.      The Class Vehicles were sold or leased pursuant to express and implied warranties. Every class vehicle is backed by a 36-month/36,000-mile express New Vehicle Basic Limited Warranty ("Limited Warranty") and a 60-month/60,000-mile express Powertrain Limited Warranty ("Powertrain Warranty"). Such warranties expressly cover any repairs needed to correct defects in materials or workmanship, and specifically apply to the engine, transmission and transaxle, drivetrain, front-wheel-drive system, and rear-wheel drive system. These warranties expressly apply to all original purchasers and lessees throughout the United States. These warranties also transfer to subsequent purchasers.

4.      These warranties assured consumers that Honda would repair or replace any part that is defective in materials or workmanship under normal use and the Class Vehicles were properly equipped for the use for which they were intended. At the time

each class vehicle was sold or leased, Honda breached its express and implied warranties because each class vehicle was equipped with a dangerous and defective transmission.

5.     The transmissions in all of the Class Vehicles are defective in materials, and/or workmanship. The transmissions cause sudden, unexpected shaking and violent jerking (commonly referred to as "juddering" or "shuddering") when drivers attempt to accelerate Class Vehicles and shift into 2nd, 3rd, or 4th gear. The transmissions also hesitate before responding to a drivers' input on the accelerator pedal, which prevents Class Vehicles from accelerating as intended by the driver, especially from a complete stop. The Class Vehicles also surge while driving. The transmissions also cause a hard downshift or clunk when drivers either slow down or accelerate at low speeds. This transmission defect creates unreasonably dangerous situations while driving and increases the risk of a crash.

6.     The shuddering, juddering, hesitation, surge, and hard clunk in the transmissions of Class Vehicles are all caused by a transmission defect.

7.     Plaintiffs Dennis MacDougall, Ray Seow, Prabhanjan Kavuri, Richard Frick, Joseph Ryan Parker, and Bryan Lentz each requested that Honda fix the defective transmission of their Class Vehicles, but Honda could not or would not repair them.

8.     Honda sold, leased, and continues to sell and lease the Class Vehicles despite knowing of the transmission defect and the danger it poses to consumers and other drivers.

9.     Honda has chosen financial gain at the expense of consumer safety by failing to disclose its knowledge of this critical safety defect to consumers.

10.     Honda knew or should have known about the safety hazard posed by the defective transmissions before the sale of the first class vehicle from pre-market testing, warranty claims, NHTSA, internal complaints, and other sources underlying its three Technical Service Bulletins acknowledging problems with the transmissions of Class Vehicles. Honda should not have sold, leased, or marketed the Class Vehicles without a

full and complete disclosure of the Class Vehicles' transmission defect, and should have voluntarily recalled the Class Vehicles long ago.

11. Plaintiffs bring this action on behalf of themselves and all others similarly situated ("Class," "Subclass," "Class Members," or "Subclass Members,") for Honda's breach of express and implied warranties under state laws and the Magnuson-Moss Warranty Act, Honda's deceptive trade practices in violation of the consumer protection laws of California, Pennsylvania, New Jersey, and Florida, and declaratory and equitable relief. Plaintiffs seek damages, injunctive and declaratory relief, restitution, disgorgement of profits, attorneys' fees and costs, punitive damages, and the repair or replacement of Class Vehicles or refund of money paid to own or lease all Class Vehicles in the United States.

## JURISDICTION AND VENUE

12. The United States District Court for the Central District of California has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act because there is minimal diversity, the proposed Class and Subclasses each exceeds one hundred members, and the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interests and costs. 28 U.S.C. § 1332(d)(2)(A).

13. The United States District Court for the Central District of California can exercise personal jurisdiction over Defendants because American Honda Motor Co., Inc. and Honda North America, Inc. are incorporated in California and headquartered in Torrance, California. Defendants' actions summarized in this complaint occurred in this District so as to subject them to in personam jurisdiction in this District.

14. The United States District Court for the Central District of California can exercise supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) - (c). Honda does substantial business in the State of California and within this Judicial District, is registered to and is doing business within the State of California, and otherwise

maintains requisite minimum contacts with the State of California. Additionally, Honda distributes Class Vehicles in this District and receives substantial compensation and profits from the sale and lease of Class Vehicles in this District.

## PARTIES

16.     Plaintiff Dennis MacDougall, a proposed Class and Subclass representative, is an adult citizen of Pennsylvania.

17.     Plaintiff Ray Seow, a proposed Class and Subclass representative, is an adult citizen of California residing in San Bernardino County.

18.     Plaintiff Prabhanjan Kavuri, a proposed Class and Subclass representative, is an adult citizen of New Jersey.

19.     Plaintiff Richard Frick, a proposed Class and Subclass representative, is an adult citizen of California residing in Orange County.

20.     Plaintiff Bryan Lentz, a proposed Class and Subclass representative, is an adult citizen of California residing in Orange County.

21.     Plaintiff Joseph Ryan Parker, a proposed Class and Subclass representative, is an adult citizen of Florida.

22.     Defendants American Honda Motor Co., Inc. and Honda North America, Inc. are the developers, designers, manufacturers, assemblers, testers, inspectors, marketers, advertisers, distributors, sellers, and/or warrantors of the Class Vehicles.

23.     Defendant American Honda Motor Co., Inc. ("AHM") is a corporation organized under the laws of the State of California and has its principal place of business in Torrance, California. AHM operates, maintains offices, and/or conducts business in all fifty states.

24.     Defendant Honda North America, Inc. is a Delaware corporation with its principal place of business in Torrance, California.

## GENERAL ALLEGATIONS

**A. Honda Knowingly Sold Dangerously Defective Vehicles to Consumers.**

25.     Honda began manufacturing Class Vehicles in approximately August

2010.

26.    The first class vehicle was sold or leased to members of the Class and Subclass in approximately September 2010.

27.    Upon information and belief, Honda was aware, or should have been aware, of the defect present in Class Vehicles before the first class vehicle was ever sold. The defect causes the transmission to malfunction in, at minimum, the following ways: the Class Vehicles hesitate from a stop before acceleration, surge in acceleration, hard downshift at low speeds, and suddenly shake and jerk violently (commonly known as "juddering" or "shuddering") (collectively, "transmission failures").

28.    Drivers' reports confirm that the transmission failures occur: when trying to accelerate from a stop, often with cars behind the Class Vehicles, at low speeds when drivers intend to merge with traffic and shift gears on the highway, when attempting to drive uphill, and while shifting gears at low speeds. The transmission defect, especially in these scenarios, creates a serious safety risk that can lead to serious accidents, injuries, or even death for the driver, the vehicles' occupants, other drivers, and pedestrians.

29.    Honda has attributed the transmission failures to the computer software or deteriorated transmission fluid; however, Honda's proposed fixes have not resolved the defect.

30.    Within a year of selling the first class vehicle, Honda released a Technical Service Bulletin acknowledging the surges, hesitations, or judders felt by drivers of 2011-2012 Odysseys after the transmission shifts into 2nd, 3rd, or 4th gear. Honda's Service Bulletin advised technicians to update the Automatic Transmission Software ("A/T Software") or the Programmed Fuel Injection software ("PGM-FI") in new vehicles or replace the Automatic Transmission Fluid ("ATF") in used vehicles. *See* Exhibit B.

31.    The initial attempts to "fix" through PGM-FI reprogramming, an A/T software fix, or an ATF replacement failed to correct the defect.

32.     In March of 2015, Honda released another Technical Service Bulletin acknowledging the hard downshifts and "clunks" when accelerating or decelerating at low speeds in 2014-2015 Odysseys and recommending that technicians update the Powertrain Control Module A/T software ("PCM A/T"). *See* Exhibit B.

33.     This second attempt at a fix through a PCM A/T update also failed to correct the defect.

34.     By August of 2016, Honda released a third Technical Service Bulletin that admitted the continuing problem of judders in the 2012 Odyssey transmissions, expanded the admitted hard downshifts or clunks in the 2014 to 2015 Odysseys and included higher speeds, and, for the first time, admitted that 2013 Odysseys also experience transmission judders. Instead of repeating the previous software updates, Honda suggested that deteriorated transmission fluid caused the transmission issues and advised technicians to flush the transmission fluid. All three Technical Service Bulletins are attached hereto as Exhibit B.

35.     In its August 2016 Technical Service Bulletin, Honda admitted its recommendation to flush transmission fluid is a temporary fix that requires customers to periodically return for repairs. Honda also instructed technicians to advise customers that they will have to return once a software update is available to resolve the transmission failures.

36.     Upon information and belief, Honda has yet to develop a software update to solve the transmission problems.

37.     Consumer complaints submitted to NHTSA have persisted despite the application of Honda's software updates and transmission fluid replacements. Some consumers have received three or four computer upgrades and/or fluid replacements, yet continue to experience the dangerous transmission failures. Drivers report that they do not feel comfortable driving the Class Vehicles. S*ee* Section B, *infra*; *see also* Exhibit A.

38.     Honda continued to manufacture, market, and distribute new Class

Vehicles into model year 2016 despite its failure to remedy the known transmission defect.

**B. Consumers Have Extensively Reported the Safety Defect to Honda.**

39.    NHTSA provides a system for motor vehicle owners to report complaints relating to safety defects that pose a risk of accidents, injuries, and even death in vehicles manufactured or imported in the United States, including safety defects relating to transmission malfunctions. The safety defect complaints are entered into NHTSA's consumer complaint automated database, which manufacturers can access. NHTSA also provides these consumer complaints to the vehicle's manufacturer, including Honda. Honda reviews NHTSA consumer complaints. Given that the vast majority of vehicles owners are not aware of NHTSA and/or its reporting system, complaints received by NHTSA are a small minority of the overall number of complaints made to Honda, which also received complaints directly and/or through their authorized dealerships.

40.    Since at least May 2011, Honda has received complaints of transmission defects and safety concerns related to the Class Vehicles through NHTSA and Honda dealerships, and directly by owners of Class Vehicles.

41.    Despite Honda's knowledge of the transmission defect in the Class Vehicles and its safety implications, Honda continues to conceal this knowledge and has failed to disclose that its Class Vehicles' transmissions are defective and dangerous. Consumers continue to operate Class Vehicles and continue to experience dangerous failures of the defective transmission, and are at increased risk for crashes.

42.    Consumers have submitted at least 71 individual NHTSA complaints regarding Class Vehicles experiencing the transmission defect described in Honda's Technical Service Bulletins. The number and content of NHTSA consumer complaints of "juddering," "down shifting," "hesitation," "surge," and loss of acceleration highlight the Class Vehicles' transmission defect.

