Peretz Bronstein (*pro hac vice*)
peretz@bgandg.com
Shimon Yiftach (SBN 277387)
shimony@bgandg.com
BRONSTEIN, GEWIRTZ & GROSSMAN
1925 Century Park East, Suite 1990
Los Angeles, CA 90067
T: (424) 322-0322
F: (212) 697-7296

*Attorneys for Plaintiffs*

[*Additional counsel appear on signature page*]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SANTA ANA DIVISION

| | |
|---|---|
| DENNIS MACDOUGALL, RAY SEOW, PRABHANJAN KAVURI, RICHARD FRICK, JOSEPH RYAN PARKER, and BRYAN LENTZ, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>AMERICAN HONDA MOTOR CO., INC., and HONDA NORTH AMERICA, INC.,<br><br>    Defendants. | Case No. 8:17−cv−01079−AG (DFMx)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Date: December 4, 2017<br>Time: 10:00 a.m.<br>Judge: Hon. Andrew J. Guilford<br>Ctrm: 10D |

# **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ............................................................................... ii

**INTRODUCTION** ............................................................................................... 1

**FACTUAL BACKGROUND** ............................................................................. 2

   A. The 2011-2016 Odysseys Have an Irreparable Transmission Defect .......... 2

   B. Honda's TSBs Fail to Fix the Transmission Failures ................................... 3

   C. Honda Concealed the Defect Before and During Sale to Plaintiffs ............. 4

   D. Honda's Brief Introduces New, Unverified Allegations ............................. 5

**ARGUMENT** ....................................................................................................... 6

   1. Plaintiffs' Express Warranty Claims are Ripe .............................................. 6

   2. Plaintiffs State Valid Implied Warranty of Merchantability Claims ........... 9

   3. Plaintiffs State a Valid Magnuson-Moss Warranty Act ("MMWA") Claim
       .................................................................................................................... 11

   4. California Plaintiffs Have Valid Song-Beverly Claims ............................. 12

   5. Plaintiffs State Valid Consumer Protection Claims ................................... 12

   6. Plaintiffs Have Standing to Request Injunctive Relief .............................. 15

   7. MacDougall Alleges an Ascertainable Loss Under the Pennsylvania
       UTPCPL ..................................................................................................... 16

   8. California Plaintiffs State Valid CLRA Claims .......................................... 18

   9. California Plaintiffs Can Obtain Remedies Under the UCL ...................... 21

   10. Kavuri Adequately Pleads Ascertainable Loss Under the NJCFA ........... 22

   11. Plaintiffs State a Claim For Unjust Enrichment ....................................... 23

   12. Plaintiffs Are Entitled to a Declaratory Judgment ................................... 25

**CONCLUSION** ................................................................................................. **25**

# TABLE OF AUTHORITIES

**Federal Cases**

*Asghari v. Volkswagen Group of America, Inc.*,
    42 F. Supp. 3d 1306 (C.D. Cal. 2013) ................................................... 20, 22

*Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753 (9th Cir. 2015) .................. 23

*AutoNation, Inc. v. GAINSystems, Inc.*,
    2009 WL 1941279 (S.D. Fla. July 7, 2009) ................................................. 24

*Baynes v. George E. Mason Funeral Home, Inc.*,
    2011 WL 2181469 (W.D. Pa. 2011).............................................................. 17

*Belle v. Chrysler Grp, LLC*, 2013 U.S. Dist. LEXIS 59221 (C.D. Cal. 2013)...... 19

*Benner v. Bank of Am., N.A*, 917 F. Supp. 2d 338 (E.D. Pa. 2013)....................... 17

*Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009) ......................................... 11

*Brunwasser v. Trans World Airlines, Inc.*,
    541 F.Supp. 1338, 1346-47 (W.D. Pa.1982) ............................................... 16

*Bryde v. General Motors, LLC*, 2016 WL 6804584 (N.D. Cal. 2016) ................... 9

*Camasta v. Omaha Steaks Intern., Inc.*, 2013 WL 4495661 (N.D. Ill. 2013) ......... 7

*Chavis v. Fid. Warranty Services, Inc.*, 415 F. Supp. 2d 620 (D.S.C. 2006) ........ 12

*Cholakyan v. Mercedes-Benz USA, LLC*,
    796 F. Supp. 2d 1220 (C.D. Cal. 2011) ......................................................... 8

*Cirulli v. Hyundai Motor Co.*,
    2009 WL 5788762 (C.D. Cal., June 12, 2009) ...................................... 18, 19

*Clark v. LG Electronics U.S.A., Inc., 2013 WL 5816410* (S.D. Cal. 2013)............. 9

*Clear Channel Outdoor, Inc. v. Bently Holdings California LP*,
    2011 WL 6099394 (N.D. Cal., Dec. 7. 2011) .......................................... 6, 8

*Corson v. Toyota Motor Sales, U.S.A., Inc.*,
  2013 WL 10068136 (C.D. Cal., July 18, 2013) .......................................... 19

*Daniel v. Ford Motor Co.*, 2016 WL 2899026 (E.D. Cal. May 18, 2016)........... 13

*Edwards v. Ford Motor Co.,* 603 Fed. Appx. 538 (9th Cir. 2015)......................... 7

*Elias v. Hewlett-Packard Co.*, 2014 WL 493034 (N.D. Cal. Feb. 5, 2014) .......... 14

*Falco v. Nissan N. Am., Inc.*, 2013 WL 5575065 (C.D. Cal., Oct. 10, 2013) ....... 13

*Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088 (N.D. Cal. 2007) .........10, 18-19

*Glenn v. Hyundai Motor Am.*,
  2016 WL 7507766 (C.D. Cal. Nov. 21, 2016) ....................................23, 24

*Global Quest, LLC v. Horizon Yachts, Inc.*,
  849 F.3d 1022, 1032 (11th Cir. 2017) ........................................................... 9

*Granillo v. FCA US Ltd. Liab. Co.*, 2016 WL 9405772 (D.N.J. Aug. 29, 2016).. 10

*Grasso v. Electrolux Home Products, Inc.*,
  2015 WL 10792014 (S.D. Fla., Aug. 24, 2015) ............................................. 9

*Grodzitsky v. Am. Honda Motor Co.*,
  2013 U.S. Dist. LEXIS 82746 (C.D. Cal. 2013) ......................................... 19

*Hahn v. Massage Envy Franchising, LLC*,
  2014 WL 5100220 (S.D.Cal. 2014)......................................................21-22

*Henderson v. Gruma Corp.,* WL 1362188 (C.D. Cal., Apr. 11, 2011) ................ 16

*Herremans v. BMW of N. Am., LLC*,
  2014 WL 5017843 (C.D. Cal., Oct. 3,  2014) ............................................. 14

*Herron v. Best Buy Co.*, 924 F. Supp. 2d 1161 (E.D. Cal. 2013) ......................... 18

*Hummel v. Tamko Bldg. Prod., Inc.*,
  2015 WL 12843907 (M.D. Fla. Nov. 6, 2015)......................................23-24

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*In re Anthem, Inc. Data Breach Litigation*,
    2016 WL 3029783 (N.D. Cal. 2016)..........................................................21

*In re Ford Motor Co. E-350 Van Prod. Liab. Litig. (No. II)*,
    2011 WL 601279 (D.N.J. Feb. 16, 2011)...................................................25

*In re Gen. Motors LLC Ignition Switch Litig.*,
    2017 WL 2839154 (S.D.N.Y. 2017) ...................................................14, 17

*In re MyFord Touch Consumer Litigation*,
    46 F. Supp. 3d 936 (N.D. Cal. 2014)....................................9, 10, 12, 13, 14

*In re Safeway Tuna Cases*, 2016 WL 3743364 (N.D. Cal. July 13, 2016)...........23

*In re Toyota Motor Corp. Unintended Acceleration Litig.*,
    754 F. Supp. 2d 1145 (C.D. Cal. 2010)................7, 9, 10, 12, 13, 14, 15, 19

*In re Vizio, Inc.*, 238 F. Supp. 3d 1204 (C.D. Cal. 2017) .....................................18

*Kaymark v. Bank of Am., N.A.*, 783 F.3d 168 (3d Cir. 2015) ..............................18

*Keegan v. American Honda Motor Co., Inc.*,
    838 F. Supp. 2d at 929 (C.D. Cal. 2012).........................................9, 11, 14

*Kuns v. Ford Motor Co.*, 543 F. App'x 572 (6th Cir. 2013) ................................11

*La Reunion Francaise SA v. Barnes*, 247 F.3d 1022 (9th Cir. 2001)....................8

*Lanovaz v. Twinings N. Am., Inc.*,
    2014 U.S. Dist. LEXIS 1639 (N.D. Cal. Jan. 6, 2014)...............................16

*MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087 (N.D. Cal. 2014) ..............18

*McDermott v. Cummins, Inc.*, 2016 WL 3287335 (D.N.J. 2016)...................22, 23

*Michael v. Honest Co., Inc.*, 2016 WL 8902574 (C.D. Cal. Dec. 6, 2016)...........16

