Liv Kiser (SBN 285411)
lkiser@sidley.com
Michael M. Shortnacy (SBN 277035)
mshortnacy@sidley.com
Michael L. Mallow (SBN 188745)
mmallow@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, 40th Floor
Los Angeles, CA  90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

Attorneys for Defendants
AMERICAN HONDA MOTOR CO.,
INC. and HONDA NORTH AMERICA,
INC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SANTA ANA DIVISION

| | |
|---|---|
| DENNIS MACDOUGALL, RAY SEOW, PRABHANJAN KAVURI, RICHARD FRICK, JOSEPH RYAN PARKER, and BRYAN LENTZ, individually and on behalf of all others similarly situated,<br>           Plaintiffs,<br>    v.<br><br>AMERICAN HONDA MOTOR CO., INC., and HONDA NORTH AMERICA, INC.,<br>           Defendants. | Case No. 8:17-cv-01079-AG (DFMx)<br><br>**REPLY IN SUPPORT OF DEFENDANTS AMERICAN HONDA MOTOR CO., INC. AND HONDA NORTH AMERICA, INC.'S MOTION TO DISMISS**<br><br>Date: December 4, 2017<br>Time: 10:00 a.m.<br>Location: Santa Ana Division, 10D<br>Judge: Hon. A. Guilford |

REPLY IN SUPPORT OF MOTION TO DISMISS

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 1

    I.    Plaintiffs' Express Warranty Claims Are Unripe ....................................... 1

    II.   Plaintiffs' Implied Warranty Claims Fail Because They Failed To Plausibly Plead A Lack Of Merchantability Or Privity ............................. 3

        A.    Merchantability ................................................................................ 3

        B.    Privity .............................................................................................. 5

    III.  Plaintiffs' Magnuson-Moss Warranty Act Claim Is Not Cognizable In Federal Court .................................................................................................. 7

    IV.  Plaintiffs' Song-Beverly Consumer Warranty Act Claims Fail ................ 8

    V.   Plaintiffs' Statutory Consumer Fraud Claims Fail ..................................... 8

    VI.  Plaintiffs' Claims For Injunctive Relief Fail ............................................. 9

    VII.  Plaintiff MacDougall's Pennsylvania Consumer Fraud Claim Fails ....... 10

    VIII. Plaintiffs' California Consumer Legal Remedies Act Claims Fail ......... 11

    IX.  Plaintiffs' California Unfair Competition Law Claims Fail .................... 13

    X.   Plaintiff Kavuri's New Jersey Consumer Fraud Act Claim Fails ............ 14

    XI.  Plaintiffs' Unjust Enrichment Claims Fail ............................................... 14

    XII.  Plaintiffs' Claims For Declaratory Relief Rise And Fall With Their Substantive Claims .................................................................................. 15

CONCLUSION ............................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Asghari v. Volkswagen Group of Am., Inc.*,
   42 F. Supp. 3d 1306 (C.D. Cal. 2013) .............................................................. 12, 13

*Baynes v. George E. Mason Funeral Home, Inc.*,
   2011 WL 2181469 (W.D. Pa. June 2, 2011) ........................................................ 11

*Brunwasser v. Trans World Airlines, Inc*
   541 F. Supp. 1338 (W.D. Pa. 1982). ..................................................................... 11

*Cedars of Lebanon Hospital Corporation v. European X-Ray Distributors*
   444 So. 2d 1068 (Fla. Dist. Ct. App. 1984) ............................................................ 6

*Clemens v. DaimlerChrysler Corp.*,
   534 F.3d 1017 (9th Cir. 2008) ............................................................................ 6, 7

*Dahlia v. Rodriguez*,
   735 F.3d 1060 (9th Cir. 2013) ................................................................................ 4

*Ebin v. Kangadis Food Inc.*,
   2013 WL 3936193 (S.D.N.Y. July 26, 2013) ......................................................... 7

*Gates v. Deukmejian*,
   987 F.2d 1392 (9th Cir. 1992) ................................................................................ 1

*In re General Motors LLC Ignition Switch Litigation*
   2017 WL 2839154 (S.D.N.Y. June 30, 2017) ...................................................... 11

*Global Quest, LLC v. Horizon Yachts, Inc.*,
   849 F.3d 1022 (11th Cir. 2017) ........................................................................... 5, 6

*Grasso v. Electrolux Home Prods., Inc.*,
   2015 WL 10792014 (S.D. Fla. Aug. 24, 2015) ...................................................... 7

*Korea Supply Co. v. Lockheed Martin Corp.*,
   63 P.3d 937 (Cal. 2003) ........................................................................................ 13

*Miles v. American Honda*
   2017 WL 4742193 (N.D. Ill. Oct. 19, 2017) ............................................................. 14

*People v. Sarpas*,
   225 Cal. App. 4th 1539 (Cal. Ct. App. 2014) .......................................................... 13

*Sanchez-Knutson v. Ford Motor Co.*,
   52 F. Supp. 3d 1223 (S.D. Fla. 2014) ........................................................................ 6

*Seely v. White Motor Co.*,
   63 Cal. 2d 9 (1965) .................................................................................................... 2

*In re Seagate Technology LLC Litigation*
   233 F. Supp. 3d 776 (N.D. Cal. 2017) ........................................................................ 6

*Solarz v. DaimlerChrysler Corporation*
   2002 WL 452218 (Pa. Ct. Com. Pl. 2002) ......................................................... 10-11

*Strama v. Toyota Motor Sales, U.S.A*
   2016 WL 561936 (N.D Ill. Feb. 12, 2016). ............................................................... 2

*Winn v. Pioneer Medical Grp., Inc.*,
   63 Cal. 4th 148 (Cal. 2016) ..................................................................................... 12

*Zwiercan v. Gen. Motors Corp.*
   2002 WL 1472335 (Pa. Com. Pl. 2002) .................................................................. 11

**Statutes**

28 U.S.C. § 1291 ................................................................................................................ 7

28 U.S.C. § 1295(a)(1) ....................................................................................................... 7

Cal. Com. Code § 2313 ...................................................................................................... 9

U.S. Const. art. VI, cl. 2 ................................................................................................... 10

**INTRODUCTION**

In their opposition, Plaintiffs tacitly concede that their pleading is deficient; otherwise, they would not have felt compelled to deviate from the allegations they actually pled, or shore up those allegations with eyebrow-raising hyperbole.

Plaintiffs' as-pled allegations do not track their arguments. The gravamen of the complaint is that Plaintiffs' Honda Odyssey minivans shake when shifting at low speeds. But Plaintiffs do not allege how often the shaking occurs, how it changed their use of their vehicles (if at all), or that they, or any of the thousands of other Odyssey drivers out there, ever suffered any actual damage because of the (purported) low-speed shaking. To the contrary, they allege that they all still drive their Odysseys. One Plaintiff specifically admits using his Odyssey to transport his children. Two Plaintiffs took their Odyssey vehicles in for service just *one time* despite years of alleged shaking. Another Plaintiff waited nearly six months after first experiencing the alleged shaking before taking his Odyssey to a dealer.

These are Plaintiffs' *actual* allegations. And it these allegations—not the ones Plaintiffs argue in an attempt to avoid dismissal—that the Court must examine. Because they simply do not support Plaintiffs' claims, the Court should grant Defendants' motion to dismiss.

**ARGUMENT**

**I.    Plaintiffs' Express Warranty Claims Are Unripe**

In its motion, AHM[1] argues that Plaintiffs' express warranty claims are unripe. Br. at 5-8. A claim is unripe if it depends on uncertain future events. *Gates v. Deukmejian*, 987 F.2d 1392, 1409 (9th Cir. 1992). Plaintiffs' express warranty claims depend on the recently released corrective measures described in Technical Service Bulletins ("TSBs") 17-043 and TSB 17-044. AHM developed these TSBs to address

---

[1] For purposes of this motion, "AHM" refers to both Defendant American Honda Motor, Co., Inc. and Defendant Honda North America, Inc. AHM disputes that Honda North America, Inc. is a proper party to this lawsuit.

1

REPLY IN SUPPORT OF MOTION TO DISMISS

the low-speed vibration issue of which Plaintiffs appear to complain. Br. at 5-8. Plaintiffs and proposed class members must avail themselves of all available corrective measures offered under the warranty before bringing an express warranty claim. Their claims are therefore unripe.

Plaintiffs' three contrary arguments are meritless. *First*, Plaintiffs argue that their claims are ripe because, regardless of whether the new TSBs are efficacious, they are entitled to remedies *in addition to* warranty repairs. Opp. Br. at 6-7. Not so. Such remedies are off limits unless AHM fails to fulfill its repair obligation under the warranty, as Plaintiffs appear to acknowledge in their complaint, Compl. ¶¶ 114-115, and as California law has long recognized, *Seely v. White Motor Co.*, 63 Cal. 2d 9, 14 (1965). Because any non-repair remedies would be contingent on the success or failure of the new TSBs (among other things), the fact that Plaintiffs seek such remedies does not (and cannot) somehow make Plaintiffs' claims ripe now.

*Second*, Plaintiffs argue that, despite AHM's continuous and ongoing efforts to resolve the issue, the Court should deem AHM's purported failure to have *already* permanently repaired the alleged defect a complete breach of the express warranty. Opp. Br. at 6, 8. This argument fails for at least two reasons: (1) Plaintiffs cite no authority in support of their argument and fail to recognize that *Strama v. Toyota Motor Sales, U.S.A.*, Inc., 2016 WL 561936 (N.D Ill. Feb. 12, 2016), is to the contrary; and (2) Plaintiffs concede that AHM's efforts to-date *have* addressed their concerns, if not for all time. Plaintiff Lentz admits that flushing the transmission fluid—a fix that is always available under warranty—completely resolves the issue for up to three months. Doc. 41-1, Lentz Decl. ¶ 7. Given that and the contrary legal authority, Plaintiffs' argument that the law punishes vehicle warrantors for providing intermediate corrective measures while they are creating long-term solutions is without merit.

*Third*, Plaintiffs lodge a series of undeveloped procedural objections. Plaintiffs argue that (a) this Court cannot accept AHM's ripeness argument because it would have

to decide whether Plaintiffs' vehicles were, in fact, "defective Odysseys" and (b) that AHM failed to "present[] competent evidence that disputes Plaintiffs' jurisdictional allegations." Opp. Br. at 8. But AHM's ripeness argument does not require the Court to determine whether the Odysseys are defective. Rather, the Court need only determine that, if the new TSBs resolve the issue, Plaintiffs' express warranty claims would be moot. This argument is dispositive whether the Odysseys suffer, as Plaintiffs allege, from a defect. And the ripeness argument has nothing whatsoever to do with Plaintiffs' jurisdictional allegations.

*Finally*, Plaintiffs submit a vague declaration from Plaintiff Lentz suggesting that the new TSB repairs did not fix his Odyssey. Doc. 41-1, Lentz Decl. ¶ 5. Plaintiff Lentz's express warranty claim would otherwise be ripe except for that fact that he admits that a transmission fluid flush, made available to him under the warranty, fixes the problem, discharging AHM's warranty obligation. *Id*. ¶¶ 6-7. Further, the other remaining[2] Plaintiffs have all received the same service as Lentz, but apparently have no complaints. Their silence suggests that the repairs worked and that Plaintiff Lentz is an outlier. (It also strongly supports the notion that no class could ever be properly certified given the variation of experiences of even just the named plaintiffs, let alone the proposed class members.) The Court should therefore dismiss Plaintiffs' express warranty claims as unripe.

## II. Plaintiffs' Implied Warranty Claims Fail Because They Failed To Plausibly Plead A Lack Of Merchantability Or Privity

### A. Merchantability

In its motion, AHM explains that Plaintiffs' claims for breach of the implied warranty of merchantability fail because their allegations do not plausibly suggest that their Honda Odysseys are unmerchantable. Br. at 9-11. First, Plaintiffs' alleged symptom is shaking. Second, Plaintiffs alleged that the shaking only occurs at low

---

[2] AHM accepts that Plaintiffs will be dismissing the claims of Plaintiff Richard Frick based on his passing. *See* Opp. Br. at n.1.

speeds. Third, Plaintiffs fail to allege how often the shaking at low speed occurs. And fourth, Plaintiffs still drive their Odysseys despite the shaking. Further, Plaintiffs don't allege what, if any, impact the shaking has had on how or how often they drive the Odysseys. Indeed, Plaintiff Lentz adds in his declaration that, not only is he still driving his Odyssey, he trusts it enough to drive it with "his kids aboard." Doc. 41-1, Lentz Decl. ¶ 8. These allegations simply do not plausibly plead a lack of merchantability.

Plaintiffs' response ignores the thrust of this argument. For example, Plaintiffs do not challenge Defendants' point about the shaking manifesting only at low speeds; the point about how often the shaking occurs; or that they fail to explain how the shaking has impacted their use of their vehicles. Instead, Plaintiffs' response relies on speculation and purported facts found nowhere in their complaint. For example, Plaintiffs speculate that the alleged problems could lead to a "fatal accident." Opp. Br. at 10. This is nothing more than hyperbole. Plaintiffs allege a defect common to 5 years' worth of Honda Odysseys. Despite that enormous number of vehicles and all the miles they have driven over that time, Plaintiffs have not alleged so much as a fender-bender (theirs or anyone else's) attributable to the shaking. Plaintiffs' wild speculation about "fatal accidents" is speculative and therefore cannot support their claims. *E.g.*, *Dahlia v. Rodriguez*, 735 F.3d 1060, 1076 (9th Cir. 2013) ("[I]t is within our wheelhouse to reject, as implausible, allegations that are too speculative to warrant further factual development.") (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Throughout their opposition, Plaintiffs attempt to rely on purported "facts" found nowhere in—or contradicted by—their complaint. For example, Plaintiffs argue the only reason why they still drive their Odysseys is because each Plaintiff "can't afford to buy another minivan." Opp. Br. at 11. But Plaintiffs' complaint says no such thing. Moreover, if Plaintiffs really believed their vehicles were not safe, they would not transport their children or anyone else, and would have brought their vehicles in for service with much greater frequency than they did. *Id*. ¶ 8. The only reasonable

4
REPLY IN SUPPORT OF MOTION TO DISMISS

inference from the as-pled allegations is that the purported low-speed shaking does not actually bother Plaintiffs all that much.

Plaintiffs further claim in their brief that "each plaintiff alleges [that he] visited Honda service centers multiple times for repairs." Opp. Br. at 10 (citing Compl. ¶¶ 65, 72, 76, 86, 90). This is false. Plaintiffs Kavuri and Parker allege seeking repairs only once. Compl. ¶¶ 75-78, 84-88. And one visit hardly raises a plausible inference that the shaking rendered the vehicle unmerchantable.

Plaintiffs' opposition brief stretches credulity on other issues as well. It says "Honda later (Br. at 10) concedes that violent judders compromise a car's safety." Opp. Br. at 10. But the Court will find no such concession in AHM's motion. Later, Plaintiffs complain that AHM is "disputing Plaintiffs' allegations regarding frequency, severity, and materiality," which it characterizes as questions for a jury. *Id.* at 11. But that mischaracterizes AHM's argument. AHM is not disputing Plaintiffs' allegations at all; AHM is merely pointing out that the allegations in Plaintiffs' complaint, even if true and if given every reasonable inference in Plaintiffs' favor, do not raise a plausible inference that their Honda Odysseys are unmerchantable. Accordingly, the Court should dismiss this claim.

### B. Privity

Alternatively, Plaintiffs Parker, Seow, and Lentz's implied warranty claims should be dismissed for lack of privity. Br. at 8-9.

Plaintiffs try to rescue Plaintiff Parker's claim, which is under Florida law, by quoting *Global Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1032 (11th Cir. 2017), out of context. Opp. Br. at 9. *Global Quest* stands for the proposition that privity may exist "when a manufacturer directly provides a warranty to … a buyer who purchases from a third party." 849 F.3d at 1032. But this does not help Plaintiff Parker. The key word is "directly," and AHM did not directly provide Mr. Parker a warranty within the meaning of *Global Quest* or the Florida cases it relies on. In *Global Quest*,

the "founder and CEO" of the manufacturer was "directly involved in the negotiation of the purchase and limited warranty." *Id*. Thus, the manufacturer "directly" provided the warranty, creating privity. *Id*. In *Cedars of Lebanon Hospital Corporation v. European X-Ray Distributors*, on which *Global Quest* relies, "sales representatives from appellee manufacturer called upon appellant [buyer] and made direct representations" about the product, thereby making the warranty directly. 444 So. 2d 1068, 1072 (Fla. Dist. Ct. App. 1984). All these cases stand for is that privity is *possible* between a manufacturer and end buyer if there is direct contact between the two. Here, Plaintiffs allege no such direct contact between Parker and AHM.

Plaintiffs' attempt to rely on a third-party beneficiary theory to establish privity likewise fails. Opp. Br. at 9. AHM respectfully submits that the district court decisions Plaintiffs identify that find that automobile buyers are third-party beneficiaries of contracts between manufacturers and dealers under California law are mistaken. *In re Seagate Technology LLC Litigation* explains that these cases rely on a California appellate court decision that had nothing to do with consumer products and did not involve manufacturers, dealers, or consumers. 233 F. Supp. 3d 776, 787 (N.D. Cal. 2017). In fact, "no published decision of a California court has applied [the third-party beneficiary argument Plaintiffs attempt here] in the context of a consumer claim against a product manufacturer." *Id*. And the only Ninth Circuit authority on point instructs that the federal courts should not create exceptions to California's privity requirement. *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008) ("California courts have painstakingly established the scope of the privity requirement …, and a federal court sitting in diversity is not free to create new exceptions to it."). But that is exactly what Plaintiffs' decisions are doing. This Court should not follow them.

The same logic refutes Plaintiffs' argument as to Florida law. One of Plaintiffs' Florida cases, *Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223 (S.D. Fla. 2014), relies on the same line of California authority rejected in *Seagate*. The other relies on Florida case law that makes a materially identical mistake as that made by the

6
REPLY IN SUPPORT OF MOTION TO DISMISS

California decisions: extending a Florida decision dealing with homeowners' association law into the consumer product context. *Grasso v. Electrolux Home Prods., Inc.*, 2015 WL 10792014, at *2 (S.D. Fla. Aug. 24, 2015), *reconsideration denied*, 2016 WL 2625746 (S.D. Fla. Mar. 24, 2016) (citing *Greenacre Props., Inc. v. Rao*, 933 So. 2d 19, 23 (Fla. Dist. Ct. App. 2006)). Such a dramatic extension, absent state-court authority, oversteps the bounds that constrain a federal court sitting in diversity. *Clemens*, 534 F.3d at 1024. Because Plaintiffs Parker, Seow, and Lentz lack privity with AHM, their claims must be dismissed.

### III. Plaintiffs' Magnuson-Moss Warranty Act Claim Is Not Cognizable In Federal Court

In its motion, AHM argues that the Court should dismiss Plaintiffs' Magnuson-Moss Warranty Act class action claims because they are not cognizable in federal court absent 100 named plaintiffs. Br. at 11-14. AHM spent pages explaining why the Act's text compels this conclusion. *Id*. Plaintiffs offer in response a feeble argument about what "Congress knew" when it passed the Class Action Fairness Act. Opp. Br. at 11-12. Plaintiffs say that if AHM were right about Magnuson-Moss, then Congress would have placed an exemption for Magnuson-Moss into CAFA. *Id*. This makes no sense. If AHM is right, then Congress would have had no reason for such an exemption—the language of the Magnuson-Moss Warranty Act itself does the trick. To return to the analogy (to appellate jurisdiction in patent cases) from AHM's motion, it is as if Plaintiffs are arguing that the language in 28 U.S.C. § 1295(a)(1) that makes the Federal Circuit the exclusive destination for patent-related appeals would be ineffective absent parallel language in 28 U.S.C. § 1291 excluding patent cases. This, of course, is not the case.

Aside from their weak statutory interpretation argument, Plaintiffs seem content to hide behind non-binding decisions. Opp. Br. at 11-12. But their "weight of authority" lacks heft because none of those decisions consider AHM's argument. And the one

7
REPLY IN SUPPORT OF MOTION TO DISMISS

decision AHM is aware of that does, sides with AHM. *E.g.*, *Ebin v. Kangadis Food Inc.*, 2013 WL 3936193, at *1 (S.D.N.Y. July 26, 2013) (Rakoff, J.).

Alternatively, the Magnuson-Moss claims must be dismissed for lack of predicate warranty claims. Br. at 11.

### IV. Plaintiffs' Song-Beverly Consumer Warranty Act Claims Fail

Plaintiffs do not contest that, if their implied warranty claims fail, so do their claims under the Song-Beverly Consumer Warranty Act. Opp. Br. at 12. Accordingly, because the implied warranty claims fail, so do the Song-Beverly claims.

### V. Plaintiffs' Statutory Consumer Fraud Claims Fail

In its motion, AHM exposes several common flaws in Plaintiffs' statutory consumer fraud claims. Br. at 14-17. Plaintiffs have no effective response. On the law, Plaintiffs appear to agree with AHM that their claims require reasonable reliance and either affirmative misrepresentations or intentional omissions. Opp. Br. at 12-15. Plaintiffs do not contest that they lack misrepresentation claims and their defenses on reasonable reliance and omissions both fail.

Plaintiffs' arguments on reasonable reliance focus on details but ignore the big picture. They make much of the fact that the TSBs dedicated to Odyssey transmission issues were not distributed directly to consumers. Opp. Br. at 12-14. But they ignore their own allegations that information about these issues was so pervasive that one consumer found "almost [the] exact same/similar complaint … within seconds of searching." Br. at 15 (quoting Compl. ¶ 27). Because a reasonable consumer would spend a few "seconds" on Google before purchasing a $40,000 vehicle, Plaintiffs have plead themselves out of reasonable reliance and, with it, their consumer fraud claims.

Plaintiffs' arguments about AHM's intent also ignore the big picture. AHM has, for more than half a decade, issued TSBs candidly detailing transmission issues and proposed fixes for various model years of Odysseys. Compl. at *passim*. These TSBs are not top-secret documents: they can and do make it to consumers and online,

8
REPLY IN SUPPORT OF MOTION TO DISMISS

necessitating the cautionary language discouraging do-it-yourselfers. Compl. ¶ 34 & Ex. B, TSB 16-060. Repeatedly pushing documents like these into the public domain is simply inconsistent with the intent to conceal that Plaintiffs must plead. Br. at 16-17 (collecting cases). Moreover, these TSBs openly reflect AHM's desire to be candid with customers. For example, TSB 16-060 asks dealers to "[m]ake sure the customer is aware that [flushing the transmission fluid] is a temporary fix and he or she will have to return once the software is available to make sure the transmission judder is resolved." Doc. 1-2, Ex. B, TSB 16-060. This statement negates the intent to conceal that Plaintiffs are required to allege.

Plaintiffs' cases do not suggest otherwise. Plaintiffs cite three district court decisions, Opp. Br. at 14 (*MyFord*, *Herremans*, *Ignition Switch*), but not one considers or rejects an argument remotely like AHM's. Instead, Plaintiffs' cases all deal with other issues, like the duty to disclose, and are therefore irrelevant.

Finally, Plaintiffs attempt to save their claim under California's Unfair Competition Law by arguing that even if they have no claim for misrepresentations or omissions, they do have claims based on alleged violations of other laws or because AHM "fail[ed] to disclose a safety defect." Opp. Br. at 14-15. But, as argued elsewhere in this brief, Plaintiffs have failed to establish predicate breaches of the three laws on which they rely. *See* Compl. ¶ 188 (Consumer Legal Remedies Act, Song-Beverly Warranty Act, Cal. Com. Code § 2313). And Plaintiffs also have failed, as explained in the merchantability section, to allege that AHM failed to disclose a "safety defect." Not only do Plaintiffs' allegations fail to plausibly plead the existence of such a defect, AHM's actual, consumer-focused disclosures show that the AHM disclosed the transmission issues.

### VI. Plaintiffs' Claims For Injunctive Relief Fail

In its motion, AHM argues that this Court lacks jurisdiction over Plaintiffs' claims for injunctive relief. Br. at 18-19. AHM argues that the claims for injunctive relief related to repair are unripe for the same reasons that the express warranty claims

are unripe. *Id*. As to the remainder of its injunctive relief claims, which all relate AHM's disclosures about Odysseys, Plaintiffs lack standing to bring these claims because there is no future likelihood that any of this conduct will harm them. *See id*. at 18 (citing *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006)). Plaintiffs do not argue that they are likely to be harmed in the future and therefore concede that they do not have what the Supreme Court and Ninth Circuit require for standing. Opp. Br. at 15-16. Instead, they ask this Court to follow a handful of district courts that have placed the interests underlying state consumer fraud statutes ahead of the dictates of Article III's case or controversy requirement. *Id*. Since no state law can trump the constitution's requirements, this argument fails. *See* U.S. Const. art. VI, cl. 2 ("This Constitution … shall be the supreme law of the Land … any Thing in the … Laws of any State to the Contrary notwithstanding.").

### VII. Plaintiff MacDougall's Pennsylvania Consumer Fraud Claim Fails

In its motion, AHM argues that Plaintiff MacDougall's statutory consumer fraud claim under Pennsylvania law fails for lack of an "ascertainable loss" because his allegations involve only future or speculative losses, neither of which are sufficient. Br. at 19-20. Plaintiffs appear to concede that alleged future losses are insufficient. Compl. ¶ 153. But Plaintiffs argue that the "difference in value between a defective minivan and a defect-free minivan," as measured by what Plaintiff MacDougall paid versus what he "would have paid … if he knew about the defect" counts as ascertainable loss. Opp. Br. at 16. *Schwarzwaelder v. Fox*, 895 A.2d 614, 619 (Pa. Super. Ct. 2006), rejected precisely that argument as speculative. Br. at 20. Plaintiffs quibble with *Schwarzwaelder*, pointing to immaterial factual differences, but do not explain how their theory is any less speculative than the one rejected there. And it is not reasonable for a consumer to expect a perfect vehicle and demand compensation where (as here) warranty repairs are available.

Plaintiffs' argument to the contrary goes outside their complaint and relies on distinguishable cases. Plaintiffs claim that Plaintiff MacDougall's damages are not

speculative because they include the "cost to cure the defect or replace the minivan." Opp. Br. at 17-18. Putting aside the fact that they did not mention these items in the relevant portion of their complaint, their cases do not support that theory. Each case they cite dealt with far more concrete injuries than those alleged here. *Solarz v. DaimlerChrysler Corporation* relied on the plaintiff paying the "cost of installing the park-brake interlock" as the ascertainable loss, not on the plaintiff's difference-in-value allegation. 2002 WL 452218, at *6 (Pa. Ct. Com. Pl. 2002). *Brunwasser v. Trans World Airlines, Inc*. relied on an airline cancelling the plaintiffs' flight without offering any acceptable alternatives. 541 F. Supp. 1338, 1346-47 (W.D. Pa. 1982). Although the plaintiffs in *In re General Motors LLC Ignition Switch Litigation* did appear to rely on a similar theory to Plaintiffs', the court in those proceedings did not consider whether such a theory was impermissibly speculative. 2017 WL 2839154 at *34 (S.D.N.Y. June 30, 2017). Plaintiffs mischaracterize *Baynes v. George E. Mason Funeral Home, Inc.*, 2011 WL 2181469, at *5 (W.D. Pa. June 2, 2011), saying that the "purchase of a defective casket" was the ascertainable loss, when, in fact, the decision holds only that the cost of a replacement casket that the plaintiffs had already paid was. Opp. Br. at 17. Plaintiffs get *Zwiercan v. General Motors* wrong too, claiming it held that needing to pay money to fix a car was sufficient even before the payment had been made, Opp. Br. at 17, while the actual ascertainable loss in the case was an out-of-pocket cost: "[The] Complaint alleges that the Plaintiffs incurred real out-of-pocket costs in replacing their Tires." 2002 WL 1472335, at **3, 6 (Pa. Com. Pl. 2002). Because Plaintiff MacDougall failed to plead ascertainable loss, his claim fails.

### VIII. Plaintiffs' California Consumer Legal Remedies Act Claims Fail

Plaintiffs' claims under California's Consumer Legal Remedies Act fail because the claims are not well-pled and are time barred. Br. at 20-21. Plaintiffs apparently concede that they have no claim based on misrepresentations and focus on an omission-based theory. Opp. Br. at 18-19. This argument fails for the same common-sense reason

that Plaintiff's omission-based consumer fraud theories fail. Plaintiffs cannot plausibly—or with particularity—contend that AHM intentionally omitted material facts about Odyssey transmissions while at the same time pleading that AHM instructed dealers to "[m]ake sure the customer is aware" of its efforts to solve the problem. Doc. 1-2, Ex. B, TSB 16-060. Moreover, the claims of the remaining California Plaintiffs, Lentz and Seow, are both time-barred because they waited more than three years to sue. Br. at 20-21.

Plaintiffs appear to concede that Lentz and Seow's claims are time-barred absent tolling. Opp. Br. at 19-21. They just fail to recognize that tolling is unavailable. They rely on the discovery rule (they mention but do not argue fraudulent concealment), but to invoke the discovery rule, a plaintiff must allege facts showing she lacked the "[]ability to have made earlier discovery despite reasonable diligence." *Asghari v. Volkswagen Group of Am., Inc*., 42 F. Supp. 3d 1306, 1321 (C.D. Cal. 2013) (internal quotation marks omitted). Plaintiffs Seow and Lentz have not alleged such facts. Plaintiff Seow alleged the opposite of diligence by alleging that he waited five months to seek help after first experiencing the shaking and by alleging that he waited an additional two years before taking his vehicle in a second time. Compl. ¶¶ 71-74. Plaintiff Lentz failed to allege diligence by pleading no facts indicating how long he waited between when he first experienced shaking and when he sought help. *Id*. ¶¶ 89-93. The discovery rule is not available to either Plaintiff.

Plaintiffs' final tolling argument is that their mailing of a CLRA notice letter somehow operates to toll the statute of limitations. None of the cases they cite support this argument—not one even deals with the CLRA. And the argument is, from a statutory interpretation standpoint, nonsense. If the California legislature wanted the CLRA's notice requirement to lengthen its statute of limitations, it would have said so in the statutory text. It didn't. Accordingly, Plaintiffs' argument violates the cannon of statutory interpretation that all provisions within a statute must be interpreted in light of

other provisions. *E.g.*, *Winn v. Pioneer Medical Grp., Inc.*, 63 Cal. 4th 148, 161-62 (Cal. 2016). The CLRA claims fail.

### IX. Plaintiffs' California Unfair Competition Law Claims Fail

In its motion, AHM asked the Court to dismiss Plaintiffs' UCL claim because Plaintiffs are not entitled to injunctive relief or restitution, which are the only remedies the law provides. Br. at 21-22. Plaintiffs are not entitled to injunctive relief because those claims are unripe (except for Plaintiff Lentz, who has admitted away his claim), as explained in the section dealing with the express warranty claims. And they are not entitled to restitution because their theory of restitution is not allowed under California law. *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 947 (Cal. 2003).

To qualify as restitution, a UCL plaintiff must seek from the defendant money the defendant took from the plaintiff or money that the defendant received indirectly that the plaintiff had some "vested" or "ownership" interest in. *See People v. Sarpas*, 225 Cal. App. 4th 1539, 1561 (Cal. Ct. App. 2014) (discussing *Korea Supply* and related case law). Here, Plaintiffs do not allege that they paid AHM directly or that AHM obtained money in which they had any interest. All they allege is that they bought their Odysseys from authorized, independent Honda dealers. That is insufficient because it does not show that payment to dealers equals payment to AHM (and, in fact, it does not). In fact, because dealers purchase vehicles from AHM before selling them to consumers, what Plaintiffs are actually seeking is disgorgement, a remedy to which they are not entitled. *Id.* at 1561.

Plaintiffs cite no cases from the automotive context to the contrary. And their attempt to distinguish *Asghari* reveals only that they did not read it carefully. Opp. Br. at 22. AHM relied on *Asghari* as an example of a district court dismissing a UCL claim for restitution against an automotive manufacturer based on *Korea Supply*. Br. at 22. Plaintiffs' respond that *Asghari* did not consider the argument, instead "assum[ing] that the plaintiffs abandoned a restitution claim by not responding to the defendant's

argument." Opp. Br. at 22. Not so. Several of the *Asghari* plaintiffs did abandon the argument, but, as to one plaintiff, named Calver, the Court considered the argument and rendered a holding favorable to AHM. *Asghari*, 42 F. Supp. 3d at 1324 n.66.

## X. Plaintiff Kavuri's New Jersey Consumer Fraud Act Claim Fails

Although Plaintiffs cite a lot of cases to defend Plaintiff Kavuri's claim under the New Jersey Consumer Fraud Act, not one is even tangentially relevant to AHM's simple argument. Plaintiff Kavuri's allegations rely on a benefit-of-the-bargain theory to show ascertainable loss, and his allegations on that point are too speculative to survive. Br. at 23. AHM does not dispute that a properly pled benefit-of-the-bargain theory may state a claim, but AHM vigorously disputes that Plaintiffs' is properly pled.

## XI. Plaintiffs' Unjust Enrichment Claims Fail

As AHM argues, the Court should dismiss Plaintiffs' unjust enrichment claims because Plaintiffs have alleged the existence of the express warranty and because they do not and cannot allege that they conferred a direct benefit on AHM. Br. at 23. Plaintiffs' acknowledge that unjust enrichment and express warranty claims are mutually exclusive, but claim that they can allege them together anyway under Rule 8(d). This is true, but only to the extent that there is a dispute about whether the alleged contract exists. Where, as here, there is no dispute that there is a binding contract between the parties (here, the new vehicle, limited written warranty), there is no point in allowing the unjust enrichment claim to go forward. The claim should be dismissed.

Plaintiffs'\ also argue that their unjust enrichment claims cover subject matter outside the scope of the express warranty. Not so. The unjust enrichment claim is about allegedly defective vehicles. Compl. ¶ 237. The express warranty claim is about the same thing. *Id*. ¶¶ 112-114. Unlike in *Miles v. American Honda*, Plaintiffs have not alleged an unjust enrichment claim based on misrepresentations and omissions. 2017 WL 4742193, at *4 (N.D. Ill. Oct. 19, 2017). That was the sole basis for the *Miles* court to allow that unjust enrichment claim to proceed. *Id*.

Plaintiffs' response to AHM's direct benefit argument likewise fails. They concede that all the relevant states' laws require a direct benefit. Opp. Br. at 24-25. Then they admit that they do not know—and so cannot have pled—whether they conferred a direct benefit on AHM. *Id.* at 25. They appear to realize that, if dealers pay AHM for vehicles independent of selling them to customers (which dealers, in fact, do), then Plaintiffs conferred no direct benefit upon AHM. Despite this admission, Plaintiffs somewhat illogically insist that their unjust enrichment claims are viable. The bottom line is that Plaintiffs concede that they need to allege a direct benefit and admit that they have not yet done so, even under their own view of the law. *Id*. Their claims should therefore be dismissed.

**XII. Plaintiffs' Claims For Declaratory Relief Rise And Fall With Their Substantive Claims**

Plaintiffs agree with AHM that their declaratory judgment claim rises and falls with their remaining claims. Opp. Br. at 25; Br. at 24. Because all of their claims fail, the declaratory relief they seek likewise fails.

## CONCLUSION

For the reasons set forth in AHM's motion, memorandum of law, this reply and such argument as may be presented before the Court, AHM respectfully requests the Court dismiss Plaintiffs' complaint in its entirety. AHM also requests such other, further relief as this Court deems appropriate.

DATED: November 20, 2017

Respectfully Submitted,

SIDLEY AUSTIN LLP

By: /s/ Michael B. Shortnacy

Attorneys for Defendants AMERICAN HONDA MOTOR CO., INC. and HONDA NORTH AMERICA, INC.

**Certificate of Service**

On November 20, 2017, I caused this document to be filed and served on all ECF-registered counsel of record using the Court's CM/ECF system.

/s/ Michael B. Shortnacy