LIVIA M. KISER (SBN 285411)
*lkiser@kslaw.com*
MICHAEL B. SHORTNACY (SBN 277035)
*mshortnacy@kslaw*.com
King & Spalding LLP
633 West 5th Street, Suite 1700
Los Angeles, CA 90071
Telephone: (213) 443-4355
Facsimile: (213) 443-4310

Attorneys for Defendants
AMERICAN HONDA MOTOR CO., INC.
and HONDA NORTH AMERICA, INC.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SANTA ANA DIVISION

| | |
|---|---|
| DENNIS MACDOUGALL, RAY SEOW, PRABHANJAN KAVURI, RICHARD FRICK, JOSEPH RYAN PARKER, and BRYAN LENTZ, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>      v.<br><br>AMERICAN HONDA MOTOR CO., INC., and HONDA NORTH AMERICA, INC.,<br><br>        Defendants. | Case No. 8:17-cv-01079-AG (DFMx)<br><br>**AMERICAN HONDA MOTOR CO., INC. AND HONDA NORTH AMERICA, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND/OR TO STRIKE CLASS AVERMENTS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Filed Concurrently Herewith:<br>  1) Notice of Motion and Motion; State of Uncontroverted Facts and Conclusions of Law;<br>  2) Declaration of Livia M. Kiser and Exhibits;<br>  3) [Proposed] Judgment<br><br>Date:     August 5, 2019<br>Time:     10:00 a.m.<br>Location:  Santa Ana Division, 10D<br>Judge:    Hon. A. Guilford |

i

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on August 5, 2019, at 10:00 am or as soon thereafter as the matter may be heard, in the United States District Court for the Central District of California, Southern Division, before the Hon. Andrew J. Guilford, Defendants American Honda Motor Co. and Honda North America, Inc. will, and hereby do, move the Court for an order granting summary judgment in favor of Defendants based on the following grounds:

1.       Plaintiffs, all of whom are owners of 2014 Honda Odyssey vehicles with six-speed automatic transmissions cannot substantiate that their vehicles have any transmission problems whatsoever, much less "shuddering, juddering, hesitation, surge, and hard clunk." Compl. ¶ 6.

Alternatively, and in addition:

1.       The transmission in the 2014 Honda Odyssey vehicle is materially different from the transmissions in prior model year Honda Odyssey vehicles.  Moreover, the transmission in each model year is unique for each vehicle, even if some of the component parts are the same; and

2.       HNA is not a proper party to this lawsuit.

This Motion is based on this Notice of Motion and Motion and the accompanying Memorandum of Points and Authorities, all filings made in connection therewith, any oral argument, and any other submissions made in connection with this Motion.

DATED:       June 3, 2019

By:  /s/ *Livia M. Kiser*
Attorneys for Defendants
AMERICAN HONDA MOTOR CO., INC. and
HONDA NORTH AMERICA, INC.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..........................................................................iv

INTRODUCTION .......................................................................................1

BACKGROUND .........................................................................................2

    I.    Factual Background .......................................................................2

        A.    Plaintiffs' Allege That AHM Put Defective Transmissions Into The Market, But More Than A Year Of Discovery Has Revealed No Evidence Of A Defect ........................................................................2

        B.    Mr. Arst's Extensive Testing Conclusively Shows The Transmissions In Plaintiffs' Vehicles Operate Normally ...............7

        C.    Plaintiffs' 6AT Transmissions, Program Control Modules, and Software Are Different From Every Other Odyssey .................... 13

        D.    Honda North America Inc. Has No Role In This Lawsuit ........... 13

    II.    Procedural Background ................................................................ 14

ARGUMENT ........................................................................................... 14

    I.    Summary Judgment Is Warranted On Plaintiffs' Remaining Claims ...... 14

        A.    Summary Judgment Standard ...................................................... 14

        B.    The Transmissions In Plaintiffs' Vehicles Operate As Designed . 15

    II.    Plaintiffs Cannot State Claims On Behalf Of Model Year Odyssey Owners And Lessees Besides 2014 ........................................................ 22

    III.    HNA Is Entitled To Summary Judgment On Additional Grounds .......... 23

CONCLUSION ........................................................................................ 24

MEMORANDUM OF POINTS AND AUTHORITIES ISO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Honda Motor Co. v. Super. Ct.*,
  199 Cal. App. 4th 1367 (2011) ........................................................... 1, 14

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ................................................................................. 15

*In re Brazier Forest Prods., Inc.*,
  921 F.2d 221 (9th Cir. 1990) ................................................................... 15

*Broemer v. Fed. Bureau of Investigation*,
  No. CV0805515MMMRZX, 2011 WL 13142587 (C.D. Cal. Apr. 22,
  2011) ......................................................................................................... 19

*Broken Drum Bar, Inc. et al. v. Site Centers Corp. et al.*,
  2:19-cv-01445-ODW, 2019 WL 2211894 (C.D. Cal. May 22, 2019) ................... 24

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ........................................................................... 15, 18

*Coleman v. Quaker Oats Co.*,
  232 F.3d 1271 (9th Cir. 2000) ................................................................. 17

*Cox v. Aero Automatic Sprinkler Co.*,
  No. 5:14-CV-02723-EJD, 2015 WL 1848426 (N.D. Cal. Apr. 16,
  2015) ......................................................................................................... 23

*Decker v. Mazda Motor of Am., Inc.*,
  No. SACV110873AGRNBX, 2014 WL 12584387 (C.D. Cal. Mar. 17,
  2014) ................................................................................................... 16, 17

*Gencarelli v. Chernin Entm't, LLC*,
  No. 217CV2818ODWPJWX, 2019 WL 266969 (C.D. Cal. Jan. 18,
  2019) ......................................................................................................... 20

*Glaude v. Gates*,
  No. C08-04317 HRL, 2009 WL 2485731 (N.D. Cal. Aug. 7, 2009) ................... 20

*Lee v. NNAMHS*,
  2009 WL 3052443 (D. Nev. 2009) ........................................................... 17

iv

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
   350 F.3d 1018 ...................................................................................... 22

*Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*,
   No. CV 05-2200 MMM (MCX), 2008 WL 11334030 (C.D. Cal. Mar.
   17, 2008) ............................................................................................. 20

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Ready Pac Foods, Inc.*,
   782 F. Supp. 2d 1047 (C.D. Cal. 2011) ................................................ 15

*Nelson v. Pima Comm. College*,
   83 F.3d 1075 (9th Cir.1996) ................................................................ 16

*In re Oracle Corp. Sec. Litig.*,
   627 F.3d 376 (9th Cir. 2010) ............................................................... 15

*Pardini v. Unilever United States, Inc.*,
   961 F. Supp. 2d 1048 (N.D. Cal. 2013) .......................................... 16, 23

*Patterson v. RW Direct, Inc.*,
   No. 18-CV-00055-VC, 2018 WL 6106379 (N.D. Cal. Nov. 21, 2018) ................. 24

*Paulson v. Oregon State Bar*,
   609 F. App'x 511 (9th Cir. 2015) ........................................................ 22

*Rawson v. Ducommun Metals Co.*,
   30 Fed. R. Serv. 2d 1199 (C.D. Cal. 1980) .......................................... 23

*Seaman v. Pyramid Techs., Inc.*,
   No. SACV 10-00070 DOC, 2011 WL 5508971 (C.D. Cal. Nov. 7,
   2011) .................................................................................................. 18

*In re Sinclair*,
   No. 14-91565-E-7, 2017 WL 1684120 (Bankr. E.D. Cal. May 2,
   2017) .................................................................................................. 20

*Smartmetric, Inc. v. Mastercard Int'l, Inc.*,
   No. CV117126MWFAJWX, 2013 WL 12108250 (C.D. Cal. Oct. 2,
   2013), *aff'd*, 568 F. App'x 897 (Fed. Cir. 2014) ................................. 19

*Spangler v. Cty. of Ventura*,
   No. 216CV09174ODWGJS, 2018 WL 3031464 (C.D. Cal. June 15,
   2018) .................................................................................................. 20

v

1

*United States v. Various Slot Machines on Guam,*
 658 F.2d 697 (9th Cir.1981) ..................................................................... 19

2

3

*In re Verisign, Inc., Derivative Litig.,*
 531 F. Supp. 2d 1173 (N.D. Cal. 2007)...................................................... 24

4

5

*Villiarimo v. Aloha Island Air, Inc.,*
 281 F.3d 1054 (9th Cir. 2002) ................................................................... 20

6

7

**Other Authorities**

8

Fed. R. Civ. P. 56(c) ....................................................................................... 15

9

Fed. R. Civ. Proc. 56(a) .................................................................................. 18

10

Federal Rules of Civil Procedure, Rule 56(g) ................................................ 15

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES ISO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# INTRODUCTION

Defendants American Honda Motor Co., Inc. (AHM) and Honda North America, Inc. ("HNA," and with AHM, "Honda") respectfully move for an order granting summary judgment in their favor and against Plaintiffs on all of Plaintiffs' remaining claims. Honda is entitled to summary judgment because Plaintiffs, all of whom are owners of 2014 Honda Odyssey vehicles with six-speed automatic transmissions ("6AT"), cannot substantiate that their vehicles have any transmission problems whatsoever, much less "shuddering, juddering, hesitation, surge, and hard clunk" Compl. ¶ 6 (collectively, "Atypical Vibrations."). Nor could they possibly substantiate the existence of a "transmission defect" in other model year Honda Odyssey vehicles. The fact is, the transmission in the 2014 Honda Odyssey vehicle is materially different from the transmissions in prior model year Honda Odyssey vehicles. Statement of Undisputed Facts ("SUF") (filed concurrently herewith) ¶ 40. Moreover, the transmission in each model year, is unique for each vehicle, even if some of the component parts are the same. SUF ¶ 27.

Plaintiffs would like this Court to view Honda's over-arching commitment to quality improvement as evidence of a "global defect" in each transmission installed in every 2011-2016 Honda Odyssey vehicle ever made. *Id.* But the fact that AHM issued Technical Service Bulletins ("TSBs")[1] identifying countermeasures for dealers to provide to customers when specific issues manifest in torque converters or transmissions in Honda Odyssey vehicles of various trim level and model years is not probative of the existence of a systemic transmission "defect," as courts have long recognized. *Am. Honda Motor Co. v. Super. Ct.,* 199 Cal. App. 4th 1367, 1378 (2011). This is especially true where, as here, the component parts are different, and the

---

[1] TSBs are technical documents that AHM creates in consult with engineers that provide instructions to dealers when a customer presents with a condition that the TSB was developed to address. A TSB "is not and cannot be fairly construed ... as an admission of a design or other defect." *Am. Honda Motor Co. v. Super. Ct.,* 199 Cal. App. 4th 1367, 1378 (2011).

countermeasures set forth in each TSB have proven completely effective.  SUF ¶¶ 12, 26. But in any event, the transmissions in Plaintiffs' vehicles operate normally. Summary judgment is therefore properly granted for Honda.[2]

## BACKGROUND

### I.     Factual Background

#### A.     Plaintiffs' Allege That AHM Put Defective Transmissions Into The Market, But More Than A Year Of Discovery Has Revealed No Evidence Of A Defect

Plaintiffs claim the six-speed automatic transmissions (6AT) in their 2014 Odyssey vehicles are defective.  Compl. at ¶¶ 2-3. They also claim the transmissions in every other 2011, 2012, 2013, 2014, 2015 and 2016 Odyssey vehicle are defective.  *Id*. ¶ 2. Plaintiffs allege that these so-called transmission defects are discussed in certain TSB but that the repairs set forth in the TSBs do not actually work.  *Id*. at ¶¶ 35-36. AHM publishes TSBs to its network of authorized dealers and repair shops that are independent and separate businesses from itself.  SUF ¶ 1.  Customers who come in to an authorized dealer or repair shop for service can obtain the TSB repairs ("Countermeasures") pursuant to warranty.  SUF ¶ 3.

The trouble is, undisputed evidence shows that Plaintiffs' transmissions are operating normally.  SUF ¶ 12. And only a very few 2014 Honda Odyssey vehicles ever manifested the symptoms Plaintiffs complain about in the first place:  *e.g*., "shuddering, juddering, hesitation, surge, and hard clunk" (collectively, "Atypical Vibrations.").  Compl. at ¶ 6; *but see* SUF ¶ 5.  AHM diagnosed the cause of the Atypical Vibrations in 2014 Honda Odyssey vehicles.  SUF ¶ 46.  They can result from faster-than-typical degradation of the vehicle's automatic transmission fluid (ATF).  *Id*. Experts tested

---

[2] Honda is entitled to summary judgment on all of Plaintiffs' claims, but in the event the Court finds any disputed issue with respect to any of Plaintiffs' specific vehicles (though there is not), Honda requests in the alternative that the Court grant summary judgment in Honda's favor as to makes and model year Honda Odyssey vehicles that Plaintiffs do not own (*i.e*., all besides 2014) and dismiss HNA from the lawsuit.

MEMORANDUM OF POINTS AND AUTHORITIES ISO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs' vehicles, and they do not manifest Atypical Vibrations (or any other problems with their transmissions, for that matter).  SUF ¶ 12.

ATF is a wear item like engine oil.  SUF ¶ 8.  It can degrade more quickly than it otherwise would when exposed to periodic high heat loads.  SUF ¶ 7.  Honda quality engineers discovered that this can occur under harsh driving conditions (*e.g.*, pulling a heavy boat, driving hard up steep roads, or in hot desert conditions).  *Id.*  The Atypical Vibrations "happen[] on a relatively low percentage of vehicles . . . it also takes this narrow operating range to even cause the problem and it also takes a narrow operating range for the customer to experience it." SUF ¶ 9.  Indeed, the manifestation rate was quite low.  SUF ¶ 10.

Here, Plaintiffs allege that "[t]his action concerns [AHM's alleged] inability to repair" the Atypical Vibrations that they refer to as a defect. Compl. at ¶ 1. Indeed, Plaintiffs tether every one of their claims to the allegation that their vehicles have an Atypical Vibration caused by a "dangerous and defective transmission." *Id.* at ¶ 4; *see id.* at ¶ 5. *Id.* at ¶ 6 (claiming the transmissions have a defect).  Plaintiffs rely on and refer to a variety of TSBs in support of their claims.  *Id.* at ¶ 35.  But most of the TSBs don't even apply to their vehicles.  And the TSBs that do apply actually address – and resolve – Atypical Vibrations for the few Odyssey vehicles manifesting them.  SUF ¶ 45.  This fact is not reasonably in dispute.  SUF ¶ 47.

It is worth noting that although each Plaintiff owns a 2014 Honda Odyssey vehicle, Plaintiffs' proposed classes include model year 2011 through 2016 Honda Odyssey vehicles.  Compl. at ¶ 94. This is improper for a variety of reasons discussed below, including because the transmission in 2014 Honda Odyssey vehicles is different from prior (and subsequent) model year vehicles in material ways (SUF ¶ 40), but the Court need not address these improprieties, because Plaintiffs' own transmissions operate normally.  SUF ¶ 12. Honda's expert conducted technical tests that conclusively show, to a reasonable degree of scientific certainty, that the transmissions in Plaintiffs' vehicles operate as designed.  SUF ¶ 12.  Their vehicles do not manifest Atypical

3

Vibrations. Plaintiffs' own expert does not opine otherwise.  SUF ¶ 17.  Indeed, Honda has moved to exclude Plaintiffs' transmission "expert," Dr. Parker, because he purports to opine, without basis, that because the vibrations of which Plaintiffs complain are "intermittent," they somehow cannot be captured by testing.  *See* AHM Motion to Strike Dr. Parker, ECF No. 151, expressly incorporated herein by reference.  Dr. Parker's contentions are entirely without basis, including because Honda engineers identified the existence of Atypical Vibration (even though it manifests in relatively few vehicles), they were able to identify the root cause of the unusual vibration (*i.e.*, premature degradation of the ATF), and they were able to develop efficacious countermeasures when it occurs.  SUF ¶¶ 45, 47.

## 1. Plaintiffs' Vehicles Operate Normally

In the Complaint, Plaintiffs allege the transmissions in their vehicles "cause sudden, unexpected shaking and violent jerking," "hesitat[ion]" when the accelerator is pressed, and "surg[ing]" when drivers attempt to accelerate."  Compl. at ¶ 5. But the uncontroverted evidence fails to support—and outright contradicts—these claims.  For example, even though *Mr.* MacDougall claims his vehicle "violently judders" so much that he is "fearful for his safety," Compl. at ¶ 65, he and his wife (the vehicle's primary driver) admittedly allowed their young, newly-driving daughter to drive their 2014 Odyssey vehicle for hundreds of miles to college—and his wife further admitted that their daughter noticed no vibration while she was driving. Decl. of L. Kiser ("Kiser Decl.") Ex. 1 at 25 (Linda MacDougall Deposition ("L. MacDougall Dep.") 65:10-14). And even though *Mr.* MacDougall claims in the complaint that their vehicle is somehow unsafe (and continued to claim the vehicle poses serious safety concerns in deposition, including sensationally claiming that the vehicle may "stop functioning" in the middle of traffic), Mrs. McDougall (the almost exclusive driver of the vehicle) testified that she did *not* feel like the vehicle is unsafe in any way:

> Q. Did you ever feel that your daughter was in danger
> riding around in the car with you?

A. No.

Q. Do you ever feel that you yourself have been in danger driving the car?

A. No.

Q. Do you consider the car safe?

A. Yes.

Kiser Decl. Ex. 1 at 24-24 (L. MacDougall Dep. 63:24- 64:10).

Critically: at no time did any of the Plaintiffs offer testimony which could be read as actual evidence of a transmission problem, much less Atypical Vibrations. To the contrary, Plaintiffs freely admit:

- Each Plaintiff continues to drive his/her 2014 Odyssey vehicle even though they allege symptoms that, were they truly manifesting, would render their vehicles undrivable. Compl. at ¶¶ 70, 74, 78, 83, 88, 93; *see also, e.g., id.* at ¶ 65 (Mr. MacDougall *alleging* "nerve racking banging" and "lurching" "so intense that he "actually thought [he] had been rear-ended by another vehicle").

- Indeed, all Plaintiffs have driven extensive distances despite alleging the cars are purportedly "unsafe." For example, Mr. Parker has been averaging over 2,000 miles a month since he presented his vehicle for inspection and testing. SUF ¶ 30. Other Plaintiffs have likewise driven thousands of miles in their cars, both before and after their vehicles were tested and the Countermeasures installed.

- Not a single Plaintiff has brought in his or her car to be repaired or serviced after having received the Countermeasures. SUF ¶ 35. This is powerful, corroborating evidence that Plaintiffs are not actually experiencing the sensational allegations in their pleading and that the Countermeasures are, in fact, efficacious as Honda contends. SUF ¶¶ 45, 47.

### 2. Plaintiffs' Own Expert Did Not Find Atypical Vibration

As explained below, Honda's transmission expert, Jason Arst, conducted extensive testing on every one of Plaintiffs' vehicles and prepared detailed technical and expert data confirming Plaintiffs do not have any sort of transmission problem. Plaintiffs also hired their own expert, Dr. Robert Parker, to inspect their vehicles, presumably to corroborate the allegations in their pleading regarding their vehicles. Dr.

5

Parker is a professor of Mechanical Engineering at Virginia Tech University and prepared two declarations. But even after he spent days inspecting Plaintiffs' vehicles and pouring through relevant documents, he was unable to provide any opinion—or point to any evidence—suggesting that any of the Plaintiffs' vehicles actually have Atypical Vibrations (or any other problem in their transmissions).

Dr. Parker's two reports mostly consist of him interpreting snippets of Honda's documents or making claims devoid of expert analysis or opinion. *See, e.g.,* Kiser Decl. Ex. 2 at 52 (Robert Parker Report ("Parker Rep't") at ¶ 72). This is one of the key reasons that Honda has moved to strike his "opinions": they are not based on science, any discernable methodology, or facts in the record, and they consist principally of Dr. Parker speculating about what customers do and do not believe, and his interpretation of what internal Honda documents allegedly mean.

Honda incorporates its Motion to Strike the Opinion of Dr. Robert Parker by reference as though fully set forth herein. But in brief, Dr. Parker's opinions are irrelevant and contradicted by facts he concedes. For example:

- **Dr. Parker admits evidence shows few 2014 Honda Odyssey vehicles with six-speed transmissions, driven in extreme conditions, manifest a vibration condition in the first place.** Kiser Decl. Ex. 2 at 49 (Parker Rep't at 21) ("Data for the 2014 Odyssey. . . reveals that the defects [] after 32 months are about two times the Trigger Line (0.6% versus 0.3%)."). *Six tenths of one percent* of 2014 Honda Odyssey vehicles is about 820 vehicles (based on a total of 136,793 sold). SUF ¶ 10. Ultimately, five percent of all 2014 model year vehicles received the Countermeasures. SUF ¶ 51.

- **That the countermeasures identified in the TSBs work.** Dr. Parker does not actually opine that the Countermeasures do *not* work, much less that they didn't work on Plaintiffs' vehicles. SUF ¶ 17 In contrast, Mr. Arst, using scientific methods accepted in the field, confirmed that, in fact, Plaintiffs' vehicles did not manifest Atypical Vibrations either before or after the Countermeasures were installed. Kiser Decl. Ex. 3 at 101-04 (Arst Expert Report ("Arst Expert Rep't") at 11-14)). And Honda Senior Staff Engineer Michael Gibson testified that the Countermeasures are

MEMORANDUM OF POINTS AND AUTHORITIES ISO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

effective.  SUF ¶ 26.  Notably, Dr. Parker affirmatively relies on Mr. Gibson's testimony in support of the notion that the vibrations are intermittent and does not take issue with anything else that Mr. Gibson says.  Kiser Decl. Ex. 2 at 71 (Parker Rebuttal Report ("Parker Reb't") at ¶ 5).  Nor do Plaintiffs offer evidence that the countermeasures identified in TSBs applicable to vehicles other than their own are somehow not efficacious.

- **That Mr. Arst's testing was effective and proves to a reasonable degree of scientific certainty that there are no transmission problems in Plaintiffs' vehicles.**  Dr. Parker offers only speculation in his rebuttal report that can be summarized as: the vibrations are intermittent, so no test can uncover them.  This "opinion" is not only contradicted by Mr. Arst, but by the record:  AHM identified the Atypical Vibration issue, and Honda engineers were able to (1) replicate it; (2) identify the root cause of it; and (3) remediate it.  SUF ¶¶ 46, 47, 48.  These facts are not reasonably in dispute.

In sum, Plaintiffs have failed to substantiate their claims through any technical means, including their own expert. The Court should thus consider the only objective, affirmative technical evidence on this matter:  (1) the testing performed by AHM's expert, Mr. Arst, who extensively tested the Plaintiffs' vehicles for transmission vibration of any kind, including Atypical Vibrations, as well as other potential defects in the transmission, and found none;[3] and (2) the undisputed evidence of Honda witnesses that testified the Countermeasures are efficacious in resolving Atypical Vibration.  SUF ¶¶ 12, 26.

### B.   Mr. Arst's Extensive Testing Conclusively Shows The Transmissions In Plaintiffs' Vehicles Operate Normally

AHM's expert, Mr. Arst, is an engineer with 27 years of relevant, real world experience in the automotive field. Among other things, and unlike Dr. Parker, Mr. Arst

---

[3] Dr. Parker makes various other statements that are either entirely unsupported by facts or are verbatim regurgitation of statements made in Honda's documents—neither of which are proper expert opinions. *See, e.g.,* Kiser Decl. Ex. 2 at 43-48 (Parker Rep't) (simply repeating statements made in Honda's documents without any independent expert analysis).  AHM and HNA are thus moving to strike his "opinions" as they are based on nothing other than reading the text, something any literate person can do.

7

is a registered Professional Engineer in California and an ASE-certified Master Automobile Technician in Engine Repair, Performance, Automatic and Manual Transmissions.  In addition to reviewing all relevant documents, Mr. Arst developed a testing protocol that would have revealed Atypical Vibrations in the Plaintiffs' vehicles (or other transmission problems) if they existed. This protocol (which was developed with Plaintiffs' input and agreed to by them) included not only Mr. Arst's analysis of the vehicles' physical behaviors—based on his almost-30 years of experience with similar inspections—but also included real-time testing through sensors of the vibration levels in the transmissions and torque converters, as well as laboratory and other tests of the ATF.  SUF ¶ 15. Neither Plaintiffs nor their expert quarreled with the methodology behind these tests, and indeed, their expert actively participated the testing and apparently did no other testing whatsoever (at least any testing that he disclosed). SUF ¶ 16.

Every test for abnormal transmission operation in every single one of Plaintiffs' vehicles was negative. SUF ¶ 12. For this reason, Mr. Arst concluded "with confidence" that "the transmissions and torque converters in Plaintiffs' 2014 six-speed Odyssey vehicles are in all respects operating normally and do not manifest 'judder' (*i.e.*, vibration) arising from or related to the vehicles' transmissions or torque converters." Kiser Decl. Ex. 3 at 91 (Arst Rep't at 1). He reached these conclusions based on exhaustive evidence and testing, and "to a reasonable degree of engineering and scientific certainty." *Id.*

### 1.    Mr. Arst Specifically Tested For Atypical Vibration

As Mr. Arst explains in his expert report, all vehicles with gas engines necessarily vibrate.  Kiser Decl. Ex. 3 at 97 (Arst Rep't at 7). Constant, background vibrations in a gas engine are completely normal, and abnormal vibrations can be caused by all manner of factors that have nothing to do with the Atypical Vibrations that Plaintiffs allege in their pleading.  *Id.* Disruptions in the engine, unbalanced tires, brake rotors, wheels, driveline, or suspension may produce unwanted vibrations that may be felt by the

8

vehicle's occupants. *Id.*; see also SUF ¶¶ 11.  The environment also often produces vibrations throughout the vehicle. *Id.*; *see also* SUF ¶ 11, Kiser Decl. Ex. 4 at 139-140 (Gibson Dep. 77:22-78:10) ("things like tire imbalance, things like brake – brake pulsations, those are other examples of vibration complaints.").

*Unusual* vibrations from mechanical issues can also be caused by numerous factors that do not originate in the transmission and are not caused by Atypical Vibrations. SUF ¶ 11.  These include things like the driver's unique driving habits (*e.g.*, hard braking), vehicle maintenance habits (or lack thereof), frequent starting and stopping, excessive speeds, engine revving, extreme hot and cold temperatures, climate, humidity, air quality (*e.g.*, dusty or dirty air conditions, or smog), roadway conditions (*e.g.*, the berm, potholes, poorly or unpaved roads), roadway slopes/grades, mountainous terrain, hills and valleys, roads with numerous curves, snowy or icy roadways, and more.  SUF ¶ 11.

Because vibrations can be caused by many different things, Mr. Arst designed a rigorous testing protocol to reveal whether any of the Plaintiffs' vehicles do, in fact, manifest any abnormalities in their transmissions, including Atypical Vibrations.  Kiser Decl. Ex. 3 at 100-101 (Arst Rep't at 10-11); *see also* SUF ¶ 15. Mr. Arst explained at length in his report why, if the Plaintiffs' vehicles had the Atypical Vibrations, it would be revealed in the test results. *See, e.g.,* Ex. 3 at 103-117 (Arst Rep't at 13-27) Indeed, any such abnormality would have shown up both in the technical data collected from the Plaintiffs' vehicles during the testing as well as during the physical examinations of the vehicles. *Id.*

Mr. Arst tested the vehicles before and after the Countermeasures were applied to Plaintiffs' vehicles.  SUF ¶ 15. None of Plaintiffs' vehicles had the Atypical Vibrations (or any other problem) *before* the Countermeasures were applied.  Nor did any of Plaintiffs' vehicles have the Atypical Vibrations (or any other transmission problem) *after* the Countermeasures were applied.  SUF ¶ 12.

Mr. Arst's testing protocol was thorough, to say the least:

MEMORANDUM OF POINTS AND AUTHORITIES ISO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

- *First*, he analyzed each vehicle's physical performance and behavior by observation—using his 27 years of experience to determine whether any unusual vibration or transmission/torque converter issues were manifesting. Kiser Decl. Ex. 3 at 100-01 (Arst Rep't at 10-11).

- *Second*, he conducted technical testing using the vehicles' diagnostic systems. The transmission and engine are equipped with a variety of sensors. By collecting data from these sensors during various driving conditions, Mr. Arst was able to specifically test whether the vehicles' transmissions or torque converters were manifesting the Atypical Vibrations or any other unusual vibrations in the transmission or torque converter. *Id.*

- *Finally*, Mr. Arst had a lab test each vehicle's ATF for degradation or other issues against a brand-new sample of the same ATF.  SUF ¶ 24. As he explained in his report, if the Plaintiffs' vehicles were among the very small group exhibiting Atypical Vibrations—their ATF would have been degraded.  Kiser Decl. Ex. 3 at 2-3 (Arst Rep't. at 92-93).  But it was not. *Id.*

## 2.     Mr. Arst Found Plaintiffs' Transmissions To Operate Normally

Mr. Arst put the vehicles through rigorous driving conditions to ensure that any problem with any of Plaintiffs' vehicles' transmissions – including the Atypical Vibrations – would be detected if they actually existed in the Plaintiffs' vehicles.  Kiser Decl. Ex. 3 at 100-16 (Arst Rep't at 10-26).  Plaintiffs' expert and counsel were present during all the testing.  *Id.* at 100 (at 10).  Both experts drove the vehicles—typically for over two hours.  *Id.* at 100-16 (at 10-26).  Each vehicle was driven well over 20 miles, in various conditions.[4]  *Id.*   During all this live testing, Mr. Arst "actively sought to identify [the] symptoms and performance characteristics during all of the test drives (those conducted by myself and Dr. Parker)" that the Plaintiffs allege in this case. *Id.* at 106.

---

[4] As to Dr. Parker's conduct, Mr. Arst noted he often observed Plaintiffs' expert "sharply accelerating and deaccelerating repeatedly," which became so extreme that Mr. Arst opined the driving conditions Dr. Parker intentionally created were well outside of "normal" operations. *Id.* at 106. And, yet, Dr. Parker's creation of extreme conditions still did not cause the cars to manifest Atypical Vibrations. *Id.*

Mr. Arst's physical inspections and testing showed no Atypical Vibrations present in the Plaintiffs' vehicles (or any other transmission problem). *Id.* at 100-116 (at 10-26). Mr. Arst is trained to identify these precise issues and he has done over 1,000 similar vehicle inspections. *Id*. at 91 (at 1). But not one of the Plaintiffs' vehicles manifested Atypical Vibrations or any other unusual vibration or problem in the transmission. *Id*. at 100-16; SUF ¶ 12.

To further underscore the thoroughness of the testing protocol, during one of the physical inspections Mr. Arst did find that the Parkers' vehicle manifested some unusual vibration. Kiser Decl. Ex. 3 at 116 (Arst Rep't at 26). But the sensor data and a physical inspection confirmed that it had *nothing* to do with the transmission or torque converter, and everything to do with the vehicles' obvious tire and suspension issues. *Id.*. The Parkers' vehicle exhibited no Atypical Vibrations at all.

Mr. Arst's testing of the vehicles' sensor data also confirmed that no Atypical Vibrations or any other problem is present in the transmissions of the Plaintiffs' vehicles. Mr. Arst explains in his report that the sensor data in a normal transmission/torque converter has a distinct pattern. Kiser Decl. Ex. 3 at 97 (Arst Rep't at 7). Normal operations show up with smooth lines in the data, like this:



*Id*. A vehicle manifesting Atypical Vibrations, however, would show very different results. Note the obvious jagged lines on this test—from a vehicle with a true transmission vibration issue (below example not from Plaintiffs' vehicles):

11



Here, the sensor data for Plaintiffs' vehicles simply did not "reveal any judder in the operation of the torque converter." *Id*. at 107 (at 17).[5] As Mr. Arst explains, if these vehicles' transmissions were manifesting Atypical Vibrations (or any other abnormal transmission-related vibration), "**the HDS equipment would have captured [it] on a snapshot at some point on the two-hour test drives (with myself and Dr. Parker driving on separate occasions at varying speeds and on varying roads**)." *Id*. (emphasis supplied).

Finally, the ATF in all of Plaintiffs' vehicles tested 100 percent normal. Mr. Arst conducted laboratory testing of the ATF in each one of Plaintiff's vehicles, measuring it against brand new ATF fluid. There was no indication of any significant deterioration of the ATF fluid as one would expect if a vehicle driver was, in fact, experiencing Atypical Vibrations. *Id*. at 116-17 (at 26-27). "This combined with a complete lack of

---

[5] Dr. Parker mentions in a few paragraphs that he believes a single snapshot of data for a single plaintiff—the Lentz's—could exhibit some "anomalous behavior" indicative of an unusual vibration. Kiser Decl. Ex. 2 at 79-81 (Parker Reb't at ¶¶ 27-29). *First*, Dr. Parker's suggestion that the testing here revealed an unusual vibration is directly contradicted by Mr. Arst's back-up data from his own device that confirms normal operation.  Kiser Decl. Ex. 5 at 179 (Jason Arst Deposition ("Arst Dep.") 78:1-18). *Second*, Dr. Parker does not meaningfully dispute Mr. Arst's technical interpretation of the data, instead, Dr. Parker identifies some "oscillation" that (he concedes) would be consistent with *normal* vehicle operation.  Kiser Decl. Ex. 2 at 81 (Parker Reb't. at ¶¶ 29-30).

physical evidence that Plaintiffs are experiencing [the Atypical Vibrations] when they drive their vehicles," caused Mr. Arst to conclude—with a reasonable degree of scientific certainty—that Plaintiffs' do not, in fact, manifest Atypical Vibrations or any other abnormal transmission-related problem.  *Id*. at 117 (at 27).  In short, Plaintiffs' transmissions operate properly.  *Id*.

### C.   Plaintiffs' 6AT Transmissions, Program Control Modules and Software Are Different From Every Other Odyssey

Plaintiffs purport to bring claims not only on behalf of other 2014 Honda Odyssey vehicle owners and lessees, but also on behalf of 2011, 2012, 2013, 2015 and 2016 Honda Odyssey owners and lessees.  Compl. at ¶ 94.  Plaintiffs, however, each own 2014 Honda Odyssey vehicles with six-speed transmissions.  Compl. at ¶¶ 63, 71, 75, 84, 89.  The transmission in the 2014 Honda Odyssey vehicle is materially different from the transmissions in prior model year Odyssey, even if some of the component parts are the same.  SUF ¶¶ 40, 27.

Plaintiffs' case is premised entirely on the fact that AHM issued several different TSBs for different model year Honda Odyssey vehicles in order to address issues affecting a relatively small number of customers, and, in one case, decided to do a warranty extension.  SUF ¶¶ 41, 42, 43, 44.  These measures were taken at great expense to enhance customer satisfaction and were based on a dedication to quality improvement.  SUF ¶ 13. A TSB "is not and cannot be fairly construed . . . as an admission of a design or other defect." *Am. Honda Motor Co. v. Super. Ct.,* 199 Cal. App. 4th 1367, 1378 (2011).

### D.   Honda North America Inc. Has No Role In This Lawsuit

Plaintiffs have long known that HNA is not a proper party to this lawsuit but have refused to voluntarily dismiss HNA from the complaint.  SUF ¶ 37.  HNA is a California corporation and a wholly-owned subsidiary of Honda Motor Co., Ltd.  SUF ¶ 36.  HNA has no relationship (contract or otherwise) to the Plaintiffs in this lawsuit, as it does not

design, manufacture, warrant, advertise, market, distribute or repair Honda vehicles. SUF ¶ 37.  HNA does not, and has never, developed, manufactured, or sold vehicles. SUF ¶ 38.

## II.      Procedural Background

AHM moved to dismiss Plaintiffs' Complaint. ECF No. 35. This Court dismissed many of Plaintiffs' claims, leaving only their state-law warranty, unjust enrichment, and omission claims. ECF No. 52 at 13.

In declining to dismiss Plaintiffs' basic warranty-related claims, the Court explained that, at that point, it was still "hypothetical" whether the Countermeasures would fix Plaintiffs' alleged "transmission issues." ECF No. 53 at 4. The Court also suggested that it needed evidence about whether the vehicles' transmissions were actually unsafe before ruling on the implied warranty claims. *Id.* at 5. And on the omission claims, the Court explained that Plaintiffs had alleged that AHM omitted mention of the alleged transmission defects, and that the Plaintiffs had alleged they relied on this omission to their detriment given that they alleged their transmissions are defective. *Id.*

Plaintiffs never amended their pleading, and Plaintiffs' complaint remains tethered to their single factual claim alleging that their vehicles suffer from Atypical Vibrations.  But the undisputed evidence shows the vehicles do not.  Summary judgment for defendants, therefore, should be granted.

**ARGUMENT**

## I.      Summary Judgment Is Warranted On Plaintiffs' Remaining Claims

### A.      Summary Judgment Standard

Summary judgment is proper if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those necessary to the proof or defense of a claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine only "if the

1  evidence is such that a *reasonable* jury could return a verdict for the nonmoving party."

2  *Id* (emphasis added). In deciding a motion for summary judgment, "[t]he evidence of

3  the nonmovant is to be believed, and all justifiable inferences are to be drawn in his

4  favor." *Id*. at 255.

5     The burden is first on the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317,

6  323 (1986). If the non-movant will bear the burden of proof on an issue at trial, the

7  moving party can satisfy its summary judgment burden by "'showing'—that is, pointing

8  out to the district court—that there is an absence of evidence to support the nonmoving

9  party's case." *Id*. at 325. The non-moving party must then "come forth with evidence

10  from which a jury could reasonably render a verdict in the non-moving party's favor."

11  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010); *see In re Brazier*

12  *Forest Prods., Inc.,* 921 F.2d 221, 223 (9th Cir. 1990).

13     Moreover, under Federal Rule of Civil Procedure Rule 56(g), a court may enter

14  an order stating any material fact—including an item of damages or other relief—is not

15  genuinely in dispute and treating the fact as established in the case." *Nat'l Union Fire*

16  *Ins. Co. of Pittsburgh, PA v. Ready Pac Foods, Inc.*, 782 F. Supp. 2d 1047, 1051 (C.D.

17  Cal. 2011).  In this way, "Rule 56(g) allows a court to grant partial summary judgment,

18  thereby reducing the number of facts at issue in a trial." *Id*.

19     **B.     The Transmissions In Plaintiffs' Vehicles Operate As Designed**

20     The foundation of Plaintiffs' entire complaint is that their 2014 Odyssey vehicles

21  have Atypical Vibrations. *See* Compl. at ¶ 6. But, since the Plaintiffs' vehicles do not

22  actually have Atypical Vibrations (or any other transmission problem), all their claims

23  topple.

24     As this Court explained in *Unilever*, a plaintiff's individual claims must fail if it

25  can't create a genuine dispute that its product has the defect alleged in the complaint.

26  *Id.* "[M]ere allegation and speculation do not create" this genuine dispute. *Nelson v.*

27  *Pima Comm. College*, 83 F.3d 1075, 1081–82 (9th Cir. 1996) (citation omitted).

28  Instead, "[a]t this stage, Plaintiffs must offer 'significant probative evidence tending to

support" the allegations in their pleading. *Browning,* 2018 WL 6615064, at *2.

Plaintiffs' complaint here alleges that their vehicles have the same Atypical Vibrations referenced (and addressed) in AHM's TSBs applicable to those cars. *Compare* Compl. at ¶¶ 5, 6 *with* SUF ¶¶ 45, 46, 47, 48. Setting aside that the Countermeasures described in the TSBs actually work (and they do – SUF ¶ 26)), Plaintiffs could only sue over Atypical Vibrations if their vehicles did, in fact, have that condition in the first place. For example, in *Decker v. Mazda*, this Court rejected a plaintiff's attempt to sue for vehicle defects that Mazda's expert evidence confirmed did not exist in the plaintiff's vehicle. *Decker v. Mazda Motor of Am., Inc.*, No. SACV110873AGRNBX, 2014 WL 12584387, at *3 (C.D. Cal. Mar. 17, 2014).

In that case, the plaintiff alleged in his complaint that his vehicle had a defect that caused his engine to flood "after very short distances of driving." *Id.* Mazda moved for summary judgment and provided the court with expert evidence demonstrating that this alleged flooding defect was not present in the plaintiff's car. *Id.* This Court held that affirmative evidence that the alleged defect was not present in the plaintiff's vehicle must defeat his claim. Period. *Id. See also Lee v. NNAMHS*, 2009 WL 3052443 (D. Nev. 2009) ("It is not appropriate for Plaintiff to assert new allegations outside the scope of the complaint in an opposition to a motion for summary judgment."); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000) ("A complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations.").

This Court correctly explained last year that "[f]undamentally this case is about transmission problems." ECF No. 53 at 1. Plaintiffs' entire theory is that AHM "fail[ed] to fix transmission problems in their [mini]vans." *Id*. Plaintiffs' themselves allege in their complaint that their claims are all based upon a purported "transmission defect." Compl. at ¶ 6 (emphasis added).

Honda has done more than point out the absence of evidence to support Plaintiffs' claims (although there is that, too); Honda has offered extensive expert and technical

16

evidence conclusively proving the transmissions in Plaintiffs' vehicles operate normally. The burden thus shifts to Plaintiffs to show that a *genuine* and *material* dispute of fact exists. To survive summary judgment, Plaintiffs would need to proffer evidence that their vehicles have Atypical Vibrations. *Id.* The sum total of their evidence, however, is empty speculation by their "expert" that it is *theoretically* possible that an unmeasurable vibration exists in their vehicles, though there is no actual evidence of the existence of any transmission problems (because there is none). Because the undisputed evidence confirms that none of the named Plaintiffs have any sort of transmission problem, their claims fail as a matter of law and must be dismissed. *Decker*, No. SACV110873AGRNBX, 2014 WL 12584387, at *3.

### 1. Honda's Expert Tested The Vehicles And Found No Issue

As explained above, Honda's expert Mr. Arst developed a robust testing protocol designed to test for any Atypical Vibrations (as well as any other unusual vibrations in the transmissions or torque converters). SUF ¶ 15. He explained why, in his expert opinion and to a reasonable degree of scientific certainty, this protocol works. If the Plaintiffs' vehicles actually had Atypical Vibrations, it would have shown up in the tests.

Every test confirms with certainty that Plaintiffs' vehicles do not manifest Atypical Vibrations. Mr. Arst's protocol included testing in various conditions—often with Plaintiffs' expert at the wheel. It included physical, technical, and laboratory testing. Indeed, it's hard to imagine a more thorough testing regime. And when the results came in, Mr. Arst concluded "with confidence" and "to a reasonable degree of engineering and scientific certainty" that the Plaintiffs' vehicles do not have Atypical Vibrations. In his words: "[T]he transmissions and torque converters in Plaintiffs' 2014 6AT Odyssey vehicles are in all respects operating normally and do not manifest 'judder' arising from or related to the vehicles' transmissions or torque converters." Kiser Decl. Ex. 3 at 91 (Arst Rep't at 1).

And then, for good measure, each Plaintiff received the Countermeasures.  The Countermeasures restored each vehicle's ATF to "like new" condition (SUF ¶ 45) and updated the software to prevent any potential for ATF degradation even with extreme or hard driving by Plaintiffs in the future.  SUF ¶ 47.  And Plaintiffs have driven their vehicles for thousands of miles since the Countermeasures were installed, without complaint.  SUF ¶ 35.  All of the undisputed evidence points to one conclusion: Plaintiffs' vehicles do not have Atypical Vibrations.  *Id.*

### 2. Plaintiffs Have Zero Evidence Of Atypical Vibrations

That Plaintiffs do not have Atypical Vibrations in their vehicles cannot be rebutted by mere allegations and speculation to create a genuine issue of material fact.  *Seaman v. Pyramid Techs., Inc.*, No. SACV 10-00070 DOC, 2011 WL 5508971, at *2 (C.D. Cal. Nov. 7, 2011) ("A party cannot create a genuine issue of material fact simply by making assertions in its legal papers.  There must be specific, admissible evidence identifying the basis for the dispute.") (citing Fed. R. Civ. P. 56(c)) (Carter, J.); *see* Fed. R. Civ. Proc. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  As discussed more fully in Honda's Motion to Strike, Plaintiffs' "expert" is a nullity. Dr. Parker's "opinion" consists of his original declaration, which itself is nothing more than speculation having nothing to do with Plaintiffs' own vehicles, and his rebuttal declaration, which consists of unfounded speculation that it is theoretically possible that an unusual vibration could exist.  *See* ECF No. 151, AHM Mot. to Strike.  Dr. Parker then essentially concludes it is impossible to test for the issue because the Atypical Vibration is intermittent, though he does not dispute that Honda engineers were able to isolate, identify and address the Atypical Vibrations via the Countermeasures. Compare, *e.g.*, ECF No. 151 with SUF ¶¶ 46, 47, 48.

"Expert declarations that contain only conclusory allegations on the ultimate legal issue are insufficient to defeat summary judgment." *Smartmetric, Inc. v. Mastercard Int'l, Inc.*, No. CV117126MWFAJWX, 2013 WL 12108250, at *2 (C.D. Cal. Oct. 2, 2013), *aff'd*, 568 F. App'x 897 (Fed. Cir. 2014). Expert evidence is

18

admissible only if the expert discloses "sufficient information regarding the sources of information or the methodology" used to reach his conclusion. *Broemer v. Fed. Bureau of Investigation*, No. CV0805515MMMRZX, 2011 WL 13142587, at *10 (C.D. Cal. Apr. 22, 2011), *aff'd sub nom. Broemer v. F.B.I.*, 548 F. App'x 435 (9th Cir. 2013); *see also United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir.1981) ("in the context of a motion for summary judgment, an expert must back up his opinion with specific facts").

In point of fact, Dr. Parker fails to offer any founded, evidence-based analysis to contradict – and thus raise a question of fact – about Mr. Arst's test results. Both parties developed the testing protocol designed to test for the Atypical Vibrations that Plaintiffs allege. SUF ¶ 14. At no time did Plaintiffs or their expert complain or contest the validity of the protocol. SUF ¶ 16. And while Mr. Arst and Dr. Parker spent days conducting testing and reviewing the data, Dr. Parker apparently never conducted any other testing (or if he did, he hasn't disclosed it). Now, after the data and evidence have definitively established the lack of any defect, Dr. Parker's sole rebuttal is to opine that the testing may not have worked. This is precisely the sort of "speculation" that fails to create a "genuine dispute"—and is certainly not the "significant probative evidence" that this Court has said is required here. *Browning*, 2018 WL 6615064, at *2.

That means that Plaintiffs' only "evidence" of the alleged Atypical Vibration in their vehicles is their lay, self-serving, and uncorroborated testimony, which also is not sufficient to create a material issue of fact. *See Glaude v. Gates,* No. C08-04317 HRL, 2009 WL 2485731, at *1 (N.D. Cal. Aug. 7, 2009) ("There is also no genuine dispute where the only evidence a party presents is uncorroborated and self-serving testimony."); *Gencarelli v. Chernin Entm't, LLC*, No. 217CV2818ODWPJWX, 2019 WL 266969, at *2 (C.D. Cal. Jan. 18, 2019) ("Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact."); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) ("[T]his court has refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self -

serving" testimony'"); *see also In re Sinclair*, No. 14-91565-E-7, 2017 WL 1684120, at *6 (Bankr. E.D. Cal. May 2, 2017) (giving statements less shrift where they were "inconsistent with the objective facts shown by all of the other documents").

Further, Plaintiffs cannot rely on lay testimony to create a triable issue about technical matters on which they have no expertise to opine. *See Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*, No. CV 05-2200 MMM (MCX), 2008 WL 11334030, at *10 (C.D. Cal. Mar. 17, 2008) ("speculative opinion testimony by lay witnesses—*i.e.*, testimony not based upon the witness's perception—is generally inadmissible."); *Spangler v. Cty. of Ventura*, No. 216CV09174ODWGJS, 2018 WL 3031464, at *6 (C.D. Cal. June 15, 2018) (discussing difference between lay and expert testimony and barring any lay testimony about technical matters).

Not only is Plaintiffs' testimony self-serving, uncorroborated, and unqualified, it is not credible for other reasons. For one, their subjective experience cannot possibly establish the existence of Atypical Vibrations in their vehicles: even Honda engineers testified that unusual vibration is caused by many, many different things, and that is why snapshots of the transmission are necessary to diagnose vibration's source.  SUF ¶¶ 11, 49.

For another, even though some of the Plaintiffs allege vehicle conditions so severe that they were throwing up in their seats or that their vehicles were unsafe to drive (Amy Parker Deposition 68:18-21), *every single one of them continues to drive their vehicles hundreds and hundreds of miles to this day* (SUF ¶¶ 29-34), often with their families in the vehicle or with their children at the wheel. SUF ¶29. And despite claiming that their vehicles exhibit the Atypical Vibrations, none of them have brought their vehicles in for repair after having the Countermeasures installed.  SUF ¶ 35. Their own behaviors, thus, directly contradict their allegations.

A reasonable jury could not find on this record that Plaintiffs have put forth enough non-speculative evidence to create a triable issue as to whether their vehicles are actually manifesting the Atypical Vibrations – or any transmission vibration

problem whatsoever. *See Browning,* 2018 WL 6615064, at *2 (relying on []
uncontrolled and inconsistent statements . . . a reasonable jury couldn't find a causal
connection between the alleged defect and the alleged safety hazard." (quotation
omitted)).

   *In re Ford Tailgate Litigation* is directly on point.  No. 11-CV-02953-RS, 2015
WL 7571772, at **13–14 (N.D. Cal. Nov. 25, 2015). In *in re Ford Tailgate Litigation*,
the plaintiffs testified that their vehicles' axles failed too quickly. *Id.* The court held that
this sort of testimony was "impossibly vague and lacks any reasoned foundation." *Id.*
Simply testifying that there was a problem with a vehicle's axles fell far short of
reasonable evidence from which a jury could find that a defect exists—the jury would
be left to "decide the issue, without any reference point other than its own collective
experience." *Id.*

   The same is true here:  no reasonable jury could use a lay witness's testimony
about feeling "a vibration" in their vehicles to make the leap that Plaintiffs' vehicles are
suffering from unresolved Atypical Vibrations in their transmissions. There are simply
too many causes of unusual vibration in vehicles.  SUF ¶¶ 11, 49. Moreover, Plaintiffs'
allegations are completely inconsistent with the documents they produced (and didn't
produce), their written discovery responses, and the evidence showing both the Atypical
Vibrations only manifest under certain conditions and the Countermeasures are fully
efficacious.  SUF ¶¶ 26, 45, 47.

   Plaintiffs' bald assertions thus cannot create a material issue of fact that operates
to defeat summary judgment, especially given that Honda engineers testified unrebutted
as to the cause of the Atypical Vibration and the reasons the Countermeasure works,
and Mr. Arst did not find anything wrong with the transmissions or torque converters
in any of Plaintiffs' vehicles. SUF ¶¶ 12, 24. Everything from driving loads to the
environment or worn tires (such as those in Mr. Parker's vehicle) can cause noticeable
vibrations that manifest in the manner in which Plaintiffs describe (but have absolutely
nothing to do with the transmission).  SUF ¶¶ 11, 48.  Plaintiffs' lay testimony that

21

Atypical Vibration exists in their vehicles is nothing more than "conjecture and hypothetical." *Browning*, 2018 WL 6615064, at *3. Defendants are entitled to summary judgment on Plaintiffs' claims.

Moreover, because the Plaintiffs have no claims, the entire case must be dismissed. Named plaintiffs cannot represent a class without a claim of their own. *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) (holding that failure to establish individual case or controversy precludes litigant from serving as class representative); *see also Paulson v. Oregon State Bar*, 609 F. App'x 511, 512 (9th Cir. 2015) ("The district court properly dismissed Paulson's class action claims because his individual claims failed."). Plaintiffs' failure to create a triable issue about whether their vehicles have Atypical Vibration (they do not) dooms their class claims.

## II. Plaintiffs Cannot State Claims On Behalf Of Model Year Odyssey Owners And Lessees Besides 2014

Even if Plaintiffs could raise an issue of fact regarding the existence of a "transmission defect" in their own vehicles (they cannot), Defendants are still entitled to summary judgment for the vehicles that Plaintiffs do not own. *See Rawson v. Ducommun Metals Co.*, 30 Fed. R. Serv. 2d 1199 (C.D. Cal. 1980) (holding that named plaintiff could not represent claimants with significantly different claims). The transmissions and related parts across AHM model years and models are different. SUF ¶ 3. And those differences matter. Each model year has "separate hardware designs, separate program designs. They're—it's completely a different piece of hardware that we use in our vehicles." Kiser Decl. Ex. 4 at 158-59 (Gibson Dep. 118:23-24); Kiser Decl. Ex. 6 at 185; 189 (Shepard Dep. 25:15-20; *id.* at 149:18-23). The 2014 Honda Odyssey with six-speed transmission featured an "entirely new ECU and different PCM supplier" from prior model years. Kiser Decl. Ex. 7 at 193 (AHM_ODYT_000000883). 2011 and certain 2012 Odyssey vehicles (within the VIN range specified in TSB 12-064), for example, may have either a PCM manufactured by parts suppliers Keihin Automotive or one manufactured by Continental Automotive Systems. SUF ¶ 27. For

each of those models, the software is different. *Id*. In addition, model year 2011 and certain 2012 Odyssey Touring and Touring Elite vehicles have SC55C torque converters which are different from the other Honda Odyssey vehicles. SUF ¶ 41. Some of the Honda Odyssey vehicles have five-speed transmissions rather than six speed transmissions. SUF ¶ 40.

Thus, even if Defendants were not entitled to summary judgment on all of Plaintiffs' claims (though they are), Defendants are entitled to summary judgment on the claims Plaintiffs purport to assert on behalf of owners and lessees of vehicles that Plaintiffs themselves do not own or lease. *See Cox v. Aero Automatic Sprinkler Co.*, No. 5:14-CV-02723-EJD, 2015 WL 1848426, at *3 (N.D. Cal. Apr. 16, 2015) (dismissing claims because named plaintiffs cannot bring a claim for which they have suffered no harm themselves); *Pardini v. Unilever United States, Inc*., 961 F. Supp. 2d 1048, 1061 (N.D. Cal. 2013) (dismissing claims for which named plaintiff has suffered no harm).

### III. HNA Is Entitled To Summary Judgment On Additional Grounds

HNA is also entitled to summary judgment because it is not a proper party to this dispute. It is axiomatic that a plaintiff must have some sort of contractual privity with a defendant to sue them for breach of a warranty. *Patterson v. RW Direct, Inc.,* No. 18-CV-00055-VC, 2018 WL 6106379, at *3 (N.D. Cal. Nov. 21, 2018) (no express or implied warranty claim because consumer did not purchase the product from the defendant and no allegations that the specific defendant otherwise made actionable representations). Likewise, a plaintiff may not sue a defendant for any of the fraudulent omission claims that Plaintiffs allege here without actually alleging specific facts supporting the claim as to each specific defendant. *In re Verisign, Inc., Derivative Litig.,* 531 F. Supp. 2d 1173, 1219 (N.D. Cal. 2007) (reciting well-settled law that fraud must be alleged as to each specific defendant).

HNA is not and cannot be liable to Plaintiffs. HNA is an affiliate of AHM that is owned by Honda Motor Co., Ltd. SUF ¶ 36. AHM (not HNA) administers the new

23

vehicle limited warranty for Plaintiffs' vehicles.  SUF ¶ 37.  HNA has no relationship (contractual or otherwise) to the Plaintiffs in this lawsuit, as it does not design, manufacture, warrant, advertise, market, distribute or repair Honda vehicles.  SUF ¶ 37. HNA does not, and has never, developed, manufactured, or sold vehicles.  SUF ¶ 38. HNA is not a consumer-facing entity and does not interact with consumers, even indirectly.  SUF ¶ 37.  Plaintiffs plead no facts in their Complaint concerning why HNA is a proper party to this dispute (because it is not).  Compl. at *passim*. HNA is properly dismissed from the lawsuit.  *Broken Drum Bar, Inc. et al. v. Site Centers Corp. et al.*, 2:19-cv-01445-ODW, 2019 WL 2211894 (C.D. Cal. May 22, 2019).

### CONCLUSION

For the foregoing reasons, summary judgment should be entered in favor of Defendants. In the alternative, HNA should be dismissed from the lawsuit and summary judgment should be granted in favor of Defendants on all vehicles except for the 2014 Honda Odyssey. Defendants respectfully request such other and further relief this Court deems just and appropriate.

DATED:     June 3, 2019

By:   /s/  Livia M. Kiser
Attorneys for Defendants
AMERICAN HONDA MOTOR CO., INC. and
HONDA NORTH AMERICA, INC.

24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Certificate of Service**

On June 3, 2019, I caused this document to be filed and served on all ECF-registered counsel of record using the Court's CM/ECF system.

/s/  Livia M. Kiser

Attorneys for Defendants
AMERICAN HONDA MOTOR CO., INC. and
HONDA NORTH AMERICA, INC.

MEMORANDUM OF POINTS AND AUTHORITIES ISO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
34417411.v2