Shimon Yiftach, Esq. (SBN 277387)
shimony@bgandg.com
Bronstein Gewirtz & Grossman
1925 Century Park East, Suite 1990
Los Angeles, CA 90067
T: (424) 322-0322
F: (212) 697-7296

*Attorneys for Plaintiffs*

[Additional counsel appear on signature page]

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| DENNIS MACDOUGALL, *et al.*,<br><br><br>Plaintiffs,<br><br>v.<br><br><br>AMERICAN HONDA MOTOR CO., INC., *et al.*,<br><br><br>Defendants. | Case No. 8:17-cv-01079-AG (DFMx)<br><br>CLASS ACTION<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT**<br><br>Filed Concurrently Herewith:<br>1. Plaintiffs' Statement of Genuine Disputed Facts and Conclusions of Law<br>2. Declaration of Jeffrey Osterwise and Exhibits<br><br><br>Hearing Date: August 5, 2019<br>Time: 10:00 a.m.<br>Location: Santa Ana Division, 10D<br>Judge: Hon. A. Guilford |

# TABLE OF CONTENTS

TABLE OF CONTENTS ...........................................................................................I

TABLE OF AUTHORITIES ................................................................................ III

MEMORANDUM OF POINTS AND AUTHORITIES ..................................... 1

I.   INTRODUCTION ........................................................................................ 1

II.  FACTUAL BACKGROUND...................................................................... 2

    A.   Honda's long history of failed attempts to cure the judder defect.................... 2

    B.   Plaintiffs' experiences of intermittent judder from their defective Odysseys. ........................................................................................... 7

    C.   Honda's expert's limited analysis of Plaintiffs' Odysseys ignores that the judder occurs intermittently. ............................................. 8

III. ARGUMENT................................................................................................ 9

    A.   Legal Standard ............................................................................... 9

    B.   The Court should deny Honda's motion for failing to identify the elements of Plaintiffs' claims for which Plaintiffs supposedly lack evidence. .................................................................................. 10

    C.   The Court should deny Honda's motion  because Honda hasn't met its burden to show absence of a genuine issues of material fact. ................... 12

    D.   Expert testimony is not required to establish the existence of the judder defect in Plaintiffs' Odysseys. ............................................. 16

    E.   The Court should deny Honda's motion  because there is ample evidence in the record for the jury to find in Plaintiffs' favor......................... 17

    F.   Plaintiffs are not required to prove that the judder defect manifested in their vehicles for a jury to find in their favor ............................................ 21

G.  Honda is not entitled to summary judgment on Plaintiffs' claims on behalf of Class Members owning or leasing Class Odysseys other than model year 2014. ........................................................................**23**

H.  HNA's motion for summary judgment on alternate grounds. .........................**25**

**IV.  CONCLUSION** ................................................................................................**25**

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Cases**

*Aguirre v. Home Depot U.S.A., Inc.*, 1:10-cv-00311-LJO-GSA, 2012 U.S. Dist. LEXIS 119984 (E.D. Cal. 2012) ................................................**16**

*Ainsworth v. KLI, Inc.*, 967 So. 2d 296 (Fla. Dist. Ct. App. 2007) .............**16**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).......................**9, 10, 18**

*Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306 (C.D. Cal. 2013) ............................................................................................................**19**

*Beyer v. Symantec Corp.*, 333 F. Supp. 3d 966 (N.D. Cal. 2018) ...............**22**

*Browning v. Unilever U.S. Inc.*, No. SACV1602210AGKESX, 2018 WL 6615064 (C.D. Cal. Dec. 17, 2018) ......................................**10, 11, 19**

*Cedano-Viera v. Ashcroft*, 324 F.3d 1062 (9th Cir. 2003) ...........................**12**

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)............................................**9**

*Christelles v. Nissan Motor Corp., U.S.A.*, 305 N.J. Super. 222, 701 A.2d 1317 (App. Div. 1997) .................................................................**16**

*Cole v. Gen. Motors Corp.*, 484 F.3d 717 (5th Cir. 2007) ..........................**21**

*Collins v. DaimlerChrysler Corp.*, 894 So. 2d 988 (Fla. Dist. Ct. App. 2004)............**22**

*Cox v. Aero Automatic Sprinkler Co.*, No. 5:14-CV-02723-EJD, 2015 WL 1848426 (N.D. Cal. Apr. 16, 2015) ..........................................**24**

*Daniel v. Ford Motor Co.*, 806 F.3d 1217 (9th Cir. 2015)...........................**23**

*Decker v. Mazda Motor of Am., Inc.*, No. SACV110873AGRNBX, 2014 WL 12584387 (C.D. Cal. Mar. 17, 2014)....................................**15, 22**

*Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913 (N.D. Cal. 2012)..........**12, 22, 23**

*Ford v. Ford Motor Co.*, No. CV 13-8335 PSG (SSX), 2014 WL 10293763 (C.D. Cal. July 10, 2014) ..................................................**20**

*Gen. Motors Acceptance Corp. v. Jankowitz*, 216 N.J. Super. 313, 523 A.2d 695 (App. Div. 1987) .........................................................................**11**

*Glaude v. Gates*, No. C08-04317 HRL, 2009 WL 2485731 (N.D. Cal. Aug. 7, 2009) ......................................................................................**19**

*Glenn v. Hyundai Motor Am.*, No. 15-cv-2052, 2016 WL 3621280 (C.D. Cal. June 24, 2016) ...............................................................**24**

*Hanreck v. Winnebago Indus., Inc.*, No. 16-CV-01163, 2019 WL 1383509 (M.D. Pa. Mar. 27, 2019)...............................................................**11**

*In re Ford Motor Co. E-350 Van Prod. Liab. Litig. (No. II)*, No. CIV. A. 03-4558, 2010 WL 2813788 (D.N.J. July 9, 2010) ...............................**22, 23**

*In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936 (N.D. Cal. 2018)....**passim**

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prods. Liab. Litig.*, 978 F. Supp. 2d 1053 ...............................**16**

*Kamerik v. Depuy Orthopaedics, Inc.*, No. CV1106920MMMMANX, 2013 WL 12322041 (C.D. Cal. Jan. 28, 2013).............................**16**

*Kearney v. Hyundai Motor Co.*, No. SACV 09-1298 DOC, 2010 WL 9093204 (C.D. Cal. June 4, 2010) .................................................**21**

*Martinez v. Stanford*, 323 F.3d 1178 (9th Cir. 2003). .........................**9**

*McMillan v. Johnson & Johnson*, No. Civ. 04-1180(RBK), 2005 WL 2000203 (D.N.J. Aug. 19, 2005).......................................**16**

*Milicevic v. Fletcher Jones Imports, Ltd.*, 402 F.3d 912 (9th Cir. 2005)...............**19**

*Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*, No. CV 05-2200 MMM (MCX), 2008 WL 11334030 (C.D. Cal. Mar. 17, 2008) ...............**20**

*Pardini v. Unilever United States, Inc.*, 961 F. Supp. 2d 1048 (N.D. Cal. 2013) ..............................................................**24**

*Rawson v. Ducommun Metals Co.*, 30 Fed. R. Serv. 2d 1199 (C.D. Cal. 1980) ..............................................................**24**

*Richter v. Monaco Coach Corp.*, No. 5:08-cv-207-WTH-DAB, 2009 WL 1537894 (M.D. Fla. June 2, 2009)......................................**11**

*Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978 (9th Cir. 2007). .................**10, 17, 18**

iv

*Spangler v. Cty. of Ventura*, No. 216CV09174ODWGJS, 2018 WL 3031464

(C.D. Cal. June 15, 2018) ........................................................................**20**

*Sumer v. Carrier Corp.*, No. 14-CV-04271-VC, 2015 WL 758314

 (N.D. Cal. Feb. 20, 2015) ......................................................................**11**

*Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054 (9th Cir. 2002)............**19**

*Zwiercan v. Gen. Motors Corp.*, 58 Pa. D. & C.4th 251 (Com. Pl. 2002)..................**22**

**Statutes**

Fed. R. Civ. P. 56(a). ..............................................................................**9**

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Prior to filing this lawsuit, Plaintiffs Dennis MacDougall, Ray Seow, Prabhanjan Kavuri, Ryan Parker, and Bryan Lentz (collectively, "Plaintiffs") made repeated trips to their Honda dealers seeking a cure for their intermittently malfunctioning transmissions in their Honda Odyssey vans.[1]  They complained to their Honda dealers, and directly to Defendant American Honda Motor Co., Inc. ("AHM"), of symptoms identical to those that AHM and Defendant Honda North America, Inc. ("HNA")[2] spent years trying to cure. PSOF ¶¶ 74, 75.

However, Honda contends that this Court should grant it summary judgment on each of Plaintiffs' claims on a theory that Plaintiffs cannot prove they suffered from the defect they allege.[3]  Honda bases this theory, and in effect its entire motion, on an average of 11.4 minutes of applicable test drive data its expert collected from each Plaintiffs' Odyssey. PSOF ¶¶ 12, 83. At best, this data shows only that Plaintiffs' vehicles were not, at those moments, manifesting the intermittent torque converter judder defect that they allege ███████████████████ is inherent in their Odysseys. PSOF ¶¶ 12, 57-58, 78-79, 84.

Despite Honda's arguments to the contrary, to the extent that Plaintiffs are required to prove the judder defect manifested in their Odysseys, a jury may find that Plaintiffs suffered from the judder defect based on Plaintiffs' testimony concerning their experiences with their Odysseys. Plaintiffs' testimony is buttressed by their repair records, including those that show that Honda dealers eventually believed that Plaintiffs suffered from the defect, and Honda's internal investigation documents.

---

[1] *See* Pls.' Statement of Genuine Disputes and Additional Material Facts and Conclusions of Law in Opp. to Defs.' Statement of Uncontroverted Facts and Conclusions of Law ("PSOF") (filed concurrently herewith) ¶ 74.
[2] AHM and HNA are together referred to herein as "Honda" or "Defendants."
[3] Defs.' Mem. in Supp. of their Mot. for Summ. J., ECF No. 155-1, at 16 ("Defs.' Mem.").

Honda cites no relevant authority that Plaintiffs must offer expert testing data evidencing manifestation of the defect where Honda's internal documents confirm that a defect exists in the Class Odysseys and has issued a series of countermeasures and Technical Service Bulletins ("TSBs") to its dealers, attempting to address the defect – including a 2016 TSB admitting that Honda lacked a permanent fix for the defect. PSOF ¶¶ 57-58, 63-64.

While Honda claims that its latest TSBs have now finally provided fully effective countermeasures, questions remain for the jury to determine whether Honda breached its warranties to Plaintiffs and violated consumer protection statutes by failing to disclose its knowledge of the defect and by failing to timely repair the defects. Plaintiffs purchased their Odysseys in 2014 and shortly after began to experience the judder defect. PSOF ¶ 70. The countermeasure that Honda claims "fixed" judder in the Odysseys was released on June 20, 2017 – the day before Plaintiffs filed this lawsuit and almost seven weeks after Plaintiffs notified Honda of their intent to file this lawsuit based on Honda's prior failures to remedy the defects in Plaintiffs' Odysseys when the presented them to Honda dealers for repairs. *See* Compl., ECF No. 1 at ¶ 112.

Boiled to its essence, Honda's motion is a plea to this Court to do exactly what it's not supposed to do on summary judgment - weigh the evidence, make credibility determinations and construe all inferences in its favor. The Court should deny Honda's motion.

## II.   FACTUAL BACKGROUND

### A.   Honda's long history of failed attempts to cure the judder defect.

This case concerns defective transmissions in model-year 2012-2016 Honda Odysseys with 6-speed automatic transmissions ("6AT") (the "Class Odysseys"), all of which are included within the 4th Generation of Honda Odysseys. ECF No. 147 at 3. Specifically, ███████████████████████████

1  ██████████████████████████████████████████████████████

2  ████████████████████████████████████████ PSOF ¶ 52. Each

3  Plaintiff experienced the judder defect in their Odyssey and, prior to filing this

4  lawsuit, unsuccessfully sought repairs from Honda under the written warranty

5  applicable to their Odyssey. PSOF ¶ 74.

6       Honda likes to emphasize that "vibration" in vehicles is normal and that it

7  happens for a lot of reasons unrelated to product defects. Defs.' Mem. at 8-9. But,

8  that's not relevant here. With respect to the Class Odysseys (and other Odysseys of

9  the same generation, and a wide range of other Honda vehicles with substantially

10  similar 6AT), ████████████████████████████████████████████

11  ████████████████████████████████████ PSOF ¶¶ 53-64..

12  Notably, despite now arguing that issues such as unbalanced tires, brake rotors,

13  wheels, driveline, etc. may produce unwanted vibrations, there is no evidence that

14  Honda seriously investigated these issues as the cause for the complaints it received

15  from owners of the Class Vehicles. PSOF ¶ 11.[i]  Honda knew early, and before

16  Plaintiffs purchased their vehicles, that there was a defect in the Class Vehicles'

17  torque converter.  It didn't disclose that knowledge to Plaintiffs or the Class, and

18  Honda took years following sale of Plaintiffs' vehicles to provide a suitable remedy.

19  ████████████████████████████████████████████████

20  ██████████████████████████████████████████████████████

21  ██████████████████████████████████████████████████████

22  ██████████████████████████████████████████████████████

23  ██████████████████████████████████████████████████████

24  ██████████████████████████████████████████████████████

25  ██████████████████████████████████████████████████████

26  ██████████████████████████████████████████████████████

27  ████████████████████████████████████████████

28

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1 ████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████

5 ████████████████████████████████████████████████████

6 ██████████████████████████████████████████

7    To correct this problem, Honda would need to reprogram the ECU in the Class

8 Odysseys. But that could not happen immediately, so Honda recommended a

9 temporary fix to its dealers in August 2016. Specifically, Honda issued TSB 16-060

10 which told dealers to flush of the automatic transmission fluid (ATF) as a "temporary

11 fix" for the judder while Honda develops an ECU software update as a

12 countermeasure. PSOF ¶ 63. The TSB stated that the dealers should "[m]ake sure the

13 customer is aware that this is a temporary fix and he or she will have to return once

14 the software is available to make sure the transmission judder is resolved." PSOF ¶

15 64. The TSB, which applies to all Class Odysseys, removes any doubt as to whether

16 Plaintiffs' Odysseys were sold in a defective condition that could cause their

17 transmission fluid to deteriorate prematurely and lead to unexpected and distracting

18 judder, hesitations, surges, bucking, and vibrations. PSOF ¶ 64.[iii]

19    After Plaintiffs notified Honda of their intent to file this lawsuit, ECF No. 1 at ¶

20 112, Honda finally released the first ECU update applicable to Plaintiffs' Odysseys

21 (the software for other Class Odysseys wasn't available until several months later).

22 PSOF ¶ 47. Dealers were notified of the countermeasure's availability in the June 20,

23 2017 TSB 17-043. Id. However, even that TBS stated that the software update may

24 not correct the ATF degradation in all Odysseys covered by the TSB. Id. TSB 17-044,

25 released the same day, calls for dealers to keep flushing the ATF for Odysseys that

26 continue to judder after receiving the software update. PSOF ¶ 48. Despite Honda

27 moving to dismiss Plaintiffs' express warranty claims at the inception of this case as

28 unripe based on AHM "fully expect[ing] TSBs 17-043 and 17-044 to "eliminate the

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

1   'judder' of which Plaintiffs complain," ECF No. 35-1 at 6, Honda offers no internal

2   data on the effectiveness of its TSBs. PSOF ¶ 26. ████████████████████████████████

3   ████████████████████████████████████████████████████████████████████████████████

4   ██████████████████████████████████████████████████████████

5        Despite all of this, Honda attempts to minimize the significance of the judder

6   defect by claiming that "very few 2014 Honda Odyssey vehicles ever manifested the

7   symptoms Plaintiffs complain about." Defs.' Mem. at 2. ████████████████████████████

8   ██████████████████████████████████████████████████ Honda admits that 5%

9   of 2014 Odyssey owners have received service under the TSBs. Defs.' Mem. at 6.

10  That, in and of itself, is a significant figure that would be material to Honda Odyssey

11  purchasers—who have still not been informed of this defect in the cars.

12       In addition, Defendants' warranty claim figure certainly underreports the total

13  population of 2014 Odyssey owners that have experienced the judder defect. For

14  example, the number of warranty claims is less than the number vehicles having

15  manifested the defect because Honda imposed a requirement that Odysseys test

16  positive via its own testing device for torque converter judder before receiving the

17  countermeasures under warranty. PSOF ¶ 67. For reasons that are discussed in more

18  detail below, including the intermittency of the defect and the expertise needed to

19  capture it in a test, ██████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████ PSOF ¶ 68.[4]

21  ████████████████████████████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████████████████████████████

24

25

26  ─────────────────

27  [4] ████████████████████████████████████████████████████████████████████████████████

28  ███████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████ [5]

### B.    Plaintiffs' experiences of intermittent judder from their defective Odysseys.

Plaintiffs each purchased a model year 2014 Class Odyssey between December 2013 and September 2014, and each experienced the judder defect within their first year owning the vehicle. PSOF ¶ 70. Plaintiffs' experiences with the defect demonstrate that its manifestation scared them and created an unsafe and distracted driving condition. PSOF ¶¶ 29, 72.

Plaintiffs' repair records confirm that that they sought repair of the defect on more than one occasion prior to filing their lawsuit,  PSOF ¶ 74, and Plaintiffs' evidence shows that authorized Honda service technicians confirmed symptoms of the judder defect in many of Plaintiffs' vehicles.  PSOF ¶ 71.   Those records, as well as Plaintiffs' complaints directly to Honda and online, corroborate that Plaintiffs were experiencing symptoms of the judder defect.  PSOF ¶¶ 74, 75. And, after Honda suggested (and decided to cover under warranty) flushing the Class Odysseys' ATF as a temporary countermeasure to the judder defect, most Plaintiffs' dealers flushed their Odysseys' ATF. PSOF ¶ 76.[6]  The flush for Plaintiffs Parker and Seow was covered under warranty, and Plaintiff Parkers' dealership specifically noted that it was performing service under TSB 16-060. PSOF ¶ 76. This action by the dealers was an acknowledgement that Plaintiffs' Odysseys had malfunctioned due to the judder defect Honda admitted in TSB 16-060 exists in Plaintiffs' Odysseys, and their acknowledgment was confirmed by the fact that the condition of each Plaintiffs' Odyssey improved for a time following receipt of Honda's countermeasure. PSOF ¶

████████████████████████████████

████████████████████████████████████████████████████████████

The ATF in Mr. MacDougall's Odyssey was flushed prior to the release of TSB 16-060, after the dealership found that the ATF was dirty with less than 26,000 miles on the vehicle. PSOF ¶¶ 74, 76. ATF does not deteriorate that fast in a properly operating automatic transmission.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

77.  Although none of Honda's countermeasures have completely cured the defect in Plaintiffs' Odysseys. *Id.*

Honda attempts to minimize Plaintiffs' experiences with the judder defect by implying they have made outlandish assertions that they have not actually made. For example, Honda implies that Amy Parker testified that her Odyssey's judder defect was "so severe that they were throwing up in their seats." Defs.' Mem. at 20. Mrs. Parker said no such thing. Nor did Mr. MacDougall make a "sensational[] claim[]" that the judder defect may cause his Odyssey to stop functioning in the middle of traffic. Defs.' Mem. at 4. Honda's characterization of his testimony, which it does not cite or submit for the record, is purposefully misleading. PSOF ¶ 73.

Honda also cherry-picks testimony from Mrs. MacDougall to argue that she does not feel unsafe in her vehicle. Whether or not Mrs. MacDougall felt scared in her Odyssey, she testified that the judder defect felt like a "strong jolt" "like maybe somebody tapped your bumper," which is not typical of a safe and properly functioning vehicle and which is objectively distracting to a driver. PSOF ¶ 72.

### C.   Honda's expert's limited analysis of Plaintiffs' Odysseys ignores that the judder occurs intermittently.

Honda's expert, Jason Arst, who has never felt torque converter judder in any Honda Odyssey, makes a sweeping conclusion that Plaintiffs' Odysseys "are in all respects operating normally and do not manifest 'judder' arising from or related to the vehicles' transmissions or torque converters." PSOF ¶ 80.

Mr. Arst bases his conclusion on snapshots taken of data from Plaintiffs' Odysseys' ECUs in late summer and early fall of 2017. PSOF ¶¶ 83-86. The snapshots were captured by plugging a Honda Diagnostic System computer into the vehicles to collect data regarding the engine speed and transmission input and output shaft speeds. *Id.* Mr. Arst testified that to capture a snapshot (*i.e.*, preserve the data), he or his colleague would need to "trigger" the device, which they purportedly would do when they felt an aberration in the vehicle. PSOF ¶ 81.  Mr. Arst admitted that when

the judder defect manifests, it is momentary, lasting from a fraction of a second to a few seconds. PSOF ¶ 82.

Mr. Arst collected an average of 11.4 minutes of relevant data from each Plaintiffs' Odyssey. PSOF ¶ 83.[7] He admits that he does not know whether the Plaintiffs' Odysseys malfunctioned due to the judder defect prior to his tests, or if they have done so since his tests. PSOF ¶ 84. He does concede, however, that an ATF flush prior to his test could impact the reliability of his tests, making it less likely that the judder defect would manifest during the test. PSOF ¶ 85.

Mr. Arst's testimony also explains why dealers often fail to replicate customer complaints of judder on an automatic transmission snapshot – the dealers need to drive not only with the intention to manifest the judder defect but also with a hyperfocus on the vehicle. PSOF ¶ 86.

## III.   ARGUMENT

### A.   Legal Standard

Summary judgment is appropriate only when "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), the Supreme Court explained that material facts are those which may affect the outcome of the case, and a dispute is genuine where there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. The burden is first on the moving party to show an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thus, where a moving party's papers are insufficient to support a motion for summary judgment, or reveal a genuine

---

[7] As Honda incorporates by reference its motion to strike Dr. Parker's opinions, Plaintiffs incorporate by reference their response to that motion. As discussed therein, Honda's attacks on Dr. Parker are unfounded. But, as discussed below, whether Plaintiffs' Odysseys malfunctioned from the judder defect does not come down to a battle between Dr. Parker and Honda's expert, Jason Arst.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

1  issue of material fact, summary judgment is inappropriate. *Martinez v. Stanford*, 323

2  F.3d 1178, 1182–83 (9th Cir. 2003).

3  In deciding a motion for summary judgment, "[t]he evidence of the nonmovant

4  is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*,

5  477 U.S. at 255. "[T]he Court may not weigh conflicting evidence or make credibility

6  determinations." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir.

7  2007).  In addition, "[a]t the summary judgment stage, a party does not necessarily

8  have to produce evidence in a form that would be admissible at trial, as long as the

9  party satisfies the requirements of Federal Rules of Civil Procedure 56." *Johnson v.*

10  *Sager*, 640 F. App'x 637, 640 (9th Cir. 2016) (quotations omitted),

11  **B.**     **The Court should deny Honda's motion for failing to identify the**
12  **elements of Plaintiffs' claims for which Plaintiffs supposedly lack**
13  **evidence.**

14  Given that Honda must prove, based on the allegedly undisputed material facts,

15  that it is entitled to judgment as a matter of law, its motion does not come close to

16  meeting its burden. Apart from lengthy argument as to why it is supposedly

17  undisputed that Plaintiffs' Odysseys currently operate properly, which Plaintiffs do

18  not concede, Honda barely explains why that fact leads to judgment in its favor.

19  Honda makes statements such as "Plaintiffs' complaint remains tethered to their

20  single factual claim alleging that their vehicles suffer from Atypical Vibrations," and

21  "[t]he foundation of Plaintiffs' entire complaint is that their 2014 Odyssey vehicles

22  have Atypical Vibrations." Defs.' Mem. at 14-15. But, Honda offers no analysis of

23  how that fact, if true, would cause Plaintiffs to lack evidence necessary to prove an

24  element of their claims.  Honda has that burden on its motion for summary judgment.

25  *See In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 944 (N.D. Cal. 2018)

26  ("When a party so moves, it must identify the elements of the claims upon which the

27  nonmoving party has failed to produce sufficient evidence."); *see also Anderson*, 477

28  U.S. at 248 ("the substantive law will identify which facts are material"). To the

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

extent that Honda relies on its citation to this Court's decision in *Browning v. Unilever U.S. Inc*., No. SACV1602210AGKESX, 2018 WL 6615064 (C.D. Cal. Dec. 17, 2018),[8] that is hardly enough to provide the Court and Plaintiffs fair notice of the grounds on which Honda believes it is entitled to judgment. And, *Browning* is also inapplicable here. There, the plaintiff could not provide "significant probative evidence" of the alleged defect because it was effectively "made-up," *Browning,* 2018 WL 6615064, at *2. ████████████████████████████████

████████████████████████████████████████████

████ PSOF ¶ 53-62.

As just one example of a claim that stands regardless of whether Plaintiffs' Odysseys are currently juddering, Plaintiffs are entitled to relief from Honda for breach of express warranty. *See, e.g.*, *In re MyFord Touch Consumer Litig*., 291 F. Supp. 3d 936, 957-58 (N.D. Cal. 2018) (noting that an express warranty "fails of its essential purpose when a warrantor fails to successfully repair defects within a reasonable time," and that two repair attempts may suffice); *see also Sumer v. Carrier Corp*., No. 14-CV-04271-VC, 2015 WL 758314, at *1 (N.D. Cal. Feb. 20, 2015) ("[U]nder California law, a repair or replace remedy fails of its essential purpose only if repeated repair attempts are unsuccessful within a reasonable time."); *Richter v. Monaco Coach Corp*., No. 5:08-cv-207-WTH-DAB, 2009 WL 1537894, at *4 (M.D. Fla. June 2, 2009) (interpreting Florida law, "[a] repair-or-replace warranty fails of its essential purpose if the warrantor does not successfully repair defects within a reasonable time or within a reasonable number of attempts."); *Gen. Motors Acceptance Corp. v. Jankowitz*, 216 N.J. Super. 313, 329, 523 A.2d 695, 703 (App. Div. 1987) ("the exclusive remedy of repair and replacement of defective parts fails of

---

[8] Plaintiffs are left to guess because Honda references *"Unilever"* and cites to *"Id.*" without providing a full citation or previously citing to a *"Unilever"* decision or including the *Browning v. Unilever* decision in its table of authorities. Defs.' Mem. at 16. Honda later cites to another *Unilever* decision. Defs.' Mem. at 24.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

its essential purpose if, after numerous attempts to repair, the car did not operate as a new car should free of defects."); *Hanreck v. Winnebago Indus., Inc.*, No. 16-CV-01163, 2019 WL 1383509, at *13 (M.D. Pa. Mar. 27, 2019) ("Because the number of attempted repairs and the continued need for repeated repairs of the same issue, the court finds that Plaintiffs have raised a genuine issue of material fact as to whether the total number of repairs constitutes a breach of the express warranty and a failure of its essential purpose.") (applying Pennsylvania law).

In addition, even though Plaintiffs are able to prove that the judder defect manifested in their Odysseys, they are not required to prove such manifestation to obtain judgment here. Plaintiffs were injured at the point of sale by Honda's failure to disclose its knowledge of the judder defect. *See Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 919 (N.D. Cal. 2012); *see also* Compl., ECF No. 1, ¶¶ 52, 61, 159, 172, 185, 206, 218.

After failing to make specific arguments as to why it is entitled to judgment, Honda should be barred from doing so for the first time in its reply brief. *See Cedano-Viera v. Ashcroft*, 324 F.3d 1062, 1066 (9th Cir. 2003) ("[W]e decline to consider new issues raised for the first time in a reply brief.").

### C. The Court should deny Honda's motion because Honda hasn't met its burden to show absence of genuine issues of material fact.

Honda claims that Mr. Arst's tests show, to a reasonable degree of scientific certainty, that the transmissions in Plaintiffs' vehicles *operate* as designed. Defs.' Mem. at 3. Actually, Honda and Mr. Arst vastly overstate what those tests show. First, Mr. Arst's analysis reveals nothing about how Plaintiffs' vehicles operated in the past, or how they operate now. Mr. Arst admitted this. PSOF ¶ 84. In fact, at the time of the inspections, each Plaintiffs' Odyssey had already received the partial, temporary remedy of a transmission fluid flush, which Honda's expert admitted could mask the judder defect. PSOF ¶ 85. This materially diminishes the value, if any, of

1  using Mr. Arst's analysis to guess at whether Plaintiffs' Odysseys malfunctioned due
2  to the judder defect either before or after Mr. Arst's tests.

3        Second, the test drive data from Plaintiffs' Odysseys only shows how the
4  vehicles operated during those brief test drives. But, each Plaintiffs' experience with
5  the judder defect is that it manifests intermittently. PSOF ¶ 79. ███████████
6  ████████████████████████████████████████████████████████████
7  ████████████████████████████████████████████████████████████
8  ██████████████████████████████████████ *Id.* Thus, the lack of a positive test
9  for torque converter judder during a single test drive does prove that Plaintiffs'
10  vehicles did not exhibit the judder defect during that time period.

11        Finally, it's even an overstatement to claim that Mr. Arst's data shows how the
12  Plaintiffs' Odysseys operated during the full test drives. The data collected by Mr.
13  Arst only shows the performance of the vehicles during the windows of time that
14  Defendants' expert took "snapshots". PSOF ¶ 12.  Mr. Arst did not collect data that
15  spans from the start to the end of each test drive. PSOF ¶ 81. In total, Mr. Arst has
16  relevant, pre-countermeasure data for an average of approximately 11.4 minutes per
17  vehicle. PSOF ¶ 83. Although, Mr. Arst collected additional snapshots after Honda
18  technicians gave each vehicle an ATF flush and updated the ECU software, assuming
19  Honda's countermeasures are even temporarily effective, it's expected that this data
20  wouldn't show torque converter judder. PSOF ¶ 85.

21        Further, Mr. Arst's snapshots were not generated automatically based on the
22  performance of the vehicles. PSOF ¶ 81. Rather, they were generated by Mr. Arst (or
23  his colleague) hitting a trigger to capture and record that slice of data. *Id.* While Mr.
24  Arst claims he was trying to cause and capture data showing torque converter judder
25  in Plaintiffs' vehicles, doing so would not be in his clients' interest. And, his own
26  testimony undermines his claim that he could reliably capture torque converter judder
27  events, if he tried to. PSOF ¶ 87. Mr. Arst tries to save his opinion by claiming that he
28  can reproduce judder if it exists, but that is pure speculation. *Id.*

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Honda tries to bolster Mr. Arst's opinions by asserting that his testing included "sensors of the vibration levels in the transmissions and torque converters." Defs.' Mem. at 8. A generous interpretation of this false representation is that it's just poorly worded. Mr. Arst didn't use sensors to measure "vibrations"; he plugged a Honda Diagnostic System computer into the vehicles to record engine speed, transmission output shaft speed, and transmission input shaft speed. PSOF ¶ 81.

Recognizing the limited utility of their expert's findings, Honda tries to bolster the reliability of Mr. Arst's work by claiming that he performed an inspection protocol that was agreed to by the parties. The fact that Plaintiffs *permitted* Honda to inspect their vehicles in the manner that Honda requested does not connote *agreement* that such inspection would be reliable or relevant to this matter.

Honda also attempts to knock down Plaintiff's expert, Dr. Parker, by attributing to him an opinion he never made (i.e., that intermittent judder cannot be captured by testing), and then by rebutting that opinion with a non-sequitur (i.e., that Honda engineers identifying the defect, identifying its root cause, and developing a countermeasure shows that the defect can be captured using Mr. Arst's test). Defs.' Mem. at 18. Dr. Parker does not contest that Mr. Arst's test *can* capture evidence of torque converter when it occurs, but he does dispute Mr. Arst's overbroad conclusion that the absence of evidence of torque converter judder during a brief inspection proves conclusively that a vehicle lacks a defect that can cause torque converter judder at other times.

So, while Honda claims "it's hard to imagine a more thorough testing regime," Defs.' Mem. at 18, that's merely a failure of Honda's imagination. If Honda wanted to determine, in a more reliable manner, that Plaintiffs' Odysseys do not manifest torque converter judder, it should have captured more than an average of 11.4 minutes of applicable data related to the vehicles. And it should have tested the cars on more than one occasion.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

In summary, Mr. Arst's data tells us very little about Plaintiffs' vehicles that is relevant to this case. The gaps in Mr. Arst's data and analysis show that Honda hasn't proven that Plaintiffs' Odysseys did not malfunction due to the judder defect that Honda has admitted was inherent in the vehicles.

Also, Honda plainly misrepresents *Decker v. Mazda* when arguing that evidence supposedly demonstrating the absence of a defect defeats Plaintiffs' claim. Defs.' Mem. at 16. In *Decker*, the plaintiff's allegation was limited to Mazda's failure to reimburse her pursuant to the terms of a *specific* warranty extension that the parties agreed was intended to cover a *specific* engine condition, that, according to the plaintiff's own allegations, occurs only under limited conditions after driving very short distances. *Decker v. Mazda Motor of Am., Inc*., No. SACV110873AGRNBX, 2014 WL 12584387, at *1 (C.D. Cal. Mar. 17, 2014). The undisputed evidence in *Decker* proved that the defect could not have manifested for the event the Plaintiff sought reimbursement because she did not engage in very short distance driving. *Id.* at *3-5. Thus, the court did not grant Mazda's motion for summary judgment on grounds that Mazda proved the absence of a defect. Rather, the court found that the facts surrounding the specific instance for which the plaintiff sought reimbursement showed that the incident wasn't *caused* by the defect. *Id.* In fact, the court had no reason to, and did not, consider whether the plaintiff's car was defective. The plaintiff's claim was based not on the existence of the defect, but instead on Mazda's failure to reimburse the plaintiff related to a specific incident, that was conclusively determined to be unrelated to the defect, even if it existed.

Moreover, unlike in *Decker,* Plaintiffs here took their vehicles to Honda dealers after experiencing the same symptoms Honda's internal investigation was addressing, and the dealers determined that the condition of Plaintiffs' Odysseys merited them receiving the band-aid solution that Honda had available at the time – an ATF flush. PSOF ¶ 70, 71, 74, 76. This evidence, alone, is sufficient to show a genuine dispute as to whether Honda sold Plaintiffs' Odysseys with defective transmissions, and whether

15

it took years to completely repair them (even, assuming Honda has actually solved its long-term problem).

### D. Expert testimony is not required to establish the existence of the judder defect in Plaintiffs' Odysseys.

Honda claims Plaintiffs have failed to substantiate their claims through any technical means. Defs.' Mem. at 7. But, Plaintiffs are not required to rely on expert testing to prove their claims, and Honda cites no applicable authority requiring such testing. *See Ainsworth v. KLI, Inc.*, 967 So. 2d 296, 302 (Fla. Dist. Ct. App. 2007) ("plaintiff's testimony regarding a malfunction is sufficient circumstantial evidence, without expert corroboration…to reach the jury); *Christelles v. Nissan Motor Corp., U.S.A.*, 305 N.J. Super. 222, 230, 701 A.2d 1317, 1321–22 (App. Div. 1997) (the plaintiffs' testimony that their vehicle bucked and stalled "established objective facts"; expert testimony was not required to prove the automobile defect). A jury is capable of linking Plaintiffs' testimony concerning their experiences and their repair records to Honda's years-long search for a fix to judder in its 6AT vehicles coupled with Honda's internal documents admitting the defect exists in the Class Odysseys. PSOF ¶ 17. *See, e.g.*, *Kamerik v. Depuy Orthopaedics, Inc.*, No. CV1106920MMMMANX, 2013 WL 12322041, at *4 (C.D. Cal. Jan. 28, 2013) (quoting *McMillan v. Johnson & Johnson*, No. Civ. 04-1180(RBK), 2005 WL 2000203, at *3 (D.N.J. Aug. 19, 2005) ("common sense might allow a jury to reason from a locked steering wheel to a defective car").

Requiring expert identification of the defect here would be particularly unfair given the intermittent nature of the defect. *See, e.g., In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prods. Liab. Litig.*, 978 F. Supp. 2d 1053, 1089 (2013)  (expert need not perform testing and this Court allowed testimony where expert opined "that intermittent software failure is not amenable to testing."); *Aguirre v. Home Depot U.S.A., Inc.*, 1:10-cv-00311-LJO-GSA, 2012 U.S. Dist. LEXIS 119984, at *14 (E.D. Cal. 2012) ("the problem could be intermittent in

nature, … which would explain how the boom lift could have malfunctioned previously but worked properly when inspected by the experts…. Thus, simply because the boom lift operated properly when inspected by the experts does not show that the main boom cable harness was repaired prior to the experts' inspections.").

While Honda asks the Court to rely exclusively on its purportedly "objective, affirmative technical evidence," doing so would be contrary to the Court's prohibition on weighing the evidence on a motion for summary judgment. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir.2007). Further, given the limitations of Mr. Arst's testing described above, relying on his opinions should not lead the Court to find in Honda's favor on this motion.

Moreover, extinguishing Plaintiffs' claims for lack of expert identification of the defect would be punitive in these circumstances, and discourage future injured consumers from taking advantage of purported remedies offered after the commencement of litigation. Shortly after filing this action, Plaintiffs permitted Honda to install its countermeasures in their Odysseys in hopes that it would cure the unsafe defect in their vehicles. PSOF ¶ 18-22. Although the judder defect persists in their Odysseys, the condition improved for a period of time following the post-litigation countermeasures, making it more difficult to test for an already intermittent defect.  PSOF ¶ 77. Plaintiffs should not lose their right to relief for their injuries simply because Honda finally provided a more effective countermeasure to the defect Plaintiffs had been suffering through.

### E.   The Court should deny Honda's motion  because there is ample evidence in the record for the jury to find in Plaintiffs' favor.

By focusing exclusively on how the Plaintiffs' vehicles operated during the brief test drives conducted by their expert, Mr. Arst, Honda ignores Plaintiffs' full experience with the judder defect. Plaintiffs have substantial evidence that their vehicles malfunctioned due to the judder defect. That evidence includes records of their visits to Honda dealers for repair, their pre-suit complaints to Honda, and their

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

1   own testimony – all of which mirrors the judder defect that Honda spent years trying

2   to address. PSOF ¶¶ 71, 74-79. The court must credit this evidence and draw all

3   inferences from it in Plaintiffs' favor, as the non-moving party. *Anderson*, 477 U.S. at

4   255; *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir.2007).

5          Notwithstanding this legal standard, Honda's motion is replete with demands

6   that this Court ignore Plaintiffs' evidence and draw all inferences against them. For

7   example, Honda argues that Plaintiffs' allegations suggest that their vehicles are

8   undrivable, yet they continue to drive their Odysseys, which must mean there is no

9   defect. However, Honda spent years trying to cure the defect that Plaintiffs allege and

10  the nature of the defect does not suggest that drivers would typically stop driving their

11  Odyssey altogether. Doing so would not be a practical option for the vast majority of

12  Odyssey owners who would not have the wherewithal to simply buy a replacement

13  car. *MyFord Touch,* 291 F. Supp. 3d at 947 (consumers are not required to introduce

14  evidence that they ceased using their vehicles to demonstrate that they are

15  unmerchantable).

16         Honda also contends that Plaintiffs having not sought repair for the defect since

17  receiving the countermeasures (after filing their Complaint), shows that they are not

18  experiencing the defect as they allege in the Complaint and that the countermeasures

19  were completely effective. Regardless of whether Plaintiffs' have returned to their

20  dealers for further repairs following their post-Complaint countermeasures, Honda is

21  again ignoring Plaintiffs' history with the vehicles, which includes several

22  unsuccessful requests for repair of the defect.

23         Honda argues that Plaintiffs' lay testimony regarding their experience with their

24  Odysseys is not sufficient to create an issue of fact for the jury. However, Honda fails

25  to acknowledge that Plaintiffs' testimony does not stand alone. It is buttressed by the

26  evidence of Honda's investigation into the judder defect, by Honda dealers finally

27  flushing Plaintiffs' ATF (the suggested temporary remedy available at the time for the

28  judder defect), and even the modest improvements in judder that Plaintiffs saw after

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

receiving the countermeasures. PSOF ¶ 77. The proper inference to be drawn from this evidence is that the Plaintiffs' Odysseys manifested the judder defect. *See MyFord Touch*, 291 F. Supp. 3d at 947, n. 6 (crediting the plaintiffs' own testimony concerning their experiences with their vehicles to find sufficient proof to create an issue for the jury that their vehicles were unmerchantable); *see also Milicevic v. Fletcher Jones Imports, Ltd*., 402 F.3d 912, 919 (9th Cir. 2005) (Mercedes admitted defect by attempting repairs under warranty); *Asghari v. Volkswagen Grp. of Am., Inc*., 42 F. Supp. 3d 1306, 1328 (C.D. Cal. 2013) (plaintiffs alleging they had parts replaced gives rise to inference of physical manifestation of defect) .

Further, Honda relies on wholly inapplicable authority when making its argument that Plaintiffs cannot rely on their own testimony here. For example, Honda relies on this Court's reasoning in *Browning* to discredit Plaintiffs' testimony as "uncontrolled" statements and "conjecture and hypothetical". Defs.' Mem. at 21. In *Browning*, the court refused to permit plaintiffs to "heavily rely on consumer complaints to prove both injury and causation," which were "uncontrolled" statements. *Browning*, 2018 WL 6615064, at *3. Here, Plaintiffs are testifying about their *own* experiences which are not "uncontrolled," "conjecture," or hypothetical. And, Plaintiffs present other evidence that corroborates their experiences, including their service records and the extensive record of Honda's efforts to fix its judder problem. Honda also relies on *Glaude v. Gates*, No. C08-04317 HRL, 2009 WL 2485731, at *7 (N.D. Cal. Aug. 7, 2009), where a plaintiff-employee asserting a retaliation claim sought to advance his theory that the alleged bases for disciplinary actions were pretextual by relying on his experience with people and his instincts to prove his employer's motives.[9] Plaintiffs here don't speculate about anyone's motives or even reach any conclusions about the cause for the problems in their Odysseys.

---

[9] Honda also relies on *Villiarimo v. Aloha Island Air, Inc*., 281 F.3d 1054, 1061-64 (9th Cir. 2002), another inapplicable employment case where the plaintiff lacked evidence that the proffered reasons for her termination were pretextual.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

1   Plaintiffs testify about their experience with the vehicles. It will be up to the jury to

2   determine whether Plaintiffs' testimony is consistent with the judder defect that

3   Honda admits is inherent in its Odysseys, after considering such testimony in

4   connection with all the evidence that will support the jury reaching such conclusion.

5        For this reason, Honda's reliance on *Milton H. Greene Archives, Inc. v. CMG*

6   *Worldwide, Inc*., No. CV 05-2200 MMM (MCX), 2008 WL 11334030, at *9 (C.D.

7   Cal. Mar. 17, 2008) is  misplaced. There, the defendant in a copyright infringement

8   case sought to rely on a declaration from its president that it lost business

9   opportunities from the plaintiffs' conduct. The declaration was conclusory and

10  speculative because it did not identify any opportunity lost or otherwise provide

11  factual support for the declaration's claims. Here, Plaintiffs don't offer conclusions.

12  Instead, they describe their experiences with their Odysseys. And *Spangler v. Cty. of*

13  *Ventura*, No. 216CV09174ODWGJS, 2018 WL 3031464, at *4 (C.D. Cal. June 15,

14  2018), also doesn't advance Honda's arguments. In that case, the plaintiff sought to

15  offer an opinion matching a boot to a footprint she had seen on a hill six months

16  earlier, despite having no training or expertise in shoe print identification.

17       Honda also claims that "*In re Ford Tailgate Litig.* is directly on point." Defs.'

18  Mem. at 21. Presumably Honda meant to cite to *Ford v. Ford Motor Co*., No. CV 13-

19  8335 PSG (SSX), 2014 WL 10293763 (C.D. Cal. July 10, 2014), given that the

20  language it quotes does not appear in *In re Ford Tailgate Litig.*, but does appear in

21  *Ford v. Ford Motor Co*. Regardless, *Ford v. Ford Motor Co*. does not support

22  Honda's argument that Plaintiffs' testimony cannot establish the existence of the

23  judder defect.

24       In that case, the court determined that the plaintiffs were required to prove that

25  that their vehicle's axle failed before the end of its useful life, *Ford*, 2014 WL

26  10293763, at *4, despite the vehicle having been driven over 220,000 miles before the

27  axle failed.  *Id.* at *2. The court granted summary judgement in the defendant's favor

28  not because the jury lacked evidence that the defect existed, as Honda claims, but

1    rather because the plaintiff advanced an unworkable theory for determining the useful

2    life of a vehicle part. *Id.* at *4. Specifically, the plaintiff proposed that the axle should

3    last for the life of the vehicle, to which the court reasoned that "[i]f Plaintiffs mean

4    that the rear axle should last for the life of the vehicle, including its rear axle, then

5    their reasoning is circular. If they mean that the rear axle should last until some other

6    part of the vehicle's frame fails, then they have proposed a standard that is impossibly

7    vague, and lacks any reasoned foundation." *Id.* ████████████████████

8    ███████████████████████████████████████████████ PSOF ¶¶

9    57-58. And, the jury would have a reasoned foundation for assessing whether the

10   Plaintiffs' experienced symptoms of the defect, namely that the symptoms that

11   Plaintiffs complained of to their dealers are identical to those that Honda sought to

12   correct; the dealers (eventually) treated Plaintiffs as if their vehicles had symptoms of

13   the judder defect, and, once the Plaintiffs vehicles received countermeasures, their

14   judder in their vehicles improved, though it was not fully resolved. PSOF ¶ 71, 74-79.

15   Based on these facts, the jury can make a reasoned determination that Plaintiffs'

16   vehicles manifested the defect that Honda has admitted was present in their Odysseys.

17   **F.    Plaintiffs are not required to prove that the judder defect**
     **manifested in their vehicles for a jury to find in their favor.**

18

19   Although there is ample evidence from which the jury can find that Plaintiffs'

20   Odysseys malfunctioned from the judder defect, Plaintiffs' right to judgment does not

21   depend on such a finding. Plaintiffs were injured at the point of sale by Honda's

22   failure to disclose its knowledge of the judder defect, because Plaintiffs would have

23   bargained for a lower purchase price had they known about the inherent defect and the

24   possibility that it may manifest as torque converter judder. *Kearney v. Hyundai Motor*

25   *Co*., No. SACV 09-1298 DOC, 2010 WL 9093204, at *5 (C.D. Cal. June 4, 2010) ("a

26   defect present at the time of purchase" "reduce[s] the car's value and deprive[s] the

27   consumer of the benefit of the bargain, even when the alleged defects d[oes] not later

28   materialize") (citing *Cole v. Gen. Motors Corp*., 484 F.3d 717, 723 (5th Cir. 2007));

21

*In re Ford Motor Co. E-350 Van Prod. Liab. Litig. (No. II)*, No. CIV. A. 03-4558, 2010 WL 2813788, at *48 (D.N.J. July 9, 2010) (Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") claim does not require manifestation); *In re: Gen. Motors LLC Ignition Switch Litig.*, No. 14-MC-2543 (JMF), 2016 WL 3920353, at *26 (S.D.N.Y. July 15, 2016) ("FDUTPA injury inquiry — as interpreted by the *Carriuolo Court* — focuses on what the defendant did, not what harm the individual plaintiff suffered") (relying on the *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 981 (11th Cir. 2016)); *Zwiercan v. Gen. Motors Corp.*, 58 Pa. D. & C.4th 251 (Com. Pl. 2002) (manifestation not required under the Pennsylvania Unfair Trade Practices and Consumer Protection Law when the manufacturer had a duty to inform of a known defect); *In re Gen. Motors LLC Ignition Switch Litig.*, 339 F. Supp. 3d 262, 282 (S.D.N.Y. 2018) ("manifestation of defect is not required under the New Jersey Consumer Fraud Act").[10]

"A manufacturer has a duty to disclose safety risks in four situations: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts." *Decker v. Mazda Motor of Am., Inc.*, No. SACV 11-0873 AG MLGX, 2011 WL 5101705, at *3 (C.D. Cal. Oct. 24, 2011). Here, Honda had exclusive knowledge of the judder defect that it had a duty to disclose to plaintiffs. *Id.* at *4 ("a manufacturer has a duty to disclose any defects that fall within the warranty period, whether relating to safety or to costly repairs, that would have caused the consumer to not purchase the car if they had been disclosed."); *see also Beyer v. Symantec Corp.*, 333 F. Supp. 3d

966, 978–79 (N.D. Cal. 2018) (noting that recent California Court of Appeal opinions have cast into doubt that a duty to disclose arises only from a safety defect). It is "reasonable to infer that a consumer who unknowingly buys" a defective product "acquires in a transaction less than he or she would have absent the defect." *Donohue v. Apple, Inc*., 871 F. Supp. 2d 913, 920 (N.D. Cal. 2012) (quotations omitted).

Even if the Court decides that Plaintiffs are required to prove a safety defect in order to establish that Honda had a duty to disclose its knowledge of the judder defect, there is ample evidence for a jury to find that manifestation of the judder defect creates an unsafe condition by impeding the proper functioning of the transmission and distracting the driver of the vehicle.

For example, in *MyFord Touch*, although the court found that the plaintiffs need not prove that the defect pose safety concerns, the court found that the plaintiffs could do so without proof of an accident caused by the defect. 291 F. Supp. 3d at 948. It is sufficient for a plaintiff to show that the defect creates hazardous conditions or dangerous distractions. *Id.* The court in *MyFord Touch* credited the plaintiffs' testimony concerning the distractions caused by the defect to find that a jury could conclude the defect rendered the vehicles unsafe. *Id.* at 948-49. Here Plaintiffs testimony and the numerous complaints Honda received from other customers the safety issues and driver distraction created by the defect. PSOF ¶ 69. *See also Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225-26 (9th Cir. 2015) ("Alleged defects that create unreasonable safety risks are considered material," "A reasonable fact finder could infer that a vehicle that experiences premature and more frequent tire wear would pose an unreasonable safety risk) (quotations omitted).

### G.   Honda is not entitled to summary judgment on Plaintiffs' claims on behalf of Class Members owning or leasing Class Odysseys other than model year 2014.

Honda asserts that it is entitled to summary judgment on Plaintiffs' claims on behalf of all other owners or lessees of the Class Odysseys, aside from the 2014

Odysseys. Honda's argument is not properly raised on a motion for summary judgment.  It is an argument that is proper for the Court to consider in the context of Plaintiffs' motion for class certification, where the Court will determine whether common issues predominate for the classes that Plaintiffs' seek to represent, whether Plaintiffs' claims are typical of those classes, and whether Plaintiffs will adequately represent those classes. *See, e.g.*, *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 922 (N.D. Cal. 2012) ("arguments [that] boil down to questions of whether common issues predominate and whether plaintiff can adequately represent absent class members, [are] issues that are better resolved at the class certification stage.").

While Honda puts forth some evidence of differences between the model years that constitute the fourth generation Honda Odysseys (model years 2011-17), it does not explain how any of those differences are material to the issues in this case. And, Honda certainly does not put forth evidence to counteract the facts that it investigated judder in the Class Odysseys in a single investigation, issued TSBs that apply to several model years of the Class Odysseys, and offer countermeasures for all the Class Odysseys that were identical in all material respects. PSOF ¶¶ 55-58, 63, 67. *See also Glenn v. Hyundai Motor Am.*, No. 15-cv-2052, 2016 WL 3621280, at *16 (C.D. Cal. June 24, 2016) (a plaintiff may assert class claims for similar models not purchased by the plaintiff).

Moreover, the authority Honda cites for its argument doesn't apply. Defs.' Mem. at 21 (citing *Rawson v. Ducommun Metals Co.*, 30 Fed. R. Serv. 2d 1199 (C.D. Cal. 1980) (deciding class certification); *Cox v. Aero Automatic Sprinkler Co.*, No. 5:14-CV-02723-EJD, 2015 WL 1848426, at *2-3 (N.D. Cal. Apr. 16, 2015) (addressing standing for labor code claims, not product defect claims  for purchasers of nearly identical products); *Pardini v. Unilever United States, Inc.*, 961 F. Supp. 2d 1048, 1061 (N.D. Cal. 2013) (addressing standing of a non-resident to assert a claim under another states' consumer protection statute).

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

### H.    HNA's motion for summary judgment on alternate grounds.

While HNA played a critical role with respect to the investigation of the defect in the Class Odysseys, after completion of discovery, Plaintiffs are willing to concede that the proper defendant for its claims over the judder defect can be AHM. For that reason and to simplify this case going forward, plaintiffs are willing to dismiss HNA.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask the Court to deny AHM's motion for summary judgment.


DATED: July 8, 2019                 **WHITFIELD BRYSON & MASON, LLP**

By:    /s/ Gary E. Mason
Gary E. Mason*
5101 Wisconsin Ave., NW, Suite 305
Washington, D.C. 20016
T: (202) 429-2290
F: (202) 429-2294
gmason@wbmllp.com

Shimon Yiftach, Esq.(SBN277387)
Peretz Bronstein*
**BRONSTEIN GEWIRTZ & GROSSMAN**
1925 Century Park East, Suite 1990
Los Angeles, CA 90067
T: (424) 322-0322
shimony@bgandg.com

Lawrence Deutsch*
Jeffrey Osterwise*
**BERGER & MONTAGUE, P.C.**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
T: (215) 875-3062
F: (215) 875-4604

25

1

2

ldeutsch@bm.net

josterwise@bm.net

3

\* Admitted *pro hac vice*

*Attorneys for Plaintiffs*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

## Certificate of Service

On July 8, 2019, I caused this document to be filed and served on all ECF-registered counsel of record using the Court's CM/ECF system.


By:  /s/ Gary E. Mason

Gary E. Mason

---

[i] SOF citing to a document concerning the history of investigation and QIS to emphasize the honda's focus judder emanating from the TC

[ii] SOF citing to AHM 6447 at 6453.

[iii] SOF re tsb 16-060 and re symptoms of judder

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT