Shimon Yiftach (SBN 277387)
shimony@bgandg.com
Bronstein Gewirtz & Grossman
1925 Century Park East, Suite 1990
Los Angeles, CA 90067
T: (424) 322-0322
F: (212) 697-7296

*Attorneys for Plaintiffs*

[Additional counsel appear on signature page]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| DENNIS MACDOUGALL, *et al*., <br><br><br> Plaintiffs, <br><br> v. <br><br><br> AMERICAN HONDA MOTOR CO., INC., *et al.*, <br><br><br> Defendants. | Case No. 8:17-cv-01079-AG (DFMx) <br><br> <u>CLASS ACTION</u> <br><br> **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE TESTIMONY OF STEFAN BOEDEKER** <br><br> Hearing Date: August 5, 2019 <br> Time: 10:00 a.m. <br> Location: Santa Ana Division, 10D <br> Judge: Hon. A. Guilford |

# TABLE OF CONTENTS

**TABLE OF CONTENTS** .................................................................................. **I**

**TABLE OF AUTHORITIES** ...........................................................................**II**

**MEMORANDUM OF POINTS AND AUTHORITIES** ................................ **1**

   **I.**     **INTRODUCTION** ................................................................................. **1**

   **II.**    **BACKGROUND** ................................................................................... **2**

      A.   Boedeker Is A Highly Qualified Economist And His Conjoint Studies Have Been Accepted By Courts ............................................................ 2

      B.   Boedeker's Conjoint Analysis. ..................................................... 3

   **III.**   **LEGAL STANDARD** .......................................................................... **4**

   **IV.**   **ARGUMENT** ....................................................................................... **6**

      A.   Conjoint Analysis Is A Reliable Means Of Measuring Damages. ........... 6

      B.   Boedeker's Analysis Properly Accounts For Market Supply. ................... 7

      C.   Honda's Remaining Objections Are Factually Incorrect And Irrelevant Because They Go To Weight, Not Admissibility. ................................. 11

         1.   Boedeker's Results Do Not Show Irrational Preferences. .................. 12

         2.   Boedeker Used A Valid Survey Design. ............................................. 14

         3.   The Survey Population Reflects Actual Odyssey Purchasers. ........... 16

         4.   The Survey Does Not Suffer From Focalism Bias. ............................ 17

         5.   Survey Respondents Were Not Confused By The Survey Instructions ................................................................................... 18

         6.   Boedeker's Analysis Fits The Facts Of This Case. ............................ 19

   **V.**    **CONCLUSION** .................................................................................**20**

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO STRIKE TESTIMONY OF STEFAN BOEDEKER

# TABLE OF AUTHORITIES

## Cases

*Alaska Rent-A- Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960 (9th Cir. 2013)........ 9

*Alcantar v. Hobart Serv.*, No. ED CV 11-1600 PSG (SPx), 2013 U.S. Dist. LEXIS 6752, 2013 WL 156530 (C.D. Cal. Jan. 15, 2013) ..................................... 11

*Apple, Inc. v. Samsung Elecs. Co.*, 2014 U.S. Dist. LEXIS 29721 (N.D. Cal. Mar. 6, 2016) ........................................................................................................ 9

*Apple, Inc. v. Samsung Elecs. Co.*, No. 12-CV-00630-LHK, 2014 WL 794328 (N.D. Cal. Feb. 25, 2014) ....................................................................... 13

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017). ............................ 6, 7

*Broomfield v. Craft Brew All., Inc.*, No. 5:17-cv-01027-BLF, 2018 U.S. Dist. LEXIS 177812, 2018 WL 4952519 (N.D. Cal. Sept. 25, 2018). ....................... 2, 7

Clay v. Cytosport, Inc., 2018 U.S. App. LEXIS 36347 (9th Cir. Dec. 21, 2018).......... 7

*Clay v. Cytosport, Inc.*, No. 3:15-cv-00165-L-AGS, 2018 U.S. Dist. LEXIS 153124 (S.D. Cal. Sep. 7, 2018). ....................................................................... 7

*Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252 (9th Cir. 2001) .................. 11

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). ......................................................... 1

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). ..................................................................................... passim

*Davidson v. Apple, Inc.*, No. 16-CV-04942-LHK, 2018 WL 2325426 (N.D. Cal. May 8, 2018). ...................................................................................................... 9

*Dzielak v. Whirlpool Corp.*, No. CV2120089KMJBC, 2017 U.S. Dist. LEXIS 1794872017, WL 1034197 (D.N.J. Mar. 17, 2017). ............................... 6, 7, 10, 16

*Flynn v. FCA US LLC*, 327 F.R.D. 206 (S.D. Ill. 2018). ............................................. 7

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025 (9th Cir. 2010) ................................................................... 11, 17, 19

*Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-CV-03587-WHO, 2015 WL
1737951 (N.D. Cal. Apr. 8, 2015) ...................................................................... 17

*Golemberg v. Johnson & Johnson Consumer Cos.*, 317 F.R.D. 374 (S.D.N.Y.
2016). .................................................................................................................. 2

*Guido v. L'Oreal, USA, Inc.*, No. 2:11-CV-01067-CAS, 2014 WL 6603730
(C.D. Cal. July 24, 2014) ................................................................................ 6, 7

*Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084 (N.D. Cal. 2018). ......... 6, 7, 15, 18

*Hamilton v. TBC Corp.*, No. CV 17-1060-DMG (JEMx), 2018 U.S. Dist. LEXIS
158721 (C.D. Cal. Aug. 24, 2018) ...................................................................... 7

*Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996 (N.D. Cal. 2010) ......................... 11

*Hasemann v. Gerber Prods. Co.*, No. 15-cv-2995MKBRER, 2019 WL 1434263
(E.D.N.Y. Mar. 31, 2019). ....................................................................... 2, 6, 10

*Hilsley v. Ocean Spray Cranberries, Inc.*, No. 17cv2335-GPC(MDD), 2018 U.S.
Dist. LEXIS 202679 (S.D. Cal. Nov. 29, 2018). ............................................... 7

*Hudock v. LG Elecs*. U.S.A., Inc., No. 16- 1220 (JRT/FLN), 2018 U.S. Dist.
LEXIS 15864 (D. Minn. Jan. 30, 2018) ............................................................. 7

*In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334 (N.D. Cal. 2018) ............. 7

*In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919 (C.D. Cal. 2015) ............................. 6, 7

*In re Dial Complete Mktg. & Sales Practice Litig.*, 320 F.R.D. 326 (D.N.H.
2017). ........................................................................................................... 2, 7, 15

*In re Lenovo Adware Litig.*, 2016 WL 6277245 (N.D. Cal. 2016). ......................... 7, 8

*In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC, 2016 U.S. Dist.
LEXIS 179487, 2016 WL 7734558 (N.D. Cal. Sept. 14, 2016). ................. 2, 7, 13

*In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936 (N.D. Cal. 2018) ............. 7

*In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050 (C.D. Cal.
2015). ................................................................................................................ 8, 9

*In re Scotts EZ Seed Litig.*, 304 F.R.D. 397 (S.D.N.Y. 2015)................................... 7, 9

*In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Practices & Prod. Liab. Litig.*, No. MDL 10-02172-CJC(RNBx), 2012 WL 4904412 (C.D. Cal. Sept. 20, 2012). ....................................................................................................... 6

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prods. Liab. Litig.*, 978 F. Supp. 2d 1053 (2013) ......................................... 5

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 45 F. Supp. 3d 724 (N.D. Ohio 2014) ............................................................................... 7

*Jinro Am. Inc. v. Secure Invests., Inc.*, 266 F.3d 993 (9th Cir. 2001). ......................... 4

*Keith v. Volpe*, 858 F.2d 467 (9th Cir. 1988) ............................................................ 11

*Khoday v. Symantec Corp.*, 93 F. Supp. 3d 1067 (D. Minn. 2015) ......................... 7, 10

*Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482 (E.D.N.Y. 2017). ........................... 7

*Lambert v. Nutraceutical Corp.*, 2017 WL 4081089 (9th Cir. Sept. 15, 2017) ............ 9

Lewis Galoob Toys, Inc. v. Nintendo of Am., Inc., 507 U.S. 985, 113 S. Ct. 1582, 123 L. Ed. 2d 149 (1993). ......................................................... 12

*Lewis Galoob Toys, Inc. v. Nintendo of Am., Inc.*, 780 F. Supp. 1283 (N.D. Cal. 1991) ................................................................................................... 12

Lewis Galoob Toys, Inc. v. Nintendo of Am., Inc., 964 F.2d 965 (9th Cir. 1992) ...... 12

*McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008). ................................... 6

*Microsoft Corp. v. Motorola Inc.*, 904 F. Supp. 2d 1109 (W.D. Wash. 2012). . 6, 11, 17

*Morales v. Kraft Foods Grp., Inc.*, No. LA CV14-04387 JAK (PJWx), 2017 U.S. Dist. LEXIS 97433, 2017 WL 2598556 (C.D. Cal. June 9, 2017) .............. 7, 18

*Opperman v. Path*, No. 13-cv-00453-JST, 2016 WL 3844326 (N.D. Cal. July 15, 2016) ................................................................................................... 10

*Oracle Am., Inc. v. Google Inc.*, 2012 WL 850705 (N.D.Cal. Mar. 13, 2012) ........... 13

*Price v. L'Oreal USA, Inc.*, 2018 U.S. Dist. LEXIS 138473 (S.D.N.Y. Aug. 15, 2018) ..................................................................................................... 7

*Primiano v. Cook*, 598 F.3d 558 (9th Cir. 2010). ...................................................... 5

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO STRIKE TESTIMONY OF STEFAN BOEDEKER

*Saavedra v. Eli Lilly & Co.*, No. 2:12-CV-9366-SVW, 2014 WL 7338930 (C.D. Cal. Dec. 18, 2014). ........................................................................... 8, 9

*Sanchez-Knutson v. Ford Motor Co.*, 181 F. Supp. 3d 988 (S.D. Fla. 2016) .............. 15

*Sanchez-Knutson v. Ford Motor Co.*, 310 F.R.D. 529 (S.D. Fla. 2015). ....................... 7

*Schwab v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 992 (E.D.N.Y. 2006) ................. 6

*Sementilli v. Trinidad Corp.*, 155 F.3d 1130 (9th Cir. 1998). ....................................... 4

*Siegal v. Apple Inc.*, No. 18-80060, 2018 WL 6131860 (9th Cir. Aug. 24, 2018) ........ 9

*Smartflash LLC v. Apple, Inc.*, No. 13–cv–00447, 2014 WL 7336213 (E.D. Tex. Dec. 23, 2014) ......................................................................................................... 17

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134 (9th Cir. 1997). .................... 5

*Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 183 N.J. 234 (2005). ........ 10

*TV Interactive Data Corp. v. Sony Corp.*, 929 F. Supp. 2d 1006 (N.D. Cal. 2013). .................................................................................................. 6, 9, 11, 16

*Viseteon Glob. Techs., Inc. v. Garmin, Int'l, Inc.*, No. 10-CV-10578, 2016 WL 5956325 (E.D. Mich. Oct. 14, 2016). ..................................................................... 9, 10

*Waldrup v. Countrywide Fin. Corp.*, 2:13-cv-08833-CAS, 2018 U.S. Dist. LEXIS 23060, 2018 WL 799156 (C.D. Cal. Feb 6, 2018). ........................................ 5

*Wendt v. Host Int'l, Inc.*, 125 F.3d 806 (9th Cir. 1997). ........................................... 5, 11

*Zakaria v. Gerber Prods. Co.*, 2017 WL 9512587 (C.D. Cal. 2017) ........................... 15

*Zakaria v. Gerber Prods. Co.*, 755 Fed. Appx. 623 (9th Cir. Nov. 14, 2018). ............. 10

## **Statutes**

Cal. Civ. Code § 7-3 (June 1, 2019). ............................................................................... 1

Fed. R. Evid. 702 ............................................................................................................... 4

Fed. R. Evid. 703. .............................................................................................................. 4

## **MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiffs Dennis MacDougall, Ray Seow, Prabhanjan Kavuri, Ryan Parker, and Bryan Lentz (collectively, "Plaintiffs") submit this memorandum in opposition to the motion by Defendants American Honda Motor Co., Inc. ("AHM") and Honda North America, Inc. ("HNA") (together, "Honda" or "Defendants") to strike the testimony of Plaintiffs' expert Stefan Boedeker ("Boedeker"). The Court should deny Honda's motion because it is meritless. In addition, the Court should also deny Defendants' motion for failure to abide by the requirements of Local Rule 7-3. Defendants' notice of motion does not contain a statement that the motion was made after a conference of counsel pursuant to Local Rule 7-3, and, in fact, counsel for Defendants did not contact counsel for Plaintiffs to confer regarding this motion prior to filing.

## I.    INTRODUCTION

Stefan Boedeker, an economist, designed and performed a conjoint analysis to measure the difference between what Class Members paid for their Honda Odyssey minivans and what they would have paid had Honda disclosed that the vehicles had the defect that Plaintiffs allege in this case. In automotive and other consumer class actions, courts have repeatedly found that Boedeker is an expert qualified to determine on classwide damages using the conjoint method. Courts have in numerous actions found conjoint analysis a reliable method to determine classwide damages as required by *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013).

Under established Ninth Circuit precedent, Honda's attacks on Boedeker's analysis–which merely mimic the typical attacks courts find insufficient to exclude conjoint analysis—are, at most, appropriate grounds for cross-examination at trial, going to the weight the jury should ascribe to Boedeker's expert damages analysis. Despite Honda's critiques being insufficient on their face to justify exclusion of Boedeker's analysis, Boedeker ably explains, based on the economic and statistical literature, why each of Honda's arguments is flawed. *See generally* Declaration of Stefan Boedeker, July 15, 2019, attached hereto as Exhibit A ("Boedeker Decl.").

Here, Boedeker correctly applies a reliable methodology that numerous courts have already endorsed. Notwithstanding, resolution of the technical arguments between two experts is properly left to the jury to consider on the merits. Accordingly, the Court should deny Honda's groundless motion.

## II.    BACKGROUND

### A.    Boedeker Is A Highly Qualified Economist And His Conjoint Studies Have Been Accepted By Courts.

Boedeker holds a master's degree in economics and a master's degree in statistics, and he has had a long and distinguished career. He has been a partner or managing director in several economic consulting firms including Price Waterhouse, Navigant Consulting, and presently the Berkeley Research Group. He has conducted over 50 conjoint studies and testified as an economic, statistical, and survey expert over 20 times.

Multiple courts have approved Boedeker's conjoint studies as a measure that can quantify economic loss. *See, e.g.,* Order at 29, *In re Dial Complete Mktg. & Sales Practice Litig.*, 320 F.R.D. 326, 337 (D.N.H. 2017) ("Boedeker's proffered means of calculating class wide damages is sufficient to demonstrate that a price premium for the allegedly falsely-claimed feature(s) exists."); *Broomfield v. Craft Brew All., Inc.*, No. 5:17-cv-01027-BLF, 2018 WL 4952519, at *16 (N.D. Cal. Sept. 25, 2018) ("The Court finds Plaintiffs' damages model is sufficient for calculating restitution damages under the consumer-protection laws."); *Hasemann v. Gerber Prods. Co*., No. 15-cv-2995MKBRER, 2019 WL 1434263, at *33 (E.D.N.Y. Mar. 31, 2019) ("Plaintiffs' proffered models are sufficient to meet the *Comcast* test." (construing *Golemberg v. Johnson & Johnson Consumer Cos.*, 317 F.R.D. 374, 394 (S.D.N.Y. 2016))); *In re MyFord Touch Consumer Litig.*, 2016 WL 7734558, at *16 (N.D. Cal. Sept. 14, 2016) ("The methodologies set forth in Plaintiffs' expert declarations are sufficiently sound and capable of practicable application to the class without unreasonable difficulty. . . claims seeking these damages may be certified.").

## B.    Boedeker's Conjoint Analysis.

Based on his conjoint analysis, Boedeker shows that Class Members would have paid approximately $3,000 less for their Odysseys had those consumers known of the Transmission Defect prior to purchasing their Odysseys.

Boedeker reached this conclusion by conducting a Choice-Based Conjoint Analysis ("CBC"). Conjoint analysis is grounded on research showing that consumers' demand for a product is driven by the value they place on the product's attributes. Boedeker Decl. ¶ 17. Using a set of econometric and statistical techniques to study consumers' decision-making processes, determining trade-offs between products' features and price, conjoint analysis is ideally suited to model the impact of changes in product features on the value consumer's place on a product. Conjoint analysis is widely used in market research and is discussed in depth in market research literature. *Id*.

Choice-based conjoint analysis, like Boedeker's, begins with a survey where participants are shown sets of product profiles (called "choice sets" or "choice menus") and are asked to choose the profile that they would prefer to purchase. Boedeker Decl. ¶ 18. CBC survey methods closely mimic real-world purchase processes where consumers must evaluate several product profiles with different attributes. *Id*. at ¶ 17.

To aid the development of the survey to be used for his conjoint analysis, Boedeker prepared a pre-test survey of Honda owners. The pre-test helped Boedeker assess which attributes to include in his conjoint survey and the target population for the conjoint survey. Boedeker Decl. ¶ 24. Because Boedeker performed a choice-based conjoint analysis, both his pre-test and conjoint surveys showed participants menus of product attributes, including various model features and prices. The survey participants were asked to indicate their preferences for those profiles. *Id*.

Following completion of the conjoint survey, Boedeker used advanced statistical models to determine the Class members' preferences and the prices they

3

would be willing to pay for an Odyssey with or without the Transmission Defect. First, Boedeker ran the survey results through a well-recognized software program, called Sawtooth, to which he applies the Hierarchical Bayesian Estimation technique to compute individual "part-worths" (the desire for an individual attribute) for each respondent and aggregate "part-worths" for all levels and attributes in the study. Boedeker Decl. ¶¶ 28, 31.

Using the part-worths, Boedeker constructed a demand curve for Odysseys when the Transmission Defect is not disclosed to Class Members. Then, he quantified the drop in consumer demand had consumers known of the Transmission Defect at the point of purchase. Boedeker Decl. ¶ 10. Finally, Boedeker conducted market simulations to assess the economic loss associated with the drop in demand due to disclosure of the Transmission Defect. *Id.* at ¶ 24.

## III.    LEGAL STANDARD

"In determining whether expert testimony is admissible under Rule 702, the district court must keep in mind [the rule's] broad parameters of reliability, relevancy, and assistance to the trier of fact." *Sementilli v. Trinidad Corp.*, 155 F.3d 1130, 1134 (9th Cir. 1998) (internal quotation marks omitted). "Rule 702 is applied consistent with the 'liberal thrust' of the Federal Rules and their general approach of relaxing the traditional barriers to opinion testimony." *Jinro Am. Inc. v. Secure Invests., Inc.*, 266 F.3d 993, 1004 (9th Cir. 2001) (internal quotation marks omitted).

Under Rule 702, an expert may testify on the basis of "scientific, technical, or other specialized knowledge" if it "will assist the trier of fact to understand the evidence or to determine a fact in issue," provided the testimony rests on "sufficient facts or data" and "reliable principles and methods." Fed. R. Evid. 702(a)-(d). Rule 703 explains that an "expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703. These facts and data "need not be admissible for the opinion to be admitted." *Id*.

"As a general rule, the factual basis of an expert opinion goes to the credibility

4

1  of the testimony, not the admissibility, and it is up to the opposing party to examine

2  the factual basis for the opinion in cross-examination." *Waldrup v. Countrywide Fin.*

3  *Corp.*, 2:13-cv-08833-CAS, 2018 U.S. Dist. LEXIS 23060, at *14, 2018 WL 799156,

4  at *5 (C.D. Cal. Feb 6, 2018) (quoting *In re Toyota Motor Corp. Unintended*

5  *Acceleration Mktg., Sales Practices & Prods. Liab. Litig.*, 978 F. Supp. 2d 1053, 1069

6  (2013); *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) ("Shaky but admissible

7  evidence is to be attacked by cross examination, contrary evidence, and attention to

8  the burden of proof, not exclusion." (citing *Daubert v. Merrell Dow Pharms., Inc.*,

9  509 U.S. 579, 596, 113 S. Ct. 2786, 2798, 125 L. Ed. 2d 469 (1993))).

10  "Importantly, the Court's gatekeeper role under *Daubert* is not intended to

11  supplant the adversary system or the role of the jury." *In re Toyota*, 978 F. Supp. 2d at

12  1065.  "In other words, the Court is not supposed to make ultimate conclusions as to

13  the persuasiveness of the proffered evidence." *Id.* (internal quotation marks omitted).

14  And, as is relevant here, conflicting expert testimony creates a "battle of the experts,

15  the resolution of which is properly left to the jury." *Id.* at 1070.

16  In admitting conjoint analysis studies, the Ninth Circuit has repeatedly and

17  consistently ruled that "[c]hallenges to survey methodology go to the weight given the

18  survey, not its admissibility." *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir.

19  1997); s*ee also Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1143 fn. 8

20  (9th Cir. 1997) ("However, 'as long as they are conducted according to accepted

21  principles,' survey evidence should ordinarily be found sufficiently reliable under

22  *Daubert*. Unlike novel scientific theories, a jury should be able to determine whether

23  asserted technical deficiencies undermine a survey's probative value"). Recent case

24  law continues to follow the Ninth Circuit's instructions and admits conjoint analysis

25  even where the opposing party "appears to raise valid concerns about [an expert's]

26  survey methodology," ruling "that these alleged defects neither individually nor

27  collectively render [an expert's] proposed conjoint analysis inadmissible

28  under *Daubert*." *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1107 (N.D. Cal.

1    2018).

2    **IV.   ARGUMENT**

3       **A.   Conjoint Analysis Is A Reliable Means Of Measuring Damages.**

4          "Conjoint analysis is regularly used in litigation to translate the 'relative

5    importance' of a product feature into a price premium paid by consumers," and its use

6    has "not been an obstacle to certification of classes in other cases." *In re ConAgra*

7    *Foods, Inc.*, 90 F. Supp. 3d 919, 1027 (C.D. Cal. 2015) (collecting examples), *aff'd*

8    *sub nom. Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) (describing

9    conjoint as a "well-established" damages model).

10         Just recently, a conjoint model proposed by Boedeker was accepted at class

11   certification. *See Hasemann*, 2019 WL 1434263, at *33 ("Plaintiffs proffered models

12   are sufficient to meet the *Comcast* test."). Courts in this district have reached similar

13   conclusions. *See Guido v. L'Oreal, USA, Inc.*, No. 2:11-CV-01067-CAS, 2014 WL

14   6603730, at *7 (C.D. Cal. July 24, 2014); *In re Toyota Motor Corp. Hybrid Brake*

15   *Mktg., Sales Practices & Prod. Liab. Litig.*, No. MDL 10-02172-CJC(RNBx), 2012

16   WL 4904412, at *4 (C.D. Cal. Sept. 20, 2012).

17         Conjoint analysis is "well-accepted in the econometrics field," *Guido,* 2014

18   WL 6603730, at *7, and is "increasingly used in litigation," *TV Interactive Data Corp.*

19   *v. Sony Corp.*, 929 F. Supp. 2d 1006, 1022 fn. 6 (N.D. Cal. 2013), and courts regularly

20   deny *Daubert* motions seeking to exclude a conjoint analysis from evidence. *See, e.g.*,

21   *Dzielak v. Whirlpool Corp.*, No. CV2120089KMJBC, 2017 WL 1034197, at *12, *16

22   (D.N.J. Mar. 17, 2017) (denying motion to exclude expert's testimony applying

23   conjoint analysis); *Guido*, 2014 WL 6603730, at *7 (same); *TV Interactive*, 929 F.

24   Supp. 2d at 1020-27 (same); *Microsoft Corp. v. Motorola Inc.*, 904 F. Supp. 2d 1109,

25   1120 (W.D. Wash. 2012) (same); *Schwab v. Philip Morris USA, Inc.*, 449 F. Supp. 2d

26   992, 1170 (E.D.N.Y. 2006) (same), *rev'd on other grounds sub nom. McLaughlin v.*

27   *Am. Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008).

28

Conjoint analysis has a long history of use by numerous companies and is widely respected among academic circles. This methodology of calculating damages has been accepted by numerous federal courts as a proper method of calculating damages in class action litigation. In the last five years, a majority of federal courts in the Ninth Circuit and elsewhere have approved the use of conjoint analysis to calculate damages in consumer class cases.[1]

**B.    Boedeker's Analysis Properly Accounts For Market Supply.**

Honda incorrectly argues that Boedeker fails to account for market supply. *See* Defs.' Boedeker Mot. at 2, ECF No. 166. The recent class certification ruling in *Lenovo* directly refutes this line of argument. *In re Lenovo Adware Litig.*, 2016 WL 6277245, at *21 (N.D. Cal. 2016).

*Lenovo* was a consumer class action concerning defective laptops. Plaintiffs' damages expert in that case, Steven Gaskin, proposed a conjoint damages model to measure the amount that class members overpaid for laptops as a result of the

---

[1] *Flynn v. FCA US LLC*, 327 F.R.D. 206, 225 (S.D. Ill. 2018); *accord Hilsley v. Ocean Spray Cranberries, Inc.*, No. 17cv2335-GPC(MDD), 2018 U.S. Dist. LEXIS 202679, at *50 (S.D. Cal. Nov. 29, 2018); *Broomfield v. Craft Brew All., Inc.*, No. 17-cv-01027-BLF, 2018 U.S. Dist. LEXIS 177812, at *63 (N.D. Cal. Sep. 25, 2018); *Clay v. Cytosport, Inc.*, No. 3:15-cv-00165-L-AGS, 2018 U.S. Dist. LEXIS 153124, at *36 (S.D. Cal. Sep. 7, 2018), *pet. granted*, 2018 U.S. App. LEXIS 36347 (9th Cir. Dec. 21, 2018); *Hamilton v. TBC Corp.*, No. CV 17-1060-DMG (JEMx), 2018 U.S. Dist. LEXIS 158721, at *10-11 (C.D. Cal. Aug. 24, 2018); *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1110 (N.D. Cal. 2018), *appeal pending*; *Price v. L'Oreal USA, Inc.*, 2018 U.S. Dist. LEXIS 138473, at *28 (S.D.N.Y. Aug. 15, 2018), *appeal pending*; *In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 374 (N.D. Cal. 2018); *In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 978 (N.D. Cal. 2018); *Hudock v. LG Elecs. U.S.A., Inc.*, No. 16- 1220 (JRT/FLN), 2018 U.S. Dist. LEXIS 15864, at *9 (D. Minn. Jan. 30, 2018); *Morales v. Kraft Foods Grp., Inc.*, No. LA CV14-04387 JAK (PJWx), 2017 U.S. Dist. LEXIS 97433, at *55 (C.D. Cal. June 9, 2017); *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 551 (E.D.N.Y. 2017*); In re Dial Complete Mktg. & Sales Practices Litig.*, 320 F.R.D. 326, 337 (D.N.H. 2017); *Dzielak v. Whirlpool Corp.*, No. 2:12-0089 (KM)(JBC), 2017 U.S. Dist. LEXIS 39232, at *79 (D.N.J. Mar. 17, 2017); *In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC, 2016 U.S. Dist. LEXIS 179487, at *17 (N.D. Cal. Sep. 14, 2016); *Sanchez-Knutson v. Ford Motor Co.*, 310 F.R.D. 529, 539 (S.D. Fla. 2015); *Khoday v. Symantec Corp.*, 93 F. Supp. 3d 1067, 1083 (D. Minn. 2015); *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 1025 (C.D. Cal. 2015), *aff'd, Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1123 (9th Cir. 2017); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 414-15 (S.D.N.Y. 2015); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 45 F. Supp. 3d 724, 754 (N.D. Ohio 2014); *Guido v. L'Oreal, USA, Inc.*, No. 2:11-cv-01067-CAS(JCx), 2014 U.S. Dist. LEXIS 165777, at *25 (C.D. Cal. July 24, 2014).

1  defendant computer manufacturer's fraudulent omissions. *Id*. The defendant argued

2  that Gaskin's survey would produce arbitrary results because, in its view, the

3  proposed conjoint analysis would look only to consumer demand while ignoring

4  market supply. *Id*. at 21 (citing *In re NJOY, Inc. Consumer Class Action Litig*., 120 F.

5  Supp. 3d 1050, 1119 (C.D. Cal. 2015), *and Saavedra v. Eli Lilly & Co*., No. 2:12-CV-

6  9366-SVW, 2014 WL 7338930, at *5 (C.D. Cal. Dec. 18, 2014))—two cases in which

7  conjoint damages models were rejected under *Daubert* for failing to account for

8  market supply—the defendant urged the court in *Lenovo* to reject Gaskin's model as

9  well. *See id*.

10  The *Lenovo* court disagreed. Gaskin's conjoint model was not unreliable in the

11  way that the models in *NJOY* and *Saavedra* were, the *Lenovo* court explained, because

12  Gaskin had consulted historical "pricing" of the laptops "to ensure that the results

13  would 'reflect the market,' and [he] addressed 'the supply side' of the market,

14  determining that it was not at issue 'because all sales of the laptop models at issue

15  have occurred in the past.'" *Id*. By considering market supply in addition to market

16  demand, Gaskin ensured that the survey would not return arbitrary results. *Id*. The

17  *Lenovo* court further stated that it was not aware of any "complicating factors" in the

18  laptop market that would render the survey results infirm. *Id*.

19  In this case, Boedeker similarly addresses market supply by determining that it

20  is not otherwise at issue because "disclosure of the defect has no effect on Honda's

21  cost structure and marginal cost to manufacture, so the supply curve remains constant

22  notwithstanding the disclosure of the Transmission Defect." Boedeker Decl. ¶ 59.

23  Boedeker's conjoint analysis correctly does not seek to calculate what the equilibrium

24  new supply and demand derived market price would be were the Transmission Defect

25  disclosed at the time of purchase. Rather, the study estimates the price that a class

26  member would have paid had the Transmission Defect been disclosed when each class

27  member purchased their Odyssey. Therefore, the "supply" is the actual number of

28  Odysseys sold or leased to the Class Members.

8

Boedeker performed research to create the price range in the conjoint study based upon the available Honda feature prices online. Boedeker Decl. ¶ 56. For the price of a vehicle with the Transmission Defect, he used Honda's own feature prices and raised and/or lowered them to derive a hypothetical price. *Id*. While not necessarily using the exact price for any particular attribute, the price range of the option packages included in the survey was derived from actual feature pricing on Honda's website. This method is the best possible surrogate for market prices of a defective Odyssey. *See TV Interactive*, 929 F. Supp. 2d at 1028 (rejecting argument that expert's use of retail prices renders his opinion inadmissible under *Daubert*); *In re Scotts EZ Seed Litig*., 304 F.R.D. 397, 415 fn. 12 (S.D.N.Y. 2015) (rejecting argument that "use of wholesale figures" to calculate damages, even if erroneous, renders expert's opinion on damages inadmissible); *Alaska Rent-A- Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 970 (9th Cir. 2013) (the law "requires only that damages be capable of measurement based upon reliable factors without undue speculation"); *Lambert v. Nutraceutical Corp*., 2017 WL 4081089 (9th Cir. Sept. 15, 2017) (allowing the use of suggested retail pricing and wholesale pricing in class-wide damages models "even if that figure or the data supporting it . . . is uncertain").

Because Boedeker considers supply-side factors, Honda's reliance on cases such as *NJOY* and *Saavedra*, in which experts did not consider market supply at all in conjoint analysis, is misplaced. *See Davidson v. Apple, Inc*., No. 16-CV-04942-LHK, 2018 WL 2325426, at *22 (N.D. Cal. May 8, 2018), *appeal dismissed sub nom. Siegal v. Apple Inc*., No. 18-80060, 2018 WL 6131860 (9th Cir. Aug. 24, 2018) (noting that Boedeker's consideration of the supply side – the same consideration he uses here – distinguishes his analysis from those in cases like *NJOY* and *Saavedra*). And because Boedeker incorporates market pricing in his survey design, *Apple, Inc. v. Samsung Elecs. Co*., 2014 U.S. Dist. LEXIS 29721, at *73-78 (N.D. Cal. Mar. 6, 2016), and *Visteon Glob. Techs., Inc. v. Garmin, Int'l, Inc.*, No. 10-CV-10578, 2016 WL 5956325, at *5-7, 19 (E.D. Mich. Oct. 14, 2016), and *Zakaria v. Gerber Prods. Co*.,

9

755 Fed. Appx. 623, 624-625 (9th Cir. Nov. 14, 2018) are distinguishable. The conjoint model in *Apple* was flawed because market demand was not considered in relation to market pricing. Similarly, the conjoint analysis in *Viseteon Global*, a patent infringement case, flunked *Daubert* because it "did not attempt to determine a real world price" of relevant patented features. 2016 WL 5956325 at *6; *see also Hasemann*, 2019 U.S. Dist. LEXIS 57311 at *98-99 (explaining that "the *Zakaria* court left open the door for admission of a conjoint study into evidence" where the study sufficiently accounts for actual prices).These criticisms do not apply to Boedeker's conjoint study.[2]

For all these reasons, Boedeker's consideration of market supply renders his testimony, and its supporting methodology, sufficiently reliable and relevant to be admitted for consideration on the issue of class-wide damages. Further argument by Honda that Boedeker should have considered additional, or different, supply-side factors go to the weight to be given the conjoint survey, not its admissibility, and thus are properly reserved for the trier of fact. *See Dzielak*, 2017 WL 1034197, at *19 ("Defendants' challenges to the 'willingness to pay' . . . component[ ] go[es] to weight, not admissibility" of contingent valuation method); *see id*. at *13, *16 (reaching same conclusion for conjoint method); *Khoday*, 93 F. Supp. 3d at 1083 (same).

---

[2] Honda's reliance on *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 794, 183 N.J. 234, 251 (2005), is misplaced because the plaintiffs there not only did not present a conjoint study to measure the dollar damages to each customer, but also offered no expert testimony at all. Essentially, plaintiffs there – as opposed to this case – presented no cogent, expert- supported, theory of damages. Honda's citation to *Opperman v. Path*, No. 13-cv-00453-JST, 2016 WL 3844326, at *14 (N.D. Cal. July 15, 2016) is also flawed. There, the court ruled that as a matter of law "each class member will place a very different value on the protection of–or misappropriation of– their [personal] contacts." *Id*. The court found that privacy is so intangible that no uniform class preference value could be derived. *Id*. Here, in contrast, the preference for a non-defective transmission is tangible and subject to uniform measurement.

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO STRIKE TESTIMONY OF STEFAN BOEDEKER

**C.** **Honda's Remaining Objections Are Factually Incorrect And Irrelevant Because They Go To Weight, Not Admissibility.**

Honda believes Boedeker's survey design renders his conjoint study unreliable. But, each aspect of Boedeker's survey design is supported by appropriate survey principles and sound economics. *See* Boedeker Decl. ¶¶ 32-77.

Honda's motion, however, fails for a more fundamental reason. Criticisms of survey design are "more appropriate for consideration by a jury, rather than the Court on a *Daubert* motion." *TV Interactive*, 929 F. Supp. 2d at 1021. The Ninth Circuit has "long held that survey evidence should be admitted 'as long as [it is] conducted according to accepted principles and [is] relevant.'" (quoting *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997)). "'[T]echnical inadequacies in a survey, 'including the format of the questions or the manner in which it was taken, bear on the weight of the evidence, not its admissibility.'" *Id.* (quoting *Keith v. Volpe*, 858 F.2d 467, 480 (9th Cir. 1988)); *see Wendt*, 125 F.3d at 814 ("Challenges to survey methodology go to the weight given the survey, not its admissibility."); *see also Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1263 (9th Cir. 2001) ("[I]ssues of methodology, survey design, reliability, the experience and reputation of the expert, critique of conclusions, and the like go to the weight of the survey rather than its admissibility. These are issues for a jury…."); *Alcantar v. Hobart Serv.*, No. ED CV 11-1600 PSG (SPx), 2013 U.S. Dist. LEXIS 6752, 2013 WL 156530, at *4 (C.D. Cal. Jan. 15, 2013) ("[A]ny problems with the response rate affect the weight, and not the admissibility of the study"); *Microsoft Corp. v. Motorola Inc.*, 904 F. Supp. 2d 1109, 1120 (W.D. Wash. 2012) (criticisms of a conjoint analysis concerned "issues of methodology, survey design, reliability, and critique of conclusions, and therefore [went] to the weight of the survey rather than admissibility"); *Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1001-02 (N.D. Cal. 2010) ("[Plaintiff] criticizes the content of the survey conducted and prepared by [defendant's expert] as well as the response rate to the survey. The problem for [Plaintiff] is that, as she herself admits in her brief, even

11

challenges to defects in methodology normally affect the weight to be accorded the survey and not its admissibility"); *Lewis Galoob Toys, Inc. v. Nintendo of Am., Inc.*, 780 F. Supp. 1283, 1296 (N.D. Cal. 1991) (holding that the alleged under-inclusiveness of a survey in a copyright infringement action affected "the weight of the survey, not its admissibility"), *aff'd*, 964 F.2d 965 (9th Cir. 1992), *cert. denied*, 507 U.S. 985, 113 S. Ct. 1582, 123 L. Ed. 2d 149 (1993).

### 1.     Boedeker's Results Do Not Show Irrational Preferences.

Honda claims that Boedeker's survey results—which he presented on the aggregate, average level—when observed at the individual level, deliver irrational results. Honda argues that individual survey results that show absurd responses, such as a person that would agree to pay $3 million for the "privilege" of having the Transmission Defect and another respondent that would require compensation of $10 million before knowingly purchasing an Odyssey with the Transmission Defect.

Honda's claim that there were such actual individual survey responses is false. No survey respondent provided either of these grossly irrational responses. Boedeker Decl. ¶ 61. Rather, Honda, hiding the ball, is referring to the Sawtooth software's *prediction* of individual results for each respondent, based upon its analysis of the thousands of choice responses provided by all 500 respondents. *Id*. at 63. The survey elicited multiple responses for each participant and provides 30,000 data points. *Id.* The data points for each individual are limited to the particular feature choices he or she was shown. *Id*. Sawtooth then infers from the responses of all respondents what each individual respondent would choose if presented with every possible combination of the choice menus in the survey. *Id.* at 64.

Thus, there was **no response from a survey participant that he or she would pay $3 million for a transmission with the Transmission Defect**. In fact, the aggregated average results that Boedeker relies upon are statistically reliable as indicated by tight 95% confidence intervals. Boedeker Decl. ¶ 67. However, to obtain reliable predictions for an individual study participant. *Id*. at ¶ 65. There is no basis to

12

deem the "irrational" individual Sawtooth results reliable without performing statistical significance tests or calculating a confidence interval (level of reliability) for the individual results. *Id*. at ¶ 67.

Similarly, Honda's allegation that 55.4% of the survey takers are indifferent to the presence of the Transmission Defect is based upon a distortion. Boedeker Decl. ¶ 75. The Sawtooth-generated individual responses that Honda relies on each carry a wide margin of error. *Id*. Honda deemed any Sawtooth-generated respondent whose preference range for the defect included zero to be indifferent to the defect. *Id.* But, as discussed above, this 55.4% average is based upon the choices of Sawtooth-generated survey takers, whose "choices" are subject to a wide range of error, making these results highly unreliable as to predicting an actual individual's choices. More importantly, Boedeker followed the recommended course of relying upon Sawtooth's average results, with a 95% confidence level.

Here, there are no irrational results when understood that the survey created a composite answer. Honda argues that allegedly unreliable Sawtooth-generated individual Sawtooth results with wide confidence intervals created hypothetical irrational results. But the statistically reliable average results are rational. In fact, it is the aggregate results that are reliable and appropriate for use here. *See* Boedeker Decl. ¶ 77; *see also In re MyFord Touch Consumer Litig.*, 2016 U.S. Dist. LEXIS 179487, at *53 (N.D.Ca. Sept. 14, 2016) (rejecting same argument Ford made against Boedeker, and finding that plaintiffs can use averages and representative evidence).[3]

---

[3] For the same reasons described in *Apple, Inc. v. Samsung Elecs. Co.*, No. 12-CV-00630-LHK, 2014 WL 794328, at *16, n. 10 (N.D. Cal. Feb. 25, 2014), Honda's reliance on *Oracle Am., Inc. v. Google Inc.*, 2012 WL 850705, at *9 (N.D.Cal. Mar. 13, 2012) does not advance Honda's arguments here. As the court in *Apple* observed, *Oracle* should be limited to its facts where the features chosen for the conjoint survey led to irrational results. *Id.* The defendant in *Apple* tried to argue that the plaintiff's conjoint analysis in that case had irrational results, just as Honda tries to do here. *Id.* However, the court in *Apple* appreciated that the "irrational results" identified by the defendant's expert were the result of the defendant's expert running his own tests and not ensuring the statistical significance of his results. *Id.* The same is true here because the "irrational results" identified by Honda's expert, Mr. Wilcox, are the product of unreliable individual-level results.

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO STRIKE TESTIMONY OF STEFAN BOEDEKER

### 2.     Boedeker Used A Valid Survey Design.

Boedeker conducted a pre-survey inquiry into various consumer preferences for selected vehicle attributes in order to determine the proper pool of participants and product features to include in the conjoint survey. Boedeker Decl. ¶ 24. The pre-survey included non-Odyssey, non-class Odyssey and class Odyssey owners. *Id.* The results determined that non-Odyssey owners as a group responded so differently that the survey class should be limited to Odyssey owners. *I*d. The pre-survey data showed that owners of any Odyssey model had relatively similar preferences, so the ultimate conjoint survey included any Odyssey owner, even non-class model years. *Id*. In addition, the pre-survey identified the features most popular among Odyssey owners, so several of those features were used in the conjoint survey. *Id*.

Following the pre-test, Boedeker conducted the conjoint survey. Participants were asked to choose from a menu of packages of different levels of attributes, each package having a different price. Boedeker Decl. ¶ 18. The participant's choice reflected that package that had the highest utility for the participant (i.e. favorite set of features and price). *Id.* at ¶ 27. Observing consumers' choices enables one to estimate the relative value consumers place on one attribute over another, including price. An attribute's "part-worth" (i.e. level of utility or benefit) can be expressed as a monetary value. *Id*. For example, the survey results permit measurement of the price consumers place on an automobile with a properly working transmission versus an automobile with the Transmission Defect. *Id.*

Defendants claim that the pre-test survey was not properly conducted and that therefore the attributes included in the conjoint analysis are not the most important attributes to consumers. However, the survey's design needs not include every factor that contributes to a consumer's purchasing decision or even include all important factors that contribute to a consumer's purchasing decision. The conjoint is not measuring the subjective valuation of any one feature. Instead, it is measuring the diminished market value of the overall automobile as a result of a defect.

Similarly, the distractor attributes in the survey need not be key purchase drivers. As Boedeker explains, these distractor attributes need only mask the target attribute of the survey to discourage strategic responses by survey participants but instead provide a purchasing environment where the participant must make trade-offs between packages with several attributes at varying levels. Boedeker Decl. ¶ 36. The attributes chosen in a CBC study can vary without affecting the resulting economic loss estimates.[4] *Id*.

Moreover, these criticisms of attribute selection, like all of Honda's critiques of the survey, go to the weight of the survey, not its admissibility. *See, e.g., Hadley v. Kellogg Sales Co*., 324 F. Supp. 3d 1084, 1108 (N.D. Cal. 2018) ("But once again, even though Kellogg's critiques about Gaskin's failure to include certain attributes in his conjoint survey may be valid, it is well-established that these types of critiques merely go to the weight, but not to the admissibility, of survey-based analyses."); *In re Dial*, 320 F.R.D. at 332–33 ("Dial also argues, plausibly, that by limiting the attributes surveyed to four (five, including price), Boedeker's model fails to adequately take into account and properly weigh other attributes that may well be very important to liquid hand soap consumers (e.g., brand name, or scent, or shape or color of the product). However, ... those issues—and the myriad others identified by Dial—are either curable, or go to the weight, not admissibility, of Boedeker's testimony."); *Zakaria v. Gerber Prods. Co*., 2017 WL 9512587, at *13 (C.D. Cal. 2017) (finding that the defendant's objections regarding an expert's failure to account for certain important product attributes in his conjoint surveys "go to weight, not admissibility"); *Sanchez-Knutson v. Ford Motor Co*., 181 F. Supp. 3d 988, 995 (S.D. Fla. 2016) ("Ford challenges Gaskin's methodology, including but not limited to ... the variables he used

---

[4] Thus, Honda incorrectly argues that one of the survey attributes ("fuel injection system") is hypothetical and therefore invalid. Whether the fuel injection system exists is not relevant. Boedeker Decl. ¶ 38 ("As discussed above, the attributes other than Transmission Defect are all simply decoys to avoid strategic answers. So it is of no importance whether or not a decoy attribute is hypothetical or really available in the market.").

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO STRIKE TESTIMONY OF STEFAN BOEDEKER

1  [in his conjoint survey]. These arguments go to the weight of the survey, not its

2  admissibility, and may be addressed by cross-examination and the presentation of

3  contrary evidence at trial[.]”); *cf. TV Interactive*, 929 F. Supp. 2d at 1026 (testing only

4  a few attributes did not render survey unreliable, where expert offered principled

5  reasons for limited testing).[5]

6      **3.    The Survey Population Reflects Actual Odyssey Purchasers.**

7      Next Honda argues, “Mr. Boedeker took no care to ensure that his Conjoint

8  Survey respondents accurately reflect the population who actually purchased the

9  vehicles in Plaintiffs’ proposed classes (i.e., 2011-2016 Honda Odyssey vehicles).”

10  Defs.’ Boedeker Mot. at 6. For example, Mr. Boedeker’s sample is 60.8% female,

11  whereas Honda claims that its records show a lower rate of 2011-2016 Honda

12  Odyssey purchasers are female . . . .” Boedeker Decl. ¶ 41. But, Honda’s focus on

13  who signed the purchase contract (man or woman) is not a reliable indicator of who

14  actually drives the car or who was involved in the decision-making process to buy an

15  Odyssey. *Id*. at ¶ 42. While the documents cited by Honda indicate that most

16  individuals who sign a contract to purchase an Odyssey are men, there is no evidence

17  that women are not the primary drivers or purchase decision makers. *Id.* Also, Wilcox

18  omits that the gender is not known a significant percentage of such data. *Id*. at ¶ 44.

19      Courts regularly reject arguments that a survey should be inadmissible because

20  it surveyed the wrong population. Such arguments typically go to the weight of the

---

22  [5] Honda also objects to a survey that includes a defect because, says Honda, purchasers don’t expect
23  defect-free cars because cars come with a warranty. However, Honda provides no data or other
evidence to support the assertion that its customers are indifferent to defects covered by a warranty.
Boedeker Decl. ¶ 40. On the contrary, Boedeker’s results indicate that consumers react negatively to
24  and will pay a lower price for an undisclosed defect. *Id*. Also, Honda’s contention that Boedeker’s
survey is “illogical” is incorrect. Defs.’ Boedeker Mot. at 9. Honda’s argument is based on its claim
25  that participants are told that a repair will *never* be available. The survey does not state that. Honda
invents that criticism from an attribute level in the survey stating that “attempts at repairs remain
26  unsuccessful after eighteen months.” *Id*. at 52. (“Honda misreads the survey instructions… [T]he
description describes that the ‘manufacturer is currently unable to provide a repair . . . for all
27  vehicles’” Then the menu choices offer various periods of time in the future until the vehicle is
repaired.”).

PLAINTIFFS’ MEMORANDUM IN OPPOSITION TO
DEFENDANTS’ MOTION TO STRIKE TESTIMONY OF STEFAN BOEDEKER

evidence, not its admissibility. For example, in *Dzielak* the court concluded that the defendant's argument that a conjoint expert selected the wrong sample was an issue for the trier of fact, not a basis for excluding evidence. The court further noted that the expert stated he purposefully selected a smaller sample for good reason. 2017 WL 1034197, at \*11-12. In *Smartflash LLC v. Apple, Inc*., the court rejected the argument that survey evidence should be excluded because the expert "surveyed only 'regular users' instead of all 'purchasers' of accused devices." No. 13–cv–00447, 2014 WL 7336213, at \*4 (E.D. Tex. Dec. 23, 2014). Such arguments, the court explained, "go to the weight of the survey evidence, not its admissibility." *Id*. And in *Microsoft Corp. v. Motorola, Inc*., the court rejected an argument that a survey was inadmissible because it defined the relevant population narrowly as product owners rather than more broadly as product owners, users, and "individuals likely to purchase" the product at issue. 904 F. Supp. 2d 1109, 1120 (W.D. Wash. 2012). "[A]ny argument as to underinclusiveness of the survey," the court found, "goes to weight, as opposed to admissibility." *Id*. By comparison, the court in *Fujifilm Corp. v. Motorola Mobility LLC* reasoned that it is only when the population evaluated "appear[s] so unique as to 'grossly' distort the survey results and to render the survey either irrelevant or inconsistent with accepted principles" that the issue bears on admissibility. No. 12-CV-03587-WHO, 2015 WL 1737951, at \*6 (N.D. Cal. Apr. 8, 2015).

Boedeker made a considered sampling choice that reflects common practice in surveys both in and out of litigation. Honda has no basis to suggest that this choice is so arbitrary as to render the survey results unreliable and inadmissible. Honda's argument that the population selected is overinclusive or imprecise goes to weight, not admissibility.

### 4.     The Survey Does Not Suffer From Focalism Bias.

Honda claims that the conjoint is vulnerable to "focalism" bias, because respondents are asked to consider problem features they would not normally consider, and this renders the survey unreliable. This criticism lacks merit. *See, e.g., Fortune*

17

1   *Dynamic, Inc.*, 618 F.3d 1025 at 1036 ("technical inadequacies in a survey, including

2   the format of the questions or the manner in which it was taken, bear on the weight of

3   the evidence, not its admissibility.").

4        Honda argues that the term "Transmission Defect" with seven attribute choices

5   (as opposed to two) and a longer description for that attribute than the others, causes

6   respondents to give inflated weight to the Transmission Defect. However, as Boedeker

7   explains, the conjoint survey was "double blind," i.e. neither the survey vendor nor the

8   respondent knew whether a like or dislike for the Transmission Defect was sought.

9   Boedeker Decl. ¶ 48.("A "double blind" survey thereby prevents focalism bias,

10  because participants have no idea what answers are sought."). In addition, no

11  respondent sees all seven defect attributes. *Id*. at ¶47. Sawtooth chooses and assigns to

12  each participant a set of survey choices in a random, yet balanced, manner to prevent

13  participants from "gaming the system" and thereby giving strategic answers. *Id*. at ¶

14  50. Further, the length of an attribute description in the survey instructions is not

15  significant to the results of the survey. *Id*. at ¶ 47.

16       Ultimately, Honda's criticisms are appropriately categorized as purported

17  technical deficiencies that go to the weight of the evidence, not its admissibility. *See*

18  *Hadley*, 324 F. Supp. 3d at 1110 (N.D. Cal. 2018) ("Further, and in any event, like all

19  of Kellogg's other survey methodology concerns, Kellogg's focalism bias objection

20  goes to the weight, and not to the admissibility, of Gaskin's proposed conjoint

21  analysis."); *Morales v. Kraft Foods Grp., Inc.*, 2017 WL 2598556, at *15-16 (C.D.

22  Cal. June 9, 2017) ("Defendant also argues that Bodapati failed to conduct a blind

23  survey and instead telegraphed to respondents the purpose of the survey .... This

24  phenomenon is known as 'focalism.' ... This is another matter that goes to the weight,

25  not the admissibility of the challenged survey.").

26       **5.   Survey Respondents Were Not Confused By The Survey**
            **Instructions.**

27

28       Honda quotes respondents who might have been confused or critical of the

18

survey. However, Honda ignores the many individuals who were not confused and who provided positive feedback. Boedeker Decl. ¶ 51. Indeed, at the beginning of the conjoint survey itself, Boedeker looked at the first 100 responses to make sure that respondents understood the survey choices. Boedeker Decl. ¶ 51. While Honda amplifies a few survey takers' confusion as to the instructions and questions, the vast majority (about 96%) answered the questions without problem. *Id*. at ¶ 53. Typical of any survey are some "outliers" that don't understand the instructions or questions. *Id.* This is also true in the actual world where individual consumers make seemingly irrational purchase decisions or don't read all the instructions or don't understand all product features. *Id*. But here, the irrational "outliers" were de minimis. *Id*. To repeat, the format of the survey questions goes to weight and not admissibility. *Fortune Dynamic* 618 F.3d at 1036 ("technical inadequacies in a survey, including the format of the questions or the manner in which it was taken, bear on the weight of the evidence, not its admissibility.").

### 6. Boedeker's Analysis Fits The Facts Of This Case.

Honda faults Boedeker for failing to consider Honda's version of the facts of the case. However, Boedeker correctly tested assumptions provided to him by Plaintiffs' counsel. Those assumptions included levels of likelihood that an Odyssey purchaser would suffer from the Transmission Defect and how long it would take for Honda to provide a countermeasure.

In its motion, Honda does not attempt to undercut the parameters of Boedeker's analysis. Instead, Honda attempts to distract the Court with unrelated (and disputed) facts that Plaintiffs never experienced the Transmission Defect and that Honda eventually provided effective countermeasures. Given that these facts are not relevant to testing for how much less a customer would have paid if they knew the likelihood that they would suffer from the defect and for how long, Boedeker's analysis is not flawed for failing to consider these facts, even if they were true.

Further trying to cloud the issues here, Honda argues that the Odysseys have not "lost value" and that Plaintiffs have not spent out of pocket for any countermeasures. Even if true, these points would have no impact on whether consumers would have paid less at the point of sale had Honda told them the full truth about their vehicles. So, again, Boedeker's analysis is not flawed for failing to consider Honda's version of the facts.

Finally, there would be no reason for Boedeker to consider Honda's legal arguments about what constitutes an ascertainable loss. Boedeker's analysis is the result of a reliable method reliably applied, and therefore a valid and admissible class-wide damages theory sufficient to support class certification.

## V.    CONCLUSION

For the forgoing reasons, this Court should deny Defendants' motion to strike Boedeker's testimony.


DATED: July 15, 2019                **WHITFIELD BRYSON & MASON, LLP**


By:    /s/ Gary E. Mason
Gary E. Mason*
5101 Wisconsin Ave., NW, Suite 305
Washington, D.C. 20016
T: (202) 429-2290
F: (202) 429-2294
gmason@wbmllp.com

Shimon Yiftach (SBN 277387)
Peretz Bronstein*
**BRONSTEIN GEWIRTZ & GROSSMAN**
1925 Century Park East, Suite 1990
Los Angeles, CA 90067
T: (424) 322-0322
shimony@bgandg.com

Lawrence Deutsch*
Jeffrey Osterwise*
**BERGER MONTAGUE**
1818 Market Street
Philadelphia, PA 19103
T: (215) 875-3062
F: (215) 875-4604
ldeutsch@bm.net
josterwise@bm.net

\* Admitted *pro hac vice*                    *Attorneys for Plaintiffs*

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO STRIKE TESTIMONY OF STEFAN BOEDEKER

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### Certificate of Service

On July 15, 2019, I caused this document to be filed and served on all ECF-registered counsel of record using the Court's CM/ECF system.

By:  /s/ Gary E. Mason

Gary E. Mason

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO STRIKE TESTIMONY OF STEFAN BOEDEKER