Shimon Yiftach, Esq. (SBN 277387)
shimony@bgandg.com
Bronstein Gewirtz & Grossman
1925 Century Park East, Suite 1990
Los Angeles, CA 90067
T: (424) 322-0322
F: (212) 697-7296

*Attorneys for Plaintiffs*

[Additional counsel appear on signature page]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| DENNIS MACDOUGALL, *et al.*,<br><br><br>Plaintiffs,<br><br>v.<br><br><br>AMERICAN HONDA MOTOR CO., INC., *et al.*,<br><br><br>Defendants. | Case No. 8:17-cv-01079-AG (DFMx)<br><br>CLASS ACTION<br><br>**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF CLASS CERTIFICATION**<br><br>Hearing Date: August 5, 2019<br>Time: 10:00 a.m.<br>Location: Santa Ana Division, 10D<br>Judge: Hon. A. Guilford |

# TABLE OF CONTENTS

I.  INTRODUCTION ...........................................................................................1

II.  FACTUAL REBUTTAL TO DEFENDANTS' RESPONSE ...........................3

    A.  Honda Ignores Plaintiffs' Common Evidence Of Honda's Long-Standing Problem With Torque Converter Judder...........................................3

    B.  Honda Incorrectly Points To The TSBs Only For Evidence of A Common Defect. ......................................................................................5

    C.  Each Plaintiff Experienced Judder...........................................................5

    D.  The Class Vehicles Do Not Vary In Ways Material To This Litigation. ..........7

    E.  The Plaintiffs' Claims Do Not Vary In Ways Material To This Litigation. .....8

    F.  Mr. Arst's Limited Single, Brief Test Drive Is Not Determinative Of Plaintiffs' Intermittent Judder. ...........................................................9

III.  PLAINTIFFS HAVE STANDING TO BRING THEIR CLAMS FOR ECONOMIC INJURY SINCE THEY OVERPAID FOR A CAR WITH AN UNDISCLOSED DEFECT .........................................................9

IV.  THE CLASSES SHOULD BE CERTIFED ...................................................11

    A.  Plaintiffs Have Satisfied The Rule 23(A) Prerequisites. ................................11

        1.  Plaintiffs' And Class Members' Claims Share Common Questions Of Fact And Law, Satisfying Rule 23(A)(2).......................................11

        2.  Plaintiffs' Claims Are Typical Of The Classes' Claims, Satisfying Rule 23(A)(3). .........................................................................12

    B.  Honda Fails To Undermine Predominance......................................................14

        1.  Common Issues Predominate As To The Statutory And Consumer Fraud  Claims. ...............................................................................14

        2.  Common Issues Predominate As To The Implied Warranty Claims............16

        3.  Common Issues Predominate As To The Unjust Enrichment Claims..........17

i

4.  Common Issues Predominate As To The Express Warranty Claims. .......... 18

C.   Plaintiffs' Expert Provides A Valid Method−Using A Conjoint Analysis To Measure Price Overpayment−To Determine Classwide Damages................. 19

D.   A Class Action Is The Superior Method Of Adjudication. ............................ 20

**V.   CONCLUSION** ................................................................................. **21**

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
CLASS CERTIFICATION

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**                                                                 **Page**

*Amgen v. Conn. Ret. Plans & Tr. Fund*, 568 U.S. 455, 133 S. Ct. 1184 (2013)..........11

*Beyer v. Symantec Corp.,* 333 F. Supp. 3d 966 (N.D. Cal. 2018) ................................10

*Brand v. Hyundai Motor Am.*, 173 Cal. Rptr. 3d 454, 226 Cal. App. 4th 1538

    (2014) ...........................................................................................................................16

*Carroll v. Stettler*, No. 10-2262, 2011 U.S. Dist. LEXIS 121171, 2011 WL

    5008349 (E.D. Pa. Oct. 19, 2011)..........................................................................17

*Cartwright v. Viking Industries, Inc.*, No. 2:07-CV-02159, 2009 U.S. Dist.

    LEXIS 83286, 2009 WL 2982887 (E.D. Cal. Sep. 14, 2009) .................................17

*Comcast Corp. v. Behrend*, 569 U.S. 26, 133 S. Ct. 1426 (2013)...............................19

*Daffin v. Ford Motor Co*., 458 F.3d 549 (6th Cir. 2006) ............................................18

*Dzielak v. Whirlpool Corp*., Civ. No. 2:12-89 (KM)(JBC), 2017 U.S. Dist.

    LEXIS 209106, 2017 WL 6513347 (D.N.J. Dec. 20, 2017) ............................14, 17

*Elias v. Ungar's Food Prods*., 252 F.R.D. 233 (D.N.J. 2007) ....................................18

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011)...................................11

*Fitzpatrick v. Gen. Mills, Inc*., 263 F.R.D. 687 (S.D. Fla. 2010) ................................14

*Guido v. L'Oreal USA, Inc.,* 2013 WL 3353857 (C.D. Cal. July 1, 2013) .................14

*Guido v. L'Oreal, USA, Inc.,* 284 F.R.D. 468 (C.D. Cal. 2012)...................................11

*Hanlon v. Chrysler Corp*., 150 F.3d 1011 (9th Cir. 1998) .............................................8

*Herkert v. MRC Receivables Corp.,* 254 F.R.D. 344 (N.D. Ill. 2008) ........................13

*In re Mercedes-Benz Tele Aid Contract Litig*., 257 F.R.D. 46, 72-75, 2009 U.S.

    Dist. LEXIS 35595 (D.N.J. 2009) ..........................................................................14

*In re MyFord Touch Consumer Litig*., 291 F. Supp. 3d 936 (N.D. Cal. 2018)......16, 18

*In re MyFord Touch Consumer Litig.,* 46 F. Supp. 3d 936, 980 (N.D. Cal. 2014)......16

*In re MyFord Touch Consumer Litig.*, No. 13-CV-03072-EMC, 2016 WL

    6873453 (N.D. Cal. Nov. 22, 2016)....................................................................8, 18

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145 (C.D. Cal. 2010) ......................................10

*In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838 (6th Cir. 2013)...............................................................................................7

*Isip v. Mercedes–Benz USA, LLC*, 65 Cal. Rptr. 3d 695, 155 Cal. App. 4th 19 (2007) ...........................................................................................................16

*Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504 (C.D. Cal. 2012)...............13, 15, 18

*Martin v. Yasuda*, 829 F.3d 1118 (9th Cir. 2016). .........................................................13

*Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580 (C.D. Cal. 2008). ..........................14

*Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979 (9th Cir. 2015)....................1

*Roberts v. Electrolux*, 2013 WL 77553579 (C.D. Cal. Mar. 4, 2013) ............................1

*Samuel–Bassett v. Kia Motors Am., Inc.,* 34 A.3d 1, 613 Pa. 371 (2011).......................7

*Sims v. Kia Motors Am., Inc.*, No. CV 13-1791 AG, 2014 WL 12558251 (C.D. Cal. Oct. 8, 2014)..........................................................................................10, 11

*Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84 (D.N.J. 2011) ...............................15

*Solo v. Bed Bath & Beyond, Inc.*, 2007 WL 1237825 (D.N.J. Apr. 26, 2007)..............15

*Staton v. Boeing Inc.*, 327 F.3d 938 (9th Cir. 2003)........................................................8

*Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466 (C.D. Cal. 2012) .......................14

*United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO v. ConocoPhillips Co.,* 593 F.3d 802 (9th Cir. 2010) ....................................................................................................2, 12

*Vaccarino v. Midland Nat. Life Ins. Co.*, No. 2:11-cv-05858-CAS(MANx), 2014 WL 572365 (C.D. Cal. Feb. 3, 2014) .............................................................19

*Williams v. Yamaha Motor Co.*, 851 F. 3d 1015 (9th Cir. 2017) ..................................10

*Wolph v. Acer Am. Corp.*, 272 F.R.D. 477 (N.D. Cal. 2011) ........................................14

iv

**Statutes**                                                                                              **Page**

Rule 23 ..................................................................................................................... 11

Rule 23(a) ............................................................................................................ 3, 11

Rule 23(a)(2) ........................................................................................................... 11

Rule 23(b)(3) ............................................................................................................. 3

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
CLASS CERTIFICATION

# I.      INTRODUCTION

Plaintiffs' class certification motion should be granted. Plaintiffs have presented classwide evidence that Honda: (1) sold over 400,000 Honda Odyssey minivans equipped with defective transmissions; (2) hid the truth of the defect from Class members; and (3) charged a price premium for the Class Vehicles. Based on that common evidence, Plaintiffs' economic expert provides substantial proof that all Class members suffered a quantifiable financial loss at the time of sale, because Honda could not have charged a price premium for Class Vehicles if it had revealed the truth. And the damages suffered by the Class members are measured at the time of sale, not later. *See Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015) (damages are based on "what was paid and what a reasonable consumer would have paid at the time of purchase without the fraudulent or omitted information" and "need not account for benefits received after purchase"); *see also Roberts v. Electrolux*, 2013 WL 77553579, at *6 (C.D. Cal. Mar. 4, 2013) ("A breach of warranty of merchantability occurs when a product containing a latent defect is sold, not when the product's defect actually manifests itself.").

Honda's opposition to class certification rejects Plaintiffs' factual and legal theory that Honda knowingly sold hundreds of thousands of cars with a defect and that damages are measured at the time of each Class member's purchase of their car. Instead, Honda narrowly focuses on the Plaintiffs' post-purchase experience with their cars and puts forward the entirely merits-based (and  false) argument that none of the Plaintiffs' vehicles manifested Judder.[1] But this Court must reject Honda's invitation to ignore Plaintiffs' theory of the case, even if it has not been "assured that plaintiffs would prevail on their primary legal theory." *United Steel, Paper & Forestry, Rubber,*

---

[1] Based on documents from Honda's internal investigation of the defect Plaintiffs allege, Judder includes intermittent shudder, judder, vibration, hesitation or surge related to the torque converter. Pls.' Statement of Facts ¶ 70, ECF Nos. 174-1 & 182-1 ("PSOF"). In its briefing, and nowhere else, Honda has adopted the term "Atypical Vibrations" to obscure the core problem with its product.

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
CLASS CERTIFICATION

*Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO v. ConocoPhillips Co.,* 593 F.3d 802, 808 (9th Cir. 2010) (holding that district court was incorrect to "treat[ ] plaintiffs' actual legal theory as all but beside the point" ).

Honda's attempts to undermine Plaintiffs' common evidence fail. In their opening brief, Plaintiffs demonstrated that (1) Honda knew before Plaintiffs purchased their Honda Odysseys that the minivans ████████████████████ suffered from a defect which would cause Judder and that it did not have a permanent fix,[2] (2) Honda failed to timely rectify the defect in the Class Vehicles,[3] and (3) the problem remains unresolved.[4] Plaintiffs also demonstrated that if the Plaintiffs and Class members had known about the defect and that it would take years, if ever, to develop a repair, they would have paid less for their vehicles—evidencing the predominance of common issues.

Honda's opposition does not rebut the facts supporting commonality. Honda simply ignores the damning factual evidence. Instead, it argues, contrary to the evidence, that none of the Plaintiffs experienced Judder due to the defect, that the "vibrations" experienced by the Plaintiffs were (and are) "normal," and the only way the Plaintiffs (or Class members) could ever prove their case is by submitting their car to Honda for an individual car inspection using specialized diagnostic equipment. In contrast, the *common* evidence shows that Honda knew Judder was a significant issue with the Class Vehicles before the start of the Class Period.

Honda's brief also makes baseless arguments against typicality, superiority, and the elements of certain claims. Honda also throws in misguided *Daubert* motions, attacking well-respected experts in their fields. Plaintiffs have established the

---

[2] *See* Decl. of Dr. Robert Parker at 9-41, Jan. 15, 2019, ECF Nos. 147-11 & 179-4 ("Parker Decl.).
[3] *Id.*
[4] *Id.* at 24-29.

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
CLASS CERTIFICATION

elements of Rule 23(a) and predominance and superiority under Rule 23(b)(3). The Court should certify the Class as set forth in Plaintiffs' motion.

## II. FACTUAL REBUTTAL TO DEFENDANTS' RESPONSE

### A. Honda Ignores Plaintiffs' Common Evidence Of Honda's Long-Standing Problem With Torque Converter Judder.

Honda does not dispute any of the following facts:

- Honda knew before the Plaintiffs purchased their Honda Odysseys that ███████████████████████████████████████████████████████████████ ████████████

- Honda's engineering investigation ultimately determined the problem arose from the lock-up clutch in the torque converter.[6]

- In November 2015, after years of customer complaints, Honda finally ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ █████████████████████████████████████ █ ███████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ████████████████

- Service Bulletin 16-060 was released in August 2016, two years after the Plaintiffs purchased their vehicles, which made available for 2014-2016

---

[5] *See generally,* Parker Decl., *supra* note 2, at 39-41.
[6] Dep. of Mike Gibson 56:8-56:23, ECF Nos. 147-9 & 179-2 ("Gibson Dep.").
[7] Dep. of Robert Hall Ex. 144-145, ECF Nos. 147-8 & 179-1 ("Hall Dep.").
[8] *Id.* The Class Vehicles are all 6AT.

Odysseys the <u>temporary</u> repair of flushing and replacing the automatic transmission fluid ("ATF").

- It took an additional year before an allegedly "permanent" software repair was available for some of the cars. In June 2017, a TSB for 2014-2017 Odysseys was disseminated to Honda dealers authorizing reprogramming of the Engine Control Units ("ECUs") provided by Honda Supplier, Keihin. This repair was to be made together with an ATF flush. Odysseys with Honda–supplier Continental's ECU also required a temporary ATF flush but the programing for that ECU had still not been finished in 2017.

- The warranty applicable to transmission-related parts for these vehicles extends to 8 years/80,000 miles but only to perform these two specific repairs, and only on vehicles where a technician confirms, via data from an automatic transmission snapshot, that Judder is coming from the torque converter.

- Each of the Plaintiffs experienced transmission related Judder soon after purchase of their Odysseys[9] and attempted, without success, to get their cars fixed at their Honda dealers.[10] Each of the Named Plaintiff's vehicles were ultimately provided an ATF flush, consistent with the relevant TSBs.

- If the Named Plaintiffs and Class members had known about the transmission defect and that it would take years, if ever, to develop a repair, they would have paid less for their vehicles.

These undisputed facts *alone* suffice to support class certification. Nonetheless,

---

[9] *See* discussion *infra,* Section II.C.
[10] *See* Dep. of Ray Seow 73:1-6, ECF No. 147-3 ("Seow Dep."); Dep. of Bryan Lentz 104:23-105:15, ECF No. 147-4 ("Lentz Dep."); Dep. of Joseph Ryan Parker 120:4-11, ECF No. 147-5 ("J. Parker Dep."); Dep. of Dennis MacDougall 96:1-8, ECF No. 147-6 ("MacDougall Dep."); Dep. of Prabhanjan Kavuri 139:11-140:3, ECF No. 147-7 ("Kavuri Dep.").

Plaintiffs respond below to each of Honda's arguments concerning the factual basis for class certification.

**B.   Honda Incorrectly Claims The TSBs Do Not Support Evidence of A Common Defect.**

Although Honda focuses exclusively on its TSBs, and contends that these dealer communications are not evidence of a common defect, it ignores the overwhelming corpus of documents and deposition testimony showing that Honda's engineers spent many years investigating a flaw in 2012-2016 model year Odysseys' transmissions ███████████████████████ Indeed, the core document that Honda's engineers created to launch the investigation, known as a Quality Improvement Sheet ("QIS"), links the symptoms referred to in this case as Judder, with a transmission "defect."[12]

Honda's recitation of the long history of TSBs issued in connection with Judder serves to underscore another undisputed fact: it took Honda nearly five years to come up with what it hoped was the "final" fix of the Judder issue. "Honda's Commitment to Quality," slogan,[13] while sounding impressive, masks that it sold Plaintiffs and class members cars with a known defect. Honda, in turn, failed to provide a repair within a reasonable amount of time.

**C.   Each Plaintiff Experienced Judder.**

Honda repeats (and repeats) the assertion that none of the Plaintiffs' vehicles manifested Judder at any time. Honda may believe that is so, but there is ample evidence upon which a jury could find otherwise.

Plaintiffs each purchased a model year 2014 Class Odyssey between December 2013 and September 2014, and each experienced the Judder defect within their first

---

[11] Parker Decl., *supra* note 2, at ¶ 74; *see also* AHM_ODYT 000000843, ECF Nos. 174-9 & 182-7.
[12] *Id.*
[13] Defs. American Honda Motor Co., Inc. and Honda North America, Inc.'s Opp. to Pls.' Mot. for Class Certification at 4, ECF No. 167 ("Defs.' Opp.").

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
CLASS CERTIFICATION

year owning the vehicle.[14] Plaintiffs' experiences with the defect demonstrate that the manifestation of the defect scared them and created an unsafe and distracted driving condition.[15] Their experiences further confirm that the defect manifests intermittently in their Odysseys.[16]

Plaintiffs' repair records demonstrate that each of them sought repair of the defect on more than one occasion prior to filing their lawsuit,[17] and Plaintiffs' evidence shows that authorized Honda service technicians confirmed symptoms of the defect in many of Plaintiffs' vehicles.[18] Those records, as well as Plaintiffs' complaints made directly to Honda and in online forums, corroborate that Plaintiffs were experiencing Judder.[19] And, after Honda suggested (and decided to cover under warranty) flushing the Class Odysseys' ATF as a temporary countermeasure to the Judder defect, most Plaintiffs' dealers flushed their Odysseys' ATF.[20] The ATF in Mr. MacDougall's Odyssey was flushed prior to the release of TSB 16-060, after the dealership found that the ATF was dirty with less than 26,000 miles on the vehicle.[21] The flush for Plaintiffs Parker and Seow was covered under warranty, and Plaintiff Parkers' dealership specifically noted that it was performing service under TSB 16-060.[22]

The ATF flushes by Plaintiffs' dealers were an acknowledgement that Plaintiffs' Odysseys had malfunctioned due to the Judder defect Honda admitted in TSB 16-060 existed in Plaintiffs' Odysseys, and such acknowledgment was confirmed by the fact that the condition of each Plaintiffs' Odyssey improved for a time

---

[14] PSOF ¶ 70.
[15] PSOF ¶ 72.
[16] PSOF ¶ 79.
[17] PSOF ¶ 74.
[18] PSOF ¶ 71.
[19] *Id.*
[20] PSOF ¶ 76.
[21] *Id.*
[22] *Id.*

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
CLASS CERTIFICATION

following receipt of Honda's countermeasure,[23] although none of Honda's temporary countermeasures have completely cured the defect in Plaintiffs' Odysseys. *Id.*

Honda may try to convince a jury that none of the Plaintiffs experienced Judder—despite this overwhelming evidence to the contrary—but for purposes of Class Certification, it is *Plaintiffs'* legal theory that matters (i.e., Honda knew before selling that Class Vehicles that they had a transmission defect that causes Judder), not Honda's.

Moreover, while this Court can "probe behind the pleadings" to determine whether the facts advanced by Plaintiffs' support certification, issues of fact must be resolved by the jury. As discussed below, the facts put forward by Plaintiffs, including their experience with Judder, at a minimum, give rise to triable issues (as to injury incurred  both at time of sale and post-sale due to unreasonable delay in making a permanent repair to the Judder) and therefore support, class certification.

> **D.    The Class Vehicles Do Not Vary In Ways Material To This Litigation.**

Defendants argue that  the software and control models "vary from model year to year as well as from engine to engine, and components are provided by multiple suppliers," as noted in Section III of their Opposition Brief. Defs.' Opp. 7-8. What is missing from Defendants' argument, however, is any explanation of why these design changes matter.

The law is well-established that design changes will not defeat commonality and predominance "where modifications did not significantly alter the basic defective design." *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 855 (6th Cir. 2013) (citing *Samuel–Bassett v. Kia Motors Am., Inc.,* 34 A.3d 1, 22–24, 613 Pa. 371 (2011)).

---

[23] PSOF ¶ 77.

Here, the evidence is overwhelming that the design changes did nothing to correct the basic defect, a least not until new software was introduced in 2017. As Dr. Parker opines, citing numerous Honda internal engineering documents, ████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████████████ These efforts to fix the defect and resultant Judder encompassed all of the Class Vehicles ███████████████████ █████████████████████[24]

**E.     The Plaintiffs' Claims Do Not Vary In Ways Material To This Litigation.**

Defendants argue that the ways each Plaintiff experienced Judder varied. Nonetheless, as set forth in Section II.C. above, these experiences are similar insofar as each Plaintiff experienced an intermittent shudder, judder, vibration, hesitation or surge, i.e. "Judder;" received a change or flush of their transmission fluid (consistent with applicable TSBs and Honda's internal efforts to fix the known defect), and testified that their vehicles had reduced Judder, at least temporarily, after getting the transmission flush.

The law is well-established that variations in the specific complaints of Class members will not defeat typicality, commonality or predominance. Even if the Plaintiffs' experiences do not precisely match each other and every other Class member, that does not make the Plaintiffs atypical. "Rule 23(a)(3) does not require all representative claims perfectly match. It only requires Named Plaintiffs' claims to be "reasonably co-extensive with those of absent class members; they need not be substantially identical." *In re MyFord Touch Consumer Litig.*, No. 13-CV-03072-EMC, 2016 WL 7734558, at *10 (N.D. Cal. Sept. 14, 2016), *on reconsideration in part*, No. 13-CV-03072-EMC, 2016 WL 6873453 (N.D. Cal. Nov. 22, 2016) (citing

---

[24] Parker Decl., *supra* note 2, at 15 & ¶¶ 52-90.

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
CLASS CERTIFICATION

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) and *Staton v. Boeing Inc.*, 327 F.3d 938, 957 (9th Cir. 2003)).

### F.   Mr. Arst's Single, Brief Test Drive Is Not Determinative Of Plaintiffs' Intermittent Judder.

Honda claims (as a matter of fact) that the Plaintiffs  do not have Judder "nor anything else wrong with their transmissions."[25] As detailed in Plaintiffs' Opposition to Summary Judgment, ECF Nos. 174 & 182 ("Pls.' Opp. MSJ") this is a genuine disputed issue of fact. Honda claims that Mr. Arst's testing is undisputed. Not so. Plaintiffs' expert Dr. Robert Parker, for one, disputes Mr. Arst's finding, noting that the "snapshots" taken by Mr. Arst are too brief to reliably capture an intermittent Judder event.[26] Mr. Arst collected an average of 11.4 minutes of applicable data from each Plaintiffs' Odyssey.[27] Mr. Arst admits that he does not know whether the Plaintiffs' Odyssey vehicles juddered due to the defect prior to his tests, or if they have done so since his tests,[28] and he concedes that an ATF flush prior to his test would impact the reliability of his tests, making it less likely that the Judder would manifest during the test.[29]

## III.   PLAINTIFFS HAVE STANDING TO BRING THEIR CLAMS FOR ECONOMIC INJURY SINCE THEY OVERPAID FOR A CAR WITH AN UNDISCLOSED DEFECT

Honda argues first that the Plaintiffs lack standing to bring this action because their own vehicles did not demonstrate Judder when subjected to its testing. Putting

---

[25] Defs.' Opp. 11.

[26] *See* Decl. of  Robert G. Parker. Ph.D. in Reply to Report Submitted by Mr. Jason Arst ¶¶ 16-47, May 7, 2019, ECF No. 151-2 ("Parker Reply Decl."). Mr. Arst admitted that when the judder defect manifests, it is momentary, lasting from a fraction of a second to a few seconds. Dep. of Jason Arst 62:16-64:20, ECF No. 174-34 ("Arst Dep.").

[27] Parker Reply Decl. 6-8.

[28] Arst Dep. 80:16-81:22.

[29] *Id.* at 83:19-84:7

---

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
CLASS CERTIFICATION

aside the fact that Plaintiffs dispute this assertion,[30] Plaintiffs would have standing regardless of whether the Judder manifested in their vehicles because of their claim for "overpayment, loss in value, or loss of usefulness" as supported by the evidence of Honda's known defect in the Class Vehicles' torque converter. Plaintiffs thus suffered damage thereby conferring standing here. *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig*., 754 F. Supp. 2d 1145, 1161–64 (C.D. Cal. 2010).

In *Toyota*, Toyota argued, as does Honda here, that numerous plaintiffs had not experienced the alleged defect and, in the absence of a manifested defect, those plaintiffs lacked standing. The court rejected that argument, finding that experiencing the defect was not required for standing:

> Standing merely requires a redressable injury that is fairly traceable to Defendants' conduct. Whether a plaintiff can recover for that injury under a particular theory of liability is a separate question. Here, Plaintiffs allege economic loss injuries, which may or may not be recoverable under Plaintiffs' claims in the MCC. These alleged economic injuries are sufficient.

*Toyota*, 754 F. Supp.  1161.

In support of its argument that none of the five Plaintiffs have standing, Honda cites *Williams v. Yamaha Motor Co*., 851 F. 3d 1015 (9th Cir. 2017) and *Sims v. Kia Motors Am., Inc*., No. CV 13-1791 AG, 2014 WL 12558251 (C.D. Cal. Oct. 8, 2014). *Williams* stands for the proposition that where a defendant has not made an affirmative misrepresentation, a plaintiff must allege the existence of an unreasonable safety hazard and a causal connection between the defect and the hazard. However, as the District Court for the Northern District of California recently explained in *Beyer v. Symantec Corp.,* 333 F. Supp. 3d 966, 978 (N.D. Cal. 2018), *Williams* has been cast into doubt by recent California Court of Appeal opinions going beyond safety hazards

---

[30] *See* Pls.' Opp. MSJ at 7-8.

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
CLASS CERTIFICATION

to any measureable damage resulting from a material nondisclosure.[31] *Accord*, *Guido v. L'Oreal, USA, Inc.,* 284 F.R.D. 468, 475 (C.D. Cal. 2012) (economic injury is cognizable under the UCL and sufficient to satisfy Article III standing where plaintiffs would have paid less for the allegedly defective product than its retail price or would not have purchased it at all.).

*Sims v. Kia Motors Am.*, *Inc.*, 2014 WL 12558251 (C.D. Cal. Oct. 8. 2014), an unreported case, provides even less support for Defendants' arguments. *Sims* was decided upon a motion to dismiss and standing was not discussed at all. The court dismissed plaintiffs' claims for breach of implied warranty upon a finding that the plaintiffs failed to *plead* that their product manifested the defect. Honda cannot make the same argument here, as each of the Plaintiffs alleged in the Complaint (and later testified) that they experienced the defect.[32] Furthermore, Plaintiffs allege that every Class member suffered damage by overpaying for a defective transmission at the point of sale.

## IV.   THE CLASSES SHOULD BE CERTIFED

### A.   Plaintiffs Have Satisfied The Rule 23(A) Prerequisites.

#### 1.   Plaintiffs' And Class Members' Claims Share Common Questions Of Fact And Law, Satisfying Rule 23(A)(2).

Honda's argument against commonality, Defs.' Opp. at 15, is brief and incomprehensible. It appears to be arguing that there is no common evidence because, as a factual matter, the evidence "proves" that none of the Plaintiffs' vehicles

---

[31] "These recent appellate decisions extend liability for non-disclosure  beyond safety hazards by 'sanction[ing] a UCL omission claim when: the plaintiff alleges that the omission was material; second, the plaintiff must plead that the defect was central to the product's function; and third, the plaintiff must allege one of the four *LiMandri* factors.' The *LiMandri* factors are: '(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts.'" *Beyer*, 333 F. Supp. 3d at 978.

[32] *See* Compl. ¶¶ 58-93.

manifested Judder. In addition to relying on a disputed issue which the Court ought to refrain from attempting to resolve on a motion for class certification,[33] Honda intentionally ignores Plaintiffs' factual and legal theory (Honda knew before selling the Class Vehicles that they had a transmission defect that causes Judder) in favor of its own spin on the case (that Plaintiffs' must, but cannot, prove manifestation of the Judder defect). *See United Steel*, 593 F.3d at 808 (at class certification phase, plaintiffs' "actual" legal theory cannot be ignored or rejected).

### 2.    Plaintiffs' Claims Are Typical Of The Classes' Claims, Satisfying Rule 23(A)(3).

As with its argument against commonality, Honda improperly relies on the merits-based argument that the Plaintiffs' vehicles did not experience Judder. Apart from the fact Plaintiffs do present evidence of Judder in their vehicles, Honda has not (and cannot) dispute the fact that Plaintiffs' claims are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Plaintiffs and every Class member overpaid for Odysseys with defective transmissions.

Honda extends its merits-based argument even further, and argues that not only have Plaintiffs not experienced Judder, but Plaintiffs cannot represent persons who own other model year Honda Odyssey vehicles because those models are not exactly the same as the 2014 model year Honda Odyssey. Yet Honda ignores the evidence put forward by Dr. Parker that all of the Class Vehicles suffered from the same Judder

---

[33] Although the Court's "class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of [P]laintiff's underlying claim,' . . . Rule 23 grants no license to engage in free-ranging merits inquiries at the class certification stage." *Amgen v. Conn. Ret. Plans & Tr. Fund*, 568 U.S. 455, 464-65, 133 S. Ct. 1184, 1194-95 (2013); *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 (9th Cir. 2011) (it is inappropriate to "determine whether class members could actually prevail on the merits of their claims").

defect, which was not fully resolved (if at all) until June 2017.[34] Taking into account Plaintiffs' actual theory of the case, as opposed to Honda's, the Court should find that the typicality requirement has been satisfied.

Last, Honda asserts a handful of "individualized defenses" it contends defeat typicality. Ironically, these defenses—an alleged agreement to arbitrate,[35] the continued use of the vehicle despite safety concerns, and improper maintenance—are either irrelevant or not unique to any of the Plaintiffs. First, post-purchase defenses are irrelevant, because the case centers upon damages suffered at the time of purchase. To the extent any of these defenses apply to many class members, and, as they appear, are not unique to the Plaintiffs, they actually raise  common issues that can be managed within the certified class action. *Keegan v. Am. Honda Motor Co.,* 284 F.R.D. 504, 525 (C.D. Cal. 2012) (defense that can be expected to be raised against all or many members of the class is not unique or idiosyncratic to the named plaintiffs and will not defeat typicality).

---

[34] Parker Decl., *supra* note 2, at ¶¶ 52-90; *see also* TSB 17-043, AHM_ODYT_000000045, ECF No. 153-6 at Ex. 42 (notice of  corrective action applicable to model year 2014-2017 Odyssey vehicles which manifest Judder from the torque converter).

[35] Honda misrepresents Mr. MacDougall's testimony to argue that he admitted that he agreed to arbitrate his claims. Def.  Opp. 16. During his deposition, counsel for Honda asked Mr. MacDougall if he understood that, pursuant to his purchase contract with his dealer, he agreed to arbitrate his "claims," without counsel specifying which "claims" she was asking about. MacDougall Dep. 302:11-304:20. Mr. MacDougall responded "[t]hat's what it says. I don't understand what it actually means." *Id.* at 302:11-304:20. Mr. MacDougall's testimony aside, if Honda genuinely believed it had a colorable argument that it could compel Mr. MacDougall to arbitrate the claims asserted here, Honda would show the Court the arbitration agreement. But, that agreement makes clear that any arbitration provision Mr. MacDougall agreed to was between him and his *dealer* – Defendants are not party to that agreement. *See* Mason Decl., Ex. M, MacDougall Dep. Ex. 90 (stating "You and we [defined as Apple Honda] are the sole parties to this Agreement. References in this Agreement to Manufacturer are for the purpose of describing certain contractual relationships between the Manufacturer and us [defined as Apple Honda] relating to new vehicles."). Likewise, if Honda actually had an agreement to arbitrate with any Class member, the Court would have seen that agreement by now. This issue is also irrelevant because Honda has long since waived any right to compel arbitration. *See Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016). (All references to "Ex. __" are the Exhibits attached to the Declaration of Gary E. Mason ("Mason Decl."), filed herewith).

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
CLASS CERTIFICATION

To the extent any of Honda's defenses are truly individualized, they will not defeat certification unless these unique defenses will consume substantial resources. *See, ,e.g., Herkert v. MRC Receivables Corp.,* 254 F.R.D. 344, 350 (N.D. Ill. 2008) ("To the extent there may be some unique defenses applicable to certain class members, there is no evidence that resolution of these individual issues will consume more time or resources than the resolution of the common issues in the case."). Honda makes no such showing.

**B.   Honda Fails To Rebut Predominance.**

**1.   Common Issues Predominate As To The Statutory And Consumer Fraud Claims.**

Honda's first argument against predominance is, once again, improperly merits-based. It argues that as a matter of law and fact, Plaintiffs cannot prevail on their California CLRA or UCL claims because there is no evidence of a safety risk. Even if the Court were to consider the merits here, and find that the Judder does not present a safety risk (yet it is obvious that a car shaking and jerking while driving down the highway is a safety risk), this would not mean Honda did not have a duty to disclose the defect. An omission can be "material" even if does not involve a safety risk. Consequently, district courts in the Ninth Circuit frequently certify CLRA and UCL omissions claims without requiring proof of a safety hazard. *See*, *e.g., Tait v. BSH Home Appliances Corp*., 289 F.R.D. 466, 489 (C.D. Cal. 2012); *Wolph v. Acer Am. Corp*., 272 F.R.D. 477, 447,481,489 (N.D. Cal. 2011); *Parkinson v. Hyundai Motor Am*., 258 F.R.D. 580, 586-87, 596, 600 (C.D. Cal. 2008); *accord*,  *Guido v. L'Oreal USA, Inc.,* 2013 WL 3353857, at *11 (C.D. Cal. July 1, 2013) ("Since materiality concerns objective features of allegedly deceptive advertising, not subjective questions of how it was perceived by each individual consumer, whether an omission is material presents a common question of fact suitable for class litigation.") (citation omitted).

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
CLASS CERTIFICATION

Honda makes a similar argument attacking Plaintiffs' claims under the Florida Deceptive Trade Practices Act and the New Jersey Consumer Fraud Act, contending that in both states, the Plaintiffs will be unable to prove "materiality." However, in both Florida and New Jersey, as in California, the issue of materiality is judged by the standard of the objective "reasonable" consumer, making it appropriate for class certification and resolution by a jury. *Fitzpatrick v. Gen. Mills, Inc*., 263 F.R.D. 687, 695 (S.D. Fla. 2010) ("[T]o satisfy the FDUTPA's causation requirement, each plaintiff is required to prove only that the deceptive practice would--in theory--deceive an objective reasonable consumer."); *In re Mercedes-Benz Tele Aid Contract Litig*., 257 F.R.D. 46, 72-75, 2009 U.S. Dist. LEXIS 35595, at *89 (D.N.J. 2009) (certifying class of car purchasers in a NJCFA omission case; "virtually all of the legal and factual issues which will be adjudicated at trial are common to the class;" actual reliance is not required and "Plaintiffs' consumer fraud claim turn[s] on the knowledge and actions of the company rather than those of the individual class members, and are therefore common to the class."); *Dzielak v. Whirlpool Corp*., Civ. No. 2:12-89 (KM)(JBC) , 2017 U.S. Dist. LEXIS 209106, at *18-24, 2017 WL 6513347 (D.N.J. Dec. 20, 2017) (certifying NJCFA class of washing machine purchasers); *Keegan*, 284 F.R.D. at 532 ("Here, whether class vehicles have a propensity or likelihood to experience excessive and premature tire wear, even if each one does not necessarily manifest the problem, will be a question of fact for the jury."). Here too, the crucial issue of this case is whether at the time of purchase the undisclosed transmission defect would be material to the reasonable consumer, an entirely common inquiry.

Honda also argues that Plaintiffs will be unable to show that Plaintiffs' suffered an "ascertainable loss" as required by the New Jersey Consumer Fraud Act ("NJCFA"). For a loss to be "ascertainable," New Jersey courts require the consumer "to quantify the difference in value between the promised product and the actual product received." *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 99 (D.N.J.

15

2011); *Solo v. Bed Bath & Beyond, Inc.*, 2007 WL 1237825, at *3 (D.N.J. Apr. 26, 2007) (ascertainable loss is not only out-of-pocket loss but occurs "when a consumer receives less than what was promised"). Plaintiffs' economic expert, Stefan Boedeker, proves just that, based upon his conjoint analysis of price overpayment by Class members for their Odysseys.[36]

**2.    Common Issues Predominate As To The Implied Warranty Claims.**

With respect to Plaintiffs' claim of breach of implied warranties, Honda argues that Plaintiffs will not be able to prove their individual claims. Nonetheless, the safety risk resulting from the defect is common to all Class members and will rise or fall on common, classwide evidence. A jury could find a safety risk based on the evidence applicable to all class members. The Plaintiffs and numerous absent class members (as evidenced by Honda's complaint databases) have experienced Judder and describe it as raising a concern about their safety.[37] Indeed, this Court has already held that the mere fact of Judder is enough to raise a reasonable inference of safety sufficient to go to a jury. *See* Order at 5, Dec. 4, 2017, ECF No. 53 ("Order") (judder, hesitations and surges in acceleration, and resulting distractions "allow the reasonable inference that the vans are unsafe" leaving the "factual determination" for a jury); *see also Isip v.*

---

[36] *See infra*, Section !V.C. & Expert Report of Stefan Boedeker in Supp. of Pls.' Mot. for Class Certification ¶ 143, Jan. 15, 2019, ECF Nos. 147-12 & 166-2 ("Boedeker Report") (concluding that his conjoint analysis measured the difference between the price paid and the price paid if customers had been told at the time of purchase about the Transmission Defect).

[37] *See, e.g.*, Ex. N, Lentz Dep. 191:9-192:2 ("There's times where I don't feel safe with my family in it."); Ex. O, J. Parker Dep. 131:11-25 (discussing his fear of "pulling out in traffic" and "crossing traffic"), 254:14-255:16, 259:3-259:17 (confirming that Judder impacts the safety of his Odyssey); Ex. P, Dep. of Amy Parker 68:9-69:5 ("A. Parker Dep.")  (confirming that the Judder has scared both her and her children), 97:22-99:3 (discussing how her daughter was "scared and she didn't want to ride in the van"), 99:13-100:19 ("It's not the safe reliable vehicle that I thought I was purchasing"); Ex. Q, Kavuri Dep. 215:14-216:23 (describing an incident as "scary" where he "didn't have any control on the car"); Ex. R, Seow Dep. 78:16-79:15; Ex. S (various complaints from Honda's Customer Retention & Resolution System); *see also* Pls.' Opp. MSJ Ex. 31, ECF No. 174-33 (MacDougall & J. Parker submissions to CarComplaints.com discussing safety); Pls.' Opp. MSJ Ex. 14, ECF Nos. 174-16 & 182-12 (additional complaints from Honda's Customer Retention & Resolution System).

*Mercedes–Benz USA, LLC*, 65 Cal. Rptr. 3d 695, 155 Cal. App. 4th 19, 27 (2007) (a vehicle that "lurches, clanks, and emits smoke over an extended period of time is not fit for its intended purpose"); *accord In re MyFord Touch Consumer Litig.,* 46 F. Supp. 3d 936, 980 (N.D. Cal. 2014) (intermittent glitch in infotainment system created question of fact for the jury as to whether the distractions it caused posed a safety risk). Moreover, as with their claims for statutory and common law omissions, Plaintiffs can prevail on their claims for breach of implied warranty without proof of a safety hazard. *See In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 946 (N.D. Cal. 2018) ("Contrary to Ford's suggestion, proof of a safety condition is not required to demonstrate unmerchantability; it is merely one way to demonstrate unmerchantability."); *Brand v. Hyundai Motor Am.*, 173 Cal. Rptr. 3d 454, 461 fn. 2, 226 Cal. App. 4th 1538, 1548 fn. 2 (2014) (holding that "vehicle safety is [not] the sole or dispositive criterion in implied warranty cases, which may turn on other facts").

Thus, the common, classwide issue of merchantability of vehicles with transmissions prone to Judder is appropriate for classwide resolution and should be certified.

### 3.    Common Issues Predominate As To The Unjust Enrichment Claims.

As for Plaintiffs' claims for unjust enrichment, Honda merely reargues its Motion to Dismiss, asserting that Plaintiffs cannot pursue an unjust enrichment claim and a breach of express warranty claim at the same time. *See* Defs.' Mem. in Supp. of Mot. to Dismiss 23, ECF No. 35-1. The Court has already rejected this argument, holding that Plaintiffs can plead unjust enrichment and breach of express warranty in the alternative. *See* Order at 11 ("Accordingly, the unjust enrichment theory operates either alternatively or additionally, but not successively, with Plaintiffs' express warranty claim.").

While Honda contends that courts "routinely" deny certification of unjust enrichment claims, courts in California, New Jersey, Florida, and Pennsylvania, have

17

certified claims for unjust enrichment upon a finding that common issues predominate over individual issues. *Cartwright v. Viking Indus., Inc.*, No. 2:07-CV-02159, 2009 U.S. Dist. LEXIS 83286, 2009 WL 2982887, at *12-13 (E.D. Cal. Sep. 14, 2009) (finding predominance for unjust enrichment because "the crux of plaintiff's claims is that defendant unjustly retained the benefits of its sale of window products to consumers after it failed to disclose material facts about the defective nature of those products"); *Dzielak,* 2017 U.S. Dist. LEXIS 209106, at *50 (certifying unjust enrichment class that included residents of California, Florida, and New Jersey); *Carroll v. Stettler*, No. 10-2262, 2011 U.S. Dist. LEXIS 121171, 2011 WL 5008349, at *4 (E.D. Pa. Oct. 19, 2011) (certifying unjust enrichment class under Pennsylvania law, and collecting cases in Florida, New Jersey, and other states doing the same).

### 4.   Common Issues Predominate As To The Express Warranty Claims.

Honda contends that Plaintiffs' claim for breach of express warranty is not suitable for certification because they have no individual claim. It argues that the claim will "ultimately fail" because Plaintiffs received free repairs.

Honda once again ignores Plaintiffs' actual theory in favor of its own. Plaintiffs' claim for breach of express warranty is not premised on a refusal to provide service pursuant to the warranty, but rather Honda's inability to provide a timely repair. In other words, Honda's express warranty failed in its essential purpose. *See* Compl. ¶ 114 ("Honda's warranty...fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs, the Class, and the Subclasses whole because Honda has been unable to repair the defect...").

Honda's warranty here plainly failed. Honda was unable for at least five years to come up with a "fix" for the defect. A repair or replace remedy "fails of its essential purpose when a warrantor fails to successfully repair defects within a reasonable time." *MyFord Touch*, 291 F. Supp. at 957 (citation omitted). An express warranty claim is eminently certifiable; *MyFord Touch,* 2016 WL 7734558, at *26 (certifying claims for breach of warranty under California and Washington law); *Daffin v. Ford*

18

*Motor Co.*, 458 F.3d 549, 554 (6th Cir. 2006) (upholding certification of express warranty claims); *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. at 534-537 (certifying California class for express warranty); *Elias v. Ungar's Food Prods.*, 252 F.R.D. 233, 240 (D.N.J. 2007) (certifying a class to pursue claims for breach of express warranty under N.J.S.A. 12A:2-101).

## C. Plaintiffs Have Provided A Valid Damages Model.

Plaintiffs' expert, Stefan Boedeker, has conducted a damage analysis using a well-accepted methodology to calculate the difference between the price consumers paid for their Odyssey vehicles and the price they would have paid if customers had been told at the time of purchase about the transmission defect. In brief, Boedeker performed a choice-based conjoint study and analysis ("CBC") that elicited survey respondents to reveal their preferences for Odysseys with and without the transmission defect. As detailed in Plaintiffs' Memorandum in Support of Class Certification,[38] and again in Plaintiffs' Memorandum in Opposition to Defendants' Motion to Strike,[39] numerous courts across the country, including courts in this Circuit, have accepted CBC as a reliable methodology for calculating price premiums on a classwide basis in consumer class actions.[40]

Boedeker's model satisfies *Comcast*. In his report, Boedeker explains how— through common proof concerning consumer preferences and the application of the established economic technique of conjoint analysis to the data—he can isolate the price premium paid by Class members for each Odyssey purchased with an undisclosed defective transmission.[41] Therefore, Boedeker's model translates Plaintiffs' "legal theory of the harmful event into an analysis of the economic impact of that event," which is all that is required at class certification. *Comcast Corp. v.*

---

[38] *See* Pls.' Not. of Mot. & Mot. for Class Cert.; Mem. of Points & Authorities at 30, ECF Nos. 147 & 179.
[39] *See* Pls.' Mem. in Opp. to Defs.' Mot. to Strike Test. of Stefan Boedeker at 2 & 6-7, ECF No. 178.
[40] *Id.* at 30 (citing cases).
[41] *See generally,* Boedeker Report, *supra* note 37.

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
CLASS CERTIFICATION

*Behrend*, 569 U.S. 26, 38, 133 S. Ct. 1426, 1435 (2013); *see also Vaccarino v. Midland Nat. Life Ins. Co.*, No. 2:11-cv-05858, 2014 WL 572365, at *10-13 (C.D. Cal. Feb. 3, 2014) (*Comcast* requires only that Plaintiffs' damages model "not measure damages 'unrelated' to [P]laintiffs' claim"); *MyFord Touch*, 2016 WL 7734558, at *16 (finding that since expert presented methods to measure restitution and benefit-of-the-bargain damages, claims seeking these forms of recovery can be certified).

Honda contends that Boedeker's damages model is flawed and should be excluded and refers the Court to its Motion to Strike the Opinions and Testimony of Mr. Boedeker, ECF No. 166. In the interest of brevity, Plaintiffs will do the same and respectfully refer the Court to Plaintiffs' Memorandum in Opposition to Defendants' Motion to Strike Testimony of Stefan Boedeker. *See* ECF No. 178.

### D.     A Class Action Is The Superior Method Of Adjudication.

Honda once again relies on its own narrative in arguing that the issues in this case are too individualized to allow class certification. Honda argues that Plaintiffs cannot prove that all Class members' vehicles have manifested Judder, but such assertion is immaterial. Plaintiffs' theory is clear: Class members were damaged at the time of sale when they purchased their defective Honda Odysseys. As explained above, and in Plaintiffs' opening brief, Plaintiffs' actual legal theory can be proven using common evidence, for example, Honda's admissions found in its engineering documents that the Class Vehicles are defective. No individual proof is required to prove liability and damages, Honda's superiority argument therefore fails.[42]

Further, Honda does not dispute that the individual recovery is so small as to make individual actions not worth bringing.

As for manageability, a detailed trial plan is not necessary. If the classes are

---

[42] With respect to breach of contract, Class members' service records can be used to show that they suffered from the Judder defect and unsuccessfully sought repairs under warranty from Honda dealers.

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
CLASS CERTIFICATION

certified, Plaintiff's counsel intend try the case on behalf of the Class Representatives and the Class members on all certified counts by introducing evidence through the direct examination of the Class Representatives, the direct examination of Dr. Parker, and the admission of additional documents obtained through discovery. The jury will also hear testimony on damages from Mr. Boedeker. The jury will then be asked to cast its verdict on each of the eight counts and award damages. No further "guidance" is necessary or required.

## V.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully requests the Court grant their motion for class certification.

DATED: June 19, 2019                  **WHITFIELD BRYSON& MASON, LLP**

By:   /s/ Gary E. Mason
Gary E. Mason*
5101 Wisconsin Avenue NW, Suite 305
Washington, D.C. 20016
T: (202) 429-2290
F: (202) 429-2294
gmason@wbmllp.com

Shimon Yiftach, Esq. (SBN 277387)
Peretz Bronstein*
**BRONSTEIN GEWIRTZ & GROSSMAN**
1925 Century Park East, Suite 1990
Los Angeles, CA 90067
T: (424) 322-0322
shimony@bgandg.com
peretz@bgandg.com

Lawrence Deutsch*
Jeffrey Osterwise*
**BERGER & MONTAGUE, P.C.**
1818 Market St.
Philadelphia, PA 19103

21

1
2
3
4
5

T: (215) 875-3062
F: (215) 875-4604
ldeutsch@bm.net
josterwise@bm.net

* Admitted *pro hac vice*                    *Attorneys for Plaintiffs*

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
CLASS CERTIFICATION

**Certificate of Service**

On June 19, 2019, I caused this document to be filed and served on all ECF-registered counsel of record using the Court's CM/ECF system.


By:  /s/ Gary E. Mason

Gary E. Mason

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
CLASS CERTIFICATION