LIVIA M. KISER (SBN 285411)
*lkiser@kslaw.com*
MICHAEL B. SHORTNACY (SBN 277035)
*mshortnacy@kslaw*.com
King & Spalding LLP
633 West 5th Street, Suite 1600
Los Angeles, CA  90071
Telephone:   (213) 443-4355
Facsimile:    (213) 443-4310

*Attorneys for Defendants*
AMERICAN HONDA MOTOR CO., INC.
and HONDA NORTH AMERICA, INC.,

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| DENNIS MACDOUGALL, RAY SEOW, PRABHANJAN KAVURI, JOSEPH RYAN PARKER, and BRYAN LENTZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN HONDA MOTOR CO., INC., and HONDA NORTH AMERICA, INC.,<br><br>Defendants. | Case No. 8:17-cv-01079-AG (DFMx)<br><br>**DEFENDANTS' AMERICA HONDA MOTOR CO., INC. AND HONDA NORTH AMERICA INC.'S REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Filed Concurrently Herewith:<br>  1) Declaration of Michael B. Shortnacy and Exhibits<br><br>Date:        August 5, 2019<br>Time:       10:00 a.m.<br>Location:  Santa Ana Division, 10D<br>Judge:      Hon. A. Guilford |

Defendant American Honda Motor Co., Inc. ("AHM")[1] respectfully submits the following reply to Plaintiffs' Response To Defendants' Statement Of Undisputed Facts In Support Of Defendants' Motion For Summary Judgment. ECF 174-1.[2]

# I. REPLY TO PLAINTIFFS' RESPONSE TO AHM'S STATEMENT OF UNDISPUTED FACTS

| # | Defendants' Undisputed Fact and Supporting Evidence | Plaintiffs' Response & Supporting Facts | Defendants' Reply |
|---|---|---|---|
| 1. | AHM publishes Technical Service Bulletins (TSBs) to its network of authorized dealers and repair shops that are independent and separate businesses from itself. **Supporting Evidence:** Michael Gibson / Fed. R. Civ. P. 30(b)(6) Rep. of AHM ("Gibson Dep.") (54:9-1) Kiser Decl. Ex. 4 at 129. | Disputed: Plaintiffs do not dispute that AHM publishes Technical Service Bulletins (TSBs) to its network of authorized dealers and repair shops. Plaintiffs dispute, as conclusory, Defendants' contention that AHM's authorized dealers and repair shops are independent and separate businesses from AHM. Defendants' supporting evidence does not address the nature of the relationship between AHM and "its network of authorized dealers and repair shops." | Plaintiffs' position should be overruled, and the fact should be found undisputed. There is no reasonable basis to dispute the commonly known fact that authorized, independent dealers and repair shops are separate from the U.S. distributors of automotive manufacturers. *Clemens v. DaimlerChrysler Corp.*, No. CV 05-8484-JFW (CWX), 2006 WL 6022681, at *4–5 (C.D. Cal. Apr. 20, 2006). Honda's 30(b)(6) designee, Michael Gibson, also testified that dealers "are individual entities separate from Honda," as Plaintiffs well know. (Gibson Dep. 220:17-22)[3] |

[1] Plaintiffs have conceded summary judgment with respect to HNA is proper.
[2] To avoid confusion, AHM has filed a separate response to the section of Plaintiffs' briefing entitled "Statement of Additional Material Facts." ECF No. 174-1 (at pp. 31-35).
[3] All deposition testimony excerpts cited in Defendants' Reply column herein are provided for the Court's convenience annexed as Exhibits to the accompanying, and concurrently filed, Declaration of Michael B. Shortnacy, dated July 22, 2019.

| # | Defendants' Undisputed Fact and Supporting Evidence | Plaintiffs' Response & Supporting Facts | Defendants' Reply |
|---|---|---|---|
| 2. | TSBs are technical documents that AHM creates in consult with engineers that provide instructions to dealers when a customer presents with a condition that the TSB was developed to address. **Supporting Evidence:** Robert Hall / Fed. R. Civ. P. 30(b)(6) Rep. of AHM ("Hall Dep.") (56:2-15; *Id.* at 57:15-19) Kiser Decl. Ex. 8 at 209, 210. | Not Disputed. | Admitted. |
| 3. | Customers who come in to an authorized dealer or repair shop for service can obtain TSB repairs pursuant to the terms of a vehicle's limited, written warranty. **Supporting Evidence:** (Gibson Dep. 122:10-25) Kiser Decl. Ex. 4 at 162. | Not Disputed. In general, Plaintiffs do not dispute that if TSB repairs are covered under warranty, customers can receive them from an authorized dealer or repair shop under warranty. However, as to the countermeasures offered for the defect in this case, AHM's TSB's require that a service technician confirm, via automatic transmission snapshot, that the vehicle has judder coming from the | Because the fact is not disputed, it is admitted, and Plaintiffs' colloquy is irrelevant and should be disregarded.

In response to Plaintiffs' commentary:

First, only in February 2018 did the relevant TSB's start to require snapshots of the automatic transmission be taken in order to confirm the vibration experienced by the customer is in fact |

| # | Defendants' Undisputed Fact and Supporting Evidence | Plaintiffs' Response & Supporting Facts | Defendants' Reply |
|---|---|---|---|
| | | torque converter before providing the countermeasures. Defendants' expert, Mr. Arst, testified that it is difficult to capture torque converter judder on an automatic transmission snapshot. Thus, owners of Class Odysseys were not guaranteed to receive the TSB repairs, under warranty or otherwise, simply by presenting their vehicle to an authorized dealer or repair shop. **Supporting Evidence**: Kiser Decl. Ex. 40 (AHM_ODYT_000000857 at 857);Kiser Decl. Ex. 41 (AHM_ODYT_000000045 at 045); Kiser Decl. Ex. 43 (AHM_ODYT_000000052 at 52); Osterwise Decl. Ex. 32 (Arst Dep. 62:16-64:20; 122:20-123:13). | originating in the torque converter and is not caused by the myriad other reasons that could result in vehicle vibration (e.g., brakes, tires, etc.). The reason for the requirement is that if the snapshot shows the issue is not Atypical Vibration, then applying an ATF flush and software update intended to adjust the operation of the torque converter will not address the customer's actual concern. Honda wants dealers to make the right repairs so that customers' concerns are actually addressed. **Supporting Evidence**: (Hall Dep. 186:1-187:6; 254:1-17; Gibson Dep. 194:8-22). Dealers can still apply the TSB repair without a snapshot, the requirement to send the snapshot into to AHM is only to encourage dealers to perform the correct repairs (because the dealer's warranty reimbursement claim could be debited back if the ATF flush was done when not to address actual Atypical Vibration. (Hall Dep. 186:1-187:6; 254:1-17). |

| # | Defendants' Undisputed Fact and Supporting Evidence | Plaintiffs' Response & Supporting Facts | Defendants' Reply |
|---|---|---|---|
| | | | Second, there is no evidence for Plaintiffs' assertion that it is difficult to capture Atypical Vibration on a snapshot. Mr. Arst never testified that it was in any way difficult, but rather sets out in detail in his report how snapshots objectively capture and graphically show judder. Arst also testified that dealer technicians are trained and very able to diagnose Atypical Vibration. **Supporting Evidence**: Arst Dep. 158:22-159:25; Arst Rep't at 7-8; Arst Reb. Rep't at 5. |
| 4. | All of the Plaintiffs in this case own model year 2014 Honda Odyssey vehicles with six speed (6AT) transmissions. **Supporting Evidence:** Expert Report of Mr. Jason Arst ("Arst Rep't.") (at 2), Kiser Decl. Ex. 3 at 92; (Kavuri Dep. 99:12-14) Kiser Decl. Ex. 9 at 239; (B. Lentz Dep. 24:25-25:1) | Not Disputed. | Admitted. |

| # | Defendants' Undisputed Fact and Supporting Evidence | Plaintiffs' Response & Supporting Facts | Defendants' Reply |
|---|---|---|---|
| | Kiser Decl. Ex. 10 at 250-521; (N. Lentz Dep. 7:23-8:5) Kiser Decl. Ex. 11 at 256-257; (D. MacDougall 21:23-22:1) Kiser Decl. Ex. 12 at 263-264; (L. MacDougall 6:21-7:1) Kiser Decl. Ex. 1 at 9-10; (A. Parker 45:3-20) Kiser Decl. Ex. 13 at 273; (J. Parker 10:16-23) Kiser Decl. Ex. 14 at 277; (Seow Dep. 21:7-9) Kiser Decl. Ex. 15 at 284. | | |
| 5. | Only a "small number of – small percentage" of 2014 Honda Odyssey vehicles ever manifested the vibrations about which Plaintiffs complain. **Supporting Evidence:** (Gibson Dep. 110:12-23) Kiser Decl. Ex. 4 at 157; (Thomas Shepard Deposition (Shepard Dep.) 149:12-17; id. | Disputed.  Plaintiffs object that Defendants' supporting evidence lacks foundation, is conclusory, and is likely to confuse the jury.  Thomas Shepard admits that he didn't have AHM's data on the number of vehicles impacted and does not provide any context for what constitutes a "small subset" of the vehicle population.  Nor does Mr. Gibson's testimony provide any context for what constitutes a small number or | Plaintiffs' position should be overruled, and the fact should be found undisputed. AHM produced warranty records to Plaintiffs showing warranty claims made pursuant to TSB's 16-060, 17-043, and 17-044, and more broadly, claims where the customers' contentions used such general terms (negotiated and agreed with Plaintiffs' counsel) like "judder" to describe their symptom. This data shows a low 5% occurrence rate.  Kiser Decl. |

| # | Defendants' Undisputed Fact and Supporting Evidence | Plaintiffs' Response & Supporting Facts | Defendants' Reply |
|---|---|---|---|
| | 207:16- 208:14) Kiser Decl. Ex. 6 at 189-191. | percentage of vehicles or any basis of his testimony. Further, portions of Mr. Shepard's testimony cited by Defendants' concern the percentage of customers that will experience torque converter judder after receiving the countermeasures. This testimony does not support Defendants' purported fact about the number of customers that will experience the defect in the first instance. **Supporting Evidence:** Osterwise Decl. Ex. 33 (Shepard Dep. 149:12-150:7; 206:23-208:14); Osterwise Decl. Ex. 34 (Gibson Dep. 110:12-23). | ¶ 4 (Dkt. # 157-1); AHM_ODYT_000000832, AHM_ODYT_000000820, AHM_ODYT_000000821, and AHM_ODYT_000000970. Moreover, the basis for Mr. Gibson's testimony that a very low percentage of vehicles experienced Atypical Vibration is that he was a principal engineer investigating Atypical Vibration at issue in this case, and so he has personal knowledge of the occurrence rate. Gibson Dep. 174:2-9. |
| 6. | Honda quality engineers diagnosed the cause of the Atypical Vibrations after the vehicles were sold to consumers. **Supporting Evidence:** (Gibson Dep. 67:9-17; id. 85:15-86:4) Kiser Decl. Ex. 4 at 135; 141-142. | Disputed. Defendants identified torque converter judder as the source of "Atypical Vibrations" in their 6AT vehicles, including the Class Odysseys, as early as April 2012. In addition, Defendants had identified torque converter judder problems in Odyssey vehicles as far back as model year 2005. **Supporting Evidence:** | Plaintiffs' position should be overruled, and the fact should be found undisputed. Mr. Gibson's already-cited testimony is that Honda opened its investigation into the possibility of Atypical Vibration in *post-GSN* torque converters (like the kind in Plaintiffs' vehicles) in November 2015 – well after Plaintiffs purchased their vehicles in 2014. Mr. |

| # | Defendants' Undisputed Fact and Supporting Evidence | Plaintiffs' Response & Supporting Facts | Defendants' Reply |
|---|---|---|---|
| | | Osterwise Decl. Ex. 1 (HRA_ODYT_00000355_REV, at 358_REV-361_REV); Osterwise Decl. Ex. 8 (AHM_ODYT_000007676/7677 at 677-78, 691); Kiser Decl. Ex. 2 (Expert report of Robert G. Parker, Ph.D ("Parker Report") at 14-38). | Hall confirmed this date as well. Hall Dep. 110:19-11-3.<br><br>Plaintiffs' improperly cite Honda documents relating to earlier *pre-GSN* investigations (including completely unrelated 5-speed transmissions) to show Honda supposedly knew about Atypical Vibration in post-GSN torque converters in 2013 and 2014.  This is simply not true.  The record evidence is clear that Honda's GSN coating applied in manufacturing addressed the issue as it was known in 2012 and until a new investigation was opened in November 2015. Gibson Dep. 172:16-176:3. |
| 7. | Automatic Transmission Fluid (ATF) can degrade more quickly than it otherwise would when exposed to intermittent high heat loads, which can occur when the torque converter in a 2014 Honda Odyssey with 6AT becomes very, very | Plaintiffs do not dispute that Automatic Transmission Fluid (ATF) can degrade more quickly than it otherwise would when exposed to intermittent high heat loads.  However, to the extent that Defendants contend that such degradation can only occur "under harsh driving conditions", its own | Plaintiffs' do not dispute the fact that ATF, a wear item, degrades more quickly than normal when expose to intermittent high heat loads. This fact is admitted.<br><br>Plaintiffs mischaracterize AHM's cited evidence, which says that "harsh driving conditions" such as taxis, delivery vehicles, or pulling heavy loads) are |

| # | Defendants' Undisputed Fact and Supporting Evidence | Plaintiffs' Response & Supporting Facts | Defendants' Reply |
|---|---|---|---|
| | hot under harsh driving conditions (*e.g.*, pulling a heavy boat, driving hard up steep roads or in hot desert conditions). **Supporting Evidence:** Ex. 4 at 153-154; (Arst Rep't at 9) Kiser Decl. Ex. 3 at 99; (AHM Response to Amended ROG No. 1; AHM Response to Amended ROG No. 6) Kiser Decl. Ex. 16 at 297; 315, 338. | supporting evidence contradicts that assertion. Specifically, AHM states that a fluid flush may not be effective for "the most extreme users of their vehicles." AHM does not contend that ATF can only degrade in the vehicles of the "most extreme users of their vehicles." Further, Honda's witness Mr. Gibson testified that somebody who transports other people in their vehicle or drives it up hills may manifest the torque converter judder "more". Further, Defendants' internal investigation documents to do not suggest that ATF degradation is limited to harsh driving conditions. **Supporting Evidence:** Kiser Decl. Ex. 16 (AHM Response to Amended ROG No. 6); Osterwise Decl. Ex. 34 (Gibson Dep. 110:3-5); Osterwise Decl. Ex. 8 (AHM_ODYT_000007676/7677); Osterwise Decl. Ex. 7 (AHM_ODYT_000000843). | more likely to generate high heat which, without the software countermeasure specified in the relevant TSB's, will in turn more quickly degrade the ATF. Mr. Gibson makes exactly this point in his cited testimony (driving in hilly conditions is more likely to generate excessive heat in the torque converter). |
| 8. | ATF is a wear item | Disputed. Plaintiffs object | Plaintiffs' evidentiary |

| # | Defendants' Undisputed Fact and Supporting Evidence | Plaintiffs' Response & Supporting Facts | Defendants' Reply |
|---|---|---|---|
| | similar to engine oil and must be replaced at certain intervals as detailed in the 2014 Honda Odyssey owner's manual. **Supporting Evidence:** (Gibson Dep. 107:4-6; id. at 189:11-17; id. 192: 12-15) Kiser Decl. Ex. 4 at 154; 166; 167; (Arst Rep't. at 9) Kiser Decl. Ex. 3 at 99; (AHM Response to Amended ROG No. 4; AHM Response to Amended ROG No. 6) Kiser Decl. Ex. 16 at 329; 337. | that Defendants' supporting evidence lacks foundation, is conclusory, and is likely to confuse the jury.  Mr. Gibson only testified that the ATF is "kind of a wear item."  Mr. Hall testified that the 2014 Honda Odyssey owner's manual does not state the interval for replacing ATF. And, Defendants' provide no basis for how long the ATF should last under absent a vehicle defect. Yet, Defendants' data admits that the ATF degradation in its 6AT vehicles can return after only 12,000 miles without any ECU software changes and after only 25,000 miles with the ECU software changes.  **Supporting Evidence:** Osterwise Decl. Ex. 35 (HRA_ODYT_00000284_ REV at 294_REV); Kiser Decl. Ex. 2 (Parker Report at 29, ¶ 78); Osterwise Decl. Ex. 6 (Hall Dep. 241:3-25). Osterwise Decl. Ex. 34 (Gibson Dep. 107:4-5). | objection is groundless and should be overruled.  Plaintiffs' own proposed expert, Dr. Parker, admits that ATF is a wear item, after first indicating he did not understand what the term "wear item means." Dr. Parker Dep. 141:15-144:21.  Plaintiffs misstate the testimony of Honda witnesses. For example, Mr. Hall actually testified that the information display on the dashboard alerts a Honda Odyssey owner when it is time to change the ATF (*i.e.*, automatic transmission fluid):  Q. How would somebody know when it's time to change their transmission fluid? A. It would give them a service interval due on the information display on the dashboard.  Hall Dep. 241:21-25. |
| 9. | The Atypical Vibrations "happen [ ] on a relatively low | Disputed.  Plaintiffs object that Defendants' supporting evidence lacks | Plaintiffs' position should be overruled, and the fact should be found undisputed. |

DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED
FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| # | Defendants' Undisputed Fact and Supporting Evidence | Plaintiffs' Response & Supporting Facts | Defendants' Reply |
|---|---|---|---|
| | percentage of vehicles . . . it also takes this narrow operating range to even cause the problem and it also takes a narrow operating range for the customer to experience it." **Supporting Evidence:** (Gibson Dep. 195:24-196:7; id. 196:10- 16) Kiser Decl. Ex. 4 at 170- 171 | foundation and is conclusory.  Mr. Gibson's testimony does not provide any context for what constitutes a "relatively low percentage of vehicles" or a "narrow operating range," nor does he give any basis of his testimony. | Mr. Gibson, a principal engineer on the Atypical Vibration investigation, very clearly provides the basis for his statement (in the testimony already cited) that Atypical Vibration happens on a relativity low percentage of vehicles, he said that percentage is 1%.

Q. Okay. When you say a relatively low percentage of vehicles, can you quantify that? A. Again, the warranty data is not able to precisely tell us how many claims exactly we have for this. So, in using the warranty data that we have, which is more than likely overstating this issue, we use those percentages and those would be similar to what we discussed earlier, in the one percent range.  Gibson Dep. 196:8-16. |
| 10. | The total number of 2014 Honda Odyssey vehicles sold in the U.S. was 136,793. **Supporting Evidence:** (AHM_ODYT_0000 00822) Kiser Decl. | Not Disputed. | Admitted. |

| # | Defendants' Undisputed Fact and Supporting Evidence | Plaintiffs' Response & Supporting Facts | Defendants' Reply |
|---|---|---|---|
| | Ex. 18 at 366. | | |
| 11. | Occasional vibrations can be caused by a host of factors that have nothing to do with the transmission or torque converter. These include things like disruptions in the engine, unbalanced tires, brake rotors, wheels, driveline, suspension issues, the driver's unique driving habits (e.g., hard braking), vehicle maintenance habits (or lack thereof), frequent starting and stopping, excessive speeds, engine revving, extreme hot and cold temperatures, climate, humidity, air quality (e.g., dusty or dirty air conditions, or smog), roadway conditions (e.g., the berm, potholes, poorly or unpaved roads), roadway slopes/grades, mountainous terrain, | Not Disputed.  But the problem extensively studied over many years by Defendants to fix a known problem concerned judder that originated in the transmission torque converter. **Supporting Evidence:** Kiser Decl. Ex. 2 (Expert report of Robert G. Parker, Ph.D ("Parker Report") at 14-38). | Because the fact is not disputed, the colloquy is irrelevant and should be disregarded.<br><br>Plaintiffs' statement, through the hearsay of their expert Dr. Parker, that Honda "extensively studied the problem over many years" should be rejected as having no foundation.  The record evidence shows that Honda's investigation into the Atypical Vibration at issue in this case started in November 2015, because in mid-2012 the torque converter hardware changed to have a GSN treatment.  The record evidence also shows there are significant differences between the 5 speed transmissions of other vehicles and the various different six-speed transmissions (each with unique software, hardware, and other component parts) in the different model year Odyssey vehicles. |

| # | Defendants' Undisputed Fact and Supporting Evidence | Plaintiffs' Response & Supporting Facts | Defendants' Reply |
|---|---|---|---|
| | hills and valleys, roads with numerous curves, snowy or icy roadways, and more **Supporting Evidence:** (Arst Rep't at 7) Kiser Decl. Ex. 3 at 97; (Gibson Dep. 47:13-21; id. 62:21-24; id. 75:19-25; id. 77:24-78:10) Kiser Decl. Ex. 4 at 128; 134; 138-139; (Hall Dep. 30:10-17; id. 32:4-10) Kiser Decl. Ex. 8 at 198; 200. | | |
| 12. | Plaintiffs' vehicles were tested by two experts and no problems were found in the vehicles' transmissions or torque converters. AHM's expert conducted technical tests that conclusively show, to a reasonable degree of scientific certainty, that Plaintiffs' transmissions operate as intended. **Supporting Evidence:** (Arst Rep't at 13-15; | Disputed.  Plaintiffs do not dispute that the automatic transmission snapshots collected during their late summer/early fall 2017 inspections do not show torque converter judder, according to Honda's interpretation of that data. However, for reasons discussed at length in Plaintiffs' brief in response to Defendants' motion for summary judgment, Defendants' overstate the significance of those snapshots, including that that they claim to conclusively show, to a reasonable degree of | Plaintiffs' position should be overruled, and the fact should be found undisputed. Mr. Arst explained in detail his testing protocol, his 27 years of experience testing vehicles, and his conclusions that based on his observations, experience, and testing (both of the torque converter through snapshots and VBOX data, and through chemical analysis of ATF fluid), that Plaintiffs' vehicles were operating normally. Moreover, there is no |

| # | Defendants' Undisputed Fact and Supporting Evidence | Plaintiffs' Response & Supporting Facts | Defendants' Reply |
|---|---|---|---|
| | id. at 16-17; id. at 19-20; id. at 22-23; id. at 25-26) Kiser Decl. Ex. 3 at 103-105; 106-107; 109-110; 112-113; 115-116; (Expert Rebuttal of Mr. Jason Arst (Arst Reb't) at 1 ¶1) Kiser Decl. Ex. 3 at 119 | scientific certainty, that Plaintiffs' transmissions operate as intended.  In short, the snapshots only show how the vehicles operated during an average of 11.4 applicable minutes during the test drives. They do not show how the vehicles operated at any point in the past, at any point since, or even at other points during the test drives. Further, Mr. Arst testified that it can be difficult to reproduce torque converter judder and to capture it on snapshot when it occurs. **Supporting Evidence:** Kiser Decl. Ex. 2 (Rebuttal Expert report of Robert G. Parker, Ph.D ("Parker Rebuttal") at 6-8); Osterwise Decl. Ex. 32 (Arst. Dep. 62:13-64:20; 81:13-81:21; 83:19-84:7; 185:4-22). | evidence for Plaintiffs' assertion that it is difficult to capture Atypical Vibration on a snapshot. Mr. Arst never testified that it was in any way difficult, but rather sets out in detail in his report how snapshots objectively capture and graphically show judder. Arst also testified that dealer technicians are trained and very able to diagnose Atypical Vibration. **Supporting Evidence:** Arst Dep. 158:22-159:25; Arst Rep't at 7-8; Arst Reb. Rep't at 5. |
| 13. | AHM dedicates a great deal of resources to identify potential concerns in the market, and issues TSBs to enhance customer satisfaction and because it is | Plaintiffs object that Defendants' supporting evidence is irrelevant and conclusory.  Defendants' provide no context for what constitutes a "great deal of resources."  Whether AHM devotes resources to identify market concerns or | Plaintiffs' position should be overruled, and the fact should be found undisputed. Mr. Shepard explains there are entire divisions within AHM and HAM dedicated to market quality and identifying and addressing |

DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| # | Defendants' Undisputed Fact and Supporting Evidence | Plaintiffs' Response & Supporting Facts | Defendants' Reply |
|---|---|---|---|
| | dedicated to continuous quality improvement. **Supporting Evidence:** (Shepard Dep. 23:12-24:7; id. 83:12-84:6) Kiser Decl. Ex. 6 at 183-184; 187-188. | is dedicated to quality improvement is not relevant the fact that Defendants knowingly sold the Class Odysseys with the defect and it failed for years to repair that defect. Defendants' supporting evidence will only serve to distract the jury from relevant evidence. | issues that customers may experience. This evidence is *directly* relevant to (and contradicts) alleged intent to conceal, and also provides helpful context for many of the market quality analysis documents that would potentially be put to a jury. |
| 14. | Both parties used testing protocols to test for the Transmission Vibrations that Plaintiffs allege. **Supporting Evidence:** (Arst Rep't at 10-11) Kiser Decl. Ex. 3 at 100-101; (R. Parker Dep. 135:8-15) Kiser Decl. Ex. 17 at 364; R. Parker Dep. passim (discussing his testing on each vehicle and confirming repeatedly that he had ample time to complete his inspection) (Kiser Decl. Ex. 17). | Not Disputed. Plaintiffs assented to allow Defendants' examination of the Plaintiffs' Odysseys. Defendants employed their own protocol. Plaintiffs' observed Defendants' procedure. | Because the fact is not disputed, the colloquy is irrelevant and should be disregarded.<br><br>Plaintiffs do not dispute that Mr. Arst developed his down thorough testing protocol and have put forward not evidence that their expert had any protocol. In fact, Dr. Parker appears not have taken any notes, nor spoken to every Plaintiff, nor tested any fluids, which is why Defendants have moved to exclude his non-science-based opinions. |
| 15. | The protocol pursuant to which | Not disputed as a general description of Mr. Arst's | Because the fact is not disputed, the colloquy is |

| # | Defendants' Undisputed Fact and Supporting Evidence | Plaintiffs' Response & Supporting Facts | Defendants' Reply |
|---|---|---|---|
| | Plaintiffs' vehicles were inspected and tested by AHM's transmission expert, Mr. Jason Arst, included the following: (1) examination of and photographing of the exterior, interior, underside and engine compartment of the vehicle; (2) checking and measuring all the fluids in the engine compartment (i.e., engine oil, coolant, transmission fluid (ATF), brake fluid); (3) taking the vehicle on an initial test drive; (4) taking HDS snapshot data to analyze the engine speed (rpm), transmission input shaft and output shaft speeds (rpm) in order to determine if there was any anomalous activity or performance in the transmission, torque converter, or engine.  During the September | procedure, except that Plaintiffs dispute whether his taking HDS snapshot data was sufficient to determine if there was any anomalous activity or performance in the transmission, torque converter, or engine.  Mr. Arst testified that it can be difficult to reproduce torque converter judder and to capture it on snapshot when it occurs. **Supporting Evidence:** Osterwise Decl. Ex. 32 (Arst. Dep. 62:13-64:20; 81:13-81:21; 185:4-22). | irrelevant and should be disregarded.<br><br>Mr. Arst explains in detail in his report and his testimony why his analysis of the test data he took (from the snapshots, VBOX data, and the chemical analysis of Plaintiffs' ATF fluid) in addition to his 27 years of experience, show that Plaintiffs' vehicles were not affected by Atypical Vibration.<br><br>Moreover, there is no evidence for Plaintiffs' assertion that it is difficult to capture Atypical Vibration on a snapshot. Mr. Arst never testified that it was in any way difficult, but rather sets out in detail in his report how snapshots objectively capture and graphically show judder. Arst also testified that dealer technicians are trained and very able to diagnose Atypical Vibration.  Supporting Evidence: Arst Dep. 158:22-159:25; Arst Rep't at 7-8; Arst Reb. Rep't at 5. |

| # | Defendants' Undisputed Fact and Supporting Evidence | Plaintiffs' Response & Supporting Facts | Defendants' Reply |
|---|---|---|---|
| | inspections, the expert added a video Vbox system to record a video of each of the September test drives.  The Kavuri, MacDougall and Parker vehicles were test driven three times (rather than two times, as with Lentz and Seow): 1) after the initial inspection; 2) after the installation of the software update to the PCM; and 3) after the flush of the ATF. **Supporting Evidence:** (Arst Rep't at 10-11) Kiser Decl. Ex. 3 at 100-101. | | |
| 16. | Neither Plaintiffs nor their expert quarreled with the methodology behind these tests, and indeed, their expert actively participated in the testing and apparently did no other testing whatsoever (at least any testing that he | Not disputed that Plaintiffs' expert did no other testing of Plaintiffs' vehicles.  Plaintiffs object to the remainder of Defendants' undisputed fact as irrelevant. Plaintiffs' expert participating in the testing did not constitute adoption of the methodology. Plaintiffs had no obligation | Because the fact is not disputed, the colloquy is irrelevant and should be disregarded.

It is undisputed that Mr. Arst developed a robust and thorough test protocol that include taking snapshots and chemical analysis of the Plaintiffs' ATF fluid.  It is also undisputed that Dr. |

| # | Defendants' Undisputed Fact and Supporting Evidence | Plaintiffs' Response & Supporting Facts | Defendants' Reply |
|---|---|---|---|
|  | disclosed).<br>**Supporting Evidence:** (Arst Rep't at 10-11) Kiser Decl. Ex. 3 at 100-101; (R. Parker Dep. 67:4-9; id. 87:5- 13; id. 90:5; id. 93:1-9) Kiser Decl. Ex. 17 at 350; 353; 356; 359. | to cure the flaws in Defendants' testing methodology and dispute that it can prove no judder in the Plaintiffs vehicles. Testimony concerning Plaintiffs not "quarreling" with Mr. Arst's methodology in 2017, years before they would be required to do so, is not admissible. | Parker failed to develop his own protocol and did no testing on his own to support his opinions.<br><br>Q. Have you expressed any opinions on those snapshots in this case?<br>A. I have not.  (Dr. Parker Dep. 129:6-8.) |
| 17. | Plaintiffs' own expert does not opine that Plaintiffs' vehicles manifest Atypical Vibrations.<br>**Supporting Evidence:**<br>(R. Parker Dep. 95: 17-96:21) Kiser Decl. Ex. 17 at 361-362; (Parker Rep't; Parker Rebt'l) Kiser Decl. Ex. 2 at 29. | Not disputed that Plaintiffs' expert does not opine on whether Plaintiffs' vehicles manifest torque converter judder.  Plaintiffs object to Defendants' asserted fact as inadmissible because it is not relevant and likely to confuse the jury.  The absence of expert opinion testimony does not tend to prove any claim or defense. Plaintiffs can prove the defect in their vehicles from their own Plaintiffs' own testimony, there service records, and Honda's internal documents. | Because the fact is not disputed, the colloquy is irrelevant and should be disregarded.<br><br>The fact that Plaintiffs' own technical expert failed to conduct his own testing to show the presence of Atypical Vibration in Plaintiffs' vehicles, despite being afforded the opportunity to do so at the testing conducted by Mr. Arst, and presumably any other time since Plaintiffs' vehicles would have been available to Dr. Parker at his convenience, is directly relevant to the claims in this case, namely that Plaintiffs have failed to carry their burden of proof.  That is precisely the kind of information that would |

| # | Defendants' Undisputed Fact and Supporting Evidence | Plaintiffs' Response & Supporting Facts | Defendants' Reply |
|---|---|---|---|
| | | | inform a jury, not confuse it. |
| 18. | Plaintiff MacDougall's vehicle was inspected and tested on September 27, 2017 and had 55,071 miles at the start of the inspection. The Countermeasures were also performed on Plaintiff's vehicle on that date. **Supporting Evidence:** (MacDougall Response to ROG No. 19) Kiser Decl. Ex. 19 at 370; (MacDougall Response to RFA No. 1) Kiser Decl. Ex. 20 at 376-377; (D. MacDougall Ex. 64 MACDOUGALL000 0026-28), Kiser Decl. Ex. 21 at 385-390; (Arst Rep't 20) Kiser Decl. Ex. 3 at 110. | Not Disputed. | Admitted. |
| 19. | Plaintiff Kavuri's vehicle was inspected and tested on September 26, 2017 and had 40,808 | Not Disputed. | Admitted. |

DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED
FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| # | Defendants' Undisputed Fact and Supporting Evidence | Plaintiffs' Response & Supporting Facts | Defendants' Reply |
|---|---|---|---|
| | miles at the start of the inspection.  The Countermeasures were also performed on Plaintiff's vehicle on that date. **Supporting Evidence:** (Kavuri Response to ROG No. 22) Kiser Decl. Ex. 22 at 394; (Kavuri Response to RFA 1) Kiser Decl. Ex. 23 at 400-401; (Kavuri Ex. 121 (KAVURI000031)), (Kiser Decl. Ex. 24 at 406; (Arst Rep't at 17) Kiser Decl. Ex. 3 at 107. | | |
| 20. | Plaintiff Lentz's vehicle was inspected and tested on August 11, 2017. The vehicle had 44,935 miles at the time of the inspection.  The Countermeasures were also performed on Plaintiff's vehicle on that date. **Supporting Evidence:** (Lentz Response to RFA No. 6) Kiser Decl. Ex. 25 at 411; | Not Disputed. | Admitted. |

DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| # | Defendants' Undisputed Fact and Supporting Evidence | Plaintiffs' Response & Supporting Facts | Defendants' Reply |
|---|---|---|---|
| | (B. Lentz Dep. Ex. 31 (8-11-2017 Repair Order)) (Kiser Decl. Ex. 26 at 415-417; (Arst Rep't at 11) Kiser Decl. Ex. 3 at 101. | | |
| 21. | Plaintiff Seow's vehicle was inspected and tested on August 11, 2017 and had 27,781 miles at the start of the inspection. The Countermeasures were also performed on Plaintiff's vehicle on that date **Supporting Evidence:** (Seow Response to RFA No. 39(2)) Kiser Decl. Ex. 34 at 527; (Seow Dep. Ex. 17 (8-11-2017 Repair Order)), Kiser Decl. Ex. 28 at 427-429; (Arst Rep't at 14-15) Kiser Decl. Ex. 3 at 104-105. | Not Disputed. | Admitted. |
| 22. | Plaintiffs Parkers' vehicle was inspected and tested on September 28, 2017, and the vehicle had 68,288 miles at the start of | Not Disputed. | Admitted. |

DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED
FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| # | Defendants' Undisputed Fact and Supporting Evidence | Plaintiffs' Response & Supporting Facts | Defendants' Reply |
|---|---|---|---|
| | the inspection. The Countermeasures were also performed on Plaintiffs' vehicle on that date **Supporting Evidence:** (Parker Response to RFA No. 11) Kiser Decl. Ex. 29 at 435; (J. Parker Ex. 43 (9-28-2017 Repair Order)), Kiser Decl. Ex. 30 at 441-444; (Arst Rep't at 23), Kiser Decl. Ex. 3 at 113. | | |
| 23. | Plaintiffs obtained the Countermeasures at no charge to them. **Supporting Evidence:** (Kavuri Dep. 184:20-185:16) Kiser Decl. Ex. 9 at 242-243; (B. Lentz Dep. 194:4- 7), Kiser Decl. Ex. 10 at 253; (D. MacDougall Dep. 156:8-13) Kiser Decl. Ex. 12 at 267; (J. Parker Dep. 200:25- 201:3) Kiser Decl. Ex. 14 at 278-279; (Seow Dep. 174:6) Kiser Decl. Ex. 15 at 290. | Not Disputed to the extent that Defendants are contending that Plaintiffs had to pay no additional money to receive the software upgrade and ATF flush during their late-summer/early-fall 2017 inspections. However, each Plaintiff paid money for the purchase of their vehicle and its warranty. Plaintiffs MacDougall and Kavuri also had to pay for ATF flushes for their Odysseys. **Supporting Evidence:** Kiser Decl. Ex. 20 (MacDougall Response to RFA No. 5); Kiser Decl. | Because the fact is not disputed, the colloquy is irrelevant and should be disregarded.

It is not actually disputed that ATF is a wear item (like engine oil), and at varying intervals vehicle owners have to pay to change as a part of vehicle maintenance. Mr. Kavuri admitted during his deposition he requested the dealer to change his ATF fluid during a 2016 visit because "when the vehicle is at a certain number of miles, they have to do certain protocols. And |

| # | Defendants' Undisputed Fact and Supporting Evidence | Plaintiffs' Response & Supporting Facts | Defendants' Reply |
|---|---|---|---|
| | | Ex. 23 (Kavuri Response to RFA No. 5); Kiser Decl. Ex. 25 (Lentz Response to RFA No. 5); Kiser Decl. Ex. 27 (Seow Response to RFA No. 5); Kiser Decl. Ex. 29 (Parker Response to RFA No. 5);  Osterwise Decl. Ex. 23(Kavuri000008-09); Osterwise Decl. Ex. 27 (MacDougall000017). | that's what they recommended and, I agreed to do that. Kavuri Dep. 172:7-173:16.

Mr. MacDougall's cited service record, supposedly showing he paid money to change his ATF fluid, similarly states on its face "Transmission Fluid Exchange: Maintenance Code '3' displayed indicating the transmission fluid is due for replacement. Fluid is dirty."  But he chose to have his fluid changed (not flushed) because it was scheduled. The cited service record also shows that this repair was performed in November 2015, some two years before Mr. Arst tested the vehicle. |
| 24. | The ATF samples taken from Plaintiffs' vehicles by the experts tested normal as against a virgin (i.e., brand new) sample. **Supporting Evidence:** (Arst Rep't at 3) Kiser Decl. Ex. 3 at 93. | Not Disputed. | Admitted. |
| 25. | 2014 Odyssey | Disputed.  Plaintiffs do not | Plaintiffs' position should |

| # | Defendants' Undisputed Fact and Supporting Evidence | Plaintiffs' Response & Supporting Facts | Defendants' Reply |
|---|---|---|---|
| | vehicle owners and lessees who have presented their vehicles for service and who have Atypical Vibrations have received the Countermeasures pursuant to the terms of the warranty. **Supporting Evidence:** (Gibson Dep. 193:8-194:7) Kiser Decl. Ex. 4 at 168-169. | dispute that some 2014 Odyssey vehicle owner who have presented their vehicles for service and who have torque converter judder have received the countermeasures set forth in the TSBs pursuant to the terms of the warranty. However, to obtain those countermeasures, a service technician must identify torque converter judder on an automatic transmission snapshot.  Mr. Arst testified that it can be difficult to reproduce torque converter judder and to capture it on snapshot when it occurs. Defendants' customer service records also show the difficulty of capturing judder on a snapshot. Plaintiffs also object to Defendants' asserted fact because it lacks foundation. Defendants have no basis to know whether all 2014 Odyssey vehicle owners and lessees who have presented their vehicles for service and who have Atypical Vibrations have received the Countermeasures pursuant to the terms of the | be overruled, and the fact should be found undisputed.

Only in February 2018 did the relevant TSB's start to require snapshots of the automatic transmission be taken in order to confirm the vibration experienced by the customer is in fact originating in the torque converter and is not caused by the myriad other reasons that could result in vehicle vibration (e.g., brakes, tires, etc.).  The reason for the requirement is that if the snapshot shows the issue is not Atypical Vibration, then applying an ATF flush and software update intended to adjust the operation of the torque converter will not address the customer's concern. Honda wants dealers to make the right repairs so that customer's concerns are actually addressed. **Supporting Evidence**: (Hall Dep. 186:1-187:6; 254:1-17; Gibson Dep. 194:8-22).

Dealers can still apply the TSB repair without a snapshot, the requirement to send the snapshot into to |

| # | Defendants' Undisputed Fact and Supporting Evidence | Plaintiffs' Response & Supporting Facts | Defendants' Reply |
|---|---|---|---|
| | | warranty. **Supporting Evidence:** Kiser Decl. Ex. 4 at 168-169 (Gibson Dep. 193:8-194:22); Osterwise Decl. Ex. 32 (Arst. Dep. 62:13-64:20; 81:13-81:21; 185:4-22); Kiser Decl. Ex. 2 (Parker Rebuttal at 3, ¶ 9); Osterwise Decl. Ex. 13 (including AHM_ODYT_000001729 at 730). | AHM is only to encourage dealers to make sure they perform the correct repairs (because their warranty claim could be debited back if the ATF flush was done when not to address actual Atypical Vibration).  (Hall Dep. 186:1-187:6; 254:1-17).  This is because (as Plaintiffs admit) there are many causes of occasional vibration in a vehicle.<br><br>There is no evidence for Plaintiffs' assertion that it is difficult to capture Atypical Vibration on a snapshot.  Mr. Arst never testified that it was in any way difficult, but rather sets out in detail in his report how snapshots objectively capture and graphically show judder.  Arst also testified that dealer technicians are trained and very able to diagnose Atypical Vibration.  **Supporting Evidence:** Arst Dep. 158:22-159:25; Arst Rep't at 7-8; Arst Reb. Rep't at 5. |
| 26. | The Countermeasures are very effective. **Supporting | Disputed.  While the incidence of torque converter judder in their vehicles diminished for a | Plaintiffs' position should be overruled, and the fact should be found undisputed. |

| # | Defendants' Undisputed Fact and Supporting Evidence | Plaintiffs' Response & Supporting Facts | Defendants' Reply |
|---|---|---|---|
| | **Evidence:** (Gibson Dep. 59:2-5; id. 119:18-120:8) Kiser Decl. Ex. 4 at 133; 159-160. | time after receiving the countermeasures, each Plaintiffs' vehicle continues to have torque converter judder.  Plaintiffs also object to Defendants' supporting evidence as conclusory and lacking foundation.  Defendants' supporting testimony is also inadmissible because Defendants provide no basis for measuring effectiveness of the countermeasures. **Supporting Evidence:** Osterwise Decl. Ex. 21 (A. Parker Dep. 79:17 – 80:6); Osterwise Decl. Ex. 20 (J. Parker Dep. 156:14-23, 202:12-22); Osterwise Decl. Ex. 16 (B. Lentz Dep., 187:19-190:20); (Osterwise Decl. Ex. 22 (Seow Dep. 183:8-19); Osterwise Decl. Ex. 15 (Kavuri Dep. 185:2-187:6) Osterwise Decl. Ex. 19 (L. MacDougall Dep., 57:10-58:16). | Honda's technical expert, Jason Arst, confirmed through rigorous testing that no named Plaintiff's vehicle was affected by Atypical Vibration.  Plaintiffs' also admit they have not sought transmission related repairs to their vehicles since their vehicles were inspected in the Fall of 2017.  Their lay, speculative testimony that the "judder has returned" simply is not evidence to refute the testimony and conclusions of Honda's engineers. Mr. Arst specifically states in his report that he was aware of Plaintiffs' allegations and conditions that supposedly caused the judder at the time Mr. Arst tested the vehicles, and that Mr. Arst tried to induce the phenomena.  Mr. Gibson's testimony is not conclusory, it is founded on his personal knowledge as a principal engineer on the Atypical Vibration investigation. Moreover, Plaintiffs' counsel had every opportunity to test Mr. Gibson's testimony during deposition, but chose simply to move on, perhaps |

| # | Defendants' Undisputed Fact and Supporting Evidence | Plaintiffs' Response & Supporting Facts | Defendants' Reply |
|---|---|---|---|
| | | | because counsel did not like the answer.<br><br>Q. Was this repair effective at resolving the judder issue in these – these vehicles?<br>MS. KISER: Objection to form. These vehicles meaning the ones in the Service Bulletin 043?<br>MR. MASON: Correct.<br>THE WITNESS: Yes.<br>Q. Would you say it was a hundred percent effective?<br>MS. KISER: Objection to form. Lack of foundation. Outside the scope.<br>THE WITNESS: It was very effective. Hundred percent is a very precise number, and I would say we judged it as very effective.<br>MR. MASON: Let's look at the next document. What number are we up to?<br><br>Plaintiffs, in turn offer no evidence in response, including from their expert:<br><br>Q. Dr. Parker, do you express any opinions in your -- either of your reports that the software update and fluid flush is ineffective in remedying the judder condition? |

| # | Defendants' Undisputed Fact and Supporting Evidence | Plaintiffs' Response & Supporting Facts | Defendants' Reply |
|---|---|---|---|
| | | | A. I don't make any statements that it's ineffective. What I state is that there's -- there's an absence of evidence demonstrating that it is effective.  (Dr. Parker Dep. 170:10-17) |
| 27. | The software and program control modules in 2011, 2012, 2013, 2014, 2015 and 2016 Honda Odyssey vehicles vary from model year to year as well as from engine to engine, and components are provided by multiple suppliers. **Supporting Evidence:** (Gibson Dep. 222:6-24) Kiser Decl. Ex. 4 at 175; (Hall Dep. 177:23-178:3; id. 235:6-25) Kiser Decl. Ex. 8 at 216-217; 225; (Shepard Dep. 25:15-26:6), Kiser Decl. Ex. 6 at 185-186; (AHM Response to Amended ROG No. 1) Kiser Decl. Ex. 16 | Not Disputed.  However, Defendants' internal investigation and countermeasures acknowledge that that Class Odysseys suffer from a common judder defect. **Supporting Evidence:** Osterwise Decl. Ex. 7 (AHM_ODYT_000000843); Kiser Decl. Ex. 40 (AHM_ODYT_000000857); Kiser Decl. Ex. 41 (AHM_ODYT_000000045). | Because the fact is not disputed, the colloquy is irrelevant and should be disregarded.  Plaintiffs conclusory and baseless statement that "Odysseys suffer from a common judder defect" should be rejected.  There is no record evidence supporting such a conclusion (despite the burden to do so falling squarely on Plaintiffs), and Plaintiffs' cited evidence, a QIS document that represents the *opening* of an investigation into the possibility of vibration post-GSN torque converters in Odyssey vehicles, and the cited service bulletins, do not support Plaintiffs' assertion. |

| # | Defendants' Undisputed Fact and Supporting Evidence | Plaintiffs' Response & Supporting Facts | Defendants' Reply |
|---|---|---|---|
| | at 297-302. | | |
| 28. | When Atypical Vibrations occur, the vibration sensation is mild and does not last more than a few seconds. **Supporting Evidence:** (Gibson Dep. 196:5-7) Kiser Decl. Ex. 4 at 171; (L. MacDougall Dep. 38:20-24), Kiser Decl. Ex. 1 at 18; (MacDougall Response to ROG No. 20) Kiser Decl. Ex. 19 at 370. | Disputed that torque converter judder is a mild vibration sensation. Defendants' witness testified that a judder can also be a surge. Defendants internal investigation documents related to torque converter judder note that customers describe the feeling as a "buck" and as a "hesitation." **Supporting Evidence:** Osterwise Decl. Ex. 4 (Wechta Dep. 71:6-9); Osterwise Decl. Ex. 1 (HRA_ODYT_00000355_REV at 361_REV); Osterwise Decl. Ex. 2 (AHM_ODYT_000008524 at 525, 531); Osterwise Decl. Ex. 3 (AHM_ODYT_000006392 at 403). | Plaintiffs' position should be overruled, and the fact should be found undisputed.<br><br>Plaintiffs improperly rely on their own lay, speculative testimony about judder-by-feel, which is not evidence that Atypical Vibration measured by snapshots. Jason Arst confirmed that the vibration lasts for a "fractional second." Arst Dep. 178:24-179:16. |
| 29. | Plaintiffs have driven extensive distances despite alleging their vehicles are "unsafe," often with children in the vehicle. **Supporting Evidence:** (Kavuri Response to ROG NO. 23) Kiser | Not Disputed. | Admitted. |

DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| # | Defendants' Undisputed Fact and Supporting Evidence | Plaintiffs' Response & Supporting Facts | Defendants' Reply |
|---|---|---|---|
| | Decl. Ex. 22 at 395; (Lentz Response to ROG No. 20) Kiser Decl. Ex. 31 at 448; (D. MacDougall Dep. 22:5-11; id. 313:3- 11) Kiser Decl. Ex. 12 at 264; 268; (L. MacDougall Dep. 31:3-13; id. 64:16-22) Kiser Decl. Ex. 1 at 14; 24; (MacDougall Response to ROG No. 20) Kiser Decl. Ex. 19 at 370; (Parker Response to ROG No. 20) Kiser Decl. Ex. 32 at 456; (Seow Dep. 120:5-121:11) Kiser Decl. Ex. 15 at 287-88; (Seow Response to ROG No. 24) Kiser Decl. Ex. 33 at 464. | | |
| 30. | Mr. Parker has averaged 2,094 miles per month since he presented his vehicle for inspection. **Supporting Evidence:** (Parker Response to ROG No. 20) Kiser Decl. Ex. 32 at 456. | Undisputed. | Admitted. |
| 31. | Mrs. MacDougall (the vehicle's | Undisputed. | Admitted. |

DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| # | Defendants' Undisputed Fact and Supporting Evidence | Plaintiffs' Response & Supporting Facts | Defendants' Reply |
|---|---|---|---|
| | primary driver) has averaged 1,186 miles per month since the vehicle inspection on September 27, 2017. **Supporting Evidence:** (MacDougall Response to ROG No. 20) Kiser Decl. Ex. 19 at 370. | | |
| 32. | Since the inspection, Mr. Seow has driven his vehicle on average approximately 788 miles per month **Supporting Evidence:** (Seow Response to ROG No. 24) Kiser Decl. Ex. 33 at 464. | Undisputed. | Admitted. |
| 33. | Mr. Kavuri has driven his vehicle about 1,056 miles per month since the vehicle inspection on September 26, 2017. **Supporting Evidence:** (Kavuri Response to ROG NO. 23) Kiser Decl. Ex. 22 at 395. | Undisputed. | Admitted. |
| 34. | Since the inspection on August 11, 2017, Mr. Lentz's has driven his vehicle | Undisputed. | Admitted. |

| # | Defendants' Undisputed Fact and Supporting Evidence | Plaintiffs' Response & Supporting Facts | Defendants' Reply |
|---|---|---|---|
| | approximately 1,203 miles per month. **Supporting Evidence:** (Lentz Response to ROG No. 20) Kiser Decl. Ex. 31 at 448. | | |
| 35. | Not a single Plaintiff has brought in his or her vehicle to be repaired or serviced after receiving the Countermeasures. **Supporting Evidence:** (Kavuri Response to RFA No. 1, Kavuri Response to RFA No. 2) Kiser Decl. Ex. 23 at 400-01; (Lentz Response to RFA No. 1, Lentz Response to RFA No. 2) Kiser Decl. Ex. 25 at 409-10; (MacDougall Response to RFA No. 1, MacDougall Response to RFA No. 2) Kiser Decl. Ex. 20 at 376-77; (Parker Response to RFA No. 1, Parker Response to RFA No. 2) Kiser Decl. Ex. 29 at 432-33; (Seow Response to | Not disputed to the extent Defendants' asserted fact is limited to Plaintiffs seeking repairs for torque converter judder in the Odysseys following the late summer/early fall 2017 inspections of their Odysseys. | Admitted. Because the fact is not disputed, the colloquy is irrelevant and should be disregarded. Each of the Plaintiffs' admitted they have not sought service for "transmission related repairs" on their transmissions since their vehicles were inspected in connection with this lawsuit in the Fall of 2017. |

DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| # | Defendants' Undisputed Fact and Supporting Evidence | Plaintiffs' Response & Supporting Facts | Defendants' Reply |
|---|---|---|---|
| | RFA No. 1; Seow Response to RFA No. 2) Kiser Decl. Ex. 421. | | |
| 36. | Honda North America Inc. (HNA) is a California corporation and a wholly owned subsidiary of Honda Motor Co., Ltd. **Supporting Evidence:** (Gibson Deposition Exhibit 177, Declaration of Shane McCoy ¶ 3) Kiser Decl. Ex. 35 at 480. | Not Disputed. | Admitted. |
| 37. | HNA has no relationship (contract or otherwise) to the Plaintiffs in this lawsuit, as it does not design, manufacture, warrant, advertise, market, distribute or repair Honda vehicles. **Supporting Evidence:** (Gibson Deposition Exhibit 177, Declaration of Shane McCoy ¶ 5) Kiser Decl. Ex. 35 at 480. | Disputed that HNA "has no relationship" to Honda customers, including Plaintiffs, as Defendants' supporting evidence states that from 2014 through April 2018 HNA handled "certain quality related functions." According to Defendants' internal investigation documents, the "HNA Transmission" team was responsible for investigating the defect alleged in this case. Not disputed that HNA does not design, manufacture, warrant, advertise, market, | Plaintiffs' position should be overruled as irrelevant because Plaintiffs have agreed not to oppose summary judgment in favor of HNA. (*See* Dkt. # 174) |

DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| # | Defendants' Undisputed Fact and Supporting Evidence | Plaintiffs' Response & Supporting Facts | Defendants' Reply |
|---|---|---|---|
| | | distribute or repair Honda vehicles. **Supporting Evidence:** Osterwise Decl. Ex. 7 (AHM_ODYT_000000843). | |
| 38. | HNA does not, and has never, developed, manufactured, or sold vehicles **Supporting Evidence:** (Gibson Deposition Exhibit 177, Declaration of Shane McCoy ¶ 4) Kiser Decl. Ex. 35 at 480. | Not Disputed. | Admitted. |
| 39. | ATF deteriorates at differing rates depending upon individual driver behaviors such as driving patterns, vehicle use, daily mileage, wear, hard driving, and other factors unique to each driver. **Supporting Evidence:** (Hall Dep. 38:12-17; id. 240:11-25) Kiser Decl. Ex. 8 at 206; 230;(Gibson Dep. 109:16-110:6) Kiser Decl. Ex. 4 at 156- | Not disputed, except to the extent that Defendants' asserted fact could be read to mean that driving patterns, vehicle use, daily mileage, wear, hard driving, and other factors unique to each driver are the only factors that contribute to the rate at which ATF deteriorates. The rate at which ATF deteriorates is also influenced, as Defendants' supporting evidence acknowledges, by the presence of vehicle design defects in its transmission system and torque | Admitted. Because the fact is not disputed, the colloquy is irrelevant and should be disregarded. In response to Plaintiffs' commentary, it is not disputed that ATF is a wear item, and that the various factors listed in AHM's statement of fact No. 39 are unique to each driver and are not the only reasons ATF could deteriorate. To the extent that drivers in harsh driving conditions could experience premature |

| # | Defendants' Undisputed Fact and Supporting Evidence | Plaintiffs' Response & Supporting Facts | Defendants' Reply |
|---|---|---|---|
| 57. | | converter.<br>**Supporting Evidence:** Osterwise Decl. Ex. 34 (Gibson Dep. 105:11-110:6). | wear of their ATF, the ATF flush and software countermeasures specified in the applicable TSB's are efficacious repairs. *See also* SOF 44; Gibson Dep. 186:9-188:4. |
| 40. | The transmission in the 2014 Honda Odyssey vehicle is different from prior model years, featuring several material changes to the hardware.<br>**Supporting Evidence:** (AHM Response to Amended ROG No. 1) Kiser Decl. Ex. 16 at 297-98; (AHM_ODYT00000 883) Kiser Decl. Ex. 7 at 193. | Not disputed that the transmission in the 2014 Odyssey vehicle has certain hardware differences from prior model years, however Plaintiffs object to Defendants' characterization of such changes as material. That characterization is conclusory, lacks foundation, and is not supported by Defendants' supporting evidence. Further, Defendants' internal investigation documents and countermeasure showing a common defect in the Class Odysseys causing torque converter judder.<br>**Supporting Evidence:** Osterwise Decl. Ex. 7 (AHM_ODYT_000000843 ); Kiser Decl. Ex. 40 (AHM_ODYT_000000857 ); Kiser Decl. Ex. 41 (AHM_ODYT_000000045 ). | Admitted.<br><br>Because the fact is not disputed, the colloquy is irrelevant and should be disregarded.<br><br>The various differences between and among the 2014 and earlier and later model year Odyssey vehicles is set forth in detail in the verified interrogatory response of AHM No. 1. Mr. Hall testified that the differences between the vehicles and their components, including the way each vehicle handles fuel injection, means you "can't bucket them the same way." Hall Dep. 235:8-238:25. Mr. Gibson also explains that the vehicles that have Continental supplied components and Keihin components are completely different. Gibson Dep. 222:6-223:12; 56:24-59:5. |

| # | Defendants' Undisputed Fact and Supporting Evidence | Plaintiffs' Response & Supporting Facts | Defendants' Reply |
|---|---|---|---|
| 41. | TSB 12-064 applies to affected 2011 Odyssey Touring and Touring Elite models as well as a specific vehicle identification number (VIN) range of 2012 Odyssey Touring and Touring Elite models.  These models have S55C torque converters, which are different from the torque converters in Plaintiffs' vehicles **Supporting Evidence:** (Gibson Dep. Ex. 181 (TSB 12-064)) Kiser Decl. Ex. 36 at 482; (Gibson Dep. 54:9-10; id. 55:10-13) Kiser Decl. Ex. 4 at 129-30;(Hall Dep. 105:6-19) Kiser Decl. Ex. 8 at 213. | Not Disputed. | Admitted. |
| 42. | TSB 15-014 applies to affected model year 2014 Honda Odyssey vehicles and a specific VIN range of 2015 Honda Odyssey vehicles and is related to the timing of the | Not Disputed. | Admitted. |

DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| # | Defendants' Undisputed Fact and Supporting Evidence | Plaintiffs' Response & Supporting Facts | Defendants' Reply |
|---|---|---|---|
| | engagement of the hydraulic circuit relating to the clutches that are involved in switching gears. This TSB had nothing to do with ATF deterioration and did not involve the torque converter. **Supporting Evidence:** (Gibson Dep. Ex. 183 (TSB 15-014)) Kiser Decl. Ex. 37 at 485; (Gibson Dep. 86:16; id. 87:1-8; id. 88:7- 89:22; id. 90:9-16) Kiser Decl. Ex. 4 at 142-46. | | |
| 43. | TSB 16-046 and 16-052 apply to model year 2011-2012 Odyssey Touring and Touring Elite vehicles with SC55C torque converters and provides a warranty extension for the torque converter, software update and ATF replacement to 8 years/80,000 miles. **Supporting Evidence:** | Not Disputed. | Admitted. |

DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| # | Defendants' Undisputed Fact and Supporting Evidence | Plaintiffs' Response & Supporting Facts | Defendants' Reply |
|---|---|---|---|
| | (Gibson Dep. Ex. 188 (TSB 16-046)) Kiser Decl. Ex. 38 at 488; (Gibson Dep. Ex. 189 (TSB 16-052)) Kiser Decl. Ex. 39 at 492; (Hall Dep. 105:6-19) Kiser Decl. Ex. 8 at 213. | | |
| 44. | TSB 16-060 applied to a specific VIN range of 2012 Odyssey Touring and Touring Elite vehicles, 2013 Odyssey Touring and Touring Elite vehicles, and all 2014 and 2015 Honda Odyssey vehicles within a very narrow operating range in which temperatures locally around the steel plates would raise the fluid temperature high enough that the [ATF] properties would change.  ATF being a wear item anyway, the fluid was further wearing as a result of excessive heat. **Supporting** | Not disputed that TSB 16-060 applied to a specific VIN range of 2012 Odyssey Touring and Touring Elite vehicles, 2013 Odyssey Touring and Touring Elite vehicles, and all 2014 and 2015 Honda Odyssey vehicles, which are identified at the "Affected Vehicles" in TSB 16-060.  Disputed that TSB 16-060 only applied to vehicles within a very narrow operating range. By its own terms, TSB 16-060 applies to all Affected Vehicles, regardless of the "range" in which they fact operated, indicating the common problems of the transmission systems of these vehicles. | Admitted.  Because the fact is not disputed, it is admitted, and Plaintiffs' colloquy is irrelevant and should be disregarded.  Indeed, Plaintiffs cannot reasonably dispute the vehicles that TSB 16-060 applied to, because it is set forth on the face of the document.  In response to Plaintiffs' commentary, the repairs specified in TSB 16-060 (*i.e.*, within the models specified on the face of the documents) in fact ultimately applied to those vehicles in which Atypical Vibration manifested (*i.e.*, those  vehicles that operated within a narrow range, such as in harsh driving conditions, that allowed for ATF to degrade prematurely. |

| # | Defendants' Undisputed Fact and Supporting Evidence | Plaintiffs' Response & Supporting Facts | Defendants' Reply |
|---|---|---|---|
| | **Evidence:** (Gibson Dep. Ex. 190) Kiser Decl. Ex. 40 at 496; (Gibson Dep. 105:11-15; id. 106:5- 107:12) Kiser Decl. Ex. 4 at 152-53. | | |
| 45. | TSB 16-060 was efficacious: "testing was completed by R&D to ensure that enough of the fluid is flushed out of the transmission by measuring samples of the fluid after each flush and then judging that the fluid properties were near new conditions." **Supporting Evidence:** (Gibson Dep. 108:9-15) Kiser Decl. Ex. 4 at 155. | Disputed.  TSB 16-060 expressly instructs technicians to "[m]ake sure the customer is aware that this is a temporary fix and he or she will have to return once the software is available to make sure the transmission judder is resolved."  Plaintiffs do not dispute that the ATF flush described in TSB 16-060 was designed to provide **temporary relief** from the symptoms of torque converter judder. **Supporting Evidence:** Kiser Decl. Ex. 40 (AHM_ODYT_000000857 );  Osterwise Decl. Ex. 21 (A. Parker Dep. 79:17 – 80:6); Osterwise Decl. Ex. 20 (J. Parker Dep. 156:14-23, 202:12-22); Osterwise Decl. Ex. 16 (B. Lentz Dep., 187:19-190:20); (Osterwise Decl. Ex. 22 (Seow Dep. 183:8-19); Osterwise Decl. Ex. 15 | Plaintiffs' position should be overruled, and the fact should be found undisputed.  Plaintiffs do not dispute Mr. Gibson's testimony that Honda's testing confirmed that the fluid flush process returned the fluid condition to like new.  In response to Plaintiffs' commentary, Mr. Gibson also testifies that the flush was temporary only in the sense that software fixes were continuing to be developed by the different third party hardware and software vendors at the time, but that in the interim period the fluid flush will "eliminate the symptom the customer is experiencing." Gibson Dep. 111:23-113:16.  To the extent Plaintiffs seek to dispute the testimony of |

| # | Defendants' Undisputed Fact and Supporting Evidence | Plaintiffs' Response & Supporting Facts | Defendants' Reply |
|---|---|---|---|
| | | (Kavuri Dep. 185:2-187:6) Osterwise Decl. Ex. 19 (L. MacDougall Dep. 57:10-58:16); Osterwise Decl. Ex. 17 (N. Lentz Dep. 126:9-128:16). | Honda's engineer, Mr. Gibson, who participated in developing the countermeasure, with Plaintiffs' own lay, speculative, testimony purporting to point to "judder-by-feel" as evidence the flushing of ATF fluid does not return the fluid to like-new condition, the Court should reject the testimony as irrelevant. |
| 46. | AHM diagnosed the cause of the Atypical Vibrations in 2014 Honda Odyssey vehicles.  AHM engineers were able to replicate the issue when it is present in a vehicle.  The issue can result from faster-than-typical degradation of the vehicle's automatic transmission fluid (ATF).  **Supporting Evidence:** (Gibson Dep. 186:16-187:11; id. 212:14- 20) Kiser Decl. Ex. 4 at 163, 172. | Not disputed that AHM diagnosed the cause of the Atypical Vibrations in 2014 Honda Odyssey vehicles. Not disputed that the issue can result from faster-than-typical degradation of the vehicle's automatic transmission fluid (ATF). Disputed that AHM engineers were able to replicate the issue when it is present in a vehicle. Defendants present no supporting evidence for that asserted fact. Defendants' assertion is also contradicted by Mr. Arst's testimony that it can be difficult to reproduce torque converter judder and to capture it on snapshot | Admitted. Because the fact is not disputed, it is admitted, and Plaintiffs' colloquy is irrelevant and should be disregarded.<br><br>Moreover, there is no evidence for Plaintiffs' assertion that it is difficult to capture Atypical Vibration on a snapshot. Mr. Arst never testified that it was in any way difficult, but rather sets out in detail in his report how snapshots objectively capture and graphically show judder. Arst also testified that dealer technicians are trained and very able to diagnose Atypical Vibration.  **Supporting** |

| # | Defendants' Undisputed Fact and Supporting Evidence | Plaintiffs' Response & Supporting Facts | Defendants' Reply |
|---|---|---|---|
| | | when it occurs. **Supporting Evidence:** Osterwise Decl. Ex. 32 (Arst. Dep. 62:13-64:20; 81:13-81:21; 185:4-22). | **Evidence:** Gibson Dep. 198:17-204:21; Arst Dep. 158:22-159:25; Arst Rep't at 7-8; Arst Reb. Rep't at 5. |
| 47. | On or about June 20, 2017, AHM released into the market TSB 17-043 to further address the Atypical Vibrations (emanating from the torque converter) ("Countermeasures") in 2014 and 2015 Honda Odyssey vehicles via software updates, which were very effective. **Supporting Evidence:** (Gibson Dep. Ex. 192) Kiser Decl. Ex. 41 at 499; (Gibson Dep. 118:8-13; id. 119:5-25; id. 120: 6-8) Kiser Decl. Ex. 4 at 158; (Hall Dep. Ex. 168) Kiser Decl. Ex. 42 at 507; (Hall Dep., 250:21-22) Kiser Decl. Ex. 8 at 233. | Not [disputed] that on or about June 20, 2017, AHM released TSB 17-043, which finally included a software countermeasure for the torque converter judder.  Disputed that TSB 17-043 was limited to 2014 and 2015 Honda Odyssey vehicles.  The Affected Vehicles identified in TSB 17-043 include model year 2014-17 Odysseys.  Also disputed that the software updates "were very effective" as Defendants' supporting evidence for this asserted fact is conclusory.  It is also contradicted by Mr. Hall's testimony that Honda doesn't monitor the effectiveness of TSBs after their release.<br><br>Plaintiffs also dispute that AHM's TSBs are "released into the market," to the extent that such phrase is intended to convey that AHM makes a broad public disclosure of its TSBs.  As | Admitted. Because the fact is not disputed, it is admitted, and Plaintiffs' colloquy is irrelevant and should be disregarded.<br><br>There can be no dispute as to the vehicles specified in TSB 17-043, which are set forth on the fact of the document. Plaintiffs cannot reasonably dispute the effectiveness of the countermeasures set forth TSB 17-043 and 17-044 (ATF fluid flush and software update), which was testified to extensively by Mr. Gibson, Honda's engineer leading the investigation into the issue with direct personal knowledge of the judgment of efficacy.<br><br>Plaintiffs mischaracterize Mr. Hall's testimony, in which he says that "there is not one particularly thing that can say that…but before we push it out, it's |

| # | Defendants' Undisputed Fact and Supporting Evidence | Plaintiffs' Response & Supporting Facts | Defendants' Reply |
|---|---|---|---|
| | | Defendants state in their uncontroverted fact No. 1, "AHM publishes Technical Service Bulletins (TSBs) to its network of authorized dealers and repair shops that are independent and separate businesses from itself." But no such dissemination was made to the consuming public or to car owners. **Supporting Evidence:** Osterwise Decl. Ex. 6 (Hall Dep. 66:14-24). | thoroughly tested." Finally, as to the distribution of TSB's, the fact that the bulletins are distributed to Honda's independent, authorized dealers, is not disputed. |
| 48. | On or about February 27, 2018, AHM released into the market TSB 17-044 to provide for a fluid flush for 2014 and 2015 Honda Odyssey vehicles that are being driven under extreme conditions (e.g., towing, high passenger load, operating in regions that have steep terrain, high temperature climates). Both usage and environment can create extreme | Disputed.  On or about June 20, 2017, AHM released TSB 17-044 to provide for an ATF flush for 2014-17 Honda Odyssey vehicles that experience ATF deterioration even after receiving the software update and ATF flush countermeasures described in TSB 17-044.  On or about February 27, 2018 AHM released TSB 17-044 Version 2, which also related to 2014-17 Honda Odyssey vehicles.  Further, the countermeasures provided in TSB 17-044 are for all 2014-17 Honda Odyssey vehicles that, after | Plaintiffs' position should be overruled, and the fact should be found undisputed. The dates and versions of the relevant TSB's issued by AHM cannot reasonably be disputed and are stated on the face of the documents. TSB 17-044 (the June 2017 and February 2018 versions) states on its face that an additional ATF flush could be required, if a snapshot confirms Atypical Vibration is still present in some small number of vehicles "based on how they are driven."  Plaintiffs |

| # | Defendants' Undisputed Fact and Supporting Evidence | Plaintiffs' Response & Supporting Facts | Defendants' Reply |
|---|---|---|---|
| | conditions. **Supporting Evidence:** (Gibson Dep. Ex. 193) Kiser Decl. Ex. 43 at 515; (Gibson Dep. 120: 20-23; 121:23-122:9) Kiser Decl. Ex. 4 at 160-62. | the software update in TSB 17-043, show judder coming from the torque converter, irrespective of how the vehicle has been driven.  The testimony on which Defendants rely does not otherwise support Defendants' implication that TSB 17-044 is limited to "vehicles that are being driven under extreme conditions." As noted above in No. 47, Plaintiffs also dispute that AHM's TSBs are "released into the market," to the extent that such phrase is intended to convey that AHM makes a broad public disclosure of its TSBs.  As Defendants state in their uncontroverted fact No. 1, "AHM publishes Technical Service Bulletins (TSBs) to its network of authorized dealers and repair shops that are independent and separate businesses from itself." **Supporting Evidence:**  Kiser Decl. Ex. 43; Osterwise Decl. Ex. 36 (AHM_ODYT_000000732 ). | conclusory and unsupported statement to the contrary should be rejected. |
| 49. | Snapshots of a vehicle are necessary in order to correctly | Disputed.  Plaintiffs do not dispute that torque converter judder can be | Plaintiffs' position should be overruled, and the fact should be found undisputed. |

DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED
FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| # | Defendants' Undisputed Fact and Supporting Evidence | Plaintiffs' Response & Supporting Facts | Defendants' Reply |
|---|---|---|---|
| | diagnose the source of vibration in a vehicle, and specifically whether it is emanating from the transmission **Supporting Evidence:** (Hall Dep. 199:11-200:2) Kiser Decl. Ex. 8 at 222; (Gibson Dep. 99:14-100:1) Kiser Decl. Ex. 4 at 150-51. | identified on a snapshot. However, given Defendants' long experience trying to remedy the torque converter judder defect in the Class Odysseys and other models, a correct inference can be made of torque converter judder from consumer descriptions of their experiences with the vehicles and their response to torque converter judder countermeasures. Defendants' supporting testimony is conclusory and does not support a finding that torque converter judder can only be diagnosed with a snapshot. | Plaintiffs cannot reasonably dispute that a snapshot is required to accurately diagnose Atypical Vibration, which Mr. Gibson and Mr. Hall testified to at length, providing the basis for their statements in their testimony. Plaintiffs admit that vehicle vibrations can be caused by myriad factors (*e.g.*, brakes, tires, road conditions, etc.). SUF ¶ 11. Plaintiffs' attempt to draw an "inference" that their own lay, speculative opinions about "judder-by-feel" can somehow supplant the snapshot technology explained by Honda's technical expert Mr. Arst should be rejected. |
| 50. | AHM confirmed that ATF deterioration due to high heat load did not cause damage to the GSN torque converter. **Supporting Evidence:** (Hall Dep. Ex. 153) Kiser Decl. Ex. 44 at 519; (Hall Dep. 196:5-15) Kiser Decl. Ex. 8 at 219. | Disputed.  Plaintiffs' expert Robert Parker opines that the high heat loads due to the defect can damage mechanical components in the vehicles. **Supporting Evidence:** Kiser Decl. Ex. 2 (Parker Report at 29-30, 36-38). | Plaintiffs' position is based on improper and conclusory testimony and should be overruled. The fact should be found undisputed.<br><br>As stated in Defendants' Motion to Strike Dr. Parker's testimony (ECF Nos. 151, 159), Dr. Parker conceded he has no basis to assert that actual components in 2014 |

| # | Defendants' Undisputed Fact and Supporting Evidence | Plaintiffs' Response & Supporting Facts | Defendants' Reply |
|---|---|---|---|
| | | | Odyssey vehicles are in any way damaged by ATF degradation, because he never did any inspection or testing of any 2014 Honda Odyssey vehicle (including the named Plaintiffs' vehicles) that would possibly have revealed any such damage, and Honda witnesses did such testing and concluded it did not.<br><br>Q. *And so you have no idea if any of the named plaintiffs' automatic transmission components were, in fact, damaged in any way by this condition; is that correct?*<br>A. *Yeah, I -- I cannot take an opinion. I don't have evidence that they were; I don't have confirmation that they were not*.<br>Q. And that's also true of damage to the torque converter on those vehicles; correct?<br>A. The -- of the -- of the named plaintiffs we're speaking about? Okay, in the named plaintiffs, I -- same. I have no -- have no confirmation that there was damage nor that there was not. |

| # | Defendants' Undisputed Fact and Supporting Evidence | Plaintiffs' Response & Supporting Facts | Defendants' Reply |
|---|---|---|---|
| | | | Q. Okay. Have you at any point in time observed damage in any 2011 to 2017 Honda Odyssey automatic transmission that you believe is attributed to this judder condition? A. Well, I've -- not through my personal testing. I report on some damages that were -- that Honda documents record. Dr. Parker Dep. 171:7-172:2. Dr. Parker, nor Plaintiffs here, can point to any such documents, because Honda concluded that there was no damage to the torque converter (having tested and studied the components). There is no evidentiary support for Plaintiffs' assertion and it should be rejected.

This is stark in contrast to the conclusions of Honda's engineers who did test the hardware and study the vehicles and reached the opposite conclusion. Gibson Dep. 112:12-113:5. |
| 51. | The number of 2014 Odyssey vehicles that received one or more of the applicable countermeasures set | Disputed. The supporting evidence for Defendants' asserted fact is incomplete. Five percent incidence rate would be the threshold. Such measurements do not | Plaintiffs' position should be overruled, and the fact should be found undisputed.

AHM's statement of fact is founded upon produced |

| # | Defendants' Undisputed Fact and Supporting Evidence | Plaintiffs' Response & Supporting Facts | Defendants' Reply |
|---|---|---|---|
| | forth in the applicable TSBs is five (.05) percent. **Supporting Evidence:** Kiser Decl. ¶ 4. | include frustrated customers whose problem was not properly diagnosed.  In addition, each Plaintiff received the ATF flush countermeasure set forth in TSB 16-060, but none of these ATF flushes are reflected in the warranty records upon which Defendants rely for their supporting evidence. Notably, Plaintiff Parkers' service records state: "Torque converter lock up clutch being felt.  The tech checked & complete diagnostic & complete ATF flush procedure per TSB as temporary correction until software is available to correct condition…" **Supporting Evidence:** Osterwise Decl. Ex. 23 (Kavuri000008); Osterwise Decl. Ex. 24 (Lentz0000032); Osterwise Decl. Ex. 27 (MacDougall000017); Osterwise Decl. Ex. 26 (Parker000010); Osterwise Decl. Ex. 25 (Seow000044); Osterwise Decl., ¶ 5; Osterwise Decl. Ex. 13. | warranty records to Plaintiffs showing warranty claims made pursuant to TSB's 16-060, 17-043, and 17-044, and more broadly, claims where the customers' contentions used such general terms (negotiated and agreed with Plaintiffs' counsel) like "judder" to describe their symptom. This data shows a low 5% occurrence rate.  Kiser Decl. ¶ 4 (Dkt. # 157-1); AHM_ODYT_000000832, AHM_ODYT_000000820, AHM_ODYT_000000821, and AHM_ODYT_000000970. Because the 5% occurrence is based in part on broad search terms, it is actually over-inclusive, and *does* count the very customers Plaintiffs claim –without any basis—are missing (those that complained, but did not necessarily receive the TSB countermeasure). Plaintiffs incorrectly assert each Plaintiffs in fact had a repair under TSB 16-006. In fact, the only Plaintiff whose service records show that they had such a repair under this service bulletin is |

| # | Defendants' Undisputed Fact and Supporting Evidence | Plaintiffs' Response & Supporting Facts | Defendants' Reply |
|---|---|---|---|
| | | | Mr. Parker, whose VIN is accounted for in the warranty data produced by AHM to Plaintiffs AHM_ODYT_000000832. |

DATED: July 22, 2019

By: */s/ Livia. M. Kiser*
Attorneys for Defendants
AMERICAN HONDA MOTOR CO., INC. and
HONDA NORTH AMERICA, INC.