1   LIVIA M. KISER (SBN 285411)
    *lkiser@kslaw.com*
2   MICHAEL B. SHORTNACY (SBN 277035)
    *mshortnacy@kslaw*.com
3   King & Spalding LLP
    633 West 5th Street, Suite 1600
4   Los Angeles, CA  90071
    Telephone:  (213) 443-4355
5   Facsimile:   (213) 443-4310

6

7   *Attorneys for Defendants*
    AMERICAN HONDA MOTOR CO., INC.
8   and HONDA NORTH AMERICA, INC.,

9              **UNITED STATES DISTRICT COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11             **SOUTHERN DIVISION**

|   |   |   |
|---|---|---|
| 12 | DENNIS MACDOUGALL, RAY SEOW, PRABHANJAN KAVURI, JOSEPH RYAN PARKER, and BRYAN LENTZ, individually and on behalf of all others similarly situated, | Case No. 8:17-cv-01079-AG (DFMx) |
| 13 | | |
| 14 | | **DEFENDANT AMERICA HONDA MOTOR CO., INC.'S ADDITIONAL CONCLUSIONS OF LAW AND RESPONSE TO PLAINTIFFS' "STATEMENT OF ADDITIONAL MATERIAL FACTS" ECF NO. 174-1 (pp. 31-35)** |
| 15 | | |
| 16 |                  Plaintiffs, | |
| 17 |        v. | Filed Concurrently Herewith: |
| 18 | AMERICAN HONDA MOTOR CO., INC., and HONDA NORTH AMERICA, INC., | 1) Declaration of Michael B. Shortnacy and Exhibits |
| 19 | | |
| 20 |                  Defendants. | Date:        August 5, 2019 |
| 21 | | Time:        10:00 a.m. |
| 22 | | Location:    Santa Ana Division, 10D  Judge:        Hon. A. Guilford |

23

24

25

26

27

28

Defendant American Honda Motor Co., Inc. ("AHM")[1] respectfully submits the following response to Plaintiffs' "Statement of Additional Material Facts" appended to ECF No. 174-1 at pp. 31-35.  Plaintiffs' "Statement" does not comply with L.R. 56-2 because it is not based on evidence or disputed material facts.

## I.   ADDITIONAL RELEVANT CONCLUSIONS OF LAW

To be considered by a court on a motion for summary judgment, "documents must be authenticated by and attached to an affidavit that meets the requirements of [Fed. R. Civ. P.] 56(e) *and the affiant must be a person through whom the exhibits could be admitted into evidence*." *Hal Roach Studios, Inc. v. Richard Feiner & Co*., 896 F.2d 1542, 1550–51 (9th Cir. 1989), *citing Canada v. Blain's Helicopters, Inc*., 831 F.2d 920, 925 (9th Cir. 1987) (emphasis supplied). A document that lacks proper foundation cannot be used to defeat a motion for summary judgment. *Canada*, 831 F.2d at 925. Authenticating a document requires "evidence sufficient to support a finding that the matter in question is what its proponent claims." *See* Fed. R. Evid. 901(a).

At the summary judgment stage, a plaintiff may not offer inadmissible hearsay and otherwise objectionable snippets of documents, scraps of testimony and irrelevant materials as "evidence."  *See* Fed. R. Civ. P.  56(e); *Orr v. Bank of America,* 285 F.3d 764, 773 (9th Cir. 2002); *Beyene v. Coleman Sec. Servs., Inc.,* 854 F.2d 1179, 1181 (9th Cir. 1988). Thus, in *Orr,* the Ninth Circuit affirmed a district court's decision to exclude, at summary judgment, evidence offered by the non-moving party on the grounds that the evidence constituted hearsay. *See Orr,* 285 F.3d at 771 (affirming the entry of summary judgment against plaintiff based on the district court's finding "that most of the evidence submitted by Orr in support of her opposition to BOA's motion for summary judgment was inadmissible due to inadequate authentication and hearsay"); *see also Los Angeles News Service v. CBS Broadcasting, Inc.,* 305 F.3d 924, 935–36

---

[1] Plaintiffs concede that judgment with respect to HNA is proper.

(9th Cir. 2002) (holding that the district court did not abuse its discretion in excluding hearsay evidence and evidence that violated the best evidence rule in deciding a summary judgment motion). Merely because a document has been produced by a defendant during discovery does not make it admissible. *See*, *e.g*., *Hess v. Multnomah County*, 211 F.R.D. 403, 406 (D. Or. 2001).[2] Plaintiffs are proffering Honda-produced documents for their truth, but their counsel are not percipient witnesses. *Id*. Plaintiffs and their counsel cannot unilaterally explain what documents mean and could never properly testify as to truth of their contents. *Medina v. Multaler, Inc*., 547 F. Supp. 2d 1099, 1122 (C.D. Cal. 2007) (hearsay evidence contained in an affidavit may be considered at summary judgment only if the declarant could later present the evidence through direct testimony) (internal citations omitted).

For a party to proffer hearsay as evidence, the party must identify a hearsay exception and explain why it would apply. *See Orr,* 285 F.3d at 771; *Medina*, 547 F. Supp. 2d at 1122; *Hess*, 211 F.R.D. at 406. Otherwise, the hearsay is properly excluded.

A party may not submit as exhibits documents with extensive Japanese language in them, which is not permitted by L.R. 11-3.10 (requiring translations of foreign language documents used as court exhibits).

On an issue as to which the nonmoving party will have the burden of proof, a movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case. *Medina*, 547 F. Supp. 2d at 1119. If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Id.*

//

---

[2] Although a Honda witness (Robert Hall) has attested to the fact that the exhibits produced by the various Honda entities and filed under seal contain certain proprietary and confidential information of Honda – and they do – Mr. Hall only attested in very general terms as to their contents and certainly did not attest to their relevance, meaning or accuracy. *See, e.g.*, ECF Nos. 149-2, 154, 172, 177.

## II.   RESPONSE TO "STATEMENT OF ADDITIONAL FACTS"

| No. | Plaintiffs' Uncontroverted Fact ("PUF") | Supporting Evidence | Defendants' Response |
|---|---|---|---|
| 52 | Honda admitted that symptoms related to torque converter judder include "Hesitation, vibration, shudder, judder, noise, engine rpm 'hunting'," and that the "[c]ustomer experiences RPM hunting/surging," and jerks, stumbles, and bucks. | Osterwise Decl. Ex. 4 (Wechta Dep. 71:6-9); Osterwise Decl. Ex. 1 (HRA_ODYT_00000355_REV at 361_REV); Osterwise Decl. Ex. 2 (AHM_ODYT_000008524 at 525, 531); Osterwise Decl. Ex. 3 (AHM ODYT 000006392 at 403). | Objections to Osterwise Decl. Exs. (hereinafter, "OD Exs.") 1, 2, 3, and 4: inadmissible hearsay, lack of foundation, speculation, not relevant, not best evidence, misstates testimony.<br><br>*First*, torque converters are completely different components than transmissions.  In their Complaint, Plaintiffs allege that their vehicles have "defective transmissions."  ECF 1 (Compl. ¶¶ 28, 59).  The documents Plaintiffs purport to rely on in support of their claimed fact, however, pertain only to torque converters, which are not part of a vehicle's transmission, as Honda Senior Staff engineer Michael Gibson testified:<br><br>**Q. Just to be clear, is the torque converter part of the transmission?**<br>**A. No.**<br><br>[Gibson Dep. 63:23-25][3] |

[3] For the Court's convenience deposition testimony excerpts from AHM's Response to Plaintiffs' "Statement of Additional Material Facts," are annexed as exhibits to the accompanying, concurrently filed, Declaration of Michael B. Shortnacy (hereinafter, "Shortnacy Decl.," dated July 22, 2019.

| No. | Plaintiffs' Uncontroverted Fact ("PUF") | Supporting Evidence | Defendants' Response |
|-----|------------------------------------------|---------------------|----------------------|
|     |                                          |                     | As to OD Ex. 1 (dated 8/21/15) and OD Ex. 2 (dated 4/22/16), these documents refer to 2011 and 2012 Honda Odyssey Touring and Touring Elite vehicles with SC55 (pre-GSN) torque converters, which are different hardware than Plaintiffs' vehicles, and which Plaintiffs now exclude from their proposed class. ECF 147, pg. ID# 2412; see also [OD Ex. 1, ECF 174-3, pg. ID# 6319 at HRA_ODYT_0000358 (discussing warranty extension provided to pre-GSN parts) (under seal)]; [OD Ex. 2 at AHM_ODYT_000008525 ECF No. 174-4 at pg. ID# 6343 (same) (under seal)]. Plaintiffs **admit** that their own 2014 Honda Odyssey vehicles do not have SC55 torque converters.  ECF 174-1 at p. 22 [SUF ¶ 41 (undisputed)].<br><br>OD Ex. 2 also contains extensive Japanese language, and Plaintiffs fail to put forward a translation of this content as required by L.R. 11-3.10. |

DEFENDANT AHM'S ADDITIONAL CONCLUSIONS OF LAW AND RESPONSE TO PLAINTIFFS' "STATEMENT OF ADDITIONAL MATERIAL FACTS"

| No. | Plaintiffs' Uncontroverted Fact ("PUF") | Supporting Evidence | Defendants' Response |
|---|---|---|---|
| | | | As to OD Ex. 3 (dated 12/8/15), AHM ODYT 000006403 references "customer contentions" that are triple hearsay, are in no sense "admissions," and identifies numerous different symptoms (reported subjectively by customers) that may or may not be emanating from their vehicles' torque converters.  ECF 174-5 at pg. ID# 6382 [OD Ex. 3 at AHM_ODYT 000006403 (under seal)] Moreover, AHM_ODYT 000006404 shows snapshots of what torque converter judder actually looks like (captured using the same equipment as Honda expert Jason Arst), further proving that when it exists in a vehicle, it can be identified and captured, contrary to the assertions of Plaintiffs and their proposed expert. *Id*. [ECF 174-5, OD Ex. 3 at AHM_ODYT 000006404 (under seal)]. Ex. 3 also contains extensive Japanese language, and Plaintiffs fail to put forward a translation of this content as required by L.R. 11-3.10. |

| No. | Plaintiffs' Uncontroverted Fact ("PUF") | Supporting Evidence | Defendants' Response |
|-----|------------------------------------------|---------------------|----------------------|
| | | | Finally, as to OD Ex. 4, Mr. Wechta said only that some of these terms "could" mean the same thing, not that they in every case do mean the same thing. ECF 174-6 at pg. ID# 6412 [OD Ex. 4 at 71:1-9].

PUF 52 is inadmissible and not evidence because it is pure argument, and the underlying documents and testimony purportedly supporting PUF 52 do not support (and are not even relevant to Plaintiffs' claims). OD Exs. 1-3 were also created after Plaintiffs purchased their vehicles between 12/2013 through 9/2014. ECF 1 at ¶¶ 63, 71, 75, 85, 89.  PUF 52 is not evidence. |
| 53 | Honda first received a complaint concerning torque converter judder in a 6AT 4th Generation Odyssey in May 2011. | Osterwise Decl. Ex. 1 (HRA_ODYT_0000035 5_REV at 359_REV). | Objections to OD Ex. 1: inadmissible hearsay, lack of foundation, speculation, not relevant, not best evidence, misstates testimony.

OD Ex. 1 (dated 8/21/15) refers to a variety of older model year vehicles not in issue in this case, including 2011 and 2012 Honda Odyssey Touring and Touring Elite vehicles |

DEFENDANT AHM'S ADDITIONAL CONCLUSIONS OF LAW AND RESPONSE TO PLAINTIFFS'
"STATEMENT OF ADDITIONAL MATERIAL FACTS"

| No. | Plaintiffs' Uncontroverted Fact ("PUF") | Supporting Evidence | Defendants' Response |
|---|---|---|---|
| | | | with SC55 (pre-GSN) torque converters which was the subject of an entirely different countermeasure, and which Plaintiffs now carve from their proposed class. ECF 147, pg. ID# 2412; see also [OD Ex. 1, ECF 174-3, pg. ID# 6319 at HRA_ODYT_0000358 (discussing warranty extension provided to pre-GSN parts) (under seal)]; Plaintiffs' 2014 MY Odyssey vehicles do not have SC55 torque converters as they admit. ECF 174-1 at p. 22 [SUF ¶ 41 (undisputed)].<br><br>The software and program control modules (PCMs) [referenced in PUF as ECUs – they are the same thing][4] in 2011, 2012, 2013, 2014, 2015 and 2016 Honda Odyssey vehicles vary from model year to model year as well as from engine to engine, and components are provided by multiple suppliers, a fact which is not disputed. ECF 174-1 at p. 17 [SUF ¶ 27 (undisputed)]. |

[4] See Hall Dep. 172:15-173:3.

DEFENDANT AHM'S ADDITIONAL CONCLUSIONS OF LAW AND RESPONSE TO PLAINTIFFS'
"STATEMENT OF ADDITIONAL MATERIAL FACTS"

| No. | Plaintiffs' Uncontroverted Fact ("PUF") | Supporting Evidence | Defendants' Response |
|---|---|---|---|
| | | | PUF 53 is inadmissible and not evidence because it is argument, and the underlying document purportedly supporting PUF 53 does not support and is not relevant to Plaintiffs' claims. The document was also created after Plaintiffs' vehicles were initially purchased (12/2013 through 9/2014). Compl. ECF No. 1 at ¶¶ 63, 71, 75, 85, 89.  PUF 53 is not evidence. |
| 54 | Honda commenced its investigation into torque converter judder in 6AT vehicles prior to May 2011. | Osterwise Decl. Ex. 1 (HRA_ODYT_00000355_REV at 359_REV); Osterwise Decl. Ex. 2 (AHM_000008524 at 530). | Objections to OD Exs. 1 and 2:  inadmissible hearsay, lack of foundation, speculation, not relevant, not best evidence.

*First*, torque converters have nothing to do with so-called "defective transmissions."  Compl. ¶¶ 28, 59. [Gibson Dep. 63:23-25] OD Ex. 1 (dated 8/21/15) and OD Ex. 2 (dated 4/22/16) refer to 2011 and 2012 Honda Odyssey Touring and Touring Elite vehicles with pre-GSN SC55 torque converters. ECF 147, pg. ID# 2412; see also [OD Ex. 1, ECF 174-3, pg. ID# 6319 at HRA_ODYT_0000358 |

| No. | Plaintiffs' Uncontroverted Fact ("PUF") | Supporting Evidence | Defendants' Response |
|-----|------------------------------------------|---------------------|----------------------|
|     |                                          |                     | (discussing warranty extension provided to pre-GSN parts) (under seal)]; [OD Ex. 2 at AHM_ODYT_000008525 ECF No. 174-4 at pg. ID# 6343 (same) (under seal)]. Plaintiffs admit that their own 2014 Honda Odyssey vehicles do not have SC55 torque converters. ECF 174-1 at p. 22 [SUF ¶ 41 (undisputed)]. |
|     |                                          |                     | OD Ex. 2 also contains extensive Japanese language, and Plaintiffs fail to put forward a translation of this content as required by L.R. 11-3.10. |
|     |                                          |                     | PUF 54 is inadmissible and not evidence because it is pure argument, and the underlying documents proffered to support PUF 54 do not support (and are not even relevant) to Plaintiffs' claims.  OD Exs. 1 and 2 were also created after Plaintiffs' vehicles were initially purchased by consumers (*i.e.*, 12/2013 through 9/2014). Compl. ECF 1 at ¶¶ 63, 71, 75, 85, 89.  PUF 54 is not evidence. |

DEFENDANT AHM'S ADDITIONAL CONCLUSIONS OF LAW AND RESPONSE TO PLAINTIFFS' "STATEMENT OF ADDITIONAL MATERIAL FACTS"

| No. | Plaintiffs' Uncontroverted Fact ("PUF") | Supporting Evidence | Defendants' Response |
|---|---|---|---|
| 55 | Prior to Plaintiffs' purchasing their Odysseys, Honda attempted to eliminate torque converter judder in its 6AT vehicles by increasing the toughness of the clutch plate by applying a gas soft nitriding (GSN) surface treatment. | Kiser Decl. Ex. 2 (Parker Report at p. 39); Osterwise Decl. Ex. 2 (AHM_ODYT_000008 524 at 528-29). | Objections to OD Ex. 2: hearsay, lack of foundation, speculation, lack of relevance, not best evidence.

OD Ex. 2 (dated 4/22/16) refers to a variety of older model year vehicles not in issue in this case, including 2011 and 2012 Honda Odyssey Touring and Touring Elite vehicles with SC55 torque converters. ECF 174-3 at page ID# 6319 [OD Ex. 2 at AHM_ODYT_000008525]. Plaintiffs admit that their own 2014 Honda Odyssey vehicles do not have SC55 torque converters. ECF 174-1 at p. 22 [SUF ¶ 41 (undisputed)].

OD Ex. 2 also contains extensive Japanese language, and Plaintiffs fail to put forward a translation of this content as required by L.R. 11-3.10.

Objections to Parker Report:  Parker's report and testimony is properly excluded because he offers no valid expert |

DEFENDANT AHM'S ADDITIONAL CONCLUSIONS OF LAW AND RESPONSE TO PLAINTIFFS' "STATEMENT OF ADDITIONAL MATERIAL FACTS"

| No. | Plaintiffs' Uncontroverted Fact ("PUF") | Supporting Evidence | Defendants' Response |
|---|---|---|---|
| | | | opinions for reasons stated in Defendants' briefing in support of their motion to strike Dr. Parker's testimony (ECF 151, 159), and he is not a percipient witness, lacking foundation and personal knowledge to testify as to meaning of Honda's documents and business operations. *See also* Fed. R. Evid. §§ 702, 703.<br><br>In contrast, Honda Senior Staff engineer Michael Gibson, a witness with personal knowledge and who testified on behalf of AHM and HNA, testified that the GSN surface treatment addressed a *different issue* called "microslip" (solved with a software update) and it was fully efficacious:<br><br>**Q. Okay. And when was [GSN] implemented?**<br>**A. Sometime around -- sometime in 2012, approximately.**<br>**Q. Okay. And after that countermeasure was implemented, were there still occurrences of GSN micro slip that were identified?**<br>**THE WITNESS: No**. |

| No. | Plaintiffs' Uncontroverted Fact ("PUF") | Supporting Evidence | Defendants' Response |
|---|---|---|---|
| | | | [Gibson Dep. 174:2-9]<br><br>Thus, PUF 55 is inadmissible and not evidence because it is pure argument and is directly contradicted by undisputed facts (founded on personal knowledge) in evidence. |
| 56 | The GSN countermeasure was not fully effective, and Honda didn't monitor its effectiveness in the field. | Kiser Decl. Ex. 2 (Parker Report at p. 25-27); Osterwise Decl. Ex. 5 (AHM_ODYT_ 000008038 at 43-46); Osterwise Decl. Ex. 6 (Hall Dep. 66:14-24). | Objections to OD Exs. 5 and 6:  inadmissible hearsay, lack of foundation, speculation, lack of relevance, not best evidence, misstates testimony.<br><br>OD Ex. 5 (dated "6/XX/16") is very clearly a draft document that refers to 2011 and 2012 Honda Odyssey Touring and Touring Elite vehicles with SC55 torque converters.   ECF No. 174-7 at page id# 6415 [OD Ex. 5 at HRA_ODYT_00008042 (discussing warranty extension)]. Plaintiffs admit that their own 2014 Honda Odyssey vehicles do not have SC55 torque converters. ECF 174-1 at p. 22 [SUF ¶ 41 (undisputed)].<br><br>Objection to Parker |

DEFENDANT AHM'S ADDITIONAL CONCLUSIONS OF LAW AND RESPONSE TO PLAINTIFFS'
"STATEMENT OF ADDITIONAL MATERIAL FACTS"

| No. | Plaintiffs' Uncontroverted Fact ("PUF") | Supporting Evidence | Defendants' Response |
|---|---|---|---|
| | | | Report:  Parker's report and testimony is properly excluded because he offers no valid expert opinions for reasons stated in Defendants' briefing in support of their motion to strike Dr. Parker's testimony (ECF 151, 159), and he is not a percipient witness, lacking foundation and personal knowledge to testify as to meaning of Honda's documents and business operations. *See also* Fed. R. Evid. §§ 702, 703. Honda Senior Staff engineer Michael Gibson, a witness with personal knowledge and who testified on behalf of AHM and HNA, testified that the GSN addressed a different issue called "microslip," and it was fully efficacious: **Q. Okay. And when was [GSN] implemented? A. Sometime around -- sometime in 2012, approximately. Q. Okay. And after that countermeasure was implemented, were there still occurrences of GSN micro slip that** |

| No. | Plaintiffs' Uncontroverted Fact ("PUF") | Supporting Evidence | Defendants' Response |
|---|---|---|---|
| | | | were identified?<br>**THE WITNESS: No.**<br><br>[Gibson Dep. 174:2-9]<br><br>Finally, as to OD Ex. 6, Mr. Hall actually testified as follows:<br><br>Q: Is there a mechanism to evaluate whether or not the TSB's remedies were sufficient to solve the problem for Honda customers?<br>THE WITNESS: If we're looking at it after the fact, there's no one particular – you know one particular thing that can say that, yeah, the thing's effective or not, **but before it is – we push it out, it's thoroughly tested. So …**<br>ECF No. 174-8 at page id# 6430 [OD Ex. 6 at 66:14-25].<br><br>Thus, PUF 56 is inadmissible and not evidence because it is pure argument and contradicted by undisputed evidence and testimony. |
| 57 | Following implementation of the GSN countermeasure, Honda resumed investigating judder in its | Osterwise Decl. Ex. 2 (AHM_ODYT_000008 524 at 530); Osterwise Decl. Ex. 3 (AHM_ODYT_000006 | Objections to OD Exs. 2, 3, 7, 37 and 6: inadmissible hearsay, lack of foundation, speculation, not relevant, not best |

DEFENDANT AHM'S ADDITIONAL CONCLUSIONS OF LAW AND RESPONSE TO PLAINTIFFS'
"STATEMENT OF ADDITIONAL MATERIAL FACTS"

| No. | Plaintiffs' Uncontroverted Fact ("PUF") | Supporting Evidence | Defendants' Response |
|---|---|---|---|
| | 6AT vehicles, including the Class Odysseys. Honda referred to its investigation as an ACM (after GSN] countermeasure] investigation, and Honda noted that those efforts to correct the judder defect were "a continuation of the same problem." | 392 at 403); Osterwise Decl. Ex. 7 (AHM_ODYT_000008 43); Osterwise Decl. Ex. 37 (AHM_ODYT_000064 47); Osterwise Decl. Ex. 6 (Hall Dep. 117:7-16). | evidence, misstates testimony.<br><br>*First*, torque converters have nothing to do with transmissions.  In their complaint, Plaintiffs allege that their vehicles have "defective transmissions."  ECF No. 1 (Compl. ¶¶ 28, 59). The documents Plaintiffs purport to rely on in support of their claims, however, pertain only to torque converters, which are not part of a vehicle's transmission, as Honda Senior Staff engineer Michael Gibson testified:<br><br>**Q. Just to be clear, is the torque converter part of the transmission?**<br>**A. No.**<br>[Gibson Dep. 63:23-25]<br><br>OD Ex. 2 (dated 4/22/16) refers to 2011 and 2012 Honda Odyssey Touring and Touring Elite vehicles with SC55 torque converters.  [OD Ex. 2 at AHM_ODYT_000008525 ECF No. 174-4 at pg. id# 6343 (same) (under seal)]. Plaintiffs admit that their own 2014 Honda Odyssey vehicles do not have SC55 |

| No. | Plaintiffs' Uncontroverted Fact ("PUF") | Supporting Evidence | Defendants' Response |
|-----|------------------------------------------|---------------------|----------------------|
|     |                                          |                     | torque converters.  ECF 174-1 at p. 22 [SUF ¶ 41 (undisputed)].
OD Ex. 2 also contains extensive Japanese language, and Plaintiffs fail to put forward a translation of this content as required by L.R. 11-3.10.
As to OD Ex. 3 (dated 12/8/15), AHM ODYT 000006403 references "customer contentions" that are triple hearsay, are in no sense "admissions," and identifies numerous different symptoms (reported subjectively by customers) the sources of which are unknown.  ECF 174-5 at page id.# 6382 [OD Ex. 3 at AHM_ ODYT 000006403 (under seal)]
Moreover, AHM_ODYT 000006404 shows snapshots of what torque converter judder actually looks like (captured using the same equipment used by Honda expert Jason Arst), further proving that when it exists in a vehicle, it can be identified and captured, contrary to the |

DEFENDANT AHM'S ADDITIONAL CONCLUSIONS OF LAW AND RESPONSE TO PLAINTIFFS'
"STATEMENT OF ADDITIONAL MATERIAL FACTS"

| No. | Plaintiffs' Uncontroverted Fact ("PUF") | Supporting Evidence | Defendants' Response |
|-----|------------------------------------------|---------------------|----------------------|
|     |                                          |                     | assertions of Plaintiffs and their proposed expert. *Id.* at page id.#6383 [OD Ex. 3 at AHM_ODYT 000006404]. Ex. 3 also contains extensive Japanese language, and Plaintiffs fail to put forward a translation of this content as required by L.R. 11-3.10.<br><br>As to OD Ex. 7, Honda witness Robert Hall did not testify regarding that document, but Honda Senior Staff Engineer Michael Gibson testified as follows regarding the document:<br><br>Q. Is there any way from the face of this document that you can tell when this document itself was issued?<br>THE WITNESS: Issued to --<br>Q. When was this document created?<br>A. That would be the theme update [*i.e.*, 11/2/2015].<br>Q. That's when it was originally created, correct?<br>THE WITNESS: Just to be clear, again, the -- there is a database for the quality improvement |

| No. | Plaintiffs' Uncontroverted Fact ("PUF") | Supporting Evidence | Defendants' Response |
|---|---|---|---|
| | | | sheets, **and when we decide to do a new investigation**, we create basically a new record -- a new quality improvement sheet in that database and the theme update is the day that that happens.<br><br>[Gibson Dep. 157:1-19].<br><br>OD Ex. 37 was never shown to a Honda witness and, therefore, it is improper for Plaintiffs' counsel to try to interpret the document. Notably, however, the OD Ex. 37 is dated October 30, 2015, *after* all of Plaintiffs' vehicles were initially sold into the market, but in any event, it does not say that ACM means after GSN. Uncontested evidence demonstrates that GSN was for microslip, and it was fully efficacious, as Honda Senior Staff engineer Michael Gibson, a witness with personal knowledge and who testified on behalf of AHM and HNA, testified:<br><br>**Q. Okay. And when was [GSN] implemented?**<br>**A. Sometime around --** |

| No. | Plaintiffs' Uncontroverted Fact ("PUF") | Supporting Evidence | Defendants' Response |
|-----|------------------------------------------|---------------------|----------------------|
|     |                                          |                     | **sometime in 2012, approximately.** **Q. Okay. And after that countermeasure was implemented, were there still occurrences of GSN micro slip that were identified?** **THE WITNESS: No.** [Gibson Dep. 174:2-9] Ex. 37 also contains extensive Japanese language, and Plaintiffs fail to put forward a translation of this content as required by L.R. 11-3.10. Finally, as to the snippet of OD Ex. 6 Plaintiffs purport to rely on, Mr. Hall was being asked about a *completely different* document [HRA_ODYT 00000402_REV-416_ REV] not cited in this PUF, and he testified he didn't ever recall seeing the document: Q. Was this a document that you were involved in making in any way? A. No. Q. Was this a document that you saw as part of |

| No. | Plaintiffs' Uncontroverted Fact ("PUF") | Supporting Evidence | Defendants' Response |
|-----|------------------------------------------|---------------------|----------------------|
|     |                                          |                     | your work as the investigation team of the ACM 6AT torque converter shudder? A. From time to time, I probably would see parts of -- bits and pieces of this document. Q. But you say you never saw it as a whole entity, even though you remember the investigation team; is that your testimony? … THE WITNESS: I don't remember looking at the whole thing … at one piece.<br><br>[Hall Dep. 113:23-114:12].  Thus, OD Ex. 6 (Hall Dep. 117:7-16) is simply Mr. Hall reading a document he says he never saw before. He doesn't even know what TSB the countermeasure refers to. Hall Dep. 118:2-5 ("Q. Okay. Do you know which TSB that was? A. No, not right off the top of my head.")<br><br>[Hall Dep. 118:2-5].<br><br>PUF 57 is inadmissible and not evidence because it is pure argument, and |

| No. | Plaintiffs' Uncontroverted Fact ("PUF") | Supporting Evidence | Defendants' Response |
|-----|------------------------------------------|---------------------|----------------------|
|  |  |  | the underlying documents and testimony do not support PUF 57 and are contradicted by undisputed evidence and testimony. OD Exs. 2, 3, 7 and 37 were also created after Plaintiffs' vehicles were initially purchased (*i.e.*, 12/2013-9/2014). Compl. ECF No. 1 at ¶¶ 63, 71, 75, 85, 89. |
| 58 | A November 2015 Honda Quality Improvement Sheet (QIS) titled "ACM 6AT Torque Converter Shudder" documents that prior countermeasures did not rectify torque converter judder in the Class Odysseys. | Osterwise Decl. Ex. 7 (AHM_ODYT_00000843). | Objections to OD Ex. 7: inadmissible hearsay, lack of foundation, speculation, lack of relevance, not best evidence.<br><br>In testifying regarding OD Ex. 7, Honda Senior Staff Engineer Michael Gibson testified as follows regarding the document:<br><br>And with respect to this QIS, can you specifically identify the first countermeasure? THE WITNESS: So the countermeasure details are on page three. Q. Okay. And what were they? THE WITNESS: So it says there was a software update to maintain the transmission fluid temperature within the desirable range under all |

| No. | Plaintiffs' Uncontroverted Fact ("PUF") | Supporting Evidence | Defendants' Response |
|-----|------------------------------------------|---------------------|----------------------|
|     |                                          |                     | driving conditions and eliminate potential for judder. The software is designed to limit the lock-up clutch plate temperature to a hundred and forty degrees C or lower. And then there's more information that's related to the service repair which we discussed in the service bulletins. … Q. Is there any way from the face of this document that you can tell when this document itself was issued? THE WITNESS: Issued to -- Q. When was this document created? A. That would be the theme update [*i.e.*, 11/2/2015]. Q. That's when it was originally created, correct? THE WITNESS: Just to be clear, again, the -- there is a database for the quality improvement sheets, and when we decide to do a new investigation, we create basically a new record -- a new quality improvement sheet in that database and the theme update is the day that that |

DEFENDANT AHM'S ADDITIONAL CONCLUSIONS OF LAW AND RESPONSE TO PLAINTIFFS'
"STATEMENT OF ADDITIONAL MATERIAL FACTS"

| No. | Plaintiffs' Uncontroverted Fact ("PUF") | Supporting Evidence | Defendants' Response |
|---|---|---|---|
| | | | happens.<br><br>[Gibson Dep. 157:1-19; 160:2-20].<br><br>PUF 57 is inadmissible and not evidence because it is pure argument, and the underlying documents and testimony make clear that the issues identified in OD Ex. 7 had nothing whatsoever to do with GSN. Moreover, OD Ex. 7 was created after Plaintiffs' vehicles were initially purchased (*i.e.*, 12/2013-9/2014). Compl. ECF No. 1 at ¶¶ 63, 71, 75, 85, 89. |
| 59 | By May 2016, after noting that its ACM investigation was progressing slowly, Honda decided to escalate its investigation of judder in Plaintiffs' and the Class Odysseys to a P1 status. | Osterwise Decl. Ex. 8 (AHM_ODYT_000007 676/7677). | Objections to OD Ex. 8: inadmissible hearsay, lack of foundation, speculation, lack of relevance, not best evidence, misstates testimony.<br><br>The author of the email, Tom Shepard (AHM_ ODYT_00007676, dated 5/9/16) testified as follows about his words and recollection of the P1 status:<br><br>**…We were on a good path, which is probably why my team and myself weren't even thinking** |

DEFENDANT AHM'S ADDITIONAL CONCLUSIONS OF LAW AND RESPONSE TO PLAINTIFFS' "STATEMENT OF ADDITIONAL MATERIAL FACTS"

| No. | Plaintiffs' Uncontroverted Fact ("PUF") | Supporting Evidence | Defendants' Response |
|-----|------------------------------------------|---------------------|----------------------|
| | | | **about a P1 pitch. We were probably making excellent process and there's no reason to pull the train off the rails and send it down another set of rails**. So this is looking good. Howard, however, as he picks this up, he looks at it and goes, "Hey, why didn't you guys pitch this as a P1?" Howard makes his management aware. His management turns around and calls my management, my management being higher level, more removed from the issues goes, "I don't understand why you guys wouldn't have pitched this as a P1," because probably their perception as much as yours setting over there, they're a little detached from what's going on in the working world and they're looking at this and they're going, "Well, if you pitched it as a P1, it would have been faster." The reality for us on the ground is  at that point in timing, it actually slowed us down because I had to pull the resource off, prepare a preparation, got it through this process and then put it back on the |

| No. | Plaintiffs' Uncontroverted Fact ("PUF") | Supporting Evidence | Defendants' Response |
|---|---|---|---|
| | | | rails again. … We probably "should have pitched it as a P1," **but, realistically, it didn't make any difference in our progress on the issue. We were making good progress**.<br><br>[Shepard Dep. 188:5-189:10]<br><br>PUF 58 is inadmissible and not evidence as written because it is pure argument, and testimony of the author of the email makes clear that, in fact, characterizing it a P1 would not have made any difference because they were, in fact, making good progress. Moreover, OD Ex. 8 was created after Plaintiffs' vehicles were initially purchased (*i.e.*, 12/2013-9/2014). Compl. ECF No. 1 at ¶¶ 63, 71, 75, 85, 89. |
| 60 | A "P1" investigation at Honda is the "highest level of involvement in an investigation. So, basically, all resources that can possibly apply to that investigation are applied." | Osterwise Decl. Ex. 6 (Hall Dep. 145:2-10). | Objections:  lack of relevance, lack of foundation, inadmissible hearsay.<br><br>Undisputed that the excerpted quote from the transcript is accurate, but it is wholly irrelevant to Plaintiffs' claims. *See* |

DEFENDANT AHM'S ADDITIONAL CONCLUSIONS OF LAW AND RESPONSE TO PLAINTIFFS'
"STATEMENT OF ADDITIONAL MATERIAL FACTS"

| No. | Plaintiffs' Uncontroverted Fact ("PUF") | Supporting Evidence | Defendants' Response |
|---|---|---|---|
| | | | Defendants' response to PUF 59, incorporated expressly herein by reference. |
| 61 | Tom Shepard of Honda wrote: "…the significant point missed, and confirmed looking at the data attached in the QIC, is that at Nov 2015 we [knew] we had a serious problem on our hands…Had we pitched this for P1 back in November you guys would be looking like rock stars." | Osterwise Decl. Ex. 8 (AHM_ODYT_000007 676/7677). | Objections to OD Ex. 8: inadmissible hearsay, lack of foundation, speculation, lack of relevance, not best evidence.<br><br>The author of the email, Tom Shepard (AHM_ ODYT_00007676, dated 5/9/16) testified as follows about this very email and the P1 status:<br><br>…**We were on a good path, which is probably why my team and myself weren't even thinking about a P1 pitch. We were probably making excellent process and there's no reason to pull the train off the rails and send it down another set of rails**. So this is looking good. Howard, however, as he picks this up, he looks at it and goes, "Hey, why didn't you guys pitch this as a P1?" Howard makes his management aware. His management turns around and calls my management, my management being higher level, more removed from |

| No. | Plaintiffs' Uncontroverted Fact ("PUF") | Supporting Evidence | Defendants' Response |
|-----|------------------------------------------|---------------------|----------------------|
|     |                                          |                     | the issues goes, "I don't understand why you guys wouldn't have pitched this as a P1," because probably their perception as much as yours setting over there, they're a little detached from what's going on in the working world and they're looking at this and they're going, "Well, if you pitched it as a P1, it would have been faster." The reality for us on the ground is at that point in timing, it actually slowed us down because I had to pull the resource off, prepare a preparation, got it through this process and then put it back on the rails again. … We probably "should have pitched it as a P1," **but, realistically, it didn't make any difference in our progress on the issue. We were making good progress.** [Shepard Dep. 188:5-189:10] PUF 61 is inadmissible and not evidence as written because it is pure argument, and testimony of the author of the email makes clear that, in fact, |

| No. | Plaintiffs' Uncontroverted Fact ("PUF") | Supporting Evidence | Defendants' Response |
|---|---|---|---|
| | | | characterizing it a P1 would not have made any difference because they were, in fact, making good progress. Moreover, OD Ex. 8 was created after Plaintiffs' vehicles were initially purchased (*i.e.*, 12/2013-9/2014). Compl. ECF No. 1 at ¶¶ 63, 71, 75, 85, 89. |
| 62 | Honda eventually determined that the ECU controller in the Class Odysseys allowed the ATF temperature to be over 60 degC hotter than the 140 degC that Honda believed to be an acceptable temperature to prevent ATF degradation. | Kiser Decl. Ex. 2 (Parker Report at p. 28); Osterwise Decl. Ex. 7 (AHM_ODYT_000000 843). | Objections to OD Ex. 7 and PUF 62: inadmissible hearsay, lack of foundation, speculation. In testifying regarding OD Ex. 7, Honda Senior Staff Engineer Michael Gibson testified as follows regarding the document:<br><br>And with respect to this QIS, can you specifically identify the first countermeasure? THE WITNESS: So the countermeasure details are on page three. Q. Okay. And what were they? THE WITNESS: So it says there was a software update to maintain the transmission fluid temperature within the desirable range under all driving conditions and eliminate potential for judder. The software is |

DEFENDANT AHM'S ADDITIONAL CONCLUSIONS OF LAW AND RESPONSE TO PLAINTIFFS'
"STATEMENT OF ADDITIONAL MATERIAL FACTS"

| No. | Plaintiffs' Uncontroverted Fact ("PUF") | Supporting Evidence | Defendants' Response |
|-----|------------------------------------------|---------------------|----------------------|
|     |                                          |                     | designed to limit the lock-up clutch plate temperature to a hundred and forty degrees C or lower. And then there's more information that's related to the service repair which we discussed in the service bulletins. … Q. Is there any way from the face of this document that you can tell when this document itself was issued? THE WITNESS: Issued to -- Q. When was this document created? A. That would be the theme update [*i.e.*, 11/2/2015]. Q. That's when it was originally created, correct? THE WITNESS: Just to be clear, again, the -- there is a database for the quality improvement sheets, and when we decide to do a new investigation, we create basically a new record -- a new quality improvement sheet in that database and the theme update is the day that that happens.\n\n[Gibson Dep. |

| No. | Plaintiffs' Uncontroverted Fact ("PUF") | Supporting Evidence | Defendants' Response |
|---|---|---|---|
| | | | 157:1-19; 160:2-20].

Objections to Parker Report:  Parker's report and testimony is properly excluded because he offers no valid expert opinions for reasons stated in Defendants' briefing in support of their motion to strike Dr. Parker's testimony (ECF Nos. 151, 159), and he is not a percipient witness, lacking foundation and personal knowledge to testify as to meaning of Honda's documents and business operations. *See also* Fed. R. Evid. §§ 702, 703.

PUF 62 is inadmissible and not evidence as written because it is pure argument, and testimony about OD Ex. 7 and the document itself does not indicate what PUF 62 says (rather, it attributes high heat to "a combination of driving mode"). ECF 174-9 page id.# 6439 [OD Ex. 7 at AHM_ ODYT_ 00000844].  Moreover, OD Ex. 7 was created after Plaintiffs' vehicles were initially purchased (*i.e.*, 12/2013-9/2014). ECF No. 1 at ¶¶ 63, 71, |

DEFENDANT AHM'S ADDITIONAL CONCLUSIONS OF LAW AND RESPONSE TO PLAINTIFFS'
"STATEMENT OF ADDITIONAL MATERIAL FACTS"

| No. | Plaintiffs' Uncontroverted Fact ("PUF") | Supporting Evidence | Defendants' Response |
|---|---|---|---|
| | | | 75, 85, 89. |
| 63 | Honda issued TSB 16-060 which told dealers to flush the automatic transmission fluid (ATF) as a "temporary fix" for the judder while Honda developed an ECU software update as a countermeasure. | Kiser Decl. Ex. 40 (AHM_ODYT_000000857). | Objections to PUF 63: hearsay, lack of foundation, argumentative, not best evidence.

The software and program control modules (PCMs) [referenced in PUF as ECUs – they are the same thing] in 2011, 2012, 2013, 2014, 2015 and 2016 Honda Odyssey vehicles vary from model year to model year as well as from engine to engine, and components are provided by multiple suppliers, a fact which is not disputed. ECF No. 174-1 at p. 17 [SUF ¶ 27 (undisputed)].

As Plaintiffs well know, "Honda" did not develop any software for the PCMs.  The different PCM suppliers developed the software (Keihin and Continental), and Honda had to wait for the suppliers to develop the software. ECF No. 174-1 at p. 17 [SUF ¶ 27 (undisputed); ECF 153-6, pg. id # 3858 (AHM_ODYT_000000857) |

DEFENDANT AHM'S ADDITIONAL CONCLUSIONS OF LAW AND RESPONSE TO PLAINTIFFS'
"STATEMENT OF ADDITIONAL MATERIAL FACTS"

| No. | Plaintiffs' Uncontroverted Fact ("PUF") | Supporting Evidence | Defendants' Response |
|-----|------------------------------------------|---------------------|----------------------|
|     |                                          |                     | PUF 63 is inadmissible and not evidence because it is simply argument and contradicted by known facts, and Kiser Decl. Ex. 40 (AHM_ODYT_ 000000857) is the best evidence of what that document says. |
| 64  | TSB 16-060 specifically stated that the dealers should "[M]ake sure the customer is aware that this is a temporary fix and he or she will have to return once the software is available to make sure the transmission judder is resolved." | Kiser Decl. Ex. 40 (AHM_ODYT_000000 857). | Objections to PUF 64: hearsay, lack of foundation, argumentative, not best evidence.

The software and program control modules (PCMs) [referenced in PUF as ECUs – they are the same thing] in 2011, 2012, 2013, 2014, 2015 and 2016 Honda Odyssey vehicles vary from model year to model year as well as from engine to engine, and components are provided by multiple suppliers, a fact which is not disputed.  ECF No. 174-1 at p. 17 [SUF ¶ 27 (undisputed)].

As Plaintiffs well know, "Honda" did not develop any software for the PCMs.  The different PCM suppliers developed the software (Keihin and |

| No. | Plaintiffs' Uncontroverted Fact ("PUF") | Supporting Evidence | Defendants' Response |
|-----|------------------------------------------|---------------------|----------------------|
|     |                                          |                     | Continental), and Honda had to wait for the suppliers to develop the software.  ECF No. 174-1 at p. 17 [SUF ¶ 27 (undisputed); Hall 232:11-233:13.

PUF 64 is inadmissible and not evidence because it is simply argument and contradicted by known facts, and Kiser Decl. Ex. 40 (AHM_ODYT_ 000000857) is the best evidence of what that document says. |
| 65  | TSB 16-060 applied to all Class Odysseys. | Kiser Decl. Ex. 40 (AHM ODYT 000000857). | Objections to PUF 65: inadmissible hearsay, lack of foundation, argumentative, not best evidence.

The software and program control modules (PCMs) [referenced in PUF as ECUs – they are the same thing] in 2011, 2012, 2013, 2014, 2015 and 2016 Honda Odyssey vehicles vary from model year to model year as well as from engine to engine, and components are provided by multiple suppliers, a fact which is not disputed. ECF No. 174-1 at p. 17 [SUF ¶ 27 (undisputed)]. |

DEFENDANT AHM'S ADDITIONAL CONCLUSIONS OF LAW AND RESPONSE TO PLAINTIFFS'
"STATEMENT OF ADDITIONAL MATERIAL FACTS"

| No. | Plaintiffs' Uncontroverted Fact ("PUF") | Supporting Evidence | Defendants' Response |
|---|---|---|---|
| | | | As Plaintiffs well know, "Honda" did not develop any software for the PCMs. The different PCM suppliers developed the software (Keihin and Continental), and Honda had to wait for the suppliers to develop the software.  ECF No. 174-1 at p. 17 [SUF ¶ 27 (undisputed); Hall 232:11-233:13 |
| | | | PUF 65 is inadmissible and not evidence because it is simply argument and contradicted by record evidence and facts, and Kiser Decl. Ex. 40 (AHM_ODYT_ 000000857) is the best evidence of what that document says. |
| 66 | Confusion about warranty coverage may also have led to under-recording of the number of consumers that actually experience symptoms of torque converter judder. | Osterwise Decl. Ex. 9 (AHM_ODYT_000010 785); Osterwise Decl. Ex. 10 (Heitkamp Dep. 109:3-112:8). | Objections to OD Ex. 9: Irrelevant, lack of foundation, and speculative. |
| | | | Mr. Heitkamp actually had no recollection of that email and here is the relevant colloquy: |
| | | | BY [Plaintiffs' counsel]: Q. Were you concerned at the time you wrote this email that warranty claims |

| No. | Plaintiffs' Uncontroverted Fact ("PUF") | Supporting Evidence | Defendants' Response |
|---|---|---|---|
| | | | would be underestimated because customers perceived the warranty to be 36,000 miles when it was actually 60,000 miles? … BY Mr. Heitkamp: At the time of this email, I cannot recall my concerns.  [Heitkamp Dep. 112:20-113:3]. |
| 67 | Honda required that a technician identify torque converter judder on an automatic transmission snapshot taken from a Class Odysseys before the vehicle is eligible for countermeasures in TSB 16-060, 17-043, 17-044, 17-052 or 18-017 under warranty. | Kiser Decl. Ex. 40 (AHM_ODYT_000000 857); Kiser Decl. Ex. 41 (AHM_ODYT_000000 045). Kiser Decl. Ex. 43 (AHM_ODYT_000000 052); Osterwise Decl. Ex. 11 (AHM_ODYT_000008 64), Osterwise Decl. Ex. 12 (AHM_ODYT_000000 931). | Objections to PUF 67: lacks foundation; speculation; irrelevant.  Only in February 2018 did the relevant TSBs start to require snapshots of the automatic transmission be taken in order to confirm the vibration experienced by the customer is in fact originating in the torque converter and is not caused by the myriad other reasons that could result in vehicle vibration (*e.g.*, brakes, tires, etc.). The reason for the requirement is that if the snapshot shows the issue is not Atypical Vibration, then applying an ATF flush and software update intended to adjust the operation of the torque |

| No. | Plaintiffs' Uncontroverted Fact ("PUF") | Supporting Evidence | Defendants' Response |
|---|---|---|---|
| | | | converter will not address the customer's actual concern. Honda wants dealers to make the right repairs so that customer's concerns are actually addressed.  Supporting Evidence: (Hall Dep. 186:1-187:6; 254:1-17; Gibson Dep. 194:8-22). Dealers can still apply the TSB repair without a snapshot, the requirement to send the snapshot into to AHM is only to encourage dealers to perform the correct repairs (because their warranty claim could be debited back if the ATF flush was done when Atypical Vibration is not the reason for the judder.  (Hall Dep. 186:1-187:6; 254:1-17). |
| 68 | Honda has received communications from customers indicating that they have been refused countermeasures because service technicians could not replicate the torque converter judder. | Osterwise Decl. Ex. 13 (CRRS reports, Part 1), Kiser Decl. Ex. 2 (Parker Rebuttal at p. 3-4). | Objections to OD Ex. 13: lack of relevance, triple hearsay, lack of foundation, speculative.  Objections to Parker Rebuttal:  Parker's reports and testimony are properly excluded because he offers no valid expert opinions for reasons stated in Defendants' briefing in support of their motion to strike (ECF Nos. 151,159), and he is not a |

DEFENDANT AHM'S ADDITIONAL CONCLUSIONS OF LAW AND RESPONSE TO PLAINTIFFS'
"STATEMENT OF ADDITIONAL MATERIAL FACTS"

| No. | Plaintiffs' Uncontroverted Fact ("PUF") | Supporting Evidence | Defendants' Response |
|---|---|---|---|
| | | | percipient witness, lacking foundation and personal knowledge to testify as to meaning of Honda's documents and business operations. *See also* Fed. R. Evid. §§ 702, 703. |
| | | | PUF 68 is inadmissible and not evidence because it is triple hearsay – cherry-picked records created by customer service call center representatives writing down summaries of what lay customers say about their vehicles being further characterized by Plaintiffs' counsel.  No foundation has been laid for these documents, and it is not even clear whether any of these individuals have "defective transmissions" as Plaintiffs allege in their pleading, or any other problem or issue with their vehicles. |
| 69 | Honda has received communications from customers indicating that they are fearful of driving their Class Odysseys due to torque converter judder. | Osterwise Decl. Ex. 14 (CRRS reports, Part 2). | Objections to OD Ex. 14: lack of relevance, triple hearsay, lack of foundation, speculative. PUF 69 is inadmissible and not evidence because it is triple hearsay – five cherry-picked records |

DEFENDANT AHM'S ADDITIONAL CONCLUSIONS OF LAW AND RESPONSE TO PLAINTIFFS' "STATEMENT OF ADDITIONAL MATERIAL FACTS"

| No. | Plaintiffs' Uncontroverted Fact ("PUF") | Supporting Evidence | Defendants' Response |
|---|---|---|---|
| | | | created by customer service call center representatives writing down summaries of what lay customers say about their vehicles being further characterized by Plaintiffs' counsel.  No foundation has been laid for these documents, and it is not even clear whether any of these individuals have "defective transmissions" as Plaintiffs allege in their pleading, or any other problem or issue with their vehicles. |
| 70 | Plaintiffs each purchased a model year 2014 Class Odyssey and each experienced torque converter judder within their first year owning the vehicle. | Osterwise Decl. Ex. 22 (Seow Dep. 73:1-6); Osterwise Decl. Ex. 24 ((LENTZ000006); Osterwise Decl. Ex. 16 (B. Lentz Dep. 104:23-105:15); Osterwise Decl. Ex. 27 (MACDOUGALL000008); Osterwise Decl. Ex. 26 (Parker000010); Osterwise Decl. Ex. 23 (KAVURI000002); Osterwise Decl. Ex. 15 Kavuri Dep. 139:11-140:3). | Objections to PUF 70: lack of foundation, speculative.  Plaintiffs do not have any training or expertise to conclude the sensations they report are the result of Atypical Vibration or are emanating from the torque converter as they alleged in their Complaint. They admit their own proposed expert does not opine that their vehicles manifest Atypical Vibration.  J. Parker Dep. 113:4-13; *id*. 243:3-244:8; A. Parker Dep. 63:3-20; L. MacDougall Dep. 53:22- |

| No. | Plaintiffs' Uncontroverted Fact ("PUF") | Supporting Evidence | Defendants' Response |
|---|---|---|---|
| | | | 54:13; D. MacDougall Dep. 199:13-200:20. |
| 71 | Honda technicians have replicated torque converter judder in Plaintiffs' vehicles or have confirmed its symptoms in Plaintiffs' Odysseys. | Osterwise Decl. Ex. 26 (Parker000010); Osterwise Decl. Ex. 16 (B. Lentz Dep. 127:16-128:10); Osterwise Decl. Ex. 18 (D. MacDougall Dep., Vol. 1, 86:9- 87:10); Osterwise Decl. Ex. 25 (SEOW 000006); Osterwise Decl. Ex. 27 (MacDougall000017). | Objections to PUF 71: lack of relevance, triple hearsay, lack of foundation, speculative.

Plaintiffs' proffered evidence does not support the fact that Honda confirmed Atypical Vibration in Plaintiffs' vehicles.  In fact, AHM's expert Jason Arst did not find any such vibration. |
| 72 | Plaintiffs' experience with the defect demonstrates that its manifestation scared them and created an unsafe and distracted driving condition. | Osterwise Decl. Ex. 15 (Kavuri Dep. 215:14-20; Osterwise Decl. Ex. 21 (A. Parker Dep. (99:21-100:19); Osterwise Decl. Ex. 20 (J. Parker Dep. 131:11-25); Osterwise Decl. Ex. 16 (B. Lentz Dep. 191:18-25); Osterwise Decl. Ex. 22 (Seow Dep. 79:2-15); Osterwise Decl. Ex. 19 (L. MacDougall Dep. 34:10-20). | Objection:  Not relevant, likely to confuse a jury. Plaintiffs do not have any training or expertise to conclude the sensations they report are the result of Atypical Vibration or are emanating from the torque converter as they alleged in their Complaint. They admit their own proposed expert does not opine that their vehicles manifest Atypical Vibration.

L. MacDougall Dep. 63:24- 64:10, Kiser Decl. Ex. 1, ECF 153-1 pg. id # 3392-3393; *see also* Defs' Response to SUF 70. |

| No. | Plaintiffs' Uncontroverted Fact ("PUF") | Supporting Evidence | Defendants' Response |
|---|---|---|---|
| 73 | In contrast to defendants' argument in its memorandum in support of its motion for summary judgment, Dennis MacDougall did not testify that the torque converter judder in his vehicle may cause it to stop functioning in the middle of traffic. | Osterwise Decl. Ex. 18 (D. MacDougall Dep., Vol. 1, 194:19- 195:9). | Objections to PUF 73: lack of relevance, lack of foundation, argumentative.

Here is what Mr. MacDougall said, specifically:

Q.   That's true, but you let your wife and daughter ride in the car for years and years; right?
    A.   That's true.  They have --
    Q.   Do you love them?
    …
    A.   Well, I don't dislike them.  It has safety air bags.  The worst that would happen with this vehicle is it would just stop functioning, and they would roll off the road to, you know, a breakdown lane or something.

ECF 174-20, pg. id # 6616 Osterwise Decl. Ex. 18 D. MacDougall Dep. 194:19-195:5. |
| 74 | Plaintiffs presented their vehicles to authorized Honda service departments to repair of | Osterwise Decl. Ex. 23 (Kavuri000002, Kavuri000008) Osterwise Decl. Ex. 24 | Objections to PUF 74: misstates evidence; lacks foundation; in admissible triple hearsay; irrelevant. |

DEFENDANT AHM'S ADDITIONAL CONCLUSIONS OF LAW AND RESPONSE TO PLAINTIFFS'
"STATEMENT OF ADDITIONAL MATERIAL FACTS"

| No. | Plaintiffs' Uncontroverted Fact ("PUF") | Supporting Evidence | Defendants' Response |
|-----|------------------------------------------|---------------------|----------------------|
|  | the torque converter judder in their Odysseys. Such visits did not finally fix the judder problem. | (Lentz000006, Lentz0000032); Osterwise Decl. Ex. 27 (MacDougall000008, MacDougall000011, MacDougall000017); Osterwise Decl. Ex. 26 (Parker00001-12; 17), Osterwise Decl. Ex. 25 (Seow000005-07, Seow000044). | Plaintiffs' cited evidence does not support their proffered fact, and they mischaracterize the information contained in their service records, which do not show repairs for Atypical Vibration, and certainly provide no evidence that any repairs performed by dealers did not "fix" the issue, because the records are completely unclear as to what the "issue" even is.

Plaintiffs have freely admitted they do not have technical knowledge of vehicles and therefore are speculating and have no basis to say they presented their vehicles for repair of Atypical Vibration.  They are simply speculating.

J. Parker Dep. 113:4-13; *id*. 243:3-244:8; A. Parker Dep. 63:3-20; L. MacDougall Dep. 53:22-54:13; D. MacDougall Dep. 199:13-200:20.

All of the records put forward are triple layer hearsay, containing comments attributed by Plaintiffs to dealer technicians, reported and |

| No. | Plaintiffs' Uncontroverted Fact ("PUF") | Supporting Evidence | Defendants' Response |
|-----|------------------------------------------|---------------------|----------------------|
|  |  |  | written down by yet other unknown persons. This is not evidence.  The records identify numerous different symptoms (reported subjectively by Plaintiffs) that may or may not be emanating from their vehicles' torque converters. Moreover, the service repair records reveal that dealer technicians could not duplicate Mr. MacDougall's concern. The records also reflect the variety of different experiences of Plaintiffs with their vehicles and their perceptions of vibrations they believe they are feeling in their vehicle. |
| 75 | Plaintiffs submitted complaints directly to Honda and online concerning torque converter judder in their vehicles. | Ex. 28 (AHM_ODYT_000000 745 at 51-52); Osterwise Decl. Ex. 29 (AHM_ODYT_000000 773 at 80-81); Osterwise Decl. Ex. 30 (AHM_ODYT_000000 677 at 83-84); Osterwise Decl. Ex. 31 (MacDougall000048 and Parker000057 (reflecting MacDougall and Parker posts to carcomplaints.com)). | Objections to PUF 75: lack of foundation; speculative; irrelevant.  Not disputed that Plaintiffs MacDougall, Lentz, and Parker appear to have communicated with AHM's customer service department, as reflected in the cited documents.  There is no other record evidence of contact from Plaintiffs to AHM, and Plaintiffs' posts to third-party |

DEFENDANT AHM'S ADDITIONAL CONCLUSIONS OF LAW AND RESPONSE TO PLAINTIFFS' "STATEMENT OF ADDITIONAL MATERIAL FACTS"

| No. | Plaintiffs' Uncontroverted Fact ("PUF") | Supporting Evidence | Defendants' Response |
|-----|------------------------------------------|---------------------|----------------------|
| | | | carcomplaints.com are irrelevant to the question of whether their vehicles actually manifest Atypical Vibration (they do not). |
| 76. | Each Plaintiffs' authorized Honda service center flushed the ATF in their Odysseys. | Osterwise Decl. Ex. 23 (Kavuri000008); Osterwise Decl. Ex. 24 (Lentz0000032); Osterwise Decl. Ex. 27 (MacDougall000017); Osterwise Decl. Ex. 26 (Parker000010); Osterwise Decl. Ex. 25 (Seow000044). | Objections to PUF 76: Misstates testimony and contrary to evidence. The proffered evidence does not support that every Plaintiff had an ATF fluid flush, except Mr. Parker, who had a free ATF flush pursuant to TSB 16-060 in September 2016, nearly one year (and 20,000 miles) *before* Mr. Arst inspected his vehicle. |
| 77. | The condition of each Plaintiffs' Odyssey improved for a time following receipt of Honda's countermeasures for torque converter judder, although none have been completely cured of torque converter judder. | Osterwise Decl. Ex. 21 (A. Parker Dep. 79:17 – 80:6); Osterwise Decl. Ex. 20 (J. Parker Dep. 156:14-23, 202:12-22); Osterwise Decl. Ex. 16 (B. Lentz Dep., 187:19-190:20); (Osterwise Decl. Ex. 22 (Seow Dep. 183:8-19); Osterwise Decl. Ex. 15__ (Kavuri Dep. 185:2-187:6); Osterwise Decl. Ex. 19 (L. MacDougall Dep., 57:10-58:16); Osterwise Decl. Ex. 17 (N. Lentz Dep. 126:9-128:16). | Objections to PUF 77: lacks foundation; speculative; contrary to evidence. Plaintiffs' lay, subjective feeling and sensation are not evidence of Atypical Vibration which can only be captured by snapshot equipment. Plaintiffs freely admit they do not have technical expertise to diagnose any issues with their vehicles, and their own expert does not opine their vehicles manifest Atypical Vibration. Neither does Mr. Arst, AHM's expert. |

DEFENDANT AHM'S ADDITIONAL CONCLUSIONS OF LAW AND RESPONSE TO PLAINTIFFS' "STATEMENT OF ADDITIONAL MATERIAL FACTS"

| No. | Plaintiffs' Uncontroverted Fact ("PUF") | Supporting Evidence | Defendants' Response |
|---|---|---|---|
| | | | J. Parker Dep. 113:4-13; *id.* 243:3-244:8; A. Parker Dep. 63:3-20; L. MacDougall Dep. 53:22-54:13; 53:22-54:13; D. MacDougall Dep. 199:13-200:20. |
| 78 | Torque converter judder in the Class Odysseys is intermittent in nature. | Osterwise Decl. Ex. 34 (Gibson Dep. 100:18-100:24); Kiser Decl. Ex. 2 (Parker Rep. at p. 22-23, 29, 33-36; Parker Rebuttal at p. 2-6); Osterwise Decl. Ex. 13 (including at AHM_ODYT_0000017 29). | Objections to SUF 78 and OD Ex. 13:  misleading; lack of foundation; misstates testimony; irrelevant, triple hearsay, speculative.<br><br>Plaintiffs' citation to Gibson is misleading because Mr. Gibson is referring to pre-GSN microslip when he says intermittent.  Dr. Parker relies on the same out-of-context statement, making the cited support irrelevant to support the proposed fact.<br><br>As to AHM_ODYT_ 000001729, the cited record is not evidence because it is triple hearsay, records created by customer service call center representatives writing down summaries of what lay customers say about their vehicles being further characterized by Plaintiffs' counsel.  No |

DEFENDANT AHM'S ADDITIONAL CONCLUSIONS OF LAW AND RESPONSE TO PLAINTIFFS'
"STATEMENT OF ADDITIONAL MATERIAL FACTS"

| No. | Plaintiffs' Uncontroverted Fact ("PUF") | Supporting Evidence | Defendants' Response |
|---|---|---|---|
|  |  |  | foundation has been laid for these documents, and they cannot be offered as evidence that any of these individuals have "defective transmissions" as Plaintiffs allege in their pleading, or any other problem or issue with their vehicles. |
| 79 | Torque converter judder manifested intermittently in Plaintiffs' Odysseys. | Osterwise Decl. Ex. 24 (B. Lentz Dep., 142:17-143:17); Osterwise Decl. Ex. 15 (Kavuri Dep., 236:1-237:4); Osterwise Decl. Ex. 22 (Seow Dep. 75:1-11 ); Osterwise Decl. Ex. 18 (D. MacDougall, 145:1-147:19); Osterwise Decl. Ex. 20 (J. Parker Dep. 157:14-25); Osterwise Decl. Ex. 17 (N. Lentz Dep. 123:19-25); Kiser Decl. Ex. 2 (Parker Rebuttal at p. 4-6). | Objection to PUF 79: Misstates testimony; lack of foundation; speculation. Plaintiffs' cited evidence does not say that the Atypical Vibration ever manifested in Plaintiffs' vehicles. Dr. Parker never found any. Plaintiffs' lay, subjective testimony pointing to their own sensations is not evidence of a defect nor that Atypical Vibration is what they actually felt. Plaintiffs freely admit they do not have technical expertise or know what torque converter vibration is. J. Parker Dep. 113:4-13; id. 243:3-244:8; A. Parker Dep. 63:3-20; L. MacDougall Dep. 53:22-54:13; 53:22-54:13; D. MacDougall Dep. 199:13-200:20. |

DEFENDANT AHM'S ADDITIONAL CONCLUSIONS OF LAW AND RESPONSE TO PLAINTIFFS' "STATEMENT OF ADDITIONAL MATERIAL FACTS"

| No. | Plaintiffs' Uncontroverted Fact ("PUF") | Supporting Evidence | Defendants' Response |
|-----|------------------------------------------|---------------------|----------------------|
|     |                                          |                     | Mr. Arst states in his report he never found any Atypical Vibration, and he used an extensive protocol, technical equipment, and his 27 years of experience, under conditions that should have produced the vibration if it was real. |
| 80  | Honda's expert, Jason Arst, testified that he has never felt torque converter judder in any Honda Odyssey. | Osterwise Decl. Ex. 32 (Arst Dep. 49:7-13, 65:8-19). | Objection to PUF 80: Misstates testimony, lacks foundation, contrary to evidence.

Plaintiffs' mischaracterize Mr. Arst's testimony about his experience.  Mr. Arst actually says:

Q. So you don't know how the judder referred to in this case feels when it happens?
A. I do from other vehicles. So it's --judder is not a specific issue with Odysseys, *per se*. Judder can occur in any vehicle, because in general they use a very conceptual way of doing things. All these torque converters are different, all these lock-up clutches are different, but that doesn't mean you may not have a problem in one vehicle versus the other. |

| No. | Plaintiffs' Uncontroverted Fact ("PUF") | Supporting Evidence | Defendants' Response |
|---|---|---|---|
| | | | So I have felt it in other vehicles.  Arst Dep. 65:22-66:6.<br><br>Plaintiffs' statement is also incomplete, irrelevant and misleading, because Mr. Arst also details in his report his 27 years of experience inspecting vehicles, and his extensive data (including VBOX data that was recording the duration of the test drives) that Mr. Arst then reviewed afterwards in forming his opinions that there was no torque converter judder present in the vehicles. |
| 81 | Mr. Arst testified that in order to capture a snapshot when test driving Plaintiffs' Odysseys, he or his colleague would need to "trigger" the device, which they would do when they felt an aberration in the vehicle. | Osterwise Decl. Ex. 32 (Arst Dep. 62:16-64:20). | Objection to PUF 81: Misstates testimony, lacks foundation, contrary to evidence.<br><br>Mr. Arst testified that his protocol was designed to capture judder if it exists, and that his testing equipment (some which was recording for the entire drives of three of the Plaintiffs' testing), would capture the Atypical Vibration had it existed in Plaintiffs' vehicles. Arst Dep. 62:13-65:7. |

DEFENDANT AHM'S ADDITIONAL CONCLUSIONS OF LAW AND RESPONSE TO PLAINTIFFS'
"STATEMENT OF ADDITIONAL MATERIAL FACTS"

| No. | Plaintiffs' Uncontroverted Fact ("PUF") | Supporting Evidence | Defendants' Response |
|-----|------------------------------------------|---------------------|----------------------|
| 82 | Mr. Arst admitted that when torque converter judder manifests, it is momentary, lasting from a fraction of a second to a few seconds. | Osterwise Decl. Ex. 32 (Arst Dep.62:16-64:20). | Not disputed that Atypical Vibration can last as little as a fraction of a second. By way of further response, Mr. Arst also testified at length about his extensive testing protocol and his technical equipment (Dr. Parker had none), which are designed to capture Atypical Vibration in snapshots, and also ran in the background recording data for the entire drives for three of the Plaintiffs. Arst Dep. 62:13-65:7. |
| 83 | Mr. Arst collected an average of 11.4 minutes of pre-counter measure snapshot data from each Plaintiffs' Odyssey. | Kiser Decl. Ex. 2 (Parker Rebuttal at p. 6-8). | Objections to PUF 82: misstates testimony; misleading; lacks foundation; speculation; irrelevant.<br><br>Parker's report and testimony is properly excluded because he offers no valid expert opinions for reasons stated in Defendants' briefing in support of their motion to strike (ECF Nos. 151, 159), and he is not a percipient witness, lacking foundation and personal knowledge to testify as to meaning of Honda's documents and business operations. *See also* Fed. R. Evid. §§ 702, 703. |

| No. | Plaintiffs' Uncontroverted Fact ("PUF") | Supporting Evidence | Defendants' Response |
|---|---|---|---|
| | | | Plaintiffs have no foundation for their "average" time of the snapshots, as Mr. Parker never collected any such data. Mr. Arst also explained the snapshots he took during his inspections are designed to capture data between 15 and 30 seconds before and after the trigger. So, Plaintiffs' statement about the cumulative time of these snapshots is misleading and has no relevance to totality of Mr. Arst's testing of the vehicles. As Mr. Arst sets out in his report, total number of miles and time he and Dr. Parker test drove the vehicles was significant (as much as 40 miles in the case of Parker), lasting hours. Plaintiffs' proffered fact is therefore misleading, prejudicial, and would likely confuse a jury. *See* Arst Rep't at 11-26, ECF 153-2, pg. id# 3458. |
| 84 | Mr. Arst admits that he does not know whether the Plaintiffs' Odysseys exhibited torque converter judder prior to his tests, or if they have | Osterwise Decl. Ex. 32 (Arst Dep. 80:16-81:22). | Objections to SUF 84: Misstates testimony; speculation.

Plaintiffs frankly mischaracterize Mr. Arst's |

| No. | Plaintiffs' Uncontroverted Fact ("PUF") | Supporting Evidence | Defendants' Response |
|---|---|---|---|
| | done so since his tests. | | testimony.  Mr. Arst never makes such a statement. He actually said that he had not been given any information to render an opinion about what Plaintiffs' in fact subjectively experienced in their vehicles. Mr. Arst confirms in his report, however, that he was aware of Plaintiffs' allegations and the conditions they claim caused vibration and used those to design his test protocol, and that his testing would have detected Atypical Vibration had it existed in the vehicles. Arst Rep't at 1. It is also undisputed that   Plaintiffs have not brought their vehicles in for service since they received the countermeasure.  SUF ¶ 35. |
| 85 | Mr. Arst admits that an AFT flush prior to his test driving a vehicle could impact the reliability of his tests, making it less likely that torque converter judder would manifest during the test. | Osterwise Decl. Ex. 32 (Arst Dep. 83:19-84:7) | Objections to SUF 85: Misstates testimony; lacks foundation; speculation.  Plaintiffs mischaracterize Mr. Arst's testimony.  Mr. Arst did not say an ATF flush would make his testing any less reliable. Mr. Arst explained that his testing protocol and |

| No. | Plaintiffs' Uncontroverted Fact ("PUF") | Supporting Evidence | Defendants' Response |
|---|---|---|---|
|  |  |  | equipment are very reliable using scientifically accepted methodologies. Mr. Arst also explained he neither perceived judder before nor after the ATF was flushed during his inspection of all of the Plaintiffs' vehicles, and that the vehicles were operating normally.  Arst Rep't at 1, ECF 153-2, pg. id# 3458. |
| 86 | Mr. Arst concedes capturing torque converter judder on a snapshot requires hyperfocus on the vehicle and an intention to manifest torque converter judder. | Osterwise Decl. Ex. 32 (Arst Dep. 122:20-123:13). | Objections to SUF 86: Misstates testimony; lacks foundation. Plaintiffs mischaracterize Mr. Arst's testimony. In describing his testing protocol (in the context of his years of experience), Mr. Arst says he was "hyperfocused" on replicating Plaintiffs' alleged vibration.  Mr. Arst also goes on to say that trained dealer technicians will be able to capture judder, and that Honda issued a "job aid" to assist them. Arst Dep. 178:21-180:1. |
| 87 | Mr. Arst cannot reliably capture evidence of torque converter judder on automatic | Osterwise Decl. Ex. 32 (Arst Dep. 185:4-22; 62:13-63:9) | Objections to SUF 87: Misstates testimony; lacks foundation; contrary to evidence; speculation. |

DEFENDANT AHM'S ADDITIONAL CONCLUSIONS OF LAW AND RESPONSE TO PLAINTIFFS'
"STATEMENT OF ADDITIONAL MATERIAL FACTS"

| No. | Plaintiffs' Uncontroverted Fact ("PUF") | Supporting Evidence | Defendants' Response |
|---|---|---|---|
| | transmission snapshots. | | Plaintiffs frankly mischaracterize what Mr. Arst says.  Mr. Arst testified that he *can* capture evidence of a judder with his equipment if it actually exists, which Mr. Arst found not to be the case in Plaintiffs' vehicles.  Arst Dep. 62:13-63:25. |

DATED: July 22, 2019

By:  */s/ Livia. M. Kiser*
Attorneys for Defendants
AMERICAN HONDA MOTOR CO.,
INC. and HONDA NORTH AMERICA,
INC.

DEFENDANT AHM'S ADDITIONAL CONCLUSIONS OF LAW AND RESPONSE TO PLAINTIFFS'
"STATEMENT OF ADDITIONAL MATERIAL FACTS"