UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **SACV 17-1079 JGB (DFMx)** | Date | March 7, 2023 |
|---|---|---|---|
| Title | ***Dennis MacDougall, et al. v. American Honda Motor Co., Inc.*** | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

Proceedings:    **Order (1) DENYING Defendants' Motion to Strike the Expert
Testimony of Stefan Boedeker (Dkt. No. 166); (2) DENYING
Defendants' Motion to Strike the Expert Testimony of Robert Parker
(Dkt. No. 151); (3) GRANTING-IN-PART and DENYING-IN-PART
Defendants' Motion for Summary Judgment (Dkt. No. 155-1)[1];
(4) DISMISSING Defendant Honda North America, Inc.;
(5) ORDERING Supplemental Briefing Regarding Class Certification;
and (6) VACATING the March 13, 2023 Hearing (IN CHAMBERS)**

Before the Court are Defendants American Honda Motor Co., Inc. ("AHM" or
"Honda") and Honda North America, Inc.'s ("HNA") (jointly, "Defendants")[2] motion to
strike the expert testimony of Stefan Boedeker ("Boedeker MTS," Dkt. No. 166), motion to
strike the expert testimony of Robert Parker ("Parker MTS," Dkt. No. 151), and motion for
summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56") ("MSJ," Dkt.
No. 155-1). Also before the Court is Plaintiffs Dennis MacDougall, Ray Seow, Prabhanjan
Kavuri, Richard Frick, Joseph Ryan Parker, and Bryan Lentz's (collectively, "Plaintiffs") motion

---

[1] As discussed below, the Court **GRANTS** the MSJ only as to Plaintiff Richard Frick's
claims. The Court **DENIES** the MSJ as to the other Plaintiffs' claims.

[2] Pursuant to the parties' agreement that HNA is not a proper defendant in this action
(see "MSJ Opposition," Dkt. No. 182 at 25), the Court **DISMISSES** HNA.

for class certification pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") ("MCC," Dkt. No. 147) (collectively, "Motions").  The Court determines the Motions appropriate for resolution without a hearing.  See Fed. R. Civ. P. 78; L.R. 7-15.  After considering all papers filed in support of and in opposition to the Motions, the Court **DENIES** the Boedeker MTS, **DENIES** the Parker MTS, **GRANTS-IN-PART AND DENIES-IN-PART** the MSJ, and **ORDERS** supplemental briefing regarding class certification.  The March 13, 2023 hearing is **VACATED**.

# I.    BACKGROUND

Because the parties are familiar with this case's extensive procedural history, the Court provides only the background necessary to understand the Motions.  Plaintiffs filed this action on June 21, 2017.  ("Complaint," Dkt. No. 1.)  In the Complaint, Plaintiffs allege twelve causes of action: (1) breach of express warranty; (2) breach of implied warranty of merchantability; (3) violations of the Magnuson-Moss Warranty Act ("MMWA"); (4) violations of the California Song-Beverly Consumer Warranty Act; (5) violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law; (6) violations of California's Consumer Legal Remedies Act; (7) violations of California's Unfair Competition Law; (8) violations of New Jersey's Consumer Fraud Act; (9) violations of Florida's Deceptive and Unfair Trade Practices Act; (10) equitable injunctive and declaratory relief; (11) declaratory relief under the Declaratory Judgment Act; and (12) unjust enrichment.  (Id.)

On December 4, 2017, U.S. District Judge Andrew J. Guilford granted-in-part and denied-in-part Defendants' motion to dismiss the Complaint.  ("MTD Order," Dkt. No. 53.) The MTD Order dismissed Plaintiffs' MMWA claim as well as consumer protection claims based on a theory of misrepresentation, with leave to amend.  (See id. at 5–9.)  Plaintiffs did not file an amended complaint.  On December 26, 2017, Defendants answered the Complaint. ("Answer," Dkt. No. 57.)  On February 5, 2020, this case was reassigned from Judge Guilford to this Court.  (Dkt. No. 225.)

## A.  Motions to Strike

On June 3, 2019, Defendants filed a motion to strike the testimony of Dr. Robert Parker ("Dr. Parker").[3]  (Parker MTS.)  On July 8, 2019, Plaintiffs opposed the Parker MTS.  ("Parker MTS Opposition," Dkt. No. 175.)  On July 22, 2019, Defendants replied.  ("Parker MTS Reply," Dkt. No. 189.)

On June 21, 2019, Defendants filed a motion to strike the testimony of Stefan Boedeker ("Mr. Boedeker").  (Boedeker MTS.)  On July 15, 2019, Plaintiffs opposed the Boedeker MTS.

---

[3] The Court has granted the parties' various applications to file certain documents under seal.  (E.g., Dkt. Nos. 160, 168, 176, 196, 197, 205.)  In this order, the Court may refer to the docket numbers of either the redacted documents as originally filed or the unredacted versions.

("Boedeker MTS Opposition," Dkt. No. 178.)  On July 22, 2019, Defendants replied. ("Boedeker MTS Reply," Dkt. No. 188.)

**B.  Motion for Summary Judgment**

On June 3, 2019, Defendants filed a motion for summary judgment or, in the alternative, for partial summary judgment.[4]  (MSJ.)  In support of the MSJ, Defendants filed a corrected statement of uncontroverted facts and conclusions of law ("Def. Facts," Dkt. No. 158-1), a corrected declaration of Livia M. Kiser ("Kiser Decl.," Dkt. No. 157-1), and 44 attached exhibits ("Kiser Exs. 1–44," Dkt. Nos. 153-1–6, 157-2.)

On July 8, 2019, Plaintiffs opposed the MSJ.  ("MSJ Opposition," Dkt. No. 174.)  In support of the MSJ Opposition, Plaintiffs filed a statement of genuine disputed facts and conclusions of law ("Pl. Facts," Dkt. No. 174-1)—which includes a section titled "Statement of Additional Material Facts," a declaration of Jeffrey Osterwise ("Osterwise Decl.," Dkt. No. 174-2), and 38 attached exhibits ("Osterwise Exs. 1–38," Dkt. No. 174-3–40).  In the MSJ Opposition, Plaintiffs agreed to dismiss Defendant HNA.  (MSJ Opposition at 25.)

On July 22, 2019, Defendant AHM replied.  ("MSJ Reply," Dkt. No. 187.)  In support of the MSJ Reply, Defendant filed two declarations of Michael B. Shortnacy ("Shortnacy MSJ Decl.," Dkt. No. 187-1; "2d Shortnacy MSJ Decl.," Dkt. No. 190-1), 11 attached exhibits ("Shortnacy MSJ Exs. 1–6," Dkt. Nos. 187-2–7; "2d Shortnacy MSJ Exs. 1–5," Dkt. Nos. 190-2–6), a reply to Plaintiffs' statement of genuine disputed facts ("Reply to Pl. Facts," Dkt. No. 190), and a reply to Plaintiffs' statement of additional material facts ("2d Reply to Pl. Facts," Dkt. No. 191).

On October 29, 2019, Judge Guilford ordered supplemental briefing on (1) whether Mr. Boedeker's conjoint study sufficiently accounts for supply-side considerations; and (2) how the motion to strike Mr. Boedeker's testimony impacts whether and to what extent summary judgment should be granted in this case.  (Dkt. No. 220.)  On March 30, 2020, Defendant filed a supplemental memorandum in support of the Boedeker MTS and MSJ.  (Dkt. No. 230).  On April 6, 2020, Plaintiffs filed a supplemental opposition to the Boedeker MTS and MSJ.  (Dkt. No. 231.)

//
//
//

---

[4] On June 3, 2019, Defendants filed a motion with a caption that reads, in part, "Motion for Summary Judgment and/or to Strike Class Averments."  (Dkt. No. 152.)  On June 4, 2019, Defendants filed a notice of errata to correct the caption to read, in part, "Motion for Summary Judgment or in the Alternative Partial Summary Judgment."  (Dkt. No. 155.)  The Court refers to the corrected motion for summary judgment in this order.  (Dkt. No. 155-1.)

### C.  Motion for Class Certification

On May 13, 2019, Plaintiffs filed a motion for class certification.  (MCC.)  On June 21, 2019, Defendants opposed the MCC.  ("MCC Opposition," Dkt. No. 167.)  On July 19, 2019, Plaintiffs replied.  ("MCC Reply," Dkt. No. 186.)

### D.  Prior Order and Appeal

On September 11, 2020, the Court granted the Boedeker MTS, denied the Parker MTS as moot, granted the MSJ, and denied the MCC as moot.  ("MSJ Order," Dkt. No. 241.)  On October 8, 2020, Plaintiffs timely appealed.  (Dkt. No. 243.)  On December 21, 2021, the Ninth Circuit reversed the MSJ Order and remanded to this Court.  ("Remand Order," Dkt. No. 250.)  The formal mandate of the Ninth Circuit issued on March 4, 2022.  (Dkt. No. 253.)

On June 27, 2022, the Court held a status conference with the parties and ordered supplemental briefing addressing the Ninth Circuit decision.  (Dkt. No. 255.)  On August 5, 2022, both parties filed supplemental memoranda.  ("Pl. Supp.," Dkt. No. 261; "Def. Supp.," Dkt. No. 262.)  On August 26, 2022, both parties filed supplemental responses.  ("Pl. Supp. Resp.," Dkt. No. 266; "Def. Supp. Resp.," Dkt. No. 267.)

## II.  FACTS

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment."  Orr v. Bank of America, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002).  At the summary judgment stage, district courts consider evidence with content that would be admissible at trial, even if the form of the evidence would not be admissible at trial.  See Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003).  The Court considers the parties' objections only where necessary.  See Doe v. Starbucks, Inc., 2009 WL 5183773, at *1 (C.D. Cal. Dec. 18, 2009) ("In motions for summary judgment with numerous objections, it is often unnecessary and impractical for a court to methodically scrutinize each objection and give a full analysis of each argument raised.  This is especially true when many of the objections are boilerplate recitations of evidentiary principles or blanket objections without analysis applied to specific items of evidence.").  To the extent the Court relies on any objected-to evidence in this Order, the relevant objections are overruled.

The following material facts are sufficiently supported by admissible evidence and are uncontroverted, except as noted.  These material facts are "admitted to exist without controversy" for purposes of the MSJ.  See Fed. R. Civ. P. 56(e)(2); L.R. 56-3.

Plaintiffs purchased model year 2014 Honda Odyssey vehicles with six-speed ("6AT") transmissions.  (Def. Facts ¶ 4.)  Each Plaintiff experienced a judder or atypical vibrations ("Atypical Vibrations") while driving his or her vehicle.  (Pl. Facts ¶ 70.)  Plaintiffs presented their vehicles to authorized Honda service centers and reported experiencing Atypical Vibrations

to the technicians.  (Id. ¶ 74.)  Some Plaintiffs also communicated directly with Honda's customer service department.  (Id. ¶ 75.)

Some Honda Odyssey vehicles manifested Atypical Vibrations.  (Def. Facts ¶ 5.) Honda's internal documents showed that Honda was aware of the problem at least as of 2015. (Cf. Pl. Facts ¶ 54.)  Honda diagnosed the cause of Atypical Vibrations in 2014 Odyssey vehicles as faster-than-typical degradation of a vehicle's automatic transmission fluid ("ATF").  (Def. Facts ¶ 46.)  Occasional vibrations can be caused by a number of factors that are not related to this issue.  (Id. ¶ 11.)

ATF can degrade more quickly than it otherwise would when exposed to intermittent high heat loads, which can occur when a torque converter in a 2014 Honda Odyssey with 6AT becomes very hot under certain conditions.  (Id. ¶ 7.)  ATF generally must be replaced at certain intervals.  (Id. ¶ 8.)

Honda publishes Technical Service Bulletins ("TSBs") to its network of authorized dealers and repair shops.  (Id. ¶ 1.)  TSBs are technical documents that AHM creates in consult with engineers that provide instructions to dealers when a customer presents with a condition that the TSB was developed to address.  (Id. ¶ 2.)  Customers who come into an authorized dealer or repair shop for service can obtain TSB repairs pursuant to the terms of a vehicle's limited, written warranty.  (Id. ¶ 3.)

On or about August 3, 2016, Honda issued TSB 16-060, which applies to a specific vehicle identification number ("VIN") range of 2012 Odyssey Touring and Touring Elite models, 2013 Odyssey Touring and Touring Elite models, and all 2014 and 2015 Odyssey models.  (Id. ¶ 44.) TSB-16-060 provides:

> A judder from the torque converter lock-up clutch may be felt while driving between 20 and 60 mph.  The problem is typically diagnosed as a bad torque converter.  American Honda investigated the judder and found that the torque converter was not causing the judder; rather, it was caused by deteriorated transmission fluid.  The transmission fluid deteriorates quicker than expected when it is exposed to intermittent high heat loads under specific driving conditions. American Honda is working on a software update that will maintain the transmission fluid temperature within the desirable range under all driving conditions and eliminate the potential for this judder.  American Honda will revise this service bulletin when the software update is available.

> Until the software is released, the judder can be fixed by flushing the transmission fluid as indicated in the FLUSH PROCEDURE.  Make sure the customer is aware that this is a temporary fix and he or she will have to return once the software is available to make sure the transmission judder is resolved.

> . . .

> Take an automatic transmission snapshot and review the data. . . . Once it is confirmed that the judder is coming from the torque converter, flush the transmission three times as indicated in the FLUSH PROCEDURE. This is a temporary fix that does not affect the durability or life span of the torque converter until the software is developed.

(Kiser Ex. 40.)

On or about June 20, 2017, Honda issued TSB 17-043 and TSB 17-044, which apply to all 2014 to 2017 Odysseys. (Kiser Exs. 41, 43.) TSB 17-043 states: "A software update is available to maintain the transmission fluid temperature within the desirable range under all driving conditions and eliminate the potential for this judder." (Kiser Ex. 41.) TSB 17-044 states: "After the software update, some vehicles based on how they are driven (extreme conditions) may still experience ATF deterioration . . . and the judder may return." (Kiser Ex. 43.) On February 27, 2018, Honda issued an updated version of TSB 17-044. (Def. Facts ¶ 48; Pl. Facts ¶ 48.) Generally, Honda recommended a software update and/or an ATF flush as countermeasures ("Countermeasures") for Atypical Vibrations. Honda required technicians to "take an automatic transmission snapshot" and "confirm that the judder is coming from the torque converter" in order to provide the Countermeasures. (Pl. Facts ¶ 67.)

Snapshots can diagnose the source of vibration in a vehicle and specifically identify whether it is originating from the transmission or torque converter. (Id. ¶ 49.) However, Atypical Vibrations last from a fraction of a second to a few seconds. (Pl. Facts ¶ 82.)

In August and September 2017, Plaintiffs' vehicles were inspected[5] by the parties' experts pursuant to an agreed-upon testing protocol. (Def. Facts ¶¶ 12, 14.) The protocol included examining the exterior, interior, underside, and engine compartment of the vehicles; measuring the fluids in the engine compartment, including ATF; (3) taking the vehicles on test drives; and using the Honda Diagnostic System ("HDS") to determine if there was any anomalous activity or performance in the transmission, torque converter, or engine. (Id. ¶ 15.) No Atypical Vibrations were detected at the time. (Id. ¶ 12.) The ATF samples taken from Plaintiffs' vehicles tested normal as against a virgin (i.e., brand new) sample. (Id. ¶ 24.) Plaintiffs' expert

---

[5] Plaintiff MacDougall's vehicle was inspected and tested on September 27, 2017 and had 55,071 miles at the time of the inspection. (Def. Facts ¶ 18.) Plaintiff Kavuri's vehicle was inspected and tested on September 26, 2017 and had 40,808 miles at the time of the inspection. (Id. ¶ 19.) Plaintiff Lentz's vehicle was inspected and tested on August 11, 2017 and had 44,935 miles at time of inspection. (Id. ¶ 20.) Plaintiff Seow's vehicle was inspected and tested on August 11, 2017 and had 27,781 miles at the time of the inspection. (Id. ¶ 21.) Plaintiff Parker's vehicle was inspected and tested on September 28, 2017 and had 68,288 miles at the time of the inspection. (Id. ¶ 22.)

conducted no other testing of Plaintiffs' vehicles and does not opine on whether Plaintiffs' vehicles manifest Atypical Vibrations. (Id. ¶¶ 16–17.)

The Countermeasures were performed on Plaintiffs' vehicles on the date of their inspections. (Id. ¶¶ 18–23.)  Since the inspections, Plaintiffs have driven extensive distances in their 2014 Honda Odysseys. (Id. ¶¶ 29–34.)  No Plaintiff has brought his or her vehicle in to be repaired or serviced for Atypical Vibrations after receiving the Countermeasures. (Id. ¶ 35.)

The total number of 2014 Honda Odyssey vehicles sold in the United States was 136,793. (Id. ¶ 10.)  According to Honda's records, the percentage of 2014 Odyssey vehicles that received one or more of the applicable Countermeasures is approximately 5%. (Id. ¶ 51.)  The software and program control modules ("PCMs" or "ECUs") in 2011 to 2016 Honda Odyssey vehicles vary from model year to year, as well as from engine to engine, and components are provided by multiple suppliers. (Id. ¶ 27.)  For example, 2011 and 2012 Odyssey models have S55C torque converters, which are different from the torque converters in Plaintiffs' vehicles. (Id. ¶ 41.)

## III.  LEGAL STANDARD

### A.  Federal Rule of Evidence 702

Federal Rule of Evidence 702 ("FRE 702") allows admission of "scientific, technical, or other specialized knowledge" by a qualified expert if four conditions are met: (a) the testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue"; (b) "the testimony is based on sufficient facts or data"; (c) "the testimony is the product of reliable principles and methods"; and (d) "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(a)-(d).

A trial court is accorded wide discretion to act as gatekeepers for the admissibility of expert testimony. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 151–52 (1999).  A court may consider several factors to determine the reliability of an expert's opinion, including whether a theory or technique has been tested, has been subjected to peer review and publication, has a high known or potential rate of error, and "enjoys 'general acceptance' within a 'relevant scientific community.'" Id. at 149–50 (quoting Daubert v. Merrell Dow Pharm., 509 U.S. 579, 592–94 (1993)).  "The party offering the expert bears the burden of establishing that Rule 702 is satisfied." Sundance Image Tech., Inc. v. Cone Editions Press, Ltd., 2007 WL 935703, at *4 (S.D. Cal. Mar. 7, 2007).  FRE 702 should be applied consistent with the "liberal thrust" of the Federal Rules and their "general approach of relaxing the traditional barriers to 'opinion testimony.'" Daubert, 509 U.S. at 588.

### B.  Federal Rule of Civil Procedure 56

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  The moving party has the initial burden of identifying the portions of the pleadings and record that it

believes demonstrate the absence of an issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Where the nonmoving party bears the burden of proof at trial, the moving party need not produce evidence negating or disproving every essential element of the nonmoving party's case.  Id. at 325.  Instead, the moving party need only prove there is an absence of evidence to support the nonmoving party's case.  Id.; In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010).  The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

If the moving party has sustained its burden, the nonmoving party must then show that there is a genuine issue of material fact that must be resolved at trial.  Celotex, 477 U.S. at 324.  The nonmoving party must make an affirmative showing on all matters placed at issue by the motion as to which it has the burden of proof at trial.  Celotex, 477 U.S. at 322; Anderson, 477 U.S. at 252.  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson, 477 U.S. at 248.  "This burden is not a light one.  The nonmoving party must show more than the mere existence of a scintilla of evidence."  In re Oracle, 627 F.3d at 387 (citing Anderson, 477 U.S. at 252).

Critically, a trial court "may only consider admissible evidence when reviewing a motion for summary judgment."  Weil v. Citizens Telecom Servs. Co., 922 F.3d 993, 998 (9th Cir. 2019) (citation omitted); see Fed. R. Civ. P. 56(e).  At the summary judgment stage, district courts consider evidence with *content* that would be admissible at trial, even if the *form* of the evidence would not be admissible at trial.  See Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003); Block v. City of Los Angeles, 253 F.3d 410, 418–19 (9th Cir. 2001).

When deciding a motion for summary judgment, the court construes the evidence in the light most favorable to the nonmoving party.  Barlow v. Ground, 943 F.2d 1132, 1135 (9th Cir. 1991).  Thus, summary judgment for the moving party is proper when a "rational trier of fact" would not be able to find for the nonmoving party based on the record taken as a whole.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## C.  Federal Rule of Civil Procedure 23

Rule 23 governs the litigation of class actions.  A party seeking class certification must establish the following prerequisites under Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992), overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338 (2011).

After satisfying the four prerequisites of numerosity, commonality, typicality, and adequacy, a party must also demonstrate one of the following under Rule 23(b): (1) a risk that separate actions would create incompatible standards of conduct for the defendant or prejudice individual class members not parties to the action; (2) the defendant has treated the members of the class as a class, making appropriate injunctive or declaratory relief with respect to the class as a whole; or (3) common questions of law or fact predominate over questions affecting individual members and that a class action is a superior method for fairly and efficiently adjudicating the action.  See Fed. R. Civ. P. 23(b)(1)–(3).[6]

Because "Rule 23 does not set forth a mere pleading standard," a "party seeking class certification . . . must be prepared to prove that there are ***in fact*** sufficiently numerous parties, common questions of law or fact, etc."  Dukes, 564 U.S. at 350 (emphasis in original).  Plaintiffs bear the burden of proving every Rule 23 requirement "by a preponderance of the evidence." Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC, 31 F.4th 651, 665 (9th Cir. 2022), cert. denied sub nom. StarKist Co. v. Olean Wholesale Grocery Coop., Inc., 143 S. Ct. 424 (2022).

A trial court has broad discretion over whether to grant or deny class certification. Bateman v. Am. Multi-Cinema, Inc., 623 F.3d 708, 712 (9th Cir. 2010).  This is because class certification is a procedural mechanism, and "[d]istrict courts are in the best position to consider the most fair and efficient procedure for conducting any given litigation."  Id. (internal quotation marks and citation omitted).  Even so, a district court must conduct a "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim."  Dukes, 564 U.S. at 351.  The court "need only consider 'material sufficient to form a reasonable judgment on each [Rule 23(a)] requirement.'"  Sali v. Corona Reg'l Med. Ctr., 909 F.3d 996, 1005 (9th Cir. 2018) (alteration in original) (quoting Blackie v. Barrack, 524 F.2d 891, 901 (9th Cir. 1975)).

# IV.   DISCUSSION

## A.  Motions to Strike Expert Testimony

Honda moves to strike the testimony of Plaintiffs' economic expert, Mr. Stefan Boedeker, and of Plaintiffs' technical expert, Dr. Robert Parker.  (Boedeker MTS, Parker MTS.) The Court initially granted the Boedeker MTS and denied the Parker MTS as moot.  (See MSJ Order.)  On appeal, the Ninth Circuit held that this Court abused its discretion by excluding Mr. Boedeker's testimony under Daubert and reversed.  (Remand Order at 2–3.)  Consistent

---

[6] While some circuits have adopted an "ascertainability" prerequisite to certification, the Ninth Circuit has not.  Briseno v. ConAgra Foods, Inc., 844 F.3d 1121, 1124 n.4 (9th Cir. 2017) (noting that the Ninth Circuit has not "adopted an 'ascertainability' requirement" and has, instead, "addressed the types of alleged definitional deficiencies other courts have referred to as 'ascertainability' issues . . . through analysis of Rule 23's enumerated requirements").

---

with the Ninth Circuit's Remand Order, the Court **VACATES** its MSJ Order and reconsiders
the motions to strike.

### 1. Mr. Boedeker

The Ninth Circuit explained that "[a]s a general rule, an expert's survey is admissible
provided it is: (1) 'conducted according to accepted principles' and (2) 'relevant' to the issues in
the case." (<u>Id.</u> at 2 (quoting <u>Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.,
Inc.</u>, 618 F.3d 1025, 1036 (9th Cir. 2010)).) Here, Mr. Boedeker used a survey methodology
known as "choice-based conjoint analysis." (<u>See</u> "Boedeker Report," Dkt. No. 166-2.)
Conjoint analysis measures respondents' willingness to pay for a product and the particular
attributes of a product (i.e., a Honda Odyssey with and without the alleged judder defect).
Although Honda challenges the reliability of Mr. Boedeker's results, the Ninth Circuit held that
such concerns as "the absence of market considerations, specific attribute selection, and the use
of averages to evaluate the survey data" go to the ***weight*** of the expert testimony, not its
***admissibility***. (Remand Order at 3.) <u>See</u> <u>Fortune Dynamic</u>, 618 F.3d at 1036 ("[T]echnical
inadequacies in a survey, including the format of the questions or the matter in which it was
taken, bear on the weight of the evidence, not its admissibility." (internal quotation marks
omitted)); <u>Wendt v. Host Int'l, Inc.</u>, 125 F.3d 806, 814 (9th Cir. 1997) ("Challenges to survey
methodology go to the weight given the survey, not its admissibility."). Accordingly, the Court
deems Mr. Boedeker's testimony admissible and **DENIES** the Boedeker MTS.[7]

### 2. Dr. Parker

Dr. Parker is a professor of mechanical engineering at Virginia Tech who studies vibration
issues in power transmission systems. ("Parker Report," Dkt. No. 161-5 at 3.) He submitted an
initial declaration on January 15, 2019 (Parker Report) and a declaration in reply to Honda's
expert on April 15, 2019 ("Parker Rebuttal," Dkt. No. 151-2). Honda seeks to strike all of
Dr. Parker's testimony.

In his initial declaration, Dr. Parker offers two opinions: First, "[t]he lock-up clutch in
the torque converter of the Affected Vehicles suffers from design deficiencies that cause judder
(also known as shudder and hesitation)." (Parker Report at 14.) In addition, "Honda failed to
rectify the judder in the Affected Vehicles and other Honda models until at least June 2017, and
September 2018 for some Affected Vehicles, despite being aware of the problem since 2011 or
earlier." (<u>Id.</u>) "Honda's multiple attempted countermeasures to rectify the judder problem did
not do so, despite the problem being a major focus within Honda." (<u>Id.</u> at 15.) Second, "[l]ong

---

[7] However, the Court excludes Mr. Boedeker's July 15, 2019 declaration as untimely.
(<u>See</u> Remand Order at 3 n.1.)

before the Named Plaintiffs purchased their Honda Odysseys in 2014, Honda knew,[8] but failed to
rectify, that its Odyssey vehicles (and a broad range of other models with 6AT transmissions)
suffered from judder and vibration caused by lock-up clutch in the torque converter." (Id. at 38.)

Honda argues that Dr. Parker's initial declaration provides no expert opinion at all, but
"merely cherry-picks Honda's internal documents and draws unfounded conclusions about
them." (Parker MTS at 12.)  Indeed, in forming his opinions, Dr. Parker relied almost entirely
on Honda's documents produced in this litigation, rather than any data collected during the
vehicle inspections, test drives, or laboratory testing. (Id.; see also id. at 13 ("Dr. Parker does not
cite to any testing, a single treatise, white paper, scholarly article, or any scientific data in support
of any of his opinions in his initial Declaration.").)

However, these concerns go to the weight of Dr. Parker's testimony, not its admissibility.
(Cf. Remand Order at 3.)  Honda does not contend that the factual basis for Dr. Parker's opinions
is improper (i.e., that the internal documents are inauthentic, for example), only that Dr. Parker
is not an appropriate witness to interpret Honda's internal documents and doing so does not
require specialized expertise. (See Parker MTS Reply at 10–12.)  According to Honda, "any
literate person" could read the internal documents and surmise what it knew when. (Id. at 10.)
Although this is a close question, the Court finds that Dr. Parker's analysis of Honda's internal
documents *may* "assist the trier of fact to understand the evidence"—the relevant standard
under FRE 702—because the documents contain technical illustrations and terms that warrant
explanation. Fed. R. Evid. 702(a).  Honda's witnesses may disagree with Dr. Parker's readings,
but Dr. Parker's opinions "need not be proven correct to be admissible." In re Toyota Motor
Corp. Unintended Acceleration Mktg., Sales Pracs., and Prod. Liab. Litig., 978 F. Supp. 2d 1053,
1074 (C.D. Cal. 2013).  Further, the trier of fact is free to assess Dr. Parker's credibility and give
his testimony as much or as little weight as appropriate, while Honda is free to attack "shaky but
admissible evidence . . . by cross examination, contrary evidence, and attention to the burden of
proof, not exclusion." Id. at 1064.

In his rebuttal declaration, Dr. Parker opines that Honda's expert, Jason Arst
("Mr. Arst"), lacked sufficient evidence to conclude that Plaintiffs' vehicles do not manifest
"judder" arising from or related to the vehicles' transmissions or torque converters. (Parker
Rebuttal at 1–2.)  Dr. Parker explained that "judder is an intermittent behavior not readily
reproduced in a short test drive" and that the "test drives [conducted in August and September
2017] were too short to conclude the absence of judder." (Id. at 2, 9.)  Although Honda notes
that the parties agreed to the testing protocols and that Dr. Parker does not "propose any
alternate protocols for testing the vehicles that would have been, in his opinion, 'sufficient,'"
such concerns again go to weight, not admissibility.  As a rebuttal witness, Dr. Parker may
"largely rely on other expert reports, as he does, and point out flaws in their methodologies or

---

[8] Honda belatedly asserts that Dr. Parker cannot opine on its state of mind (i.e., when
Honda knew of the alleged defect). (See MSJ Reply at 25.)  Yet because Honda failed raise this
argument in the Parker MTS, it is untimely and the Court does not consider it.

conclusions." <u>In re Toyota Motor Corp.</u>, 978 F. Supp. 2d at 1069.  Dr. Parker has sufficient
factual basis to comment on Mr. Arst's methodologies because Dr. Parker observed and
conducted the vehicle inspections alongside Mr. Arst.  Notably, Dr. Parker does not himself
opine on whether Plaintiffs' vehicles manifest the judder.  (Def. Facts ¶ 17.)  Accordingly, the
Court deems Dr. Parker's testimony admissible and **DENIES** the Parker MTS.

## B.  Motion for Summary Judgment

Honda moves the Court for summary judgment on all of Plaintiffs' claims, or, in the
alternative, for partial summary judgment on Plaintiffs' claims relating to vehicles other than the
2014 Honda Odyssey.  (MSJ at 1.)  Honda points to an absence of evidence that Plaintiffs'
vehicles have the alleged defect, an element on which Plaintiffs bear the burden of proof at trial.
<u>See</u> <u>In re Brazier Forest Prod., Inc.</u>, 921 F.2d 221, 223 (9th Cir. 1990) ("[I]f the nonmoving party
bears the burden of proof on an issue at trial, the moving party need not produce affirmative
evidence of an absence of fact to satisfy its burden.  The moving party may simply point to the
absence of evidence to support the nonmoving party's case.  The nonmoving party must then
make a sufficient showing to establish the existence of all elements essential to their case on
which they will bear the burden of proof at trial." (citations omitted)).  Specifically, Honda
argues that while its expert concluded "to a reasonable degree of engineering and scientific
certainty" that Plaintiffs' vehicles do not have Atypical Vibrations, Plaintiffs' expert did not
opine on whether Plaintiffs' vehicles have Atypical Vibrations at all.  (<u>See</u> MSJ at 18–20 (quoting
"Arst Report," Kiser Ex. 3 at 1).)  Without such an expert opinion, Honda claims, Plaintiffs have
"zero" evidence of Atypical Vibrations in their vehicles.  (<u>Id.</u> at 18.)

Honda, however, overlooks Plaintiffs' other evidence.  Plaintiffs each testified that they
experienced Atypical Vibrations while driving their 2014 Honda Odyssey vehicles.  (Osterwise
Exs. 15–22.)  Plaintiffs' accounts are corroborated by contemporaneous service records from
dealers and repair shops.  (Osterwise Exs. 23–27.)  For example, Plaintiff Seow's service record,
dated January 5, 2015, states that the technician "felt transmission shifting hard" and deemed it
a "verified concern."  (Osterwise Ex. 25.)  As another example, Plaintiff Parker's service record,
dated September 7, 2016, documents that "customer had diagnostic & was told has bad converter
or transmission assembly . . . torque converter lock-up clutch being felt."  (Osterwise Ex. 26.)
Plaintiffs MacDougall, Seow, and Lentz also reported the issue directly to Honda's customer
service department.  (Osterwise Exs. 28–30.)  For example, on July 24, 2014, Plaintiff Lentz told
a Honda customer service representative that his "vehicle jerks him and his wife around and he
wants a vehicle that does not."  (Osterwise Ex. 28.)

The Court is unpersuaded by Honda's attacks on Plaintiffs' testimony as "lay,
self-serving, and uncorroborated."  (MSJ at 20–21.)  First, testimony is evidence.  Second,
although "speculative opinion testimony by lay witnesses—i.e., testimony not based upon the
witness's perception—is generally inadmissible," Plaintiffs' testimony *is* based upon their own
perception.  (MSJ at 20 (quoting <u>Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.</u>,
2008 WL 11334030, at *10 (C.D. Cal. Mar. 17, 2008)).)  Plaintiffs describe their own experiences
of Atypical Vibrations, which does not require any technical knowledge.  (<u>See, e.g.</u>, Osterwise Ex.

15 (Plaintiff Kavuri: "I started feeling a juddering motion whenever the transmission . . . was switching between a higher to lower or lower to higher gear.").) Third, a "declaration does not fail to raise a triable issue merely because it is self-serving." Johnson v. Portfolio Recovery Assocs., LLC, 2013 WL 10156241, at *5 (C.D. Cal. June 24, 2013). Instead, "if the affidavit states facts about which the declarant has personal knowledge and is competent to testify, the declaration may be used to raise a triable issue of fact." Id. Here, Plaintiffs' testimony is within the Plaintiffs' personal knowledge and involved their own actions. See id. at *6; see also S.E.C. v. Phan, 500 F.3d 895, 910 (9th Cir. 2007). Fourth, as discussed above, Plaintiffs' testimony is corroborated by contemporaneous service records and customer service records. Thus, the Court properly considers Plaintiffs' testimony for the purposes of determining whether Plaintiffs have raised a triable issue of fact.

Further, Honda's TSBs acknowledged that a "judder from the torque converter lock-up clutch may be felt while driving between 20 and 60 mph" in certain Odyssey models. (Kiser Ex. 40.) There is no dispute that TSB 16-060 applies to Plaintiffs' 2014 Odyssey vehicles, and that at least one technician serviced a Plaintiff's vehicle according to its recommendations. (See id.; Osterwise Ex. 26 (TSB 16-060 attached to Plaintiff Parker's service record).) Although Honda doubts whether Plaintiffs, as lay witnesses, can reliably attribute the cause of the Atypical Vibrations they felt to the same issue identified in TSB 16-060—as compared to Honda's expert who could not (see MSJ at 20–21), the Court does not weigh the evidence at this stage, see Anderson, 477 U.S. at 249. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." Id. The jury will have to decide whether the fact that Honda's expert could not replicate the Atypical Vibrations in Plaintiffs' vehicles proves that those vibrations never manifested, or that those vibrations simply did not manifest during the inspections. A reasonable jury could find that despite Honda's expert's testimony, Plaintiffs' vehicles *in fact* manifested the Atypical Vibrations that Honda knew *could* manifest in Plaintiffs' vehicles. Thus, Plaintiffs have shown that there is a genuine issue of material fact that must be resolved at trial.

Honda moves in the alternative for the Court to enter partial summary judgment on Plaintiffs' claims relating to vehicles other than the 2014 Honda Odyssey, the model they own. (MSJ at 23.) Honda argues that because the transmission, torque converter, and software of Odysseys differ from model year to year, Plaintiffs cannot pursue claims with respect to models they do not own. (See id.; Def. Facts ¶ 27.) In response, Plaintiffs contend that none of those differences are material to the issues in this case. (MSJ Opposition at 24.) Honda "investigated judder in the Class Odysseys in a single investigation, issued TSBs that apply to several model years of the Class Odysseys, and offer countermeasures for all the Class Odysseys that were identical in all material respects." (Id.) The Court finds that Plaintiffs have made a sufficient showing that their vehicles are sufficiently similar to the other models listed in the TSBs and that there is a genuine issue of material fact.

//
//

Plaintiffs inexplicably offer no evidence relating to Plaintiff Richard Frick. (See Osterwise Decl. at 2–3 (lacking any deposition transcript, service record, or customer service record from Plaintiff Frick).) Given the complete absence of evidence, there is no genuine issue of material fact as to Plaintiff Frick's claims.

Accordingly, the Court **GRANTS-IN-PART and DENIES-IN-PART** the MSJ. The Court **GRANTS** summary judgment as to Plaintiff Frick's claims. The Court **DENIES** summary judgment on the remaining Plaintiffs' claims and **DENIES** partial summary judgment on the remaining Plaintiffs' claims relating to vehicles other than the 2014 Honda Odyssey.[9]

## C. Motion for Class Certification

Plaintiffs seek to certify the following classes:

California Class: All persons or entities who purchased or leased model year 2012 Touring and Touring Elite Honda Odysseys with VINs in the range 5FNRL5H…CB053446 through 5FNRL5H…CB148157, model year 2013 Touring and Touring Elite Honda Odysseys, and model year 2014 to 2016 Honda Odysseys (collectively, "Class Vehicles") in California from AHM or through an AHM dealership. The California Class seeks certification of claims for: (a) violation of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, et seq.; (b) violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq.; (c) breach of the California Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), Cal. Civ. Code § 1790, et seq.; (d) breach of implied warranty; (e) breach of express warranty; (f) unjust enrichment; and (g) injunctive and declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, and state law.

Pennsylvania Class: All persons or entities who purchased or leased a Class Vehicle in Pennsylvania from AHM or through an AHM dealership. The Pennsylvania Class seeks certification of claims for: (a) breach of implied warranty; (b) breach of express warranty; (c) unjust enrichment; and (d) injunctive and declaratory relief under the Declaratory Judgment Act and state law.[10]

---

[9] In the MSJ, aside from the absence of defect, Honda does not identify any specific elements of claims upon which Plaintiffs have failed to produce sufficient evidence. (See MSJ Opposition at 10–12.) See also In re MyFord Touch Consumer Litig., 291 F.Supp.3d 936, 944 (N.D. Cal. 2018).

[10] The Pennsylvania Class does not seek certification for violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Cons. Stat. § 201-1, et seq. (See MCC at 2; see also Complaint ¶¶ 146–61 (Plaintiffs' fifth claim for relief).)

New Jersey Class:  All persons or entities who purchased or leased a Class Vehicle in New Jersey from AHM or through an AHM dealership.  The New Jersey Class seeks certification of claims for: (a) violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-1, <u>et seq.</u>; (b) breach of implied warranty; (c) breach of express warranty; (d) unjust enrichment; and (e) injunctive and declaratory relief under the Declaratory Judgment Act and state law.

Florida Class:  All persons or entities who purchased or leased a Class Vehicle in Florida from AHM or through an AHM dealership.  The Florida Class seeks class certification of claims for: (a) violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, <u>et seq.</u>; (b) breach of implied warranty; (c) breach of express warranty; (d) unjust enrichment; and (e) injunctive and declaratory relief under the Declaratory Judgment Act and state law.

(MCC at 2–3.)

In its supplemental brief, Honda asserts that some Plaintiffs have sold their vehicles since they filed the MCC.  (<u>See</u> Def. Supp. at 2, 17–18, 18 n.7 (suggesting Plaintiffs Seow, Lentz, and Parker no longer own their vehicles).)  If so, this new information may affect the Court's class certification analysis.  Accordingly, the Court **DEFERS** ruling on the MCC and **ORDERS** Plaintiffs to submit supplemental briefing.  Specifically, the Court requests Plaintiffs to explain: (1) whether some Plaintiffs are now former owners of Class Vehicles; (2) whether the proposed classes include former owners; (3) how Plaintiffs who are former owners satisfy the Rule 23 requirements, particularly typicality, commonality, and predominance; and (4) how damages may be calculated on a class-wide basis as to former owners.  Plaintiffs shall file a supplemental brief of no more than ten pages, not including any attached evidence, by **March 20, 2023**.  Defendant may file a brief in response, also of no more than ten pages, by **March 31, 2023**.  The Court urges the parties to meet and confer regarding these issues before filing supplemental briefing.

## V.    CONCLUSION

For the foregoing reasons, the Court **DENIES** the Boedeker MTS, **DENIES** the Parker MTS, and **GRANTS-IN-PART AND DENIES-IN-PART** the MSJ.  The Court **DISMISSES** HNA.  The Court **ORDERS** Plaintiffs to file a supplemental brief by **March 20, 2023**, and grants Defendant leave to file a response by **March 31, 2023**.  The March 13, 2023 hearing is **VACATED**.

**IT IS SO ORDERED.**