43.    These consumer complaints filed with NHTSA, and delivered to Honda,

often highlight the safety risk caused by the defect, including reports of near accidents and expressions of concern for drivers' families without response or resolution by Honda. Honda received and was aware of these consumer complaints. A sample of these complaints is reprinted in the paragraphs below; Plaintiffs have included additional complaints in an attachment to this Complaint. S*ee* Exhibit A.

44.     A July 25, 2011 consumer complaint submitted to NHTSA states: "2011 HONDA ODYSSEY EX-L WITH 300 MILES ON IT, STUMBLES/HESITATES AT LOW SPEEDS (15-20 MPH) WHEN LIGHT THROTTLE APPLIED WITH TRANSMISSION IN "D" ON A SLIGHT INCLINE. HONDA DEALER IN BOONE, NC COULD NOT RESOLVE PROBLEM. ON 7-25-2011. OWNER DROVE CAR FROM DEALER AND PROBLEM HAPPENED THREE MORE TIMES. IMMEDIATELY RETURNED CAR TO DEALER BUT DEALER COULD NOT DUPLICATE PROBLEM BUT SAID THEY WOULD CONTACT HONDA FOR ADVICE. THIS PROBLEM HAS HAPPENED SIX TIMES SINCE NEW AND CAR HAS JUST 525 MILES ON IT AND GIVES DRIVER SENSATION THAT ENGINE HAS STALLED."

45.     A June 3, 2012 consumer complaint submitted to NHTSA states: "I HAVE BEEN EXPERIENCING HESITATION IN ACCELERATION FROM A STOP THROUGH THIRD GEAR AT LOW SPEEDS. I TOOK THE VEHICLE TO HONDA DEALERSHIP AND THEY HAD NOT HEARD OF THE PROBLEM AND WERE UNABLE TO DUPLICATE THE SEVERITY OF MY ISSUE BUT DID NOTICE HESITATION. MANAGER SAID HE WOULD SPEAK TO CORPORATE REPRESENTATIVE. YESTERDAY, WHILE TAKING A LEFT TO CROSS HIGHWAY, THE VEHICLE HAD TROUBLE ACCELERATING TO CROSS HIGHWAY WITH APPROACHING VEHICLES TRAVELING 65 MILES PER HOUR. MY FRIEND AND HER CHILD WERE IN THE VAN ALONG WITH ONE OF MY CHILDREN. I HAVE NOT LOOKED AT THIS AS A SAFETY ISSUE UNTIL YESTERDAY BUT AM NOW VERY CONCERNED BECAUSE I LIVE OFF

THIS BUSY HIGHWAY AND REGULARLY MAKE THIS TURN OFTEN WITH THREE OR MORE CHILDREN."

46.    A December 17, 2014 consumer complaint submitted to NHTSA states: "I WAS DRIVING ON THE HIGHWAY WHEN I HEARD A LOUD CLUNK. THOUGHT I HIT A BUMP BUT WHEN I GOT OFF THE HIGHWAY AND STOPPED AT A LIGHT THE CAR STARTING BUCKING BETWEEN 0-30 MILES PER HOUR. IT CONTINUED TO DO SO AT EVERY START. DROVE IT TO HONDA DEALERSHIP WHERE THEY FOUND NOTHING WRONG WITH VEHICLE. HAVE DONE RESEARCH ON VEHICLE ONLY TO FIND NUMEROUS OTHER COMPLAINTS OF SAME ISSUE. THIS IS DANGEROUS! IF I WAS TRYING TO CROSS AN INTERSECTION AND IT STARTED BUCKING, I MIGHT NOT MAKE IT OUT OF INTERSECTION ON TIME. PLEASE INVESTIGATE THIS ISSUE AS HONDA IS SAYING NOTHING IS WRONG WITH THEIR CARS."

47.    An April 30, 2015 consumer complaint submitted to NHTSA states: "WE WERE DRIVING IN STOP AND GO TRAFFIC IN CA AND OUR 2014 ODYSSEY ENGINE BEGAN TO CLUNK AND WHOLE CAR JERKED (LIKE RUNNING OVER SOMETHING LIKE A SPEED BUMP) EACH TIME WE TRIED TO ACCELERATE THROUGH SECOND GEAR. FELT LIKE HITTING SOMETHING OR ENGINE FALLING OUT. THE CAR'S TRANSMISSION CONTINUED TO DO THIS EVERY TIME WE TRIED TO ACCELERATE BETWEEN 20-30 MILES PER HOUR. IT CONTINUED TO JOLT/JERK/AND CLUNK FOR 20 MILES AS WE DROVE ON THE FREEWAY. THIS IS DANGEROUS AND MADE MY HEART SKIP BEATS AS IT FELT LIKE THE ENGINE WAS GOING TO FALL OUT/LIKE BEING IN A CRASH. CONTACTED HONDA BUT THEIR SERVICE WAS ABOUT TO CLOSE. WE PULLED OVER TO DO OUR ERRAND AND WHEN WE RESTARTED THE CAR IT STOPPED. THE SHIFTING ON THE VEHICLE IS NOT SMOOTH THROUGH GEARS. TOOK NEXT DAY TO HONDA AND THEY WILL

NOT FIX AS NO DIAGNOSTIC CODES CAME UP AND CANNOT GET THE CAR TO DUPLICATE ISSUE NOW. NOW THERE IS A TSB TO UPDATE SOFTWARE BUT DEALERSHIP WILL NOT DO UNLESS ISSUE IS DUPLICATED AGAIN. SAFETY ISSUES THAT YOUR BRAND NEW VEHICLE MAY HAVE ENGINE TRANSMISSION FAIL AT ANY POINT DURING TRAVEL. JOLTING IS SO SEVERE WHEN IT HAPPENS THAT IT COULD CAUSE YOU TO HAVE AN ACCIDENT."

48.    A September 6, 2015 consumer complaint submitted to NHTSA states: "WHILE ACCELERATING AFTER BEING STOPPED AT A STOP SIGN, THE CAR MADE A CLUNKING NOISE AND THE CAR JERKED SEVERELY AS WE ACCELERATED INTO GEAR. IT HAPPENED AT LEAST 2 MORE TIMES AFTER BEING STOPPED AT A COUPLE OF STOP SIGNS. IT WAS VERY FRIGHTENING WHEN IT HAPPENED AND IS A SAFETY ISSUE AS THE DRIVER'S ATTENTION IS TAKEN AWAY WHEN IT HAPPENS. THE SCARIEST PART IS NOT KNOWING WHEN IT'S GOING TO HAPPEN. WHEN THERE IS A NEED TO ACCELERATE QUICKLY ACROSS TRAFFIC, WE ARE WORRIED THE SAME THING WILL HAPPEN AGAIN OR THAT THE CAR WON'T MAKE IT THROUGH THE INTERSECTION. I DON'T FEEL SAFE DRIVING THIS VEHICLE WHILE THE ISSUE IS OUTSTANDING. THIS IS AN UNACCEPTABLE ISSUE THAT HAVING READ OTHER FORUMS IS HAPPENING TO OTHERS WITH 2014 AND 2015 ODYSSEY'S AND THE DEALERSHIPS ARE BOT UNDERSTANDING THE CAUSE OR FIX FOR THE ISSUE DUE TO IT HAPPENING SPORADICALLY. THIS CALLS FOR ACTION BEFORE IT LEADS TO SOMEONE BEING HARMED. IT'S A MAJOR ISSUE AND PRESSURE NEEDS PUT ON HONDA TO FIX THE ISSUE!"

49.    A September 7, 2015 consumer complaint submitted to NHTSA states: "ON AUGUST 9, 2015, WE WERE DRIVING HOME FROM VACATION FROM CEDAR POINT, OHIO TO PITTSBURGH, PA. THIS IS ABOUT A 200 MILE TRIP.

THE VEHICLE RAN SMOOTHLY THE ENTIRE TRIP UNTIL I LEFT THE TURNPIKE OF DRIVING 60-70 MILES PER HOUR AND THEN BEGAN DRIVING ON A ROAD WITH A 40 MPH SPEED LIMIT. ALL OF A SUDDEN I WAS AT A RED LIGHT WAITING IN TRAFFIC. AS SOON AS THE LIGHT TURNED GREEN, I PRESSED THE ACCELERATOR. WE BEGAN ACCELERATING TO 25 MILES PER HOUR BUT KNEW SOMETHING WAS WRONG. MY CAR WOULD NOT LEAVE FIRST GEAR. THE GAUGE ON THE DASHBOARD WENT FROM 1-7 GEAR BUT NOTHING HAPPENED. I WAS IN THE PASSING LANE TRAVELING 15-20 MILES PER HOUR IN A 40MPH ZONE. I THEN PROCEEDED TO CHANGE LANES WHEN ALL OF A SUDDEN THE ENTIRE CAR JUMPED AS IF IT HAD A MIND OF ITS OWN AND BEGAN TO ACCELERATE. THE CAR BEGAN DRIVING FASTER BUT NOT ANY FASTER THAN 40 MPH. AGAIN, ALL WE COULD HEAR WAS ROOOOOOOM AND THE DASHBOARD INDICATOR LOOKED LIKE WINDSHIELD WIPERS GOING FROM LEFT TO RIGHT. THE CAR WOULD NOT LEAVE 2ND GEAR. THIS CONTINUED TO HAPPEN OVER AND OVER AGAIN AT EACH RED LIGHT. SINCE THIS WAS A SUNDAY, THE SERVICE CENTER WAS CLOSED. IT WASN'T UNTIL WEDNESDAY THAT THE DEALERSHIP WAS ABLE TO TAKE A LOOK AT MY VEHICLE. SINCE NO SENSORS INDICATED A PROBLEM, THEY STATED THERE WAS NOT A PROBLEM AND THERE WAS NOTHING THEY COULD DO. I AM NOT FABRICATING THIS INCIDENT ONE BIT AND AM AFRAID OF THIS HAPPENING AGAIN BUT HAVING A DIFFERENT OUTCOME. IF I EXPERIENCED THIS PROBLEM AND THE DEALERSHIP DISMISSED ME BECAUSE A SENSOR DID NOT INDICATE A PROBLEM, WHAT DOES IT TAKE FOR A SENSOR TO TRIGGER? THIS IS A LEASED VEHICLE OF 1 MONTH AND I AM VERY CONCERNED OF IT HAPPENING AGAIN OR WORSE. I AM A SINGLE MOTHER OF 3 AND SHOULD NOT HAVE TO WORRY ABOUT THE SAFETY OF MY CHILDREN AND MYSELF IN A 1

MONTH OLD VEHICLE WITH LESS THAN 2,000 MILES."

C. **Honda Did Not Disclose the Safety Defect to Plaintiffs, the Class, or Subclass Members.**

50.    Despite Honda's knowledge of the defect present in Class Vehicles, Honda failed to disclose this unresolved safety defect to new and subsequent purchasers and lessees of Class Vehicles, and instead chose to omit it. Honda continues to manufacture and sell Honda Odysseys equipped with the defective transmissions without any disclosure to consumers about these hidden safety defects.

51.    Honda's Technical Service Bulletins concerning the transmission problems in Class Vehicles were not directly sent to purchasers and did not fully disclose the pervasiveness of the defect, the safety issues arising from the defect, or the uncertain nature of the prescribed fixes.

52.    Plaintiffs, Class Members, and Subclass Members would not have purchased or leased their vehicles, or would have paid significantly less for them, had they known of the transmission defect or safety hazard. Plaintiffs, Class Members, and Subclass Members were denied information that was material to their purchase or lease and material to their willingness to use their Class Vehicles when Honda did not disclose the defect to them. Such information was material to a reasonable consumer in making a decision to purchase, lease, or use a Class Vehicle.

D. **Honda's Express and Implied Warranties Cover Repairs and Replacements Associated with the Transmission Defect, But Honda has been Unable to Repair the Defect.**

53.    For each class vehicle sold by Honda, an express written warranty was issued which covered the vehicle, including but not limited to, the transmission system.

54.    Honda provided all purchasers and lessees of the Class Vehicles with a New Vehicle Basic Limited Warranty ("Limited Warranty") and a Powertrain Limited Warranty ("Powertrain Warranty"). The Powertrain Warranty begins on the same date as the Limited Warranty. The Limited Warranty "begins on the date the vehicle is put

into use in one of the following ways: The vehicle is delivered to the first purchaser by a Honda dealer. The vehicle is leased. The vehicle is used as a demonstrator or company vehicle."

55. Furthermore, under the Powertrain Warranty, Honda expressly warranted that it "will repair or replace any part that is defective in material or workmanship under normal use… All repairs/replacements made under this warranty are free of charge. The replaced or repaired parts are covered only until this Powertrain Limited Warranty expires." The Powertrain Warranty covers vehicles for 60 months/60,000 miles, whichever comes first. Honda promised to cover listed powertrain components under its Powertrain Warranty, including the transmission components such as "Transmission and Transaxle... Case and all internal parts, torque converter, transfer case and all internal parts, transmission/powertrain control module, seals and gaskets."

56. Honda also sold or leased the Class Vehicles to the Plaintiffs, Class, and Subclass Members under an implied warranty of merchantability. Honda's express warranty confirms that Honda offers implied warranties, including the implied warranty of merchantability, for the same duration as the express warranty. Honda impliedly warranted that the Class Vehicles were merchantable in that they were in a safe and non-defective condition for use by their owners or lessees for the ordinary purpose for which they were intended, and were not otherwise injurious. Honda is under a duty to design, construct, manufacture, inspect, and test the Class Vehicles so as to make them suitable for the ordinary purposes of their use—transportation.

57. Honda breached its warranties for the Class Vehicles when it: designed, manufactured, and sold Class Vehicles with defects in the transmission system, refused to recognize or repair the defect in the transmission when confronted with the transmission failures, and/or otherwise inadequately repaired the defect through ineffective software updates, transmission fluid flushes, or replacement of the defective transmissions with equally defective transmissions. In breach of Honda's warranties, the Class Vehicles are defective, unsafe, unfit for the ordinary purposes for which they

are intended to be used, and not merchantable.

## PLAINTIFFS' INDIVIDUAL ALLEGATIONS

58.    Like all new or certified pre-owned Honda vehicles, Plaintiffs' Class Vehicles each came with Honda's Limited and Powertrain Warranties. These warranties were a material factor in Plaintiffs' decisions to purchase their respective Class Vehicles.

59.    At the time of Plaintiffs' purchases, Honda failed to disclose, concealed, and/or omitted consumer complaints, malfunctions, safety hazards, and material facts related to the Class Vehicles' defective transmission.

60.    Before Plaintiffs purchased their respective Class Vehicles, Plaintiffs were never informed of, or aware of, the Honda Odyssey's transmission failures. Plaintiffs were also unaware of Honda's prior failed attempts to address the Class Vehicles' defect with software reprogramming and transmission flush procedures.

61.    Had Honda disclosed the defect, Plaintiffs would not have purchased the class vehicle or would have paid significantly less for it. Plaintiffs were denied information material to their purchases and willingness to use the class vehicle. To the contrary, Plaintiffs relied upon Honda's express and implied warranties that the class vehicle was fit and safe for its ordinary purpose, merchantable, and free of irreparable defects.

62.    Plaintiffs used the Class Vehicles in a reasonable manner and followed all scheduled maintenance recommendations.

A. **Plaintiff Dennis MacDougall Purchased a 2014 Honda Odyssey with the Undisclosed Safety Defect.**

63.    On or about April 2014, Plaintiff Dennis MacDougall ("MacDougall") purchased a brand new 2014 Honda Odyssey for $43,785 from Apple Honda in York, Pennsylvania.

64.    Plaintiff MacDougall first noticed juddering and banging when shifting gears at low speeds in his vehicle thirty days after he purchased his Honda Odyssey.

65.     Within four months of his purchase, in approximately August 2014, Plaintiff MacDougall's vehicle began to violently judder. Because the juddering made him fearful for his safety, he sought an inspection of the class vehicle at Apple Honda dealership in York, Pennsylvania.

66.     Plaintiff MacDougall brought his Honda to Apple Honda for the first time in August 2014 at 5,700 miles. Apple Honda noted, in the service record notes, that Plaintiff MacDougall complained about "TRANS[MISSION] BANG – STATES WHEN SLOWING OR DRIVING AROUND 20 MPH AND GETTING BACK ONTO THROTTLE." The service record indicates that the service technician test-drove the vehicle with Plaintiff MacDougall but could not duplicate his driving experience or detect any abnormal issues.

67.     In a November 19, 2014 letter that he sent to American Honda Motor Co., Inc. Customer Service in Torrance, CA, Plaintiff MacDougall disputes the service technician's notes. Plaintiff MacDougall maintained that the technician was able to duplicate the transmission shifting problem during the test drive and informed Plaintiff MacDougall that the problem appeared to be a "software problem with the timing of gear shifting when decelerating and then suddenly accelerating." After checking to see whether Honda had issued a recall, the technician informed Plaintiff MacDougall that, while Honda had not issued a recall concerning this problem, Honda would contact Plaintiff MacDougall in the future if it issued a recall because "this is a major transmission issue." The technician did not update the software on Plaintiff MacDougall's vehicle.

68.     Plaintiff MacDougall described the problem to Honda's customer service group as "a sudden and nerve racking banging sound and lurching of the vehicle" when, for example, accelerating after the vehicle slows down. Plaintiff MacDougall recounted that "[t]his event is so intense that the first time I heard it I actually thought we had been rear-ended by another vehicle." In the course of a three-hour road trip, Plaintiff MacDougall experienced the failure two times, which unsettled his friends and family

in the vehicle.

69.     Plaintiff MacDougall brought his vehicle back to Apple Honda for the second time in November 2014 at 11,448 miles. The dealership service record notes state that Plaintiff MacDougall mentioned, "THE CAR BUCKS DURING ACCELERATION FROM A STOP OR SLOWER SPEED TO PICK UP SPEED." The service technician test drove the vehicle with Plaintiff MacDougall and then performed software updates.

70.     Plaintiff MacDougall continues to experience the transmission failures in his vehicle today.

**B. Plaintiff Ray Seow Purchased a 2014 Honda Odyssey with the Undisclosed Safety Defect.**

71.     On or about December of 2013, Plaintiff Ray Seow ("Seow") purchased a brand new 2014 Honda Odyssey for about $36,000 from Diamond Honda of Puente Hills in City of Industry, California.

72.     Within six months of his purchase, in approximately July of 2014, Plaintiff Seow's vehicle began to violently judder and clunk when changing gears at 5-10 mph, causing him immediate concern. Because the juddering made him fearful for his safety, he sought an inspection of the class vehicle at Diamond Honda of Puente Hills dealership in City of Industry, California.

73.     Plaintiff Seow took his car to Diamond Honda for the first time at just 4,950 miles, in December of 2014. He informed the dealer that the transmission begins to shift hard in stop and go traffic after fifteen minutes. The technician verified Plaintiff's concern and felt the transmission's hard shift. The technician performed an update to the Vehicle Stability Assist system. Plaintiff took his car to Diamond Honda again in February of 2017 at 24,977 miles. He informed the dealer that the transmission continues to shift hard between first and second gear and that, now, the transmission makes a clunking noise. The technician sent snap shots of the vehicle to Honda and performed software updates. Honda's solutions, however, have not solved the problem

with Plaintiff's transmission.

74.     Plaintiff Seow continues to experience the transmission failures in his vehicle today.

**C. Plaintiff Prabhanjan Kavuri Purchased a 2014 Honda Odyssey with the Undisclosed Safety Defect.**

75.     On or about April 2014, Plaintiff Prabhanjan Kavuri ("Kavuri") purchased a brand new 2014 Honda Odyssey from Honda of Princeton in Princeton, New Jersey for $44,000.

76.     Shortly after his purchase, at just over 3,000 miles, Plaintiff Kavuri's vehicle began to violently judder between 15-30 mph, during a slow turn, when stopping and starting, and between 2nd and 3rd gear, causing him immediate concern. Because the juddering made him fearful for his safety, he sought an inspection of the class vehicle at Honda of Princeton dealership in Princeton, New Jersey in January of 2015.

77.     Plaintiff Kavuri described to the technician the jerking motion of the transmission when he stepped on the accelerator. The technician took Kavuri for a test drive and informed him that he could not feel the judder. Because Honda could not duplicate the issue, no repairs were made to the car.

78.     Plaintiff Kavuri continues to experience the transmission failures in his vehicle today.

**D. Plaintiff Richard Frick Purchased a 2015 Honda Odyssey with the Undisclosed Safety Defect.**

79.     On or about June 2015, Plaintiff Richard Frick ("Frick") purchased a brand new 2015 Honda Odyssey for about $50,000 from Ocean Honda of San Juan Capistrano in San Juan Capistrano, California.

80.     Immediately after his purchase, in approximately June of 2015, Plaintiff Frick noticed that his vehicle would not shift correctly at low speeds, causing him immediate concern. Because the juddering made him fearful for his safety, he sought an

inspection of the vehicle at Ocean Honda dealership in San Juan Capistrano, California in late February of 2016, at just 7,375 miles.

81.    The dealership service record notes confirm that Plaintiff Frick informed the dealership that the vehicle jerks into gear. In response, the dealership implemented a software update.

82.    A few weeks later, at 7,730 miles, Plaintiff Frick returned to the dealership because the software update did not work. As indicated by the dealership service record notes, Plaintiff Frick reported that his vehicle would "REV EXCESSIVELY, [AND] NOT SHIFT UNTIL 5000 RPMS" and, further, that his "FUEL MILEAGE HAS DROPPED A LOT." Plaintiff Frick also "NOTED NOISE WHEN REVERSING OUT OF PARKING SPOT." The dealership took three "SNAPSHOTS" and sent them to a Honda representative at "TECHLINE." After comparing the data to "KNOWN GOOD VEHICLES[,]" Techline "FOUND NO ABNORMALITIES" and recommended that "NO FURTHER REPAIR[S WERE] NEEDED AT THIS TIME[.]"

83.    Plaintiff Frick continues to experience the transmission failures in his vehicle today.

**E. Plaintiff Joseph Ryan Parker Purchased a 2014 Honda Odyssey with the Undisclosed Safety Defect.**

84.    On or about May 2016, Plaintiff Joseph Ryan Parker ("Parker") purchased a certified pre-owned 2014 Honda Odyssey for $31,798.93 from Jenkins Honda of Leesburg in Leesburg, Florida. At the time of purchase, the odometer of the class vehicle recorded 32,000 miles.

85.    Upon information and belief, the original purchaser of Parker's Honda bought the vehicle in September of 2014.

86.    Within a month of his purchase, Plaintiff noticed that his vehicle had a rough stumble feeling on acceleration, especially on inclines or with any load on the vehicle, and found that it grew progressively worse with miles and time. By July of 2016, Plaintiff Parker's vehicle hesitated and jerked so severely that he could easily

duplicate the issue, causing him immediate concern. Because the hesitation made him fearful for his safety, he sought an inspection of the class vehicle at Honda of Gainesville in Gainesville, Florida at 41,342 miles.

87.    The technician performed a diagnostic on the vehicle and informed Plaintiff Parker that he had a bad converter or transmission assembly and that the technician could feel the torque converter clutch lock-up. The technician performed an ATF flush procedure as a temporary correction pursuant to Honda's August 2016 Technical Service Bulletin. The dealership informed Plaintiff Parker that the transmission defect was a problem in all Touring and Touring Elite Honda Odyssey vans and that, while Honda did not have a permanent fix as of August 2016, a programming fix would be available to permanently correct the issue in a few weeks.

88.    Plaintiff Parker continues to experience the transmission failures in his vehicle today. To his knowledge, Honda has not made a permanent fix available.

**F. Plaintiff Bryan Lentz Purchased a 2014 Honda Odyssey with the Undisclosed Safety Defect.**

89.    On or about February 2014, Plaintiff Bryan Lentz ("Lentz") purchased a new 2014 Honda Odyssey for $32,125 from AutoNation Honda in Costa Mesa, California. Plaintiff Lentz and his wife, Nicole Lentz, both drive the vehicle.

90.    Within a few months of the purchase, Plaintiff Lentz was in traffic, tried to accelerate following a brake, and noticed that the vehicle exhibited a large jerk. The jerk grew progressively worse with miles and time. In approximately late July of 2014, the vehicle began to jerk and "slam[] into gear" when Mr. Lentz attempted to accelerate, causing him immediate concern. Because the juddering made Plaintiff Lentz and Mrs. Lentz fearful for their family's safety, Plaintiff Lentz sought an inspection of the vehicle at Auto Nation in Costa Mesa, California at just 5,313 miles.

91.    The dealer tested Plaintiff Lentz's vehicle and informed him that everything was normal.

92.    Five days later, Plaintiff Lentz again brought the vehicle to Auto Nation at

5,361 miles. The dealership service records indicate that Plaintiff stated that, "WHEN ACCELERATING AROUND 20-30 MPH… TRANSMISSION SLAMS INTO GEAR.. AFTER DRIVING 10 MINS." The dealership manager took Plaintiff's car home overnight and tested it during the manager's commute. The manager stated that the judder was not severe, but performed a transmission flush.

93.    Plaintiff Lentz and his wife continue to experience the transmission failures in the vehicle today.

## CLASS ACTION ALLEGATIONS

94.    Pursuant to Rules 23(b)(2), and/or 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiffs will seek certification of a nationwide class defined as follows: All persons who purchased and/or leased a 2011-2016 Honda Odyssey in the United States (the "Class").

95.    Plaintiffs also seek certification of Subclasses defined as follows: A Pennsylvania Subclass consisting of: All persons who purchased and/or leased a 2011-2016 Honda Odyssey in Pennsylvania.

A California Subclass consisting of: All persons who purchased and/or leased a 2011-2016 Honda Odyssey in California.

A New Jersey Subclass consisting of: All persons who purchased and/or leased a 2011-2016 Honda Odyssey in New Jersey.

A Florida Subclass consisting of: All persons who purchased and/or leased a 2011-2016 Honda Odyssey in Florida.

96.    The Class and Subclass definitions specifically exclude: (a) all persons who assert personal injury claims arising from or relating to the transmission failures in their class vehicle; (b) all persons who have had their class vehicle re-purchased or "bought back" by Defendant Honda (whether the buy-back was required by law or was solely pursuant to agreement); (c) any persons or other entity currently related to or affiliated with Defendants; (d) any person, firm, trust, corporation, or other entity who purchased, for resale, from Defendants, or any entity related to or affiliated with Honda,

a new Odyssey model years 2011 to 2016, or any person who has an action for damages for personal injury or death or property damage against Defendant; (e) any Judge presiding over this action and members of his or her family; and (f) all persons who properly execute and file a timely request for exclusion from the Class.

97.    *Numerosity*: the Class and Subclasses are comprised of tens of thousands of Honda Odyssey owners throughout the United States, making joinder impractical. Moreover, the Class and Subclasses are composed of an easily ascertainable, self-identifying set of individuals and entities who purchased a 2011 - 2016 Honda Odyssey. The members of the Class and Subclasses are so numerous that joinder of all members is impracticable. The precise number of Class and Subclass Members can be ascertained only through discovery, which includes Defendants' sales, service, and complaint records. The disposition of their claims through a class action will benefit both the parties and this Court.   Furthermore, members of the Class and Subclasses may be identified from records maintained by Honda and its agents, and may be notified of the pendency of this action by mail, or other appropriate means, using a form of notice customarily used in consumer class actions.

98.    *Commonality*: The critical questions of law and fact common to the Class and Subclasses that will materially advance the litigation include, but are not limited to, the following:

      a.  Whether the transmission installed by Defendants in the Class Vehicles, model years 2011-2016, were defective;

      b.  Whether Defendants knew about the defective transmissions in Class Vehicles when they sold the Class Vehicles;

      c.  Whether the transmission defect constitutes a breach of the implied warranty of merchantability, including a violation of the Song-Beverly Consumer Warranty Act;

      d.  Whether refusing or failing to repair the transmission defect constitutes a breach of the express warranty;

e.  Whether the Defendants' concealment of and/or failure to disclose the defect in Class Vehicles constitutes unfair or deceptive acts or practices in violation of state consumer protection statutes;

f.  Whether information about the defect was material to a reasonable consumer in making a decision to purchase, lease, or use Class Vehicles;

g.  Whether Honda's inability to fix the transmission defect in Class Vehicles means that Honda's express warranty has failed its essential purpose;

h.  Whether members of the Class and Subclasses are entitled to be notified and warned about the transmission defect and are entitled to the entry of final and injunctive relief compelling Defendants to issue a notification and warning to all Class and Subclass Members concerning such a defect;

i.  Whether Defendants deliberately misrepresented or failed to disclose or concealed material facts to Plaintiffs and the Class and Subclass Members;

j.  Whether Honda acted or refused to act on grounds generally applicable to the Class, thereby making the award of equitable relief and/or restitution appropriate to the Class as a whole;

k.  Whether Plaintiffs and Class Members would have purchased their Class Vehicles, or whether they would have paid a lower price for them, had they known of the transmission failures;

l.  Whether Plaintiffs and Class and Subclass Members are entitled to actual damages;

m. Whether Plaintiffs and the Class and Subclasses are entitled to restitution and/or disgorgement;

99.    *Typicality*: The Plaintiffs' claims are typical of the claims of the members of the Class, as all such claims arise out of Defendants' conduct in designing,

manufacturing, warranting, and selling the Class Vehicles with the same transmission defect.

100.  *Adequate Representation*: Plaintiffs will fairly and adequately protect the interests of the Class Members and have no interests antagonistic to those of the Class. Plaintiffs have retained counsel experienced in the prosecution of complex class actions including, but not limited to, consumer class actions involving, *inter alia*, breach of warranties, product liability, and product design defects.

101.  *Predominance*: This class action is appropriate for certification because questions of law and fact common to Class Members predominate over questions affecting only individual members.

102.  *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all Class Members is impracticable. Should individual Class Members be required to bring separate actions, this Court would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court. Because the damages suffered by each Class Member are relatively small compared to the expense and burden of prosecuting this compelling case against a well-financed, multibillion-dollar corporation, this class action is the only way each Class Member can redress the harm that Honda caused.

103.  This lawsuit is maintainable as a class action under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds that are generally applicable to the Class and Subclass Members, thereby making final injunctive relief appropriate with respect to the Class and Subclasses.

104.  This lawsuit is maintainable as a class action under Federal Rule of Civil

Procedure 23(b)(3) because the questions of law and fact common to the members of the Class and Subclasses predominate over any questions that affect only individual members, and because the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy.

## TOLLING OF STATUTES OF LIMITATIONS

105.   *Discovery Rule*. Plaintiffs' claims accrued upon discovery that the transmission system that Honda designed, manufactured, and installed into the Class Vehicles suffered from transmission failures, and that the transmission failures could not be repaired. While Honda knew and omitted the fact that the transmissions suffer from a defect that causes failures, Plaintiffs, Class Members, and Subclass Members could not and did not discover this fact through reasonable diligent investigation until after they experienced failures, reasonably excluded other potential causes of the failures, and learned that warranty "repairs" by Honda did not solve the problem.

106.   *Active Concealment Tolling*. Any statutes of limitations are tolled by Honda's knowing and active concealment of the fact that the transmission suffered from a defect. Honda kept Plaintiffs and all Class and Subclass Members ignorant of vital information essential to the pursuit of their claims, without any fault or lack of diligence on the part of Plaintiffs. The details of Honda's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiffs and the Class and Subclass Members. Plaintiffs could not reasonably have discovered the fact that the transmissions suffered from a defect that would cause repeated and significant failures.

107.   *Estoppel*. Honda was and is under a continuous duty to disclose to Plaintiffs, as well as Class and Subclass Members, the true character, quality, and nature of the transmissions. At all relevant times, and continuing to this day, Honda knowingly, affirmatively, and actively misrepresented and omitted the true character, quality, and nature of the transmissions. The details of Honda's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiffs

and Class and Subclass Members. Plaintiffs and Class and Subclass Members reasonably relied upon Honda's knowing and/or active omissions. Based on the foregoing, Honda is estopped from relying upon any statutes of limitation in defense of this action.

108.    *Equitable Tolling*. Honda took active steps to omit the fact that it wrongfully, improperly, illegally, and repeatedly manufactured, marketed, distributed, sold, and/or leased the Class Vehicles with the defective transmissions. The details of Honda's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of the Plaintiffs and Class and Subclass Members. When Plaintiffs learned about this material information, they exercised due diligence by thoroughly investigating the situation, retaining counsel, and pursuing their claims. Honda wrongfully omitted its deceitful acts described above. Should it be necessary, therefore, all applicable statutes of limitation are tolled under the doctrine of equitable tolling.

## FIRST CLAIM FOR RELIEF

(Breach of Express Warranty)

On behalf of the Class, or in the alternative, the Pennsylvania, California, New Jersey, and Florida Subclasses

109.    Plaintiffs, individually and on behalf of the Class, or in the alternative, for the Pennsylvania, California, New Jersey, and Florida Subclasses, hereby incorporate each and every allegation as though fully set forth herein.

110.    Each class vehicle sold by Honda included an express Limited Warranty and Powertrain Warranty that covered, in part, the transmission and warranted that it would repair or replace any defects in materials and workmanship in the Class Vehicles.

111.    Honda provided all purchasers and lessees of the Class Vehicles with a Limited Warranty and a Powertrain Warranty. The Powertrain Warranty begins on the same date as the Limited Warranty. The Limited Warranty "begins on the date the vehicle is put into use in one of the following ways: The vehicle is delivered to the first purchaser by a Honda dealer. The vehicle is leased. The vehicle is used as a

demonstrator or company vehicle." Under the Powertrain Warranty, Honda expressly warranted that it "will repair or replace any part that is defective in material or workmanship under normal use… All repairs/replacements made under this warranty are free of charge. The replaced or repaired parts are covered only until this Powertrain Vehicle Warranty expires." The Powertrain Warranty covers vehicles for 60 months/60,000 miles, whichever comes first. Honda promised to cover listed powertrain components under its Powertrain Warranty, including the transmission components such as "Transmission and Transaxle... Case and all internal parts, torque converter, transfer case and all internal parts, transmission/powertrain control module, seals and gaskets."

112.   Plaintiffs gave notice to Honda of their vehicles' defect through its dealer and agent and through its customer service division, and gave Honda a chance to repair the defect under the express warranty. Honda was also on notice of the defect by virtue of the NHTSA and other website complaints set forth herein, as well as its internal investigation of the defect in Class Vehicles as early as 2012. Plaintiffs also provided notice of their claims directly to Honda by letter on May 3, 2017 and June 14, 2017.

113.   Honda breached its warranties by offering for sale and selling defective vehicles that were by construction defective and unsafe and refusing to recognize or permanently repair the defect, thereby subjecting the occupants of the Class Vehicles purchased or leased to damages and risks of loss and injury.

114.   Honda's warranty to repair the Class Vehicles fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs, the Class, and the Subclasses whole because Honda has been unable to repair the defect or has refused to replace the transmission with a different, functional transmission. As Honda's Technical Service Bulletins demonstrate, Honda is incapable of repairing the defect, despite repeated attempts to do so.

115.   Accordingly, Plaintiffs, the Class, and the Subclasses are not limited to the limited warranty of "repair," and Plaintiffs, the Class, and the Subclasses seek all remedies allowed by law.

116.   Honda's breach of its express warranties proximately caused the Plaintiffs, the Class, and the Pennsylvania, California, New Jersey, and Florida Subclasses to suffer damages in excess of $5,000,000.00.

117.   Plaintiffs and the Class or, in the alternative, the Pennsylvania, California, New Jersey, and Florida Subclasses, seek full compensatory damages allowable by law, the diminished value of the Class Vehicles, repair or replacement of all Class Vehicles, the refund of money paid to own or lease all Class Vehicles, and punitive damages and appropriate equitable relief including injunctive relief, restitution, a declaratory judgment, and a court order enjoining Honda's wrongful acts and practices, and any other relief to which Plaintiffs and the Class or the Pennsylvania, California, New Jersey, and Florida Subclasses may be entitled, including attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF

(Breach of Implied Warranty of Merchantability)

On behalf of the Class or, in the alternative, the Pennsylvania, California, New Jersey, and Florida Subclasses

118.   Plaintiffs, individually, and for the Class or, in the alternative, the Pennsylvania, California, New Jersey, and Florida Subclasses, hereby incorporate each and every allegation as though fully set forth herein.

119.   Honda impliedly warranted that the Class Vehicles, which it designed, manufactured, and sold or leased to Plaintiffs and the Class or members of the Pennsylvania, California, New Jersey, and Florida Subclasses, were merchantable, fit and safe for their ordinary use, not otherwise injurious to consumers, and equipped with adequate safety warnings.

120.   Because the Class Vehicles are equipped with a defective transmission system, the vehicles purchased or leased and used by Plaintiffs, the Class, and Subclass Members are unsafe, unfit for their ordinary use when sold, and not merchantable. Honda breached the implied warranty of merchantability by selling or leasing Class Vehicles to Plaintiffs, the Class, and Members of the Pennsylvania, California, New

Jersey, and Florida Subclasses.

121.   As a direct and proximate result of Honda's breach of the implied warranty of merchantability, Plaintiffs, the Class, and members of the Pennsylvania, California, New Jersey, and Florida Subclasses suffered damages in excess of $5,000,000.

122.   Plaintiffs and the Class or, alternatively, the Pennsylvania, California, New Jersey, and Florida Subclasses, seek full compensatory damages allowable by law, the diminished value of the Class Vehicles, the repair or replacement of all Class Vehicles, the refund of money paid to own or lease all Class Vehicles, and punitive damages, and appropriate equitable relief including injunctive relief, restitution, a declaratory judgment, and a court order enjoining Honda's wrongful acts and practices and any other relief to which Plaintiffs and the Class or, alternatively, the Pennsylvania, California, New Jersey, and Florida Subclasses, may be entitled, including attorneys' fees and costs.

## THIRD CLAIM FOR RELIEF

(Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.)

On behalf of the Class or, in the alternative, the Pennsylvania, California, New Jersey, and Florida Subclasses

123.   Plaintiffs, individually and for the Class or, in the alternative, the Pennsylvania, California, New Jersey, and Florida Subclasses, hereby incorporate every allegation as though fully set forth herein.

124.   Plaintiffs, the Class, and Subclass Members are "consumers" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(3).

125.   Honda is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(4) and (5).

126.   The Class Vehicles at issue are "consumer products" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(6).

127.   For each class vehicle, Honda issued an express Limited Warranty and Powertrain Warranty that covered the vehicle, including but not limited to the

transmission, and which warranted that Honda would repair or replace any part that is defective in material or workmanship under normal use.

128.   Honda breached its express warranties by offering for sale and selling defective vehicles that were, by construction, defective and unsafe, and failing to repair said vehicles, thereby subjecting the occupants of the Class Vehicles purchased or leased to damages and risks of loss and injury.

129.   Honda's written and implied warranties relate to the future performance of its vehicles because it promised that the drivetrain of the Class Vehicles would perform adequately for a specified period of time or mileage, whichever came first.

130.   Honda has breached and continues to breach its written and implied warranties of future performance, thereby damaging Plaintiffs and similarly situated Class and Subclass Members, because the Class Vehicles fail to perform as represented due to an undisclosed transmission defect. Honda failed to fully cover or pay for necessary inspections, repairs and/or vehicle replacements for Plaintiffs, the Class, and the Subclasses.

131.   Honda is under a continuing duty to inform its customers of the nature and existence of potential defects in the Class Vehicles.

132.   Such irreparable harm includes, but is not limited to, likely injuries and crashes as a result of the defects in the Class Vehicles.

133.   Plaintiffs and the Class or, in the alternative, the Subclasses seek full compensatory damages allowable by law, the diminished value of the Class Vehicles, the repair or replacement of all Class Vehicles, the refund of money paid to own or lease all Class Vehicles, and punitive damages, and appropriate equitable relief including injunctive relief, restitution, a declaratory judgment, a court order enjoining Honda's wrongful acts and practices, and any other relief to which Plaintiffs and the Class or, alternatively, the Pennsylvania, New Jersey, California, and Florida Subclasses, may be entitled, including attorneys' fees and costs.

**FOURTH CLAIM FOR RELIEF**

(Breach of Implied Warranty Pursuant to Song-Beverly Consumer Warranty Act,

California Civil Code §§ 1792 and 1791.1, *et seq*.)

On behalf of the California Subclass

134.  Plaintiffs Seow, Lentz, and Frick, individually and for the California Subclass, hereby incorporate each and every allegation as though fully set forth herein.

135.  Plaintiffs and California Subclass Members are "buyers" within the meaning of the Song-Beverly Consumer Warranty Act, California Civil Code § 1791(a).

136.  Honda is a "manufacturer" within the meaning of the Song-Beverly Consumer Warranty Act, California Civil Code § 1791(j).

137.  The Class Vehicles at issue are "consumer goods" within the meaning of the Song-Beverly Consumer Warranty Act, California Civil Code § 1791(a).

138.  The Powertrain Warranty and Limited Warranty are "express warranties" within the meaning of the Song-Beverly Consumer Warranty Act, California Civil Code § 1791.2.

139.  At all relevant times, Honda manufactured, distributed, warranted, and/or sold the Class Vehicles. Honda knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

140.  Honda provided an implied warranty to Plaintiffs Seow, Lentz, and Frick and California Subclass Members, which warranted that the Class Vehicles, including the components parts, are merchantable and fit for the ordinary purposes for which they were sold. However, *inter alia*, the transmissions in the Class Vehicles suffer from an inherent defect at the time of sale and, thereafter, are not fit for their ordinary purpose of providing reasonably safe and reliable transportation.

141.  Honda impliedly warranted that the Class Vehicles are of merchantable quality and fit for such use. The implied warranty includes, among other things: (i) a warranty that the Class Vehicles manufactured, supplied, distributed, and/or sold by

Honda are safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles are fit for their intended use.

142.   Contrary to the applicable implied warranties, the Class Vehicles, at the time of sale and thereafter, were not fit for their ordinary and intended purpose of providing Plaintiffs Seow, Lentz, and Frick and California Subclass Members with reliable, durable, and safe transportation. Instead, the transmissions in Class Vehicles are defective and suffer from transmission failures that compromise the reliability, durability, and safety of Class Vehicles.

143.   As a result of Honda's breach of the applicable implied warranties, owners and/or lessees of the Class Vehicles have suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the transmission defect, Plaintiffs Seow, Lentz, and Frick and California Subclass Members were harmed and suffered actual damages in that the Class Vehicles' transmissions are substantially certain to fail or have failed before their expected useful life has run. The transmission failures create a high risk of accidents, injuries, and even death.

144.   Honda's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use, in violation of California Civil Code §§ 1792 and 1791.1, *et seq.*

145.   Plaintiffs Seow, Lentz, and Frick and the California Subclass seek full compensatory damages allowable by law, the diminished value of the Class Vehicles, the repair or replacement of all Class Vehicles, the refund of money paid to own or lease all Class Vehicles, and any other relief to which Plaintiffs and the California Subclass may be entitled, including attorneys' fees and costs.

**FIFTH CLAIM FOR RELIEF**

(Violations of Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq.*)

On behalf of the Pennsylvania Subclass

146.   Plaintiff MacDougall, individually and on behalf of the Pennsylvania

Subclass, hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

147.   Plaintiff MacDougall and Pennsylvania Subclass Members are "persons," as defined by 73 P.S. §201-2 (2), who may bring a private suit pursuant to 73 P.S. §201-9.2 because they purchased or leased the Class Vehicles primarily for personal, family, or household purposes.

148.   Honda's practices, acts, policies and course of conduct, as described above, were intended to induce, and did induce, Plaintiff MacDougall and Pennsylvania Subclass Members to purchase and/or lease the above-mentioned Class Vehicles with defective transmissions.

149.   Honda sold and/or leased the Class Vehicles knowingly concealing that they contained the design, manufacturing, and materials and/or workmanship defects.

150.   Honda's practices, acts, policies and course of conduct are actionable in that:

     a.   Honda actively and knowingly misrepresented to and/or omitted from Plaintiff MacDougall and the Pennsylvania Subclass Members at the time of purchase or lease Class Vehicles and thereafter, the design, manufacturing, and materials and/or workmanship defects of the transmissions in Class Vehicles, and represented that the Class Vehicles did not contain a material defect, were in good working order, merchantable, and not defective;

     b.   Honda failed to give adequate warnings and notices regarding the use of, defects in, and problems with the transmissions to consumers who purchased or leased said Class Vehicles, despite the fact that Honda possessed prior knowledge of the inherent defects to the transmission systems;

151.   Honda failed to disclose to and/or actively concealed the fact from Plaintiff MacDougall and the Pennsylvania Subclass Members, either through direct warnings or

recall notices, that the transmission was defective, despite the fact that it learned of such defects at least as early as 2011. Defendant's post-sale denial of Plaintiff MacDougall and the Pennsylvania Subclass Members' warranty claims and continuing failure to disclose the defect amounted to deceptive conduct under the Pennsylvania Unfair Trade Practices and Consumer Protection Law and occurred within six years of initiating this action.

152. As set forth above, Honda addressed the transmission defect in three separate Technical Service Bulletins, confirming the fact that there was a material defect in the transmissions that should have been covered and corrected under the 60,000 mile/60 month Powertrain Warranty. But these Technical Service Bulletins were not distributed directly to the consumers or consistently disclosed in their repair paperwork.

153. Honda's actions and/or omissions caused or certainly will cause Plaintiff MacDougall and the Pennsylvania Subclass Members to expend time and, upon information and belief, sums of money at Honda dealerships and elsewhere to repair and/or replace the transmission and/or transmission components, despite the fact Honda had prior knowledge of the defects at the time of placing said vehicles into the stream of commerce.

154. Each and all of the aforementioned conduct is and was deceptive, false, and constitutes an unconscionable commercial practice in that Defendant has, by the use of deceptive statements and knowing intentional material omissions, misrepresented and/or failed to disclose the true defective nature of the transmission.

155. Under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-2, "unfair methods of competition" and "unfair or deceptive acts or practices" include the following acts or omissions:

      a. (v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not

have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;

b. (vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;

c. (ix) Advertising goods or services with intent not to sell them as advertised;

d. (xiv) Failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made; and

e. (xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

156.   In making misrepresentations of fact about Class Vehicles' transmissions to prospective customers while knowing such representations to be false, or omitting material information about the transmissions, Honda has misrepresented and/or knowingly and intentionally omitted and/or concealed material facts and breached its duty not to do so.

157.   Plaintiff MacDougall and members of the public were deceived by and relied upon Honda's affirmative misrepresentations and failures to disclose, including but not limited to, the representations about the vehicle's safety and warranty benefits.

158.   There was a causal nexus between Honda's deceptive and unconscionable commercial practices and Plaintiff MacDougall and the Pennsylvania Subclass Members being damaged as alleged herein and, therefore, Plaintiff MacDougall and the Pennsylvania Subclass are entitled to recover actual and/or statutory and/or punitive damages and/or trebled damages to the extent permitted by law in an amount to be proven at trial.

159.   In addition, Plaintiff MacDougall and the Pennsylvania Subclass seek the diminished value of their Class Vehicles, based on the difference between what Plaintiff

MacDougall and Pennsylvania Subclass Members paid for their Class Vehicles and what they would have paid, had they been informed of the defect.

160.   Plaintiff and the Pennsylvania Subclass Members also seek restitution of all monies that Honda received as a result of selling the above-mentioned vehicles with an inherent transmission defect at the time of purchase and/or lease, and, upon information and belief, forcing Pennsylvania Subclass Members to expend substantial sums of money for the repair and/or replacement of the vehicles' defective transmission and/or component parts, despite the fact that Defendant had prior knowledge of the Class Vehicles' defects.  Plaintiff MacDougall is informed and believes that the amount of said restitution is unknown at this time, but he will seek relief to amend this complaint at the time of trial, when the amount has been ascertained.

161.   In addition, Plaintiff MacDougall and the Pennsylvania Subclass Members seek reasonable attorneys' fees and costs.

**SIXTH CLAIM FOR RELIEF**

(Violation of California's Consumer Legal Remedies Act,

California Civil Code §§ 1750, *et seq*. ("CLRA"))

On behalf of the California Subclass

162.   Plaintiffs Seow, Lentz, and Frick, individually and on behalf of the California Subclass, hereby incorporate each and every allegation as though fully set forth herein.

163.   Defendant American Honda Motor Co., Inc. is a "person" as defined by California Civil Code § 1761(c).

164.   Defendant Honda North America, Inc. is also a "person" as defined by California Civil Code §1761(c).

165.   Plaintiffs Seow, Lentz, and Frick and California Subclass Members are "consumers" within the meaning of California Civil Code §1761(d) because they purchased their Class Vehicles primarily for personal, family, or household use.

166.   By failing to disclose and concealing the defective nature of the

transmissions from Plaintiffs Seow, Lentz, and Frick and prospective Subclass Members, Honda violated California Civil Code § 1770(a), as Honda represented that the Class Vehicles and their transmissions had characteristics and benefits that they do not have and represented that the Class Vehicles and their transmissions were of a particular standard, quality, or grade when they were of another. *See* Cal. Civ. Code §§ 1770(a)(5) & (7).

167. Honda's unfair and deceptive acts or practices occurred repeatedly in Honda's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

168. Honda knew that the Class Vehicles and their transmissions suffered from an inherent defect, were defectively manufactured or contained defective materials, and were not suitable for their intended use.

169. As a result of their reliance on Honda's omissions and/or misrepresentations, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the transmission defect, Plaintiffs Seow, Lentz, and Frick and California Subclass Members were harmed and suffered actual damages in that the Class Vehicles' transmissions or transmission components are substantially certain to fail or have failed before their expected useful life has run.

170. Honda had a duty to Plaintiffs Seow, Lentz, and Frick and California Subclass Members to disclose the defective nature of the transmissions and/or the associated repair costs because:

      a. Honda was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' transmissions;

      b. Plaintiffs Seow, Lentz and Frick and California Subclass Members could not reasonably have been expected to learn or discover that their transmissions had a dangerous safety defect until it manifested; and

      c. Honda knew that Plaintiffs Seow, Lentz, and Frick and California

Subclass Members could not reasonably have been expected to learn of or discover the safety defect.

171.   In failing to disclose the defective nature of the transmissions, Honda knowingly and intentionally omitted material facts and breached its duty not to do so.

172.   The facts about the transmission defect that Honda concealed from or failed to disclose to Plaintiffs Seow, Lentz, and Frick and California Subclass Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay less for them. Had Plaintiffs Seow, Lentz, and Frick and California Subclass Members known that the Class Vehicles' transmissions were defective, they would not have purchased or leased the Class Vehicles or would have paid less for them.

173.   Plaintiffs Seow, Lentz, and Frick and California Subclass Members are reasonable consumers who do not expect the transmissions installed in their vehicles to exhibit the aforementioned transmission failures.

174.   As a result of Honda's conduct, Plaintiffs Seow, Lentz, and Frick and California Subclass Members were harmed and suffered actual damages in that the Class Vehicles experienced and may continue to experience the aforementioned transmission failures.

175.   As a direct and proximate result of Honda's unfair or deceptive acts or practices, Plaintiffs Seow, Lentz and Frick and California Subclass Members suffered and will continue to suffer actual damages.

176.   Plaintiffs Seow, Lentz, and Frick and California Subclass Members are entitled to equitable relief.

177.   Plaintiffs Seow, Lentz, and Frick, on behalf of themselves and the California Subclass, provided Honda with notice of its violations of the CLRA, pursuant to California Civil Code § 1782(a), on May 3, 2017 and again on June 14, 2017. Honda has failed to provide appropriate relief for their violations of the CLRA within the requisite thirty days. As a result, Plaintiffs seek monetary, compensatory, and

punitive damages, in addition to the injunctive and equitable relief that they seek, along with any other remedies available by law.

<strong><u>SEVENTH CLAIM FOR RELIEF</u></strong>

(Violation of Cal. Bus. & Prof. Code § 17000, <em>et seq</em>.)

On behalf of the California Subclass

178.   Plaintiffs Seow, Lentz, and Frick, individually and on behalf of the California Subclass, hereby incorporate each and every allegation as though fully set forth herein.

179.   California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

180.   Plaintiffs Seow, Lentz, and Frick and California Subclass Members are reasonable consumers who do not expect their transmissions to exhibit problems such as shaking, juddering, shuddering, jerking, delayed acceleration, and, eventually, complete transmission failure.

181.   Honda knew the Class Vehicles and their transmissions suffered from inherent defects, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

182.   In failing to disclose the defects with the transmission, Honda knowingly and intentionally concealed material facts and breached its duty not to do so.

183.   By their conduct, Honda has engaged in unfair competition and unlawful, unfair, and fraudulent business practices.

184.   Honda had a duty to Plaintiffs Seow, Lentz, and Frick and California Subclass Members to disclose the defective nature of the Class Vehicles and their transmissions because:

 a.  Honda was in a superior position to know the true facts about the safety defect in the Class Vehicles' transmissions;

 b.  Honda made partial disclosures about the quality of the Class Vehicles

without revealing the defective nature of the Class Vehicles and their transmissions; and

    c.  Honda actively concealed the defective nature of the Class Vehicles and their transmissions from Plaintiffs Seow, Lentz, and Frick and the California Subclass.

185.   The facts regarding the transmission defect that Honda concealed from or failed to disclose to Plaintiffs Seow, Lentz, and Frick and California Subclass are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Class Vehicles. Had Plaintiffs Seow, Lentz, and Frick and California Subclass Members known that the Class Vehicles' transmissions were defective and posed a safety hazard, they would not have purchased or leased Class Vehicles equipped with such transmissions, or would have paid less for them.

186.   Honda continues to conceal the defective nature of the Class Vehicles and their transmissions even after Class Members began to report problems.

187.   Honda's conduct was and is likely to deceive consumers. Honda's unfair or deceptive acts or practices occurred repeatedly in Honda's trade or business, and were capable of deceiving a substantial portion of the purchasing public.

188.   Honda's acts, conduct and practices were unlawful in California, in that they constituted:

    a.  Violations of California's Consumer Legal Remedies Act;

    b.  Violations of the Song-Beverly Consumer Warranty Act; and

    c.  Violations of the express warranty provisions of Cal. Com. Code § 2313.

189.   As a result of their reliance on Honda's omissions and/or misrepresentations, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the transmission defect, Plaintiffs Seow, Lentz, and Frick and California Subclass Members were harmed and suffered actual damages in that the Class Vehicles' transmissions and/or transmission components are substantially certain

1  to fail before their expected useful life has run.

2      190.   As a direct and proximate result of Honda's unfair and deceptive practices,

3  Plaintiffs Seow, Lentz, and Frick and the California Subclass have suffered and will

4  continue to suffer actual damages.

5      191.  Honda has been unjustly enriched and should be required to make

6  restitution to Plaintiffs Seow, Lentz, and Frick and the California Subclass pursuant to

7  §§ 17203 and 17204 of the Business & Professions Code.

8      192.   Plaintiffs Seow, Lentz, and Frick and the California Subclass seek all

9  remedies available pursuant to § 17070, *et seq.* of the Business & Professions Code,

10 including full compensatory damages allowable by law, the diminished value of the

11 Class Vehicles, the repair or replacement of all Class Vehicles, the refund of money

12 paid to own or lease all Class Vehicles, and appropriate equitable relief including

13 injunctive relief, restitution, a declaratory judgment, a court order enjoining Honda's

14 wrongful acts and practices, and any other relief to which Plaintiffs and the California

15 Subclass may be entitled, including attorneys' fees and costs.

16              **EIGHTH CLAIM FOR RELIEF**

17              (New Jersey Consumer Fraud Act,

18              N.J. Stat. § 56:8-2, *et seq.*)

19              On behalf of the New Jersey Subclass

20     193.   Plaintiff Kavuri, on behalf of himself and the New Jersey Subclass

21 Members, hereby incorporates by reference the allegations contained in all preceding

22 paragraphs of this complaint as though set forth fully herein.

23     194.   Plaintiff Kavuri and the New Jersey Subclass Members are "persons" as

24 defined by N.J. Stat. §56:8-1.

25     195.   Honda's practices, acts, policies and course of conduct, as described above,

26 were intended to induce, and did induce, Plaintiff Kavuri and the New Jersey Subclass

27 Members to purchase and/or lease the Class Vehicles with defective transmissions.

28     196.   Honda sold and/or leased the Class Vehicles knowingly concealing and/or

omitting that they contained the design, manufacturing, and materials and/or workmanship defects.

197.   Honda's practices, acts, policies and course of conduct are actionable in that:

   a.   Honda actively and knowingly misrepresented to and/or omitted from Plaintiff Kavuri and the New Jersey Subclass Members at the time of purchase or lease Class Vehicles and thereafter, the design, manufacturing, and materials and/or workmanship defects of the transmissions in Class Vehicles, and represented that the Class Vehicles did not contain a material defect, were in good working order, merchantable, and not defective;

   b.   Honda failed to give adequate warnings and notices regarding the use of, defects in, and problems with the transmissions to consumers who purchased or leased said Class Vehicles, despite the fact that Honda possessed prior knowledge of the inherent defects to the transmission systems;

198.   Honda failed to disclose to Plaintiff Kavuri and the New Jersey Subclass Members, either through direct warnings or recall notices, and/or actively concealed from them that the transmission was defective, despite the fact that it learned of such defects at least as early as 2011. Honda's post-sale denial of Plaintiff Kavuri and the New Jersey Subclass Members' warranty claims and Honda's failure to disclose the transmission defect in their vehicles amounted to deceptive conduct under the New Jersey Consumer Fraud Act and occurred within six years of initiating this action.

199.   As set forth above, Honda addressed the transmission defect in three separate Technical Service Bulletins, confirming the fact that there was a material defect in the transmissions that should have been covered and corrected under the 60,000 mile/60 month Powertrain Warranty. But these Technical Service Bulletins were not distributed directly to the consumers or consistently disclosed in their repair

paperwork.

200.   Honda's actions and/or omissions caused or certainly will cause Plaintiff Kavuri and the New Jersey Subclass Members to expend time and, upon information and belief, sums of money at its dealerships and elsewhere to repair and/or replace the transmission and/or transmission components, despite the fact Honda had prior knowledge of the defects at the time of placing said vehicles into the stream of commerce.

201.   All of the aforementioned conduct is and was deceptive, false, and constitutes an unconscionable commercial practice in that Honda has, by the use of false or deceptive statements and/or material omissions, misrepresented and/or concealed the true defective nature of the transmissions, in violation of N.J. Stat. §56:8-2.

202.   Honda intended that purchasers rely on its misrepresentations and omissions concerning the integrity of the Class Vehicles, including the transmission, in purchasing the Class Vehicles.

203.   In making misrepresentations of fact and/or material omissions about Class Vehicles' transmissions to prospective customers while knowing such representations to be false, Honda has misrepresented and/or knowingly and intentionally concealed material facts and breached its duty not to do so.

204.   Plaintiff Kavuri, New Jersey Subclass Members, and members of the public were deceived by and relied upon Honda's affirmative misrepresentations and failures to disclose, including, but not limited to, representations about the vehicle's safety and warranty benefits.

205.   There was a causal nexus between Defendants' deceptive and unconscionable commercial practices and Plaintiff Kavuri and the New Jersey Subclass Members being damaged as alleged herein, and therefore, Plaintiff Kavuri and the New Jersey Subclass are entitled to recover actual and/or statutory and/or punitive damages and/or trebled damages to the extent permitted by law in an amount to be proven at trial.

206. In addition, Plaintiff Kavuri and the New Jersey Subclass seek the diminished value of their Class Vehicles, based on the difference between what Plaintiff Kavuri and New Jersey Subclass Members paid for their Class Vehicles and what they would have paid, had they been informed of the defect.

207. Plaintiff Kavuri and the New Jersey Subclass Members also seek restitution of all monies that Honda received as a result of selling the above-mentioned vehicles with inherent defects at the time of purchase and/or lease, and, upon information and belief, by forcing the New Jersey Subclass Members to expend substantial sums of money for the repair and/or replacement of the vehicles' defective transmissions and/or component parts, despite the fact that Honda had prior knowledge of the Class Vehicles' defects. Plaintiff Kavuri is informed and believes that the amount of said restitution is unknown at this time, but he will seek relief to amend this complaint at the time of trial, when the amount has been ascertained.

208. In addition, Plaintiff Kavuri and the New Jersey Subclass Members seek reasonable attorneys' fees and costs.

### NINTH CLAIM FOR RELIEF

(Florida Deceptive and Unfair Trade Practices Act,

Fla. Stat. § 501.201, *et seq.*)

On behalf of the Florida Subclass

209. Plaintiff Parker, individually and on behalf of the Florida Subclass, hereby incorporates each and every allegation as though fully set forth herein.

210. Plaintiff Parker and Florida Subclass Members are "consumers" within the meaning of Fla. Stat. §501.203 (7).

211. Defendants engage in "trade or commerce" within the meaning of Fla. Stat. §501.203 (8) by offering for sale or lease the Class Vehicles to Plaintiff Parker and Florida Subclass Members.

212. By failing to disclose and concealing the defective nature of the transmissions from Plaintiff Parker and Florida Subclass Members, Honda violated Fla.

Stat. §501.204 (1), as they represented that the Class Vehicles and their transmissions had characteristics and benefits that they do not have and represented that the Class Vehicles and their transmissions were of a particular standard, quality, or grade when they were of another. Honda's omissions and misrepresentations would likely deceive a reasonable consumer.

213.   Honda's unfair and deceptive acts or practices occurred repeatedly in Honda's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

214.   Honda knew that the Class Vehicles and their transmissions suffered from an inherent defect, were defectively manufactured or designed or contained defective materials, and were not suitable for their intended use.

215.   As a result of the transmission defect, Plaintiff Parker and Florida Subclass Members were harmed and suffered actual damages in that the Class Vehicles' transmissions and/or transmission components are substantially certain to fail or have failed before their expected useful life has run.

216.   Honda had a duty to Plaintiff Parker and Florida Subclass Members to disclose the defective nature of the transmissions and/or the associated repair costs because:

      a.   Honda was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' transmissions;

      b.   Plaintiff Parker and Florida Subclass Members could not reasonably have been expected to learn or discover that their transmissions had a dangerous safety defect until it manifested; and

      c.   Honda knew that Plaintiff Parker and Florida Subclass Members could not reasonably have been expected to learn of or discover the safety defect.

217.   In failing to disclose the defective nature of the transmissions, Honda knowingly and intentionally concealed material facts and breached its duty not to do so.

218.   Had Plaintiff Parker and Florida Subclass Members known that the Class Vehicles' transmissions were defective, they would not have purchased or leased the Class Vehicles or would have paid less for them.

219.   Plaintiff Parker and Florida Subclass Members are reasonable consumers who do not expect the transmissions installed in their vehicles to exhibit the aforementioned transmission failures.

220.   As a result of Honda's conduct, Plaintiff Parker and Florida Subclass Members were harmed and suffered actual damages in that the Class Vehicles experienced and may continue to experience the aforementioned transmission failures.

221.   As a direct and proximate result of Honda's unfair or deceptive acts or practices, Plaintiff Parker and Florida Subclass Members suffered and will continue to suffer actual damages.

222.   Plaintiff Parker and Florida Subclass Members are entitled to equitable relief, actual damages, including  the diminished value of their Class Vehicles, attorneys' fees and costs, and any other relief provided by law.

## TENTH CLAIM FOR RELIEF

(Equitable Injunctive and Declaratory Relief)

On behalf of the Class or, in the alternative, the Pennsylvania, California, New Jersey, and Florida Subclasses

223.   Plaintiffs, individually and on behalf of the Class or, in the alternative, the Pennsylvania, California, New Jersey, and Florida Subclasses, hereby incorporate each and every allegation as though fully set forth herein.

224.   Honda is under a continuing duty to inform its customers of the nature and existence of potential defects in the vehicles it sells.

225.   Honda acted uniformly towards Plaintiffs, the Class, and members of the Pennsylvania, California, New Jersey, and Florida Subclasses by refusing to adequately warn about the dangers of the transmission defect or offer a permanent repair of the defect.

226.   Plaintiffs, the Class, members of the Pennsylvania, California, New Jersey, and Florida Subclasses, and the public will suffer irreparable harm if Honda is not ordered to properly repair all of the Class Vehicles immediately, offer rescission to the Class or Pennsylvania, California, New Jersey, and Florida Subclasses by repurchasing their Class Vehicles for their full cost and reimbursing the lessees of the Class Vehicles the monies they have paid toward their leases, recalling all defective vehicles that are equipped with the defective transmissions, and ceasing and desisting from marketing, advertising, selling, and leasing the Class Vehicles.

227.   Such irreparable harm includes, but is not limited to, likely injuries as a result of the transmission defects to the Class Vehicles.

228.   Plaintiffs and the Class or, alternatively, the Pennsylvania, California, New Jersey, and Florida Subclasses seek appropriate equitable relief, including injunctive relief, a declaratory judgment, a court order enjoining Honda's wrongful acts and practices, the repair or replacement of all Class Vehicles, the refund of money paid to own or lease all Class Vehicles, and any other relief to which they may be entitled.

### ELEVENTH CLAIM FOR RELIEF

(Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.* and Fed. R. Civ. P. 57)

On behalf of the Class or, in the alternative, the Pennsylvania, California, New Jersey, and Florida Subclasses

229.   Plaintiffs MacDougall, Seow, Kavuri, Frick, Parker, and Lentz, individually and for the Class or, alternatively, the Pennsylvania, California, New Jersey, and Florida Subclasses, hereby incorporate each and every allegation as though fully set forth herein.

230.   Declaratory relief is intended to minimize "the danger of avoidable loss and unnecessary accrual of damages." 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2751 (3d ed. 1998).

231.   There is an actual controversy between Honda and Plaintiffs concerning whether the Class Vehicles' transmission defect creates an unreasonable safety hazard.

Pursuant to 28 U.S.C. § 2201, the Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

232.   Despite long knowing the nature of the Class Vehicles' defect and its likelihood of placing Plaintiffs, the Class, Pennsylvania, California, New Jersey, and Florida Subclasses, and the public at risk of grave injury, Honda refuses to publicly acknowledge that the Class Vehicles contain a dangerous defect. Instead, Honda has unsuccessfully attempted to remediate the defect without advising its consumers and other members of the public of the defect. Honda has uniformly refused to permanently repair the defect and, upon information and belief, does not always cover the defect under the warranty.

233.   Accordingly, based on Honda's failure to act, Plaintiffs seek a declaration that the Class Vehicles are defective, as alleged herein, covered under the Powertrain Warranty, and that the Powertrain Warranty fails of its essential purpose because Honda cannot repair or replace the defective transmissions. The defective nature of the Class Vehicles is material and requires disclosure to all persons who own them.

234.   The declaratory relief requested herein will generate common answers that will settle the controversy related to the alleged defective nature of the Class Vehicles and the reasons for their repeated failure. There is an economy to resolving these issues as they have the potential to eliminate the need for continued and repeated litigation.

## TWELFTH CLAIM FOR RELIEF

(Unjust Enrichment)

On behalf of the Class or, in the alternative, the Pennsylvania, California, New Jersey, and Florida Subclasses

235.   Plaintiffs MacDougall, Seow, Kavuri, Frick, Parker, and Lentz, individually and for the Class or, alternatively, the Pennsylvania, California, New Jersey, and Florida Subclasses, hereby incorporate each and every allegation as though fully set forth herein.

236.   Honda knew or should have known that Plaintiffs, the Class, and the Pennsylvania, California, New Jersey, and Florida Subclasses paid for the Class Vehicles with the expectation that they would perform as represented.

237.   Plaintiffs, the Class, and the Pennsylvania, California, New Jersey, and Florida Subclasses conferred substantial benefits on Honda by purchasing the defective Class Vehicles. Honda knowingly and willingly accepted and enjoyed those benefits.

238.   Honda's retention of these benefits is inequitable.

239.   As a direct and proximate cause of Honda's unjust enrichment, Plaintiffs, the Class or, in the alternative, the Pennsylvania, California, New Jersey, and Florida Subclasses, are entitled to an accounting, restitution, attorneys' fees, costs and interest.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all others similarly situated, pray for a judgment against Honda as follows:

A.    For an order certifying the Class and/or Subclasses, appointing Plaintiffs as representatives of the Class and each Subclass, and appointing the law firms representing Plaintiffs as counsel for the Class;

B.    For a declaration that the transmissions in Class Vehicles are defective, the remedial work necessary to correct the defective transmissions is covered by the Powertrain Warranty, and the Powertrain Warranty fails of its essential purpose;

C.    For compensatory damages and/or restitution or refund of all funds acquired by Honda from Plaintiffs as a result of Honda's unlawful, unfair, deceptive and unconscionable practices described herein and in the consumer protection statutes of Pennsylvania, California, New Jersey, and Florida, including actual and/or statutory and/or punitive damages and/or trebled damages to the extent permitted by law in an amount to be proven at trial;

D.    Trebling of damages suffered by the Class and/or appropriate Subclasses;

E.    Payment of costs and expenses of suit herein incurred;

F.    Both pre-and post-judgment interest on any amounts awarded;

G.      Payment of reasonable attorneys' fees and expert fees;

H.      Punitive damages where available; and

I.      Such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, the Class, and the Pennsylvania, California, New Jersey, and Florida Subclasses hereby demand trial by jury of all issues triable by right.


Dated:  June 21, 2017                    **BRONSTEIN, GEWIRTZ & GROSSMAN**

By: /s/ Shimon Yiftach
Shimon Yiftach, Esq. (SBN 277387)
1925 Century Park East, Suite 1990
Los Angeles, CA 90067
T: (424) 322-0322
F: (212) 697-7296
shimony@bgandg.com

Peretz Bronstein, Esq.*
BRONSTEIN, GEWIRTZ & GROSSMAN, LLC
60 East 42nd St., Suite 4600
New York, NY 10165
T:  (212) 697-6484
F:  (212) 697-7296
peretz@bgandg.com

Gary Mason, Esq.*
Jennifer S. Goldstein, Esq. (SBN 310335)
WHITFIELD BRYSON & MASON, LLP
5101 Wisconsin Ave., NW
Suite 305
Washington, D.C. 20016
T: (202) 429-2290
F: (202) 429-2294
gmason@wbmllp.com
jgoldstein@wbmllp.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Lawrence Deutsch, Esq.*
Jeffrey Osterwise, Esq.*
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
T: (215) 875-3062
F: (215) 875-4604
ldeutsch@bm.net
josterwise@bm.net

*Attorneys for Plaintiffs*

\* Will seek *pro hac vice* admission

**<u>Plaintiff Ray Seow's CLRA Venue Declaration Pursuant to</u>**

**<u>Cal. Civ. Code § 1780(d)</u>**

I, Ray Seow, declare as follows:

1.  I am a plaintiff in this action and a citizen of the State of California.  I have personal knowledge of the facts stated herein and, if called as a witness, I could testify competently thereto.

2.  This class action complaint is filed in the proper place for trial because: (1) each of the two defendants has its principal place of business in Torrance, California, which is in this District; (2) each of the two defendants is doing business in this District; and (3) the transaction at issue, or a substantial portion thereof, took place in this District.

3.  In December 2013, I purchased a Honda Odyssey in the City of Industry, California, which is in this District.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date Executed: June 21, 2017

Ray Seow

**Plaintiff Richard Frick's CLRA Venue Declaration Pursuant to**
**Cal. Civ. Code § 1780(d)**

I, Richard Frick, declare as follows:

1. I am a plaintiff in this action and a citizen of the State of California. I have personal knowledge of the facts stated herein and, if called as a witness, I could testify competently thereto.

2. This class action complaint is filed in the proper place for trial because: (1) each of the two defendants has its principal place of business in Torrance, California, which is in this District; (2) each of the two defendants is doing business in this District; and (3) the transaction at issue, or a substantial portion thereof, took place in this District.

3. In June 2015, I purchased a Honda Odyssey in San Juan Capistrano, California, which is in this District.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date Executed: June 21, 2017

Richard Frick

1

**Plaintiff Bryan Lentz's CLRA Venue Declaration Pursuant to**

2

**Cal. Civ. Code § 1780(d)**

3

I, Bryan Lentz, declare as follows:

4

1.  I am a plaintiff in this action and a citizen of the State of California.  I have

5

personal knowledge of the facts stated herein and, if called as a witness, I could testify

6

competently thereto.

7

2.  This class action complaint is filed in the proper place for trial because: (1) each

8

of the two defendants has its principal place of business in Torrance, California, which is

9

in this District; (2) each of the two defendants is doing business in this District; and (3)

10

the transaction at issue, or a substantial portion thereof, took place in this District.

11

3.  In February 2014, I purchased a Honda Odyssey in Costa Mesa, California, which

12

is in this District.

13

I declare under penalty of perjury under the laws of the State of California that the

14

foregoing is true and correct.

15

Date Executed: June 21, 2017

16

17

18

Bryan Lentz

19

20

21

22

23

24

25

26

27

28