*Miles v. American Honda Motor Co., Inc.*,
    2017 WL 4742193 (N.D. Ill. Oct. 19, 2017) ..............................................24

iv

*Nova Info. Sys., Inc. v. Greenwich Ins. Co.*, 365 F.3d 996 (11th Cir. 2004) ......... 25

*Powers v. Lycoming Engines*, 2007 WL 2702705 (E.D. Pa. Sept. 12, 2007)...24-25

*Resnick v. Hyundai Motor Am., Inc.*,
   2017 U.S. Dist. LEXIS 67525 (C.D. Cal. Apr. 13, 2017) .......................... 15

*Rex v. Chase Home Fin. LLC*, 905 F. Supp. 2d 1111 (C.D. Cal. 2012) ............ 7, 15

*Riaubia v. Hyundai Motor Am.*, 2017 WL 3602520 (E.D. Pa. Aug. 22, 2017)..... 23

*Ries v. Ariz. Bevs. USA LLC*, 287 F.R.D. 523 (N.D. Cal. 2012) .....................15-16

*Roberts v. Corrothers*, 812 F.2d 1173 (9th Cir. 1987) ........................................ 8

*Romano v. Motorola, Inc.*, 2007 WL 4199781 (S.D. Fla. Nov. 26, 2007) ........... 24

*Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223 (S.D. Fla. 2014) .......... 9

*Schmidt v. Ford Motor Co.*, 972 F. Supp. 2d 712 (E.D. Pa. 2013) ....................... 25

*St. Clair v. City of Chico*, 880 F.2d 199 (9th Cir. 1989)...................................... 8

*Strama v. Toyota Motor Sales, U.S.A., Inc.*, 2016 WL 561936 (N.D. Ill. 2016)..... 7

*Texas v. United States*, 523 U.S. 296 (1998) ........................................... 6

*Valencia v. Volkswagen Group of America Inc.*,
   119 F. Supp. 3d 1130 (N.D. Cal. 2015)...................................... 20

*Vantage Learning (USA), LLC v. Edgenuity, Inc.*,
   2017 WL 1196683 (E.D. Pa. Mar. 30, 2017) .............................. 24

*Verde v. Stoneridge, Inc.*, 137 F. Supp. 3d 963 (E.D. Tex. 2015) .......................... 7

*Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283 (S.D.N.Y. 2015)......... 11, 12

*Welsh v. Am. Home Mortg. Assets, LLC*,
   2014 U.S. Dist. LEXIS 139337 (N.D. Cal. 2014) ....................... 25

*Williams v. Wells Fargo Bank N.A.*,
  2011 WL 4901346 (S.D. Fla. Oct. 14, 2011) ............................................... 24

*Wolfson v. Brammer,* 616 F.3d 1045 (9th Cir. 2010) ............................................... 6

**State Cases**

*Aryeh v. Canon Business Solutions, Inc.*, 55 Cal. 4th 1185 (2013) ....................... 21

*Boehm v. Riversource Life Ins. Co.*, 117 A.3d 308 (Pa. Super. Ct. 2015)............. 16

*Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543 (N.J. 2009).................................. 22

*Brand v. Hyundai Motor America*, 226 Cal. App. 4th 1538 (2014) .............. 8, 9, 10

*Diamond Aircraft Indus., Inc. v. Horowitch*, 107 So. 3d 362 (Fla. 2013)............. 16

*Dibish v. Ameriprise Fin., Inc.*, 134 A.3d 1079 (Pa. 2016) ................................... 17

*Elkins v. Derby*, 12 Cal.3d 410 (1974) .................................................................. 21

*Furst v. Einstein Moomjy, Inc.*, 182 N.J. 1 (2004) ............................................... 22

*Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19 (2007) ................ 9, 10, 11

*Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937 (Cal. 2003)............... 21

*Kwikset Corporation v. Superior Court of Orange County,*
  51 Cal. 4th 310 (2011)................................................................................... 16

*Lee v. Carter-Reed Co., L.L.C.*, 203 N.J. 496 (2010)............................................ 16

*McDonald v. Antelope Valley Community College Dist.*, 45 Cal.4th 88 (2008) ... 21

*People v. Sarpas*, 172 Cal. Rptr. 3d 25 (Ct. App. 2014) ....................................... 21

*Real v. Radir Wheels, Inc.*, 198 N.J. 511 (2009) ................................................... 22

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*Schwarzwaelder v. Fox*, 895 A.2d 614 (Pa. Super. 2006) ..................................... 17

*Solarz v. DaimlerChrysler Corp.*, 2002 WL 452218 (Pa. Com. Pl. 2002) ........... 16

*Zwiercan v. Gen. Motors Corp.*, 2002 WL 1472335 (Pa. Com. Pl. 2002) ........... 17

**Federal Statutes**

15 U.S.C. §2301, *et seq.*(Magnuson-Moss Warranty Act) ............................. 11, 14

28 U.S.C. §2201(a) ................................................................... 25

**State Statutes**

Cal. Bus. & Prof. Code § 17200, *et seq.* (California Unfair Competition
    Law)............................................................. 12, 13, 14, 21

Cal. Civ. Code § 1750, *et seq.* (California Consumers Legal Remedies Act)... 6, 18

Cal. Civ. Code § 1790, *et seq.* (California Song-Beverly Consumer Warranty
    Act)................................................................................ 12

Cal. Com. Code § 2314 .............................................................. 15

N.J.S.A. § 56, *et seq.* (New Jersey Consumer Fraud Act)...................... 12, 21, 22

Fla. Stat. § 501, *et seq.* (Florida Deceptive and Unfair Trade Practices Act)........ 12

73 P.S. § 201, *et seq.* (Pennsylvania Unfair Trade Practices and Consumer
    Protection Law) ............................................................... 12, 16

**Federal Rules**

Fed R. Civ. P. 8(a) ................................................................. 23

Fed R. Civ. P. 8(d) ................................................................. 23

Fed. R. Civ. P. 12(b)(1) ............................................................. 8

**INTRODUCTION**

Parents buy minivans to provide safe, reliable transportation for children. Unfortunately, the Honda Odyssey has a transmission defect that causes sudden, violent judders, hesitations and surges in acceleration, and big distractions while driving—obvious safety concerns that can cause accidents. As plaintiff MacDougall explains, it's so "sudden and nerve racking," and "so intense that… I actually thought we had been rear-ended by another vehicle." Compl., ¶ 68. Plaintiffs sought warranty repairs for this defect multiple times over the last three years, giving Honda ample opportunity to fix it. But Honda has repeatedly failed to do so.

Sadly, Honda's brief continues its poor customer service: it disputes valid safety allegations and calls its own customers histrionic. Br. at 1. This underscores bigger issues. Honda's brief (1) disputes allegations, (2) misrepresents facts, and (3) introduces its own unverified allegations of a supposed "fix"—all on a motion to dismiss. The brief contradicts even its own counsel's declaration. For example, Honda asserts, "Plaintiffs *could* avail themselves of the recently-released warranty repair but nearly all *haven't*." *Id*. But its counsel declares, "Plaintiffs did agree to schedule vehicle inspections" and "diligently worked to schedule" them. Shortnacy Decl., ¶ 8-9. In fact, Plaintiffs wanted to immediately fix the dangerous defect, yet graciously cooperated with Honda who wanted to first inspect the Odysseys for legal reasons. *See* ECF 32 (joint stipulation granting Honda *second* extension to file answer, to coordinate with "experts and consultants").

Moreover, Honda *merely suggests* that the supposed "fix" (TSB 43) *might* work; it submits no evidence to prove its effectiveness. It's a manufactured ripeness argument, issued the day before Plaintiffs filed suit—and after pre-suit letters warned Honda that Plaintiffs would file on June 21, 2017 unless Honda offered a fix. Honda didn't inform Plaintiffs of this imminent "fix" even after receiving the letters on May 3 and June 14. And as fully discussed below, TSB 43 doesn't work.

After years of patient frustration and unsafe driving conditions, Plaintiffs deserve a day in court.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# FACTUAL BACKGROUND

Plaintiffs Dennis MacDougall, Ray Seow, Prabhanjan Kavuri, Joseph Parker, and Bryan Lentz (collectively, "Plaintiffs") each bought a 2014 Honda Odyssey and allege the following facts, which are accepted as true on a motion to dismiss.[1] ¶¶ 63, 71, 75, 84, 89.

## A.     The 2011-2016 Odysseys Have an Irreparable Transmission Defect

The 2011-2016 Odysseys ("Class Odysseys") have a transmission defect that causes significant safety failures: sudden, violent judders (jerking, banging, clunking, etc.), hesitations and surges in acceleration, and big distractions while driving. ¶¶ 5-6, 27-28, 30, 37, 39-49, 63-93, 180, 68 (MacDougall: "sudden and nerve racking…. this event is so intense that… I actually thought we had been rear-ended by another vehicle."; "unsettled his friends and family in the car"), 45 (trouble accelerating while cars nearly strike at 65 mph), 46 ("Thought I hit a bump… This is dangerous! … I might not make it out of intersection"), 47 ("felt like hitting something or engine falling out… This is dangerous and made my heart skip beats…felt like the engine was going to fall out/like being in a crash…engine transmission fail at any point during travel. Jolting is so severe…that it could cause you to have an accident."), 48 ("very frightening…and is a safety issue as the driver's attention is taken away…. The scariest part is not knowing when it's going to happen. When there is a need to accelerate quickly across traffic, we are worried the same thing will happen again or that the car won't make it through the intersection."), Ex. A (ECF 1-1) (71 NHTSA complaints with similar experiences), and Ex. B (ECF 1-2) (2012 TSB: "Surge, Hesitation, or Judder;" 2015 TSB: "hard downshift or clunk;" 2016 TSB: "judder"). Honda has admitted in TSBs that the judders, hesitations, and surges all stem from the same defect. ¶ 30; Ex. B (2012 TSB). As illustrated, the defect creates dangerous situations and increases the risk of crashing. *Id.*

---

[1] Unfortunately, plaintiff Richard Frick recently died. His claims will be dismissed. As used herein, "¶" refers to the complaint (ECF 1), "Honda" refers to defendants collectively (¶¶ 22-23), and "Br." refers to Honda's moving brief (ECF 35-1).

During one of Honda's failed repair attempts, a technician admitted, "this is a major transmission issue" that Honda can't fix. ¶ 67.

Each plaintiff experienced this defect so frequently and severely over an extended time period that he feared for his safety and sought warranty repairs at authorized dealerships on multiple occasions—the repair attempts all failed. ¶¶ 7, 63-70 (MacDougal: banging, jerking, surging, more than 3 years, 2 warranty service visits); ¶¶ 71-74 (Seow: jerking, clunking, hard shifting, more than 3 years since July 2014, 2 visits); ¶¶ 75-78 (Kavuri: jerking, about three years, 1 visit where technician advised that Honda can't fix); ¶¶ 84-88 (Parker: judders, hesitations, over 1 year, 1 visit where advised can't fix); ¶¶ 89-93 (Lentz: jerking, slamming, more than 3 years since late July 2014, 2 visits). In fact, technicians confirmed the problems in 4 of the 5 Plaintiffs' minivans during a short test drive. ¶¶ 67, 73, 87, 92.

## B. Honda's TSBs Fail to Fix the Transmission Failures

Honda began manufacturing and selling Class Odysseys in 2010. ¶¶ 25-26. Honda issued three TSBs that attributed the failures to faulty computer software and deteriorated transmission fluid, but they all failed to fix the defect. ¶¶ 29-35, Ex. B. The first TSB (September 2012) was for 2011-2012 Odysseys and the second (March 2015) for 2014-2015 Odysseys. *Id*. Significantly, the third TSB (August 2016) admitted the continuing judder problem in 2012 and 2014-2015 Odysseys and that it happens at higher speeds as well; it admitted for the first time that 2013 Odysseys also judder, further supporting that 2011-2016 Odysseys have the same defect; and it admitted that Honda can only offer a transmission fluid flush that temporarily masks the problems, leaving consumers with no permanent fix. *Id*. ("this is a temporary fix"). Plaintiffs continue to experience transmission failures because Honda can't fix them. ¶¶ 7, 29-36, 70, 74, 78, 88, 93. NHTSA complaints confirm that consumers continue to experience problems even after 3 or 4 repair attempts, including transmission flushes. ¶¶ 37, 39-49.

Each Plaintiff's Odyssey has express and implied warranties that cover any repairs needed to correct defects in materials or workmanship, including transmission problems.

3

¶¶ 3-4, 53-58. The warranties were a material factor in Plaintiffs' purchase decision, and Plaintiffs relied upon them in believing that the Odyssey was fit and safe for its ordinary purpose and free of irreparable defects. ¶ 58, 61.

### C.    Honda Concealed the Defect Before and During Sale to Plaintiffs

Plaintiffs (and other consumers) didn't know of the defect before, during, or after purchase, and Honda didn't inform them of it through any channel of information, actively concealing the defect. ¶¶ 50-52, 105-108, 149-157, 166, 170-172, 182, 184-186, 196-198, 202-203, 212-217, 232. Honda didn't send any of the three TSBs to Plaintiffs (or other purchasers) at any time before, during, or after their purchase; rather, Honda issued these *technical service* instructions to authorized dealers. *Id*.; ¶¶ 152, 199, 30, ("Honda's Service Bulletin advised technicians"), 35 ("instructed technicians to advise customers"). To avoid legal exposure in the rare event that a TSB inadvertently reaches a consumer, Honda's TSBs disclose in a footnote that only "skilled technicians" with "training" can understand TSBs or determine whether they apply to any particular vehicle. *See* Ex. B. (2012 TSB, bottom of first page: "intended for use only by skilled technicians" at "authorized Honda" dealers). In fact, the website Honda provides (techinfo.honda.com, last accessed October 31, 2017) to show that TSBs are publicly available requires payment for access. In summary, TSBs are not intended for consumers; consumers don't know what they are, how and where to access them, or how to understand them. ¶¶ 30, 35, 50-52, Ex. B. In addition, the TSBs didn't fully disclose the severity or pervasiveness of the defect, its serious safety implications, or that Honda has failed to correct the defect. ¶ 51.

Honda knew or should have known about the defective transmissions in Plaintiffs' 2014 Odysseys before the Class Odysseys were sold; it gained this knowledge from pre-market testing, warranty claims, NHTSA, internal complaints, and other sources underlying its three TSBs. ¶¶ 10, 27, 50, 168, 181, 232. Honda started receiving NHTSA complaints in 2011 and investigating and preparing the first TSB in 2012 or earlier. ¶ 112, 151. Honda sold and still sells the Class Odysseys despite knowing of the danger to

drivers and the public. *Id*.; ¶ 8.

### D.   Honda's Brief Introduces New, Unverified Allegations

Honda's brief introduces new, unverified allegations regarding TSBs 43 and 44 (Br. at 4), which Honda claims it issued on June 20, 2017 and (claims) developed "over many months." Br. at 1. *First*, Honda's new allegations—and mere belief (Br. at 6, 18) that it found a fix after many years of failed TSBs—are evidenced solely on its counsel's declaration. Shortnacy Decl., ¶¶ 4, 7. But counsel has no personal knowledge of TSB 43, its issuance date, its technical content, its development, or its effectiveness. Honda doesn't present the Court with any documents or evidence to support its self-serving belief. Despite repeated requests over several months, Honda has failed to produce such documents to Plaintiffs either.

*Second*, TSB 43's timing is unusual because Honda (1) knew Plaintiffs would file suit the next day and (2) didn't inform Plaintiffs of this imminent "fix" after receiving two separate pre-suit letters that described the transmission problems. ¶¶ 177; Shimon Yiftach's Declaration, ¶¶ 3-4, Ex. 1-2 (letters). Honda *received* these letters on May 3 (or earlier) and June 14, 2017. *Id*. The May 3 letter threatened suit in 30 days and, after receiving Honda's inadequate response, Plaintiffs' June 14 letter threatened suit on **June 21** unless Honda offered a true fix. *Id*. Lo and behold, Honda issues TSB 43 on **June 20**. Honda didn't inform Plaintiffs of TSB 43 until mid-July. Yiftach Decl., ¶ 5.

*Third*, it appears that TSB 43 is ineffective. Bryan Lentz's Declaration, ¶¶ 4-7. For example, Lentz received the service on August 11, 2017 and it didn't fix his Odyssey. *Id*. "In fact, the problems are happening even more frequently than before." *Id*. Other Plaintiffs also still experience problems after the service. Significantly, TSB 43 includes a transmission fluid flush that, at most, may temporarily mask the problems for approximately 1-3 months, as Honda admitted in the 2016 TSB. *Id*.; Compl., Ex. B. Moreover, Honda already knows and admits that TSB 43 might not work (TSB 44: "the judder may return"). When that happens, Honda suggests the unverified TSB 44, which is just another transmission flush (identical to the 2016 TSB) that solves nothing. In

5

1  addition, each Odyssey has one of two types of Powertrain Control Modules ("PCMs"),

2  but TSB 43 applies only to Odysseys with one type and not the other. Shortnacy Decl.,

3  Ex. 1 (TSB 43). So it's unclear which and how many Odysseys can even receive the

4  service.

5  **ARGUMENT**

6  **1.    Plaintiffs' Express Warranty Claims are Ripe**

7  Honda believes that Plaintiffs, instead of suing, should have waited even longer for

8  Honda to find a fix. Elsewhere Honda argues (regarding the CLRA's statute of

9  limitations) that Plaintiffs waited too long. It's apparently never a good time to sue

10  Honda. Honda argues that Plaintiffs' express warranty claims are unripe because it issued

11  an eleventh-hour "fix" for the defect. That's wrong. The claims are ripe because: (1)

12  Honda repeatedly failed to repair Plaintiffs' Odysseys over a three-year time period; (2)

13  Plaintiffs seek remedies and damages beyond Honda's offered "fix;" (3) Honda can't

14  dispute jurisdictional facts that go to the merits; (4) even if this were permitted, Honda

15  doesn't meet its evidentiary burden in challenging jurisdiction by merely suggesting,

16  without any evidence, that TSB 43 works; and (5) TSB 43 is ineffective.

17  *First*, the ripeness doctrine prevents academic disagreements where the feared

18  injury has not yet occurred and may never occur. *Wolfson v. Brammer* (9th Cir. 2010)

19  616 F.3d 1045, 1058. ("ripeness overlaps with the 'injury in fact' analysis for Article III

20  standing."). "Whether framed as an issue of standing or ripeness, the inquiry is largely

21  the same: whether the issues presented are definite and concrete, not hypothetical or

22  abstract." *Id*. (internal quotation marks omitted). So fear of future, speculative harm is

23  unripe, *Texas v. United States*, 523 U.S. 296, 300 (1998), but claims for past or ongoing

24  harm "are ripe for adjudication." *Clear Channel Outdoor, Inc. v. Bently Holdings*

25  *California LP*, 2011 WL 6099394, at *5 (N.D. Cal., Dec. 7. 2011).

26  Here, Plaintiffs are seeking to redress six separate injuries that have already

27  occurred over a 3-year period: Plaintiffs (1) were denied timely, effective repairs under

28  the warranty; (2) lost time and out-of-pocket fuel expenses for several unsuccessful

6

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

service trips (¶¶ 63- 93); (3) need to replace the transmission or entire minivan to ensure safety (¶¶ 11, 200); (4) lost value of their Odysseys and warranties; (5) wouldn't have bought Odysseys, or would have paid much less, had they known of the defect (¶¶ 56, 61); and (6) were forced to drive unsafe minivans for several years (¶¶ 63- 93). *In re Toyota Motor Corp. Unintended Acceleration Litig*., 754 F. Supp. 2d 1145, 1168 (C.D. Cal. 2010) (standing found where plaintiff didn't "receive[] the benefit of the express warranties in the Warranty Manual."); *Rex v. Chase Home Fin. LLC*, 905 F. Supp. 2d 1111, 1146 (C.D. Cal. 2012) (lost time sufficient injury for standing). All of these injuries have already occurred and are not contingent on future events.

*Second*, Plaintiffs seek relief beyond Honda's offered repair. *Edwards v. Ford Motor Co.,* 603 Fed.Appx. 538, 539–40 (9th Cir. 2015) (claims were ripe where plaintiff sought relief beyond defendant Ford's voluntarily offering); *In re Toyota,* 754 F. Supp. 2d at 1161 (C.D. Cal. 2010) (car's defect affects market prices even after a recall, giving rise to a cognizable economic injury); *Verde v. Stoneridge, Inc.*, 137 F.Supp.3d 963, 972 (E.D. Tex. 2015); *Camasta v. Omaha Steaks Intern., Inc.*, 2013 WL 4495661, at *6 (N.D. Ill. 2013) (court rejected ripeness and mootness challenges because plaintiff sought relief beyond the money-back guarantee offered). More specifically, they seek "all remedies allowed by law," including damages and equitable relief. *See, e.g.*, ¶¶ 114-117 (details).

Honda's argument rests primarily on a single, distinguishable opinion, *Strama v. Toyota Motor Sales, U.S.A., Inc*., 2016 WL 561936, at *1-2 (N.D. Ill. 2016). Based on this case, Honda argues that it "deserves a chance to fulfil [*sic*] its warranty obligations before it is sued for failing to fulfil [*sic*] them." Br. at 8. In *Strama* Toyota offered a Special Policy Adjustment ("SPA") that provided "both prospective repair relief and compensatory relief for out-of-pocket costs incurred prior to the SPA." *Id*. at *1-2. The plaintiffs ignored the SPA; instead, they filed a class action eight months later for the precise relief Toyota was already offering. *Id.* at *3. In addition, their claims were unripe because they "merely speculate[d] as to the coverage of the SPA," with unfounded concerns that Toyota may not cover expenses. *Id.* at *2. Here, Plaintiffs sought repairs for

7

several years and are seeking relief beyond Honda's offered TSB 43.

*Third*, on a motion to dismiss, a "court may not… resolve genuinely disputed facts where 'the question of jurisdiction [here, ripeness] is dependent on the resolution of factual issues going to the merits.'" *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1227 (C.D. Cal. 2011) (citing *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Plaintiffs allege defective Odysseys. Honda wants to dispute this. No matter how Honda frames it, they are disputing facts going to the merits.

*Fourth*—even if disputing merits were allowed—on a 12(b)(1) motion, defendants bear the burden of presenting competent evidence that disputes Plaintiffs' jurisdictional allegations. *La Reunion Francaise SA v. Barnes*, 247 F.3d 1022, 1026 fn. 2 (9th Cir. 2001) (explaining *St. Clair v. City of Chico*, 880 F.2d 199 (9th Cir. 1989)); *Clear Channel*, 2011 WL 6099394, at *5 (on ripeness challenge: "this Court must take Plaintiff's allegations as true on this motion to dismiss for lack of standing."). As discussed *supra* (Factual Background D.), Honda fails to present any evidence that TSB 43 is effective; a mere suggestion that it might work isn't enough. *Fifth*, as discussed *supra* (*id.*), it appears that TSB 43 (and 44) is ineffective. Since Honda has failed over many years and multiple TSBs to fix the problem, that's not surprising.

Therefore, the Court should ignore Honda's ripeness argument—and the new, unverified "facts" it introduces. Honda should not be permitted to manufacture a last-minute ripeness defense to delay Plaintiffs' claims. And there's no end in sight to the delay that Honda seeks. In Honda's view, when TSB 43 fails, Plaintiffs must submit to TSB 44. And after that fails, Plaintiffs' claims are still unripe until "authorized dealers otherwise fail to identify and remediate possible alternative causes." Br. at 6. *Brand v. Hyundai Motor America*, 226 Cal.App.4th 1538, 1547 (2014) (addressing defendant's claim that it fixed the defect: "nothing in [plaintiff's] evidence established the repair was successful." Defendant is not "entitled to…enjoy an open-ended repair window until the plaintiff sues."). Plaintiffs' warranty claims are ripe now. Honda had years to fulfill its warranty obligations. Despite repeated attempts, it failed to do so.

8

## 2.    Plaintiffs State Valid Implied Warranty of Merchantability Claims

The implied warranty of merchantability ensures that a car is in "safe condition and substantially free of defects." *Brand,* 226 Cal.App.4th at 1547. Honda first argues that Plaintiffs' California and Florida claims fail because Plaintiffs are not in privity with Honda. But "Florida courts have found the privity requirement to be satisfied when a manufacturer directly provides a warranty to… a buyer who purchases from a third party." *Global Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1032 (11th Cir. 2017). Plaintiffs have alleged that Honda provided a warranty to them.

In addition, both states have a third-party beneficiary exception where, as here, the consumer (rather than the dealer) is the ultimate user. *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 983-85 (N.D. Cal. 2014) (exception applies to California implied warranty claims); *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 947-48 (C.D. Cal. 2012) (California exception applies where car purchaser buys from authorized dealer); *Grasso v. Electrolux Home Products, Inc*., 2015 WL 10792014, at *2 (S.D. Fla., Aug. 24, 2015) (same under Florida law); *Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223, 1233-34 (S.D. Fla. 2014)(same).

Plaintiffs have adequately alleged facts showing that they were third-party beneficiaries. Honda marketed and intended ultimate sale to Plaintiffs; Plaintiffs bought Odysseys from and returned for warranty repairs to authorized Honda dealers; and Honda issued TSBs to these dealers. These and other facts show that Plaintiffs were third-party beneficiaries. ¶¶ 30, 32, 34-35, 51, 63-93, 152, 199, and Ex. B (ECF 1-2); *In re Toyota,* 754 F.Supp.2d at 1185 (sufficient "that they purchased vehicles from a network of dealers," "they were the intended consumers," or other "facts tending to support that they are third-party beneficiaries"); *Clark v. LG Electronics U.S.A., Inc., 2013 WL 5816410*, at *11-12 (S.D. Cal. 2013) (same); *Bryde v. General Motors, LLC*, 2016 WL 6804584, at *16 (N.D. Cal. 2016) (sufficient where plaintiffs bought and serviced cars at authorized dealerships and defendant issued TSBs to dealerships).

Next Honda argues that Plaintiffs fail to allege a safety concern. But the defect

9

regularly causes the following problems that can lead to a fatal accident: sudden, violent judders; hesitations and surges in acceleration; and the resulting distractions. Courts have found similar and less severe allegations sufficient. *See*, *e.g.*, *Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 27 (2007) ("A vehicle that smells, lurches, clanks, and emits smoke over an extended period of time is not fit for its intended purpose."); *In re Toyota,* 754 F. Supp. 2d 1145 at 1159 (unintended acceleration); *Brand,* 226 Cal. App. 4th at 1547 ("Here, a reasonable jury could conclude that" a malfunctioning sunroof "creates a substantial safety hazard."); *In re MyFord*, 46 F. Supp. 3d at 980 (intermittent glitch in infotainment system created "question of fact for the jury as to whether" it posed enough of a safety risk); *Falk v. Gen. Motors Corp.*, 496 F.Supp.2d 1088, 1092 (N.D. Cal. 2007) (speedometer malfunctioned by "sticking, moving in jerky increments"); *Granillo v. FCA US Ltd. Liab. Co.*, 2016 WL 9405772, at *35 (D.N.J. Aug. 29, 2016) ("rough, delayed, and sudden shifting, failure to shift, sudden or harsh accelerations/decelerations, sudden loss of power, and transmission failure raise serious safety concerns"). Honda ignores the dangerous acceleration issues and the distractions that all these problems cause. In any event, each plaintiff alleges that the problems were so common and severe that he feared for his safety and visited Honda service centers multiple times for repairs. ¶¶ 65, 72, 76, 86, 90.

Honda later (Br. at 10) concedes that violent judders compromise a car's safety—hard to argue otherwise. But Honda suggests, without citing any authority, that unless it judders constantly, it's of no concern; Honda states that sudden, severe judders even twice every three hours are not frequent enough to cause alarm. *First*, all it takes is one violent judder, acceleration failure, or distraction to cause an accident. As MacDougall aptly describes, it's "sudden and nerve racking…. [T]his event is so intense that… I actually thought we had been rear-ended by another vehicle." ¶ 68; *In re MyFord*, 46 F. Supp. 3d at 980 (sudden, intermittent glitch in "infotainment system" is distracting safety concern). *Second*, Plaintiffs allege that they sought repairs on multiple occasions because it was a common, continuing problem over an extended time period. *Third*, since Honda

1   is disputing Plaintiffs' allegations regarding frequency, severity, and materiality, these

2   are questions of fact for a jury to consider. *Id*.

3        And finally, Honda takes the tenuous position that Plaintiffs' cars were safe and

4   merchantable because Plaintiffs continued to drive them. Sadly, Honda is out of touch

5   with its own customers who can't afford to buy another minivan as Honda takes years to

6   find a fix. Plaintiffs drove in fear of their safety; the inability to escape this unsafe

7   situation only highlights the importance of implied warranty laws. Thankfully, the law is

8   clear that merchantability requires safe transportation, not just a running car. *Isip,* 155

9   Cal. App. 4th at 27 (rejecting argument that a car is merchantable because plaintiff could

10  drive it from point A to point B); *Brand,* 226 Cal. App. 4th at 1547 (same).

11  **3.    Plaintiffs State a Valid Magnuson-Moss Warranty Act ("MMWA") Claim**

12       As discussed elsewhere, Plaintiffs have viable express and implied warranty

13  claims, so their MMWA claims are also viable. Honda argues, without any precedent,

14  that MMWA class actions in federal court must include at least 100 named plaintiffs. Br.

15  at 11. But as Honda concedes, many courts, including this Court, have repeatedly rejected

16  this argument. *Kuns v. Ford Motor Co.*, 543 F. App'x 572, 574 (6th Cir. 2013) (courts

17  "have, as a general rule, held that the CAFA effectively supersedes the MMWA's more

18  stringent jurisdictional requirements"); *Keegan,* 838 F. Supp. 2d at 954-55 (collecting

19  cases); *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 295 (S.D.N.Y. 2015)

20  (addressing Honda's argument, noting CAFA has "several enumerated exceptions that

21  are, themselves, carefully delineated," and holding, "consistent with every Court of

22  Appeals to address the issue and the vast majority of district courts, … that where … the

23  jurisdictional prerequisites of CAFA are satisfied, [a court] may exercise subject-matter

24  jurisdiction over a claim under the MMWA…."); *Birdsong v. Apple, Inc.*, 590 F.3d 955,

25  957, n. 1 (9th Cir. 2009) (although parties did not dispute jurisdiction, Ninth Circuit

26  found original jurisdiction under CAFA with single plaintiff in MMWA class action.)

27       Notably, Congress enacted CAFA long after the MMWA. CAFA's express

28  exceptions show that Congress knew how to exempt federal statutory claims from

11

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

CAFA's reach. In light of the "firmly entrenched" rule that "Congress is presumed to enact legislation" against the backdrop of existing law, Congress's decision not to exclude MMWA claims from CAFA cannot be deemed inadvertent. *Chavis v. Fid. Warranty Services, Inc.*, 415 F. Supp. 2d 620, 626 (D.S.C. 2006); accord *Weisblum*, 88 F. Supp. 3d at 294. Permitting a MMWA class action with fewer than 100 named plaintiffs "furthers the purpose of CAFA without undermining the purposes of the MMWA's jurisdictional limitations." *Weisblum*, 88 F. Supp. 3d at 294. These limitations are intended "(1) to avoid trivial or minor actions being brought as class actions in the federal district courts; and, (2) to overcome the absence of an amount in controversy requirement [for federal question jurisdiction]." *Id.* (quotation marks omitted). These goals are also "ensure[d]" by "CAFA's own limitations—including its amount-in-controversy requirement, its required minimum number of class members, and the local controversy and home state exceptions." *Id.* Accordingly, the Court should follow the reasoning of practically every court that has considered Honda's arguments and rejected them.

**4.    California Plaintiffs Have Valid Song-Beverly Claims**

Lentz and Seow have adequately pled a second implied warranty claim under the Song-Beverly Consumer Warranty Act ("SB Act"). *In re MyFord,* 46 F. Supp. 3d at 982. As discussed above, Plaintiffs have valid implied warranty claims, so they also have valid SB Act claims. *Id.* Notably, the SB Act does not require privity. *Id.*

**5.    Plaintiffs State Valid Consumer Protection Claims**

Honda asks this Court to dismiss Plaintiffs' omissions-based consumer protection claims under California ("UCL"), Florida ("FDUTPA"), New Jersey ("NJCFA"), and Pennsylvania ("UTPCPL") (collectively, "consumer protection laws") state law because Honda issued TSBs (to authorized dealers) and there were NHTSA complaints online; according to Honda, these both preclude Plaintiffs from showing "reasonable reliance" or intentionally omitted information. Br. at 14-18.

But reasonable consumers don't spend inordinate amounts of time specifically trying to find, read, research, and understand every *technical service* bulletin and NHTSA

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

complaint regarding the model they're considering. As discussed *supra* (Factual Background C.), average consumers don't know what a TSB is, where to find it, how to understand it, or how to determine if it applies to a particular model. Thankfully, the law doesn't expect consumers to scour the Internet to find all information before purchase:

> ***While Toyota shared some information regarding [the defect]*** with NHTSA and eventually with consumers, Toyota remained in a superior position of knowledge. While prospective customers could have been tipped off … by researching past complaints filed with NHTSA, ***many customers would not have performed such a search, nor would they be expected to.***

*In re Toyota,* 754 F. Supp. 2d at 1192 (emphasis added); *Daniel v. Ford Motor Co.*, 2016 WL 2899026, at *4-5 (E.D. Cal. May 18, 2016) (valid claim where there is "limited publicly available information about the defect" because "the CLRA … do[es] not require prospective customers to search the internet for complaints").

In any event, Honda provides no evidence that TSBs—issued to dealerships and intended for "skilled technicians" with "training"—are publicly available to consumers. In fact, the website Honda provides to show that "TSBs are readily available online," Br. at 17, requires payment for access—it's unclear why or how consumers would find this dealer-oriented website in the first place. *Falco v. Nissan N. Am., Inc.*, 2013 WL 5575065, at *8 (C.D. Cal., Oct. 10, 2013) (pay-for-access website raised issue of material fact as to whether TSBs were publicly available).

More to the point, the TSBs were not issued before Plaintiffs' purchases. Honda argues that Seow should have known about the failures before purchase because he bought his Odyssey in December 2013, which is after the first TSB (2012). Br. at 15. But that TSB concerned 2011-2012 Odysseys and Seow bought a 2014. ¶ 71. No TSB concerned 2014 Odysseys until March 6, 2015, over a year *after* Seow's purchase and nearly a year or more after MacDougall, Kavuri, and Lentz's purchases. ¶¶ 63, 75, 89.

In addition, the TSBs don't give enough information to prevent reasonable consumers from being deceived about the transmission failures. Nor do they show that Honda didn't intentionally omit the failures. Here, Plaintiffs allege that Honda could not

13

fix the failing transmissions as promised under the warranty and refused to inform consumers. "Even if Plaintiffs were aware of the TSBs, that would suggest that the problems, even if significant, were still capable of being repaired. Plaintiffs would not know that the system was in fact not capable of repair, as alleged." *In re MyFord,* 46 F. Supp. 3d at 960; *accord Herremans v. BMW of N. Am., LLC*, 2014 WL 5017843, at *10 (C.D. Cal., Oct. 3, 2014) (UCL violated by "assuring Herremans and class members that repairs were permanent, rather [than] temporary, fixes for the problem."). Honda's TSBs, at best, make "partial representations but also suppress[] some material fact[,]" a circumstance in which nondisclosure constitutes actionable fraud. *In re GM LLC Ignition Switch Litig.*, 2016 WL 3920353, at *22 (S.D.N.Y. July 15, 2016).

As discussed *supra* (Factual Background C.), to avoid legal exposure in the rare event that a TSB inadvertently reaches a consumer, Honda's TSBs disclose in a footnote that only "skilled technicians" with "training" can understand TSBs or determine whether they apply to any particular model. Contrary to Honda's argument, it's clear that TSBs are for dealers, not consumers. Had Honda intended to warn potential customers, it had the ideal method: providing written and oral disclosures through its authorized dealers before and during a sale.

In summary, a reasonable consumer couldn't piece together the existence, pervasiveness, and irreparable nature of the transmission failures from NHTSA complaints and TSBs. Nor does the law expect that. Plaintiffs have plausibly alleged that Honda intentionally omitted the permanent, long-running transmission failures. *Elias v. Hewlett-Packard Co.*, 2014 WL 493034, at *11, at *43 (N.D. Cal. Feb. 5, 2014) ("plausible inference that [company] intentionally concealed the [defect]" sufficient)

On a related point, Plaintiffs have valid UCL claims under each of the statute's three prongs for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent. Cal. Bus. & Prof. Code § 17200, *et seq*. Each prong provides a separate and distinct theory of liability. *In re Toyota*, 754 F. Supp. 2d, at 1175-76. Honda's arguments regarding reliance and omissions concern only the fraudulent prong. Plaintiffs meet this prong of

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

the UCL, as discussed above. *Resnick v. Hyundai Motor Am., Inc.*, 2017 U.S. Dist. LEXIS 67525, at \*54 (C.D. Cal. Apr. 13, 2017). To meet the unlawful prong, Plaintiffs can "borrow" violations of other laws and treat them as independently actionable. *In re Toyota*, 754 F. Supp. 2d, at 1175-76. They've done that by asserting violations of the CLRA, the SB Act, the MMWA, breach of implied warranty (Cal. Com. Code § 2314), and other laws at issue in this lawsuit. *Id*. And finally, Plaintiffs meet the unfair prong by alleging that "harm to the consumer of a particular practice outweighs its utility to defendant." *Keegan,* 838 F. Supp. 2d at 944 n. 50. Plaintiffs accomplished this by alleging Honda's failure to disclose a safety defect, *id.*, which Plaintiffs discuss throughout the complaint. *See* Factual Background, Sec. A., C.

**6.     Plaintiffs Have Standing to Request Injunctive Relief**

Plaintiffs seek an injunction ordering Honda to: (1) disclose the defect and Honda's inability to repair it to existing and future consumers (¶¶ 117, 122, 133, 177, 192, 222, 228); (2) fully repair the defect (¶ 226); (3) repurchase Odysseys and refund class members who leased (*id*.); (4) recall the Odysseys (*id*.); and (5) stop marketing, advertising, selling, and leasing the Odysseys (*id*). Honda challenges only items (1) and (2) (Br. at 18-19), and its arguments are unavailing. Honda repeats its ripeness argument for item (2), but the claims are ripe (*supra*).

Honda argues that Plaintiffs can't seek item (1) because they know about the transmission defect and thus won't purchase another Odyssey. Br. at 18. But even if Plaintiffs know, Honda continues to deny its inability to fix the problem. Therefore, its omissions continue to harm Plaintiffs and the class because they will continue to spend time and money trying to fix and maintain a minivan that is irreparable and unsafe, rather than–for example–seek a permanent fix from Honda (such as replacing the transmission or minivan). *Rex,* 905 F. Supp. 2d at 1146 (lost time sufficient injury for standing).

In fact, continued omissions alone give plaintiffs standing to request injunctive relief. Plaintiffs' request that Honda stop concealing the defect and its irreparability is the "very harm" that consumer protection laws "are designed to redress." *Ries v. Ariz. Bevs.*

15

*USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012). Honda wants this Court to "embrace a rule of standing that would allow an alleged wrongdoer to evade the court's jurisdiction so long as he does not injure the same person twice."[2] *Henderson v. Gruma Corp.,* WL 1362188, at *7 (C.D. Cal., Apr. 11, 2011). But many courts rejected this view; limiting future injury to repurchase would effectively "eviscerate the intent" of state legislatures and purpose of consumer protection laws—to protect consumers from current and future unfair business practices. *Lanovaz v. Twinings N. Am., Inc.*, 2014 U.S. Dist. LEXIS 1639, at *31 (N.D. Cal. Jan. 6, 2014); *id.* (citing *Kwikset Corporation v. Superior Court of Orange County,* 51 Cal. 4th 310, 320 (2011)); *Boehm v. Riversource Life Ins. Co.*, 117 A.3d 308, 321 (Pa. Super. Ct. 2015); *Lee v. Carter-Reed Co., L.L.C.*, 203 N.J. 496, 522 (2010); *Diamond Aircraft Indus., Inc. v. Horowitch*, 107 So. 3d 362, 367 (Fla. 2013).

## 7. MacDougall Alleges an Ascertainable Loss Under the Pennsylvania UTPCPL

Honda argues that MacDougall failed to allege an ascertainable loss. Not so. MacDougall was sold a defective minivan, lost the value between a defect-free Odyssey and the defective one he received, he would have paid less if he knew about the defect, and he must spend money to remedy the defect (replace the transmission or minivan). ¶¶ 11, 52, 61, 153, 159, 200, 206. This is sufficient.

The UTPCPL—and its ascertainable loss requirement—"'is to be construed liberally to effect its object of preventing unfair or deceptive practices.'" *Solarz v. DaimlerChrysler Corp.*, 2002 WL 452218, at *6 (Pa. Com. Pl. 2002); *Brunwasser v. Trans World Airlines, Inc.*, 541 F.Supp. 1338, 1346-47 (W.D.Pa.1982). In fact, damages need not be quantified or easily quantifiable. *Id.* at *6.

The plaintiffs in *Solarz* sufficiently alleged an ascertainable loss as the difference in value between a defective minivan and a defect-free minivan. *Solarz*, 2002 WL 452218, at *6; *see also, In re Gen. Motors LLC Ignition Switch Litig.*, 2017 WL 2839154,

---

[2] Honda's sole cited case acknowledges that there is "no controlling authority on this issue." *Michael v. Honest Co., Inc.*, 2016 WL 8902574, at *34 (C.D. Cal. Dec. 6, 2016).

at *34 (S.D.N.Y. 2017), modified on reconsideration, 2017 WL 3443623 (S.D.N.Y. 2017) (upholding car purchaser's UTPCPL claim; "Pennsylvania courts have found that benefit-of-the-bargain damages can be sufficient") (citing *Dibish v. Ameriprise Fin., Inc.*, 134 A.3d 1079, 1087–88 (Pa. 2016)); *Baynes v. George E. Mason Funeral Home, Inc*., 2011 WL 2181469, at *5 (W.D. Pa. 2011) (purchase of a defective casket was an ascertainable loss under the UTPCPL). The need to replace the transmission or minivan also constitutes an ascertainable loss. *Zwiercan v. Gen. Motors Corp*., 2002 WL 1472335, at *6 (Pa. Com. Pl. 2002) (sufficient where plaintiff alleged she must spend money to fix defective car, even though she had not yet incurred the costs and the defect had not yet manifested).

In contrast, Honda cites inapposite cases about property transactions—none involved cars or even products. In *Benner v. Bank of Am., N.A*, the defendant sent the plaintiff a pre-foreclosure notice with specific amounts that the plaintiff had to pay to cure his default, including a fee of $262.50 for inspections. 917 F. Supp. 2d 338, 343 (E.D. Pa. 2013). The plaintiff didn't pay and his home wasn't foreclosed upon. *Id.* The fee was "an outstanding liability, but d[id] not constitute" an ascertainable loss; rather, it was "merely a possible loss" that the plaintiff could incur if he eventually paid the liability or sold his home. *Id.* at 360 & n. 16. In contrast, MacDougall asserts more than just a possible loss. He has already paid for a defect-free Odyssey but was delivered a defective one worth less, losing the difference in value.

Also, unlike in *Schwarzwaelder v. Fox*, 895 A.2d 614 (Pa. Super. 2006), MacDougall's allegations are not "incapable of proof." There, the plaintiffs claimed they would have renegotiated a property sales commission had they known the buyer's agent was unlicensed. *Id.* at 618-19. But the court found no authority that a renegotiated commission is the industry standard when there's only one licensed agent. *Id.* at 619. Further, the plaintiffs' belief that a renegotiated commission would benefit them was "wholly speculative" and "incapable of proof." *Id*. Here, we can determine the benefit of the bargain (value of defective versus non-defective Odyssey) and the cost to cure the

defect or replace the minivan.[3]

## 8.   California Plaintiffs State Valid CLRA Claims

Honda violated the California Consumer Legal Remedies Act ("CLRA") because it "represented that the Class [Odysseys] and their transmissions had characteristics and benefits that they do not have and… were of a particular standard, quality, or grade when they were another." ¶ 166. Honda argues that Plaintiffs don't plead, in accordance with Rule 9(b), the particular representations (i.e. television advertisements) Plaintiffs found material or relied upon when deciding to buy Odysseys. Br. at 20-21. But the CLRA also proscribes Honda's omissions concerning the same matters. *Herron v. Best Buy Co.*, 924 F. Supp. 2d 1161, 1169 (E.D. Cal. 2013).

Under the CLRA, "when an allegation rests on a claim of fraudulent omission, the Rule 9(b) standard is relaxed because 'a plaintiff cannot plead either the specific time of [an] omission or the place, as he is not alleging an act, but a failure to act.'" *Cirulli v. Hyundai Motor Co.*, 2009 WL 5788762, at *4 (C.D. Cal., June 12, 2009) (Guilford, J.); *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1096 (N.D. Cal. 2014) (sufficient to allege: "the 'who' is [Honda], the 'what' is its knowledge of a defect, the 'when' is prior to the sale of Class Vehicles, and the 'where' is the various channels of information through which [Honda] sold Class Vehicles"); *accord In re Vizio, Inc.*, 238 F. Supp. 3d 1204, 1229 (C.D. Cal. 2017). As is relevant here, actionable omissions arise when the defendant: (1) has exclusive knowledge of material facts not known to the plaintiff; (2) actively conceals a material fact from the plaintiff; or (3) makes partial representations but also suppresses some material fact. *Cirulli, 2009 U.S. Dist. LEXIS 125139*, at *3 (citing *Falk*, 496 F. Supp. 2d at 1095). All three apply here.

---

[3] *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168 (3d Cir. 2015), is also inapposite. There, the plaintiff alleged that a "lien" on his property was inflated by not-yet-performed services, diminishing his interests in property. *Id.* at 180. The plaintiff never paid the fees and the court reasoned that whether the plaintiff "would have cured his debt but for those fees [was] by definition speculative." *Id.* at 181.

18

1   Plaintiffs have plausibly alleged the who, what, when, and where of these three

2   situations. Honda (who) had exclusive knowledge of the extensive transmission failures

3   "through pre-market testing, warranty claims, NHTSA, internal complaints, and other

4   sources underlying its [TSBs]," (¶¶ 10, 25-38) (what) "before the sale of the first class

5   vehicle" (*id.*) (when) and it did not warn Plaintiffs (what) before or during the sale (when

6   and where); and Honda didn't fully disclose the "transmission defect or safety hazard" to

7   Plaintiffs through any channel of information (where). ¶ 52 (Plaintiffs didn't know of the

8   transmission failures at purchase). Honda's omissions concerning the transmission

9   failures were material because "Plaintiffs…would not have purchased…their vehicles, or

10  would have paid significantly less for them had they known of the transmission defect or

11  safety hazard." ¶ 52; *Cirulli*, 2009 WL 5788762, at *3 (Plaintiff alleged materiality by

12  stating that he would not have purchased car had he known that the alleged defect

13  weakened the car's structural integrity).

14  As discussed *supra* (Sec. 5), the law doesn't charge consumers with knowledge

15  from TSBs and NHTSA. *Arguendo*, even if Plaintiffs had access to and understood these,

16  the CLRA requires only that Honda had "superior knowledge of the defect." *Corson v.*

17  *Toyota Motor Sales, U.S.A., Inc.*, 2013 WL 10068136, at *5 (C.D. Cal., July 18, 2013)

18  (collecting cases). This Court has found this met where, as here, Plaintiffs allege that

19  Defendants knew about the defect through a high number of incident reports, pre-release

20  testing data, early consumer complaints to an authorized dealer, and tracking NHTSA.

21  *See*, *e.g.*, *In re Toyota*, 754 F. Supp. 2d, at 1174; *Grodzitsky v. Am. Honda Motor Co.*,

22  2013 U.S. Dist. LEXIS 82746, at *6-7 (C.D. Cal. 2013); *Belle v. Chrysler Grp, LLC*,

23  2013 U.S. Dist. LEXIS 59221, at *1, 5 (C.D. Cal. 2013).

24  Plaintiffs also plausibly allege that Honda (who) actively concealed the

25  irreparability of the transmission failures (what) because it "knew of the alleged defect

26  and did nothing to fix it or alert customers to its existence." *Corson*, 2013 U.S. Dist.

27  LEXIS 189262, at *14; *see*, *e.g.*, ¶60 ("…Plaintiffs were also unaware of Honda's prior

28  failed attempts to address the Class Vehicles' defect with software reprogramming and

19

transmission flush procedures"), ¶87 (Honda's technician represented to Plaintiff Parker that a permanent fix would be available in weeks), Ex. B. Put differently, while Plaintiffs maintain that the TSBs are not a disclosure to consumers, at most the TSBs are partial representations that also suppress the material facts (that the transmission failures were related and irreparable).

In addition, the California Plaintiffs' CLRA claims are timely because the discovery rule, doctrine of fraudulent concealment, and equitable tolling toll the applicable statute of limitations ("SOL"). ¶¶ 105-106, 108. For example, under the discovery rule and doctrine of fraudulent concealment, the SOL starts running only after Plaintiffs had a reasonable opportunity to seek Honda's advice and repairs, and learn that Honda's warranty "repairs" were ineffective, signaling a defect. ¶ 105; *Asghari v. Volkswagen Group of America, Inc.*, 42 F.Supp.3d 1306, 1322 (C.D. Cal. 2013) (tolled until plaintiff received oil consumption test result after two repair visits, even though he came in "complaining that he frequently had to add supplemental oil between oil changes."); *Valencia v. Volkswagen Group of America Inc.*, 119 F.Supp.3d 1130, 1140–41 (N.D. Cal. 2015) (limitations period didn't start running even after repair of defective brakes because "[t]here are no hard and fast rules for determining what facts or circumstances will compel inquiry by the injured party and render him chargeable with knowledge. It is a question for the trier of fact.").

The California Plaintiffs each first experienced the defect in July 2014, after which they turned to Honda for multiple repairs attempts that proved fruitless. ¶¶ 72 (Seow), 90 (Lentz: in "late July of 2014," the car "began to jerk and slam into gear"). *Arguendo*, if we ignore the subsequent repair process—only after which Plaintiffs could learn there's a defect Honda can't fix—Plaintiffs filed within three years of July 2014 (on June 21, 2017). The SOL starts running even later if, as the law requires, we consider when Plaintiffs could reasonably conclude there's an irreparable defect. ¶¶ 73 (Seow), 90-92 (Lentz). As discussed above (Factual Background A.-C.; Sec. 5, 8), Plaintiffs have pled many facts regarding Honda's omissions and concealment, satisfying the tolling

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

requirements of fraudulent concealment.

Moreover, Honda had notice of Plaintiffs' CLRA claims long before the lawsuit because Honda received CLRA-mandated notice letters on May 3, 2017 and June 14, 2017, wherein Plaintiffs sought remedies from Honda as a prerequisite to filing suit. *Aryeh v. Canon Business Solutions, Inc.*, 55 Cal.4th 1185, 1192 (2013) ("Equitable tolling, in turn, may suspend or extend the *[SOL]* when…the *[SOLs]*' notice function has been served."); *McDonald v. Antelope Valley Community College Dist.*, 45 Cal.4th 88, 105 (2008) (tolled while plaintiff sought a voluntary, alternative internal remedy). "[T]he fundamental purpose of the "limitations statute…is to insure timely notice to an adverse party so that he can assemble a defense when the facts are still fresh." *Elkins v. Derby*, 12 Cal.3d 410, 412 (1974). "Both courts and legislatures have, and should, liberally appl[y] tolling rules or their functional equivalents to situations in which the plaintiff has satisfied the notification purpose of a limitations statute." *McDonald*, 45 Cal.4th at 102. As demonstrated above, May 3 is well before any SOL would bar the CLRA claims.

## 9. California Plaintiffs Can Obtain Remedies Under the UCL

Honda argues that Plaintiffs' UCL claims fail because there is no remedy available. *First*, as discussed *supra* (Sec. 6), Plaintiffs have standing for an injunction. *Second*, Honda misstates the law on the UCL's restitution remedy. "The trial court has broad discretion to order restitution." *People v. Sarpas*, 172 Cal.Rptr.3d 25, 36 (Ct. App. 2014).

Honda leans heavily on *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937 (Cal. 2003), to argue that restitution is proper only if Plaintiffs paid money directly to Honda. But California courts have consistently rejected Honda's reading of *Korea Supply* and awarded restitution to plaintiffs who paid money to third parties. *In re Anthem, Inc. Data Breach Litigation*, 2016 WL 3029783, at *31–32 (N.D. Cal. 2016) (collecting cases, including *Sarpas*, 172 Cal.Rptr.3d at 36)). "Where the defendant is not the direct recipient of plaintiff's funds, but was sufficiently involved in the UCL violation, the defendant may be ordered to restore what the plaintiff lost, even if the amount exceeds what the defendant received." *Hahn v. Massage Envy Franchising, LLC*, 2014 WL

21

5100220, at *13 (S.D.Cal. 2014) (collecting cases).

In addition, Honda's reliance on *Asghari* is misplaced. There, the Court assumed that the plaintiffs abandoned a restitution claim by not responding to the defendant's argument, and the plaintiffs failed to allege that the defendant benefited from the car's purchase. 42 F.Supp.3d at 1324 and fn. 66. Here, in contrast, Plaintiffs allege that Honda financially benefited from Plaintiffs' purchase at authorized dealerships. ¶¶ 9, 191, 237-238.

**10.    Kavuri Adequately Pleads Ascertainable Loss Under the NJCFA**

As Honda concedes, a plaintiff need not calculate a dollar amount to plead an ascertainable loss under the NJCFA. Kavuri's well-pleaded allegations meet his burden at the motion to dismiss stage.

In 2009 the Supreme Court of New Jersey explained that the NJCFA's ascertainable loss element is not necessarily "one that is demonstrated by an immediate, out-of-pocket expense suffered by the consumer." *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 557 (N.J. 2009) ("a consumer who had not paid for repairs nonetheless suffered an ascertainable loss caused by a home improvement contractor's failure to comply with applicable regulations requiring the work to be inspected."). "The CFA does not demand that a plaintiff necessarily point to an actually suffered loss or to an incurred loss, but only to one that is 'ascertainable.'" *Id.*; *McDermott v. Cummins, Inc.*, 2016 WL 3287335, at *4 (D.N.J. 2016) (finding ascertainable loss where plaintiff alleged that defect in tractors required repairs, even though plaintiff did not provide a dollar amount.).

Although there is no strict guidance or exhaustive list regarding what constitutes an ascertainable loss, New Jersey courts have found that it can be the purchase price, cost of replacement, loss of value, or loss of benefit of the bargain. *Furst v. Einstein Moomjy, Inc.*, 182 N.J. 1, 12 (2004) (purchase price or cost of replacement of carpet, at trial stage); *Real v. Radir Wheels, Inc.*, 198 N.J. 511, 518 (2009) (at trial, difference between the amount plaintiff paid for a Corvette and the diminished value of the defective Corvette defendants delivered to plaintiff). Moreover, only at summary judgment must a plaintiff

22

provide "an estimate of damages and show that its losses were 'quantifiable or measurable,' but it is entitled to discovery in order to make that showing." McDermott, 2016 WL 3287335, at *4.

Here, Kavuri has shown an ascertainable loss at the motion to dismiss stage by pleading that: (1) his minivan or its transmission must be replaced (¶¶ 11, 200, 207) (purchase price or replacement cost); (2) he lost the benefit of the bargain by receiving an Odyssey that's worth less than the $44,000 he bargained for and paid (¶¶ 75, 206); (3) he lost the benefit of the bargain by receiving an ineffective warranty that failed to repair his car (¶¶ 75-77, 114); and that (4) he would not have bought the car had he known of the defect (¶¶ 52, 206) (purchase price or replacement cost).

**11.   Plaintiffs State a Claim For Unjust Enrichment**

Honda argues that the Court should dismiss Plaintiffs' claims for unjust enrichment because (under California, Florida, and Pennsylvania law) the claim is foreclosed by the existence of the express warranty and Plaintiffs fail to plead that they conferred a direct benefit on Defendants. Br. at 23-34. Honda is wrong on both counts.

Ninth Circuit precedent permits Plaintiffs to plead unjust enrichment in the alternative to other claims, as they do here. Fed. R. Civ. P. 8(a), (d); *In re Safeway Tuna Cases*, 2016 WL 3743364, at *2 (N.D. Cal. July 13, 2016) (declining to dismiss unjust enrichment claim where plaintiffs asserted claims for breach of express warranty). In *Safeway*, the court observed that it was "obliged to follow the precedent set in *Astiana* [*v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762-63 (9th Cir. 2015)]," and that "[i]n light of *Astiana*, a majority of cases in [the Northern District of California] have permitted unjust enrichment claims even when they are duplicative of other claims." *Id.*; *see also Glenn v. Hyundai Motor Am.*, 2016 WL 7507766, at *5 (C.D. Cal. Nov. 21, 2016); ("a claim for restitution is permitted even if the party inconsistently pleads a breach of contract claim that alleges the existence of an enforceable agreement.") (quotations omitted); *Riaubia v. Hyundai Motor Am.*, 2017 WL 3602520, at *3 (E.D. Pa. Aug. 22, 2017); *Hummel v. Tamko Bldg. Prod., Inc.*, 2015 WL 12843907, at *5 (M.D. Fla. Nov. 6, 2015). In fact, the

23

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*Safeway* court specifically refused to follow defendant's cited case there because it "did not discuss or apply *Astiana's*" holding on the matter. *Id.*

In addition, Plaintiffs state an independent unjust enrichment claim for conduct distinct from matters covered by the express warranty. Specifically, the express warranty promises that Honda "will repair or replace any part that is defective in material or workmanship," while Plaintiffs' unjust enrichment claims seek benefits retained by Honda as a result of the Odysseys that did not perform as represented. ¶ 55; *see Miles v. American Honda Motor Co., Inc.*, 2017 WL 4742193, at *4 (N.D. Ill. Oct. 19, 2017) (unjust enrichment claim viable, despite existence of express warranty, to the extent based on conduct underlying consumer fraud claims); *Glenn,* 2016 WL 7507766, at *6 (denying motion to dismiss unjust enrichment claim "aris[ing] principally from [defendant's] 'pre-sale conduct,' namely alleged fraudulent concealment of the defect and its attendant danger."); *AutoNation, Inc. v. GAINSystems, Inc.*, 2009 WL 1941279, at *4–5 (S.D. Fla. July 7, 2009) (refusing to dismiss unjust enrichment claim where complaint alleged matters outside the scope of the contract); *Vantage Learning (USA), LLC v. Edgenuity, Inc.*, 2017 WL 1196683, at *2 & fn. 10 (E.D. Pa. Mar. 30, 2017) (unjust enrichment claim appropriate if "the contract at issue covers only a part of the relationship between the parties").

Honda also misstates Florida and Pennsylvania law in arguing that Plaintiffs must have purchased their minivans directly from Honda, as opposed to an authorized Honda dealer. Honda "erroneously equates direct *contact* with direct *benefit* in arguing that … [Plaintiffs] conferred no direct benefit on" Honda. *Romano v. Motorola, Inc.*, 2007 WL 4199781, at *2 (S.D. Fla. Nov. 26, 2007) (under Florida law, manufacturer of a product sold through retailers "directly benefitted through profits earned from the sale of the" product). To hold otherwise "would be to undermine the equitable purpose of unjust enrichment claims." *Williams v. Wells Fargo Bank N.A.*, 2011 WL 4901346, at *5 (S.D. Fla. Oct. 14, 2011); *see also Powers v. Lycoming Engines*, 2007 WL 2702705, at *3 (E.D. Pa. Sept. 12, 2007) (under Pennsylvania law, "[t]he plaintiffs need not have

purchased the product at issue directly from [the defendant] to have conferred benefits on the defendant.").

Honda's cases are distinguishable. In *Nova Info. Sys., Inc. v. Greenwich Ins. Co.*, 365 F.3d 996 (11th Cir. 2004), defendant's liability reduction under a surety bond was "[a]t best… an indirect or incidental benefit." *Id.* at 1007. In *Schmidt v. Ford Motor Co.*, 972 F. Supp. 2d 712, 722 (E.D. Pa. 2013), the "[p]laintiffs d[id] not even allege that they purchased their vehicles from…one of Defendant's dealers."

With respect to Kavuri's New Jersey unjust enrichment claim, he alleges that Honda benefited directly from his purchase. ¶¶ 9, 191, 237-238. In addition, dismissal at the pleading stage is inappropriate before there's a factual record to determine how Honda received a benefit. *In re Ford Motor Co. E-350 Van Prod. Liab. Litig. (No. II)*, 2011 WL 601279, at *9 (D.N.J. Feb. 16, 2011) (evaluating evidence to determine whether van manufacturer received profit before or after purchase from dealership).

**12.    Plaintiffs Are Entitled to a Declaratory Judgment**

As discussed above, Plaintiffs have stated various valid claims. Therefore, the Court should not dismiss Plaintiffs' claims for declaratory judgment, including Claim 11 under the Declaratory Judgment Act (¶¶ 229-234). 28 U.S.C. §2201(a); *Welsh v. Am. Home Mortg. Assets, LLC*, 2014 U.S. Dist. LEXIS 139337, at *25 (N.D. Cal. 2014).

## CONCLUSION

For the foregoing reasons, Honda's motion should be denied in its entirety.

Dated: November 6, 2017                    BRONSTEIN, GEWIRTZ & GROSSMAN

                                           By:   /s/ Shimon Yiftach
                                                 Attorneys for Plaintiffs

Gary Mason*                         Shimon Yiftach (SBN 277387)
gmason@wbmllp.com                   shimony@bgandg.com
Jennifer S. Goldstein (SBN 310335)  Peretz Bronstein (*pro hac vice*)
jgoldstein@wbmllp.com               peretz@bgandg.com

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

WHITFIELD BRYSON & MASON, LLP
5101 Wisconsin Ave., NW
Suite 305
Washington, D.C. 20016
T: (202) 429-2290
F: (202) 429-2294


\* *pro hac vice* forthcoming

1925 Century Park East, Suite 1990
Los Angeles, CA 90067
T: (424) 322-0322
F: (212) 697-7296


Lawrence Deutsch (*pro hac vice*)
ldeutsch@bm.net
Jeffrey Osterwise (*pro hac vice*)
josterwise@bm.net
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
T: (215) 875-3062
F: (215) 875-4604

## Certificate of Service

On November 6, 2017, I caused this document to be filed and served on all ECF-registered counsel of record using the Court's CM/ECF system.


By:   /s/ Shimon Yiftach

